UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOSEPH F. HUTCHISON, *et. al.*, | : | Case No. 1:01cv789 |
| | : | |
| Plaintiffs | : | (Judge Beckwith) |
| v. | : | |
| | : | |
| FIFTH THIRD BANCORP, | : | PLAINTIFFS' MEMORANDUM IN |
| | : | OPPOSITION TO DEFENDANT'S |
| Defendant | : | MOTION TO DISMISS PLAINTIFFS' |
| | : | SECONDED AMENDED COMPLAINT |

Come now Plaintiffs, and for their Response to Defendant's Motion to Dismiss Plaintiffs' Seconded Amended Complaint, hereby state as follows:

### INTRODUCTION

Defendant Fifth Third Bancorp ("Defendant") has moved to dismiss Plaintiffs' Second Amended Complaint, which alleges violations by Defendant of the Employee Retirement Income Security Act ("ERISA"). Defendant contends Plaintiffs' Complaint should be dismissed because the Affiliation Agreement did not become part of the Employee Stock Ownership Plan ("ESOP" or "Plan") to create a resulting plan and that Plaintiffs are not entitled to benefits as a matter of law. Defendant's motion must fail for the following reasons: (1) Defendant's Motion to Dismiss prior to any discovery is premature; (2) the Affiliation Agreement amended the ESOP to create a resulting plan; (3) if not an amendment to the ESOP, the Affiliation Agreement is a separate plan which entitles Plaintiffs to benefits; (4) Defendant illegally amended the Affiliation Agreement to increase the number of participants in the ESOP; (5) under the plain language of the Affiliation Agreement and resulting ESOP, Plaintiffs are entitled to benefits as a matter of law; and (6) Defendant breached its fiduciary duties under ERISA. Defendant's conclusory

allegations are unsupported by either case law or the facts of the case as set forth in Plaintiffs' Amended Complaint, and Defendant's Motion to Dismiss must therefore be denied.

I.   DISCUSSION

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, parties may move to dismiss claims where the opposing party has "failed to state a claim upon which relief can be granted." Federal Rule of Civil Procedure 12(b)(6). When considering a motion to dismiss pursuant to Rule 12(b)(6), the trial court must accept all of the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff. See, e.g., Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995). The test for dismissal under Rule 12(b)(6) is a stringent one. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hartford Fire Insurance Co. v. California, 509 U.S. 764, 811 (1993); see also Miller, 50 F.3d at 377. Presently, Plaintiffs' claim is supportable by existing law and should not be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

A.   **Defendant's Motion To Dismiss Is Premature.**

Defendant's Motion to Dismiss must be denied under the Federal Rules of Civil Procedure because Defendant's Motion to Dismiss is premature. On its face, Defendant's Motion is not actually a motion to dismiss as (1) Defendant disputes the truth of Plaintiffs' Complaint, and (2) Defendant seeks to add facts outside of the pleadings. Defendant's Motion to Dismiss is actually a Motion for Summary Judgment, in disguise, prior to any discovery in this case. Plaintiffs are entitled to discovery in order to determine exactly what happened to the ESOP assets which were legally committed to them in the Affiliation Agreement.

Rule 12(b)(6) requires the court to accept all of the allegations in the Complaint as true. See, e.g., Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995). Defendant's Motion to Dismiss rests entirely on disputing the facts as set forth in Plaintiffs' Complaint and factual additions to the Complaint. For example, Defendant states that it "amended the Suburban ESOP to allow certain *non-highly compensated* Fifth Third employees to join the plan. (Second Amd. Complaint, ¶ 27)." (Motion to Dismiss, p. 4) (emphasis added). However, Plaintiffs never alleged only "non-highly compensated" Fifth Third employees were permitted to join. Defendant further has no evidentiary support for this addition. Defendant merely attempts to discount a potential violation of ERISA in hopes of dismissing the Complaint. Defendant cannot be permitted to bypass the discovery stage by simply asserting new and unsupported facts into its Motion. There must be discovery in order to determine precisely the benefited employees and thus whether Defendant's actions violated ERISA.

Furthermore, Defendant's Motion to Dismiss disputes Plaintiffs' interpretation of the Affiliation Agreement as set forth in Plaintiffs' Complaint. (See Defendant's Motion to Dismiss, p. 10-14). This is inappropriate in a motion to dismiss. This Court addressed a similar effort by Defendant in this Court's Order in response to Defendant's first Motion to Dismiss, in which Defendant attempted to interpret the Affiliation Agreement contrary to the interpretation set forth in Plaintiffs' Complaint. This Court stated:

> "Fifth Third disputes Plaintiffs' interpretation of the Affiliation Agreement. However, when considering a motion to dismiss, a court must take all the facts and allegations in the complaint as true. See Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). Therefore, the Court accepts Plaintiffs' interpretation of the Affiliation Agreement for the purposes of this opinion." Order dated March 11, 2003, at p. 1.

Similarly, Defendant's present arguments are contrary to the rules of civil procedure, and thus Defendant's Motion to Dismiss cannot be granted.

Defendant also seeks to have this Court consider material outside the pleadings. This also is not appropriate in a motion to dismiss. Defendant attached to its Motion to Dismiss a copy of the ESOP plan and Affiliation Agreement, including copies of amendments to each. Although Plaintiffs refer to the ESOP and Affiliation Agreement in Plaintiffs' Complaint, Plaintiffs have never been provided under the auspices and protections of the rules of discovery all the Amendments to the ESOP which Defendant has attached to its Motion to Dismiss or any other related documents and Plaintiffs have not yet had the opportunity to question representatives of Defendants as to the same. This material is key to the case, and Plaintiffs have a right to obtain this and all other pertinent information through discovery. One can only be suspicious of Defendant's motion in the instant motion which is clearly intended to deny Plaintiffs' right to discovery.

Defendant's Motion to Dismiss is clearly impermissible under the Federal Rules of Civil Procedure. Defendant disputes the truth of the facts as set forth in the Complaint and seeks to add information outside of the pleadings. Defendant's attempts to avoid discovery must not be rewarded. Defendant's Motion to Dismiss is clearly premature, and must therefore be denied.

**B.     The Affiliation Agreement Amended The ESOP To Create A Resulting Plan.**

Defendant alleges that the Affiliation Agreement has no application to the ESOP, despite the express terms of the Affiliation Agreement which state otherwise. In particular, Defendant claims that the Affiliation Agreement did not serve to amend or in any way alter the ESOP. Defendant's argument misses the point. Whether or not one considers the Affiliation Agreement as an amendment to the ESOP or a new ERISA plan, it created ERISA (as well as general contractual) obligations which Defendant has overlooked, ignored or intentionally breached. The Affiliation Agreement clearly affected the ESOP for the following reasons: (1) the

Affiliation Agreement, as a written agreement executed after the ESOP was established, amended the terms of the ESOP to create a Resulting Plan (as defined in the Complaint); (2) the ESOP adopted and ratified the Affiliation Agreement, thereby incorporating the Affiliation Agreement by reference to create a Resulting Plan; and (3) Defendant is contractually bound to follow the terms of the Affiliation Agreement in distributing excess assets in the ESOP either through or outside the ESOP.

Defendant claims that the Affiliation Agreement could not alter the terms of the ESOP because a formal written plan was already in place. In other words, Defendant claims that a formal ERISA plan cannot be amended by a written agreement. In support of its argument, Defendant cites a single Sixth Circuit case, Nester v. Allegiance Health Care Corporation, 162 F.Supp.2d 901 (S.D. Ohio 2001) (affirmed 315 F.3d 610) (6th Cir. 2003). According to Defendant, Nester held that employer-created documents do not result in an ERISA plan when a formal ERISA plan already exists. (Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint, p. 7). The holding of Nester is much narrower than Defendant's sweeping conclusion, however. In Nester, the employees alleged that the employer's slide-show presentation and various bulletins created a contractual guarantee of benefits. Following this "contractual guarantee," the employer established a formal ERISA plan. The court held that the "formal written plan preempts any ***prior*** representations that Allegiance may have made to the plaintiffs regarding their entitlement to transition benefits." Nester, 162 F.Supp.2d at 908-909 (emphasis added). Thus, Nester merely held that a formal ERISA plan is not influenced by previous informal promises. Nester in no way holds that a formal ERISA plan is not impacted by ***subsequent*** written contracts. Nester is thus inapplicable to the case at bar, in which the

5

Affiliation Agreement occurred subsequent to the original ERISA plan. Other cases string cited by Defendant are similarly factually distinguishable.

In fact, the Sixth Circuit clearly recognizes that a formal written plan can be modified via written agreement. While it is true that a pension plan governed by ERISA "shall be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), "it is not true that the written instrument ERISA requires is the Pension Plan alone and that no other documents may be considered by the plan administrator." Wilson v. Moog Automotive, Inc., 193 F.3d 1004, 1008 (9th Cir. 1999). In Wilson, the court noted that "[t]he 'written instrument' requirement is intended to ensure that participants are on notice of the benefits to which they are entitled and their own obligations under the plan. In addition, a written instrument provides guidelines, that likewise are known to the participants, for the plan administrator as he makes coverage decisions." Id. Thus, the court held that a plant closing agreement was "a plan document relevant to the plan administrator's decision whether to award early retirement benefits to the plaintiffs. As such it cannot be ignored." Id. at 1008-9. For support, the court cited 29 USC § 1024(b)(4), which requires a plan administrator, upon written request of participant, to "furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, **contract**, or other instruments under which the plan is established or operated." (Emphasis added). Clearly, the legislature intended to include within a plan any and all documents which govern the plan. In the case *sub judice*, it is undisputed that the Affiliation Agreement serves to provide guidelines in making coverage decisions.[1] As a contract under which the Plan is operated, the Affiliation Agreement is a part of

---

[1] This Court recognized in its Order dated March 11, 2003, that "Prior to the merger, Suburban and Fifth Third entered into an Affiliation Agreement, which controlled the effect of the merger on a leveraged employee stock ownership plan ("Suburban ESOP")." Order, p. 1.

the plan and cannot be ignored. See also Parrett v. American Ship Building Company, 990 F.2d 854 (6th Cir. 1993) (holding "we have never held that courts may only examine the original written agreement when interpreting pension disputes); Rinard v. Eastern Company, 978 F.2d 265, 268 (6th Cir. 1992) ("The District Court correctly observed that there is no requirement in the regulations that the terms of an ERISA plan be contained in a single document. Nor does the requirement of 29 U.S.C. § 1102(a)(1), that the terms of an ERISA plan be contained in a written instrument, require that it be a single document).

In addition, the Affiliation Agreement is part of the Plan as the Agreement was ratified by the subsequent actions of the board. The Affiliation Agreement was expressly ratified and incorporated by reference in the 1997 Board Resolution adopting the 1997 Amendments to the ESOP, in which the Board not only acknowledged the existence of the Affiliation Agreement but recognized that it was bound to follow the Agreement as a valid and enforceable contract of the Defendant which affected the administration of the ESOP. See Exhibit B of Plaintiffs' Motion to Dismiss, Board Resolution dated July 16, 1997 (including as a purpose of the Amendment to the ESOP "pursuant to Section V.E.1. of the affiliation agreement between the Company and Fifth Third Bancorp, the Company must amend the Plan to provide for its termination").

Finally, Defendant is contractually bound to follow the Affiliation Agreement. The United States Supreme Court has stated that "principles of corporate law provide a ready-made set of rules for determining, in whatever context, who has authority to make decisions on behalf of a company." Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 80 (1995). "A corporation is bound by contracts entered into by its officers and agents acting on behalf of the corporation and for its benefit, provided they act within the scope of their express of implied

powers." Id. at 81. Defendant willingly entered into the Affiliation Agreement and is contractually bound by it.

This court has in effect already determined that the Affiliation Agreement, upon which Plaintiffs' claim is based, is part of the formal ESOP plan as Plaintiffs' breach of contract claim was held pre-empted by ERISA. If the breach of contract claim, the contract being the Affiliation Agreement, was dismissed as preempted by ERISA, the Affiliation Agreement must logically be covered under ERISA. Defendant desires to have its cake and eat it too by requesting this court contradict itself by first holding that Plaintiffs' breach of contract claim does not apply in lieu of ERISA, only to find that the contract does not fall under ERISA at all.

Defendant's argument that the Affiliation Agreement is not part of the formal ERISA plan does not hold water. The Affiliation Agreement, as a contract entered into after the establishment of the Plan which affects the operation of the Plan, is clearly a part of the formal plan.

**C.    The Affiliation Agreement May Be A Separate Plan Which Entitles Plaintiffs To Benefits.**

If the Affiliation Agreement did not amend the ESOP, then the Affiliation Agreement itself is a separate and distinct plan. ERISA establishes plans termed "unfunded excess benefit plans," which encompass all plans with the main function of distributing benefits which are in excess of §415 limitations. ERISA §3(36). The term "excess benefit plan" is defined by ERISA § 3(36) as:

> A plan maintained by an employer solely for the purpose of providing benefits for certain employees in excess of the limitations on contributions and benefits imposed by § 415 of Title 26 on plans to which that section applies without regard to whether the plan is funded. To the extent that a separable part of a plan (as determined by the Secretary of Labor) maintained by an employer

>is maintained for such purpose, that part shall be treated as a separate plan which is an excess benefit plan.

ERISA further states that unfunded excess benefit plans are exempt from the provisions of ERISA. ERISA § 4(b); see also Petkus v. Chicago Rawhide Manufacturing Co., 763 F. Supp. 357, 360 (N.D. Illinois 1991) ("the implicit purpose of the exemption is to exclude from federal jurisdiction cases that only involve claims under a pension plan for benefits that exceed the § 415 limitations").

Without further discovery, it is impossible to determine whether or not the Affiliation Agreement is an unfunded excess benefit plan. While this portion of the statute certainly seems on point to the case *sub judice*, as the Affiliation Agreement contains a separable part dealing solely with the distribution of benefits in excess of the §415 regulations, it cannot be guaranteed absent further discovery. Until discovery has been completed, it cannot be presumed that Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. Plaintiffs' cause of action must therefore not be dismissed until discovery can be completed and an intelligent and informed determination made as to the proper treatment the Affiliation Agreement should receive under ERISA.

    **D.    Defendant Could Not Amend The Affiliation Agreement To Increase The Number Of Participants In The ESOP.**

The Defendant attempted to amend the ESOP, as amended by the Affiliation Agreement, to increase the number of participants in violation of the clear mandates of the Affiliation Agreement. Both the terms of the ESOP plan, as amended, and the provisions of ERISA prohibit Defendant's actions.

As detailed above, the Affiliation Agreement was clearly intended to become a part of the ESOP plan. The plain language of the Affiliation Agreement prohibits expansion of the participants in the ESOP. The intent of the parties consistently has been to exclude Fifth Third

9

employees from participating in the Suburban ESOP, even after the merger of Fifth Third and Suburban. The Affiliation Agreement clearly states: "…to the extent not prohibited by applicable law, the ESOP shall be maintained through the date of its final termination for the exclusive benefit of individuals who had become ESOP participants on or before the Effective Time." Affiliation Agreement, p. 23. <u>See</u> also 1997 Amendment (amending §2.1 to add (ii), which states: "participation in the Plan shall be limited to individuals who are Participants immediately prior to the effective time of the Company's merger into Fifth Third Bancorp."); 1999 Amendment (amending §2.1(ii) to state: "participation in the Plan prior to July 1, 1998 shall be limited to the individuals who are Participants immediately prior to the effective time of the Company's merger into Fifth Third Bancorp.") Thus, the ESOP plan, as amended by the Affiliation Agreement, expressly prohibited the addition of new participants post-merger.

Amendments which would alter provisions of the Affiliation Agreement benefiting shareholder (most of which were participants in the ESOP) was prohibited. Section VII.F. of the Affiliation Agreement states: "This Agreement may be hereafter amended only by a written instrument executed by each of the parties pursuant to Section X hereof." Under Section X of the Affiliation Agreement:

> This Agreement may be amended, modified or supplemented by the written agreement of Suburban Bancorp and Fifth Third upon the authorization of each company's respective Board of Directors at any time before or after approval of the Merger and this Agreement by the shareholders of Suburban Bancorp, but after any such approval by the shareholders of Suburban Bancorp no amendment shall be made (without further shareholder approval) which changes in any manner adverse to such shareholders the consideration to be provided to such shareholders pursuant to this Agreement and the Agreement of Merger.

Defendant has thus bargained away its right to freely modify or terminate plaintiffs' rights to their benefits. Only upon the conditions precedent set forth in the Affiliation Agreement—that

10

is, by agreement of the parties—can Fifth Third amend the Plan to permit additional participants. Defendant's attempt to amend the Affiliation Agreement to extend the permitted participants was an ineffectual attempt to circumvent the terms of the Agreement in an effort to avoid paying its corporate assets to the participants. Furthermore, the participants in the ESOP were expressly made third-party beneficiaries of the Affiliation Agreement. It is black letter law that provisions benefiting third-party beneficiaries cannot be amended without consent of the third parties.

An analogous case is Bryant v. International Fruit Products Co., 793 F.2d 118, 122-23 (6th Cir. 1986), in which the defendant-employer created a benefit plan in 1959 which contained an absolute prohibition that no contributions, assets, or income from the plan could ever revert to the employer and no amendment could be enacted to cause such a reversion. In 1982, the company's board of directors amended the plan to allow any funds accumulated due to actuarial error to return to the employer. The Sixth Circuit held that the 1959 plan precluded an amendment that would allow money once contributed to be reclaimed, because "an agreement that provides that an act can occur in no event and under no circumstances cannot be converted into one that permits the act by a series of amendments that first deletes the reference to the prohibition and then adds a provision permitting the forbidden act." Id. at 123; see also Rosenbaum v. Davis Iron Works, Inc., 669 F. Supp. 813, 819 (E.D. Mich. 1987) (where pension plan states that no funds contributed to trust nor assets of trust shall ever revert to or be made available to the employer, that language is absolute and it precludes post-ERISA amendment to the trust providing for reversion of assets to company), aff'd in part and rev'd in part, 871 F.2d 1088 (6th Cir. 1989).

The language of the Affiliation Agreement is clear. No amendment to the Affiliation Agreement is permitted absent approval of all parties (including third-party beneficiaries if third

party benefits are adversely effected.). All parties to the Affiliation Agreement did not agree to amend the Affiliation Agreement to permit Defendant's employees to become participants in the plan, and thus no amendment occurred. Defendant's clear attempts to disregard the Affiliation Agreement cannot be condoned by this Court.

ERISA also clearly prohibits a reduction of vested benefits and, accordingly, Defendant's expansion of the participants in the ESOP after benefits had been guaranteed to the former Suburban participant.. Congress' purpose in enacting ERISA was to "ensure that if a worker has been promised a defined benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit. . . he actually receives it." Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 510 (1981). ERISA expressly prohibits decreasing accrued benefits via plan amendments. Known as the "anti-cutback rule," 29 U.S.C. § 1045(g) provides:

> (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan… (3) For the purposes of paragraph (1), a plan amendment which has the effect of – (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in the regulations)…"

The Defendant's amendment permitting more participants reduced the Plaintiffs' retirement benefit, and thus is impermissible under the anti-cutback rule.

### E. Defendant Confuses and Ignore The Plain Language Of The Affiliation Agreement.

Defendant claims that under the plain language of the Affiliation Agreement, Plaintiffs are entitled to no further distributions. The correct application of contract interpretation proves otherwise.

ERISA does not contain a body of contract law to govern the interpretation and enforcement of employee benefit plans. Richardson v. The Pension Plan of Bethlehem Steel Corporation, 112 F.3d 982, 985 (9th Cir. 1997). Rather, Congress intended that courts apply

contract principles derived from state law but be guided by the policies expressed in ERISA and other federal labor laws. Id. Accordingly, terms in an ERISA plan should be interpreted in an ordinary and popular sense as would a person of average intelligence and experience. Id. When disputes arise, courts should first look to the explicit language of the agreement to determine the clear intent of the parties. Armistead v. Vernitron Corp., 944 F.2d 1287, 1293 (6th Cir. 1991). Each provision in an agreement should be construed consistently with the entire document such that no provision is rendered nugatory. Id.

The Affiliation Agreement states in pertinent part:

> In connection with the ESOP, the parties agree they intend that, to the extent not prohibited by applicable law, the ESOP shall be maintained through the date of its final termination for the exclusive benefit of the individuals who had become ESOP participants on or before the Effective Time. . . . If, upon development of the written description and timetable referred to above, the parties agree in good faith that allocation of all or any shares of stock held in the ESOP's suspense account would violate the Code's section 415 limitations as interpreted by the IRS in private letter rulings 9648054 and 9426048, Suburban Bancorp shall apply to the IRS for approval (either through an IRS determination letter or other means reasonably acceptable to Fifth Third) of a transaction (the "Transaction") whereby the excess shares (or cash value thereof (i.e. those shares remaining after fully utilizing the section 415 limits . . . ) either revert to Fifth Third or are transferred to an employee benefit plan of Fifth Third. If and only if the IRS approves such a Transaction, ***or Fifth Third otherwise proceeds with the Transaction without IRS approval***, Fifth Third will thereafter pay (out of its corporate assets and not plan assets) an equivalent amount . . . reduced by expenses incurred, to individuals who were ESOP participants on the Effective Time…"

Defendant's interpretation of the contract is unusual, if not intentionally misleading. Defendant claims that the "if… then" clause in the second sentence was not complete, and that therefore the entire paragraph is null and void. This is simply incorrect. It is true that neither Suburban Bancorp[2] nor Fifth Third applied to the IRS for approval. However, that is irrelevant to the clause at issue, which states: "If . . . Fifth Third otherwise proceeds with the

---

[2] After the merger it was impossible for Suburban Bancorp to apply for IRS approval since it no longer existed.

Transaction… Fifth Third will thereafter pay . . an equivalent amount.. to individuals who were ESOP participants on the Effective time." The Affiliation Agreement expressly contemplated that Defendant could proceed with acquiring the excess ESOP assets without any such ruling from the IRS. Consequently, the IRS letter ruling was not a condition precedent to Defendant obtaining dominion and control over the excess assets. Fifth Third "otherwise proceeded" with the Transaction, and thus is required under the clear language of the contract to pay an amount equivalent to the excess ESOP assets to Plaintiffs.

Defendant awkwardly attempts to re-define "transaction" in order to nullify the provision at issue. Defendant states: "[a] 'Transaction' clearly contemplates, however, that Suburban apply to the IRS for approval so that the shares in the suspense account either revert to Fifth Third or are transferred to another employee benefit plan." Defendant's Motion to Dismiss, p. 12. "Transaction" is clearly defined by the contract, however, as follows:

> [A] transaction (the "Transaction") whereby the excess shares (or cash value thereof (i.e. those shares remaining after fully utilizing the section 415 limits . . . ) either revert to Fifth Third or are transferred to an employee benefit plan of Fifth Third.

The definition of transaction is not hinged to a request for approval by the IRS, but is a plain and simple reversion or transfer of the assets. Defendant further denies the obvious, that the assets were transferred to an employee benefit plan of Fifth Third. Upon the Defendants wrongful inclusion of Fifth Third employees into the Suburban plan at a time that Suburban no longer existed, the plan became an employee benefit plan of Fifth Third. The transfer of the assets from the hands of the Suburban employees to employees of Fifth Third is a "transaction" as recognized by the Affiliation Agreement.

### F. Defendant Breached Its Fiduciary Duties Under ERISA.

The Defendant is the fiduciary of the ESOP. ERISA imposes high standards of fiduciary duty upon those responsible for administering an ERISA plan and investing and disposing of its assets. Defendant has violated numerous provisions of ERISA, including but not limited to §§ 403, 404 and 407, and has violated the provisions of ERISA by making material misrepresentations and failing to act in good faith. Defendant's Motion to Dismiss curiously does not address these alleged violations of ERISA fiduciary obligation.

ERISA § 403(c)(1) provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." Defendant has failed to adhere to §403(c)(1) in that Defendant has improperly altered the terms of the Plan to the detriment of the participant Plaintiffs and to Defendant's benefit in that Defendant did not have to reimburse Plaintiffs out of Defendant's corporate assets.

ERISA § 404(a)(1)(D) provides in relevant part that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and in accordance with the documents and instruments governing the plan. . . ." This provision reiterates that the ESOP is governed by any documents the parties intended to have bearing on the ESOP. See, e.g., Sprague v. Central States, Southeast & Southwest Areas Pension Fund, 269 F.3d 811 (7th Cir. 2001). Defendant has breached its fiduciary duties by ignoring § 404(a)(1)(D), which requires Defendant to discharge its duties in accordance with the governing documents.

The "exclusive purpose" rule of ERISA, § 404(a)(1)(A), requires a fiduciary to discharge its duties with respect to a plan solely in the interest of the plan participants and for the exclusive purpose of providing benefits to participants. Under this duty of loyalty, a trustee bears an

unwavering duty of complete loyalty to the beneficiary of the trust, to the exclusion of the interests of all other parties.  NLRB v. Amax Coal Co., 453 U.S. 322 (1981), citing Restatement (Second) of Trusts, § 170(1); Scott on Trusts, § 170.  This includes the trustee's own interests.  See, e.g., General American Life Ins. Co. v. Castonguay, 984 F.2d 1518 (9th Cir. 1993).  A fiduciary must not subordinate the interests of beneficiaries to unrelated objectives; thus, in deciding whether and to what extent to enter into a course of action with respect to a plan, a fiduciary must ordinarily consider only factors relating to the interests of the participants and beneficiaries.  He may not be influenced by factors unrelated to these interests.

     Defendant's actions in adding new participants is also a prohibited transaction under ERISA § 407, which prohibits transactions with a party in interest.  The effect of the addition of participants was the transfer of plan assets for the benefit of a Defendant -- a party in interest.  As both the employer and the fiduciary of the employees covered by the plan, Defendant is a "party in interest" within the meaning of § 407.  Other parties in interest and disqualified persons under IRS § 4975(c)(1) include highly compensated employees of the employers, and officers and directors.  Without further discovery, it cannot be determined who the participants added were, and whether they included highly compensated employees, officers, or directors.  The direct or indirect transfer to, or use by or for the benefit of, a party in interest of any plan assets is prohibited.  ERISA § 406(a)(1)(D).  A prohibited transaction occurs when a fiduciary has a subjective intent to benefit a party in interest.  A fiduciary does not necessarily need to have a culpable motive in order to have engaged in a prohibited transaction under ERISA § 406(a)(1)(D).  See, e.g., PBGC v. Fletcher, 750 F. Supp. 233 (W.D. Texas 1990).

     Defendant has also breached its fiduciary duty of good faith and fair dealing.  Section V.E.7. of the Affiliation Agreement states: "With respect to the operational problems previously

identified with respect to the Suburban ESOP and 401(k) Plan, the parties shall use their ***best efforts*** to proceed with the actions described in the written description and timetable that is appended hereto as Appendix V.E.9." (Emphasis added.) Defendant made no effort to repay Plaintiffs in accordance with the written Plan.

Finally, if Defendant's argument is taken as true, Defendant has misled Plaintiffs by the execution of a sham Affiliation Agreement which Defendant apparently never intended to fulfill. Communicating information about future plan benefits is a fiduciary obligation. See Varity Corp. v. Howe, 516 U.S. 489, 498-99, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996). **[**10]** Fiduciaries may be held liable for statements pertaining to future benefits if the fiduciary knows those statements are false or lack a reasonable basis in fact. See Ballone v. Eastman Kodak Co., 109 F.3d 117, 126 (2d Cir. 1997).

In sum, Defendant has violated numerous provisions of ERISA by failing to observe its fiduciary duties and in committing prohibited transactions. While this is not a Motion for Summary Judgment and Plaintiffs are not seeking to prove these points, it is clear that the case is not ripe for dismissal. The copious allegations at very least should be thoroughly investigated through the use of discovery. As such, Defendant's Motion to Dismiss must be denied.

### CONCLUSION

Defendant's Motion to Dismiss in reality is a premature motion for summary judgment filed as an obvious attempt to deny discovery to Plaintiffs. It seeks to add facts outside the pleadings, disputes the allegations in the Complaint, and ignores Defendant's numerous violations of ERISA. Furthermore, Defendant's construction of the Affiliation Agreement twisted and intended to deny Plaintiffs the clear benefits guaranteed them. Finally, discovery is

required to determine if the Affiliation Agreement is an unfunded excess benefit plan not subject to ERISA. Defendant's Motion to Dismiss must therefore be denied.

Respectfully submitted,

s/Susanne R. Wherley
Thomas R. Schoenfeld      (#0014791)
Susanne R. Wherley         (#0073963)
Trial Attorneys for Plaintiffs
Deters, Benzinger & LaVelle, P.S.C.
125 E. Court Street, Suite 950
Cincinnati, Ohio  45202
513/241-4110
513/241-4551 (fax)
tschoenfeld@dbllaw.com
swherley@dbllaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2003, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Patrick F. Fischer, Esq., Sue Erhart Haverkos, Esq., Keating Muething & Klekamp, 1400 Provident Tower, One East Fourth Street, Cincinnati, Ohio 45202.

s/Susanne R. Wherley
Susanne R. Wherley

13653.1