UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOSEPH F. HUTCHISON, et al., ) | Case No. 1:01-789 |
| Plaintiffs, ) | (Judge Beckwith) |
| -v- ) | **DEFENDANT'S REPLY IN SUPPORT** |
| FIFTH THIRD BANCORP, ) | **OF ITS MOTION TO** |
| ) | **DISMISS PLAINTIFFS' SECOND** |
| Defendant. ) | **AMENDED COMPLAINT** |

Defendant Fifth Third Bancorp ("Fifth Third") hereby files this reply in support if its previously filed motion to dismiss Plaintiffs' second amended complaint. In support of the motion to dismiss, Fifth Third states as follows:

**A.    The need for discovery is not a defense to a Rule 12 motion.**

In response to Fifth Third's motion to dismiss, Plaintiffs' main argument is that the Court cannot grant the motion because Plaintiffs have not had an opportunity to conduct discovery. Specifically, at page 2 of their response brief, Plaintiffs assert that they "are entitled to discovery in order to determine exactly what happened to the ESOP assets . . . ." And at page 4, Plaintiffs assert that the Court should be "suspicious of Defendant's motion in the instant motion which is clearly intended to deny Plaintiffs' right to discovery."

Such arguments, however, miss completely the nature of the motion before the Court. A Rule 12(b)(6) motion tests the allegations of the complaint; thus, Plaintiffs are entitled to no discovery if they fail to state a claim as a matter of law. Plaintiffs appear to argue that the Court should disregard their failure to state a claim upon which relief can be granted so that the Plaintiffs can conduct discovery to determine if they have a claim. Rule 12 does not permit such

relief. Rather, Rule 12 requires that the Court examine the allegations contained in Plaintiffs' second amended complaint and determine whether Plaintiffs have asserted a claim upon which relief can be granted. See Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988) ("A Rule 12(b)(6) motion tests whether a cognizable claim has been pleaded in the complaint.")

This case commenced on October 29, 2001, when Plaintiffs filed their original complaint in the Hamilton County Court of Common Pleas. Plaintiffs have yet to issue one discovery request and have in no way sought from Fifth Third information they now claim they need to determine whether they have a claim against Fifth Third. The complaint has now been amended twice, and Plaintiffs have had ample opportunity to state their claim. Defendant Fifth Third asks that the second amended complaint be evaluated under the standards of Rule 12 and respectfully maintains that the second amended complaint should be dismissed as a matter of law.

**B.     The Court may consider documents that are referenced in the complaint.**

Plaintiffs assert that the Court cannot consider the terms of the Suburban ESOP plan documents, arguing that the Court cannot consider documents outside the pleadings on a motion to dismiss. (Fifth Third attached a copy of the Suburban ESOP, including amendments thereto, to its motion to dismiss the second amended complaint.) Contrary to Plaintiffs' argument, courts have uniformly held that documents expressly referred to or relied on by the plaintiff in a complaint may be considered for purposes of a Rule 12 motion. See Van Buskirk v. CNN, Inc., 284 F.3d 977, 980 (9th Cir. 2002) (documents that were referenced extensively in complaint could be considered without conversion of motion into one for summary judgment); Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000) (documents attached to motion to dismiss may be considered by court if documents are referred to in plaintiff's

complaint and are central to plaintiff's claim); <u>Venture Asscoc. Corp v. Zenith Data Sys. Corp.</u>, 987 F.2d 429, 431 (7th Cir. 1993) (same).

There can be no real dispute that the Suburban ESOP plan documents are central to Plaintiffs' claims. Indeed, Plaintiffs in this action are individuals who were "participants in the Suburban Bancorporation, Inc. Employee Stock Ownership Plan (herein 'Suburban ESOP') as of June 30, 1997." (Second Amended Complaint, ¶ 1). The damages that Plaintiffs seek equals "[t]he value of the Excess ESOP Assets as of June 30, 1998, in proportion to the Class members ESOP account as of June 30, 1997." (Second Amended Complaint, ¶ 40). Moreover, Plaintiffs specifically alleged that the Suburban ESOP was amended to allow Fifth Third employees to participate in the plan. (Second Amended Complaint, ¶ 27). Given that the terms of the Suburban ESOP controls both the class of Plaintiffs and the amount of damages Plaintiffs' seek, the plan documents are integral to Plaintiffs' claim and may be considered by the Court in ruling on the motion to dismiss.

### C. The Affiliation Agreement does not create a "resulting plan."

Central to Plaintiffs' theory of recovery is the allegation that the Affiliation Agreement amended the Suburban ESOP to provide additional benefits for Plaintiffs and thus created a "resulting plan." As detailed in Fifth Third's opening brief, courts have uniformly rejected attempts by beneficiaries to modify the terms of an ERISA plan through some employer created document outside of the plan documents. <u>See</u> <u>Nester v. Allegiance Healthcare Corp.</u>, 162 F. Supp. 2d 901 (S.D. Ohio 2001) (<u>affirmed</u> 315 F.3d 610 (6th Cir. 2003)) (holding that employer's formal ERISA plan trumped any informal plan, even if that informal plan was in writing); <u>Helfrich v. Carle Clinic Assoc.</u>, 328 F.23d 915, 918 (7th Cir. 2003) ("No matter what label applies, documents prepared by an employer do not supersede those documents that establish the terms of a pension plan."); <u>Cinelli v. Security Pacific Corp.</u>, 61 F.3d 1437, 1443 (9th Cir. 1995)

("In this instance, the Board adopted a formal plan and the formal plan did not contain the vesting language of the [Board's] resolution. In light of the subsequent adoption by the Board of the formal plan, the letter and resolution did not create an informal, yet binding ERISA plan."); Miller v. Coastal Corp., 978 F.2d 622, 624 (10th Cir. 1992) ("An employee benefit plan cannot be modified, however, by informal communications, regardless of whether those communications are oral or written. . . . We hold that there is no liability under ERISA for purported informal written modifications to an employee benefit plan.").

Moreover, courts have held that in order for a written document to amount to an amendment of an ERISA plan, the document must contain "amendatory language" demonstrating that the document was intended to amend the plan. See Cinelli, 61 F.3d at 1442 ("[T]he distinction remains that the [board] resolution contained no amending language. The [board] resolution authorized the creation of the Supplemental Life Insurance Plan. It did not modify or terminate the current benefits under the Group Life Insurance Policy.") Here, the Affiliation Agreement contains no language suggesting that the Agreement itself is an amendment to the Suburban ESOP.[1] Indeed, the Affiliation Agreement expressly states that one of its purposes is to develop a time table to eventually amend the Suburban ESOP, further demonstrating that the Affiliation Agreement itself is not an amendment. The Agreement states, "Suburban Bancorp shall develop a written description and timetable which shall be provided to

---

[1] Plaintiffs assert, at page 7 of their response brief, that a later amendment to the Suburban ESOP shows that the parties intended to incorporate and adopt the Affiliation Agreement as part of the Suburban ESOP. The amendment on which Plaintiffs rely states as follows: "WHEREAS, pursuant to Section V.E.i of the affiliation agreement between the Company and Fifth Third Bancorp, the Company must amend the Plan to provide for its termination." Clearly, this provision in no way incorporates the Affiliation Agreement. In fact, this amendment makes clear that the Affiliation Agreement was not an amendment to the Suburban ESOP, but that the Affiliation Agreement contained a provision that required that the Affiliation Agreement be amended at some point in the future.

and approved by Fifth Third and its counsel, setting forth all actions necessary to: . . . (ii) amend the ESOP to authorize the sale of unallocated shares to repay the loan, to provide for the allocation of gain on the sale of unallocated shares in a manner than complies with the position of the IRS in Private Letter Rulings 9648054 and 9426048 and to make such other changes as may be necessary to implement the termination . . . ." (Affiliation Agreement at p. 23, Ex. B to Fifth Third's motion to dismiss).

To support their argument that the Affiliation Agreement is a "resulting plan," Plaintiffs cite to Wilson v. Moog Automotive, Inc., 193 F.3d 1004 (9th Cir. 1999). The Wilson case, however, contains far different facts than the dispute before the Court. In Wilson, several plan participants contended that a union-negotiated plant closing agreement was part of the employer's pension plan. The employer had amended its pension plan to expressly incorporate the plant closing agreement, but had used different language to determine the vesting of benefits. Wilson, 193 F.3d at 1006. In other words, the amendment to the plan had terms slightly different than the terms agreed to under the plant closing agreement. In a dispute over which document controlled, the court found that the employer – as a matter of fact – had intended to incorporate the plant closing agreement as written into the ERISA plan; the court stated, "The Sixteenth Amendment to the Pension Plan explicitly refers to, and attempts to incorporate, the Closing Agreement [and the] amendment is intended to reflect the provisions of the Closing Agreement. . . . ." Id. at 1008.

Wilson simply has no application to the case *sub judice*. Wilson merely stands for the proposition that terms of an ERISA plan can be contained in a separate written document when there is an express intent by the employer to incorporate the terms of the separate document contained in a formal amendment to the ERISA plan,. Here, even a cursory review of the

Affiliation Agreement reveals that it was not intended as an amendment to the Suburban ESOP and there exists no formal amendment to the Suburban ESOP that incorporates the Affiliation Agreement. Thus, Wilson simply has no application.

In no way did the Affiliation Agreement amend the Suburban ESOP. Nor has the Affiliation Agreement been expressly incorporated into the Suburban ESOP. The Affiliation Agreement has not created a resulting plan and does not contain terms that are now a part of the Suburban ESOP. Because Plaintiffs' claims are solely based on their claim to benefits under the terms of the Affiliation Agreement, their second amended complaint should be dismissed.

D. **The Affiliation Agreement is not a separate and distinct ERISA plan.**

In their response to the motion to dismiss, Plaintiffs argue – for the first time – that the Affiliation Agreement may be a separate "excess benefit plan" under §3(36) of ERISA. (Plaintiffs' response brief, at p. 8). Despite amending their complaint twice, Plaintiffs have never alleged that the Affiliation Agreement constitutes an "excess benefit plan" under § 3(36) of ERISA. On this basis alone, the Court should reject Plaintiffs' assertion. Plaintiffs simply have failed to allege this claim and cannot merely assert such a claim in response to the motion to dismiss. See Scheid, 859 F.2d at 437 ("But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.").

E. **Plaintiffs' own allegations demonstrate that they have failed to state a claim upon which relief can be granted.**

Last – and most significantly – even if the Affiliation Agreement were its own separate plan (which it is not) or if the Affiliation Agreement amended the Suburban ESOP (which it did not), Plaintiffs still would not be entitled to the benefits they seek. Under the plain language of the Affiliation Agreement and the allegations in the second amended complaint, Plaintiffs are not entitled to a distribution of benefits.

Plaintiffs rely on the following language of the Affiliation Agreement to trigger their claim for benefits:

> "If and only if the IRS approves such a Transaction, or Fifth Third otherwise proceeds with the Transaction without IRS approval, Fifth Third will thereafter pay (out of its corporate assets and not plan assets) an equivalent amount . . . reduced by expenses incurred, to individuals who were ESOP participants on the Effective Time . . . ."

(Affiliation Agreement, V.E(1), Ex. B to motion to dismiss).

Plaintiffs' position is that Fifth Third proceeded with a "Transaction" and thus must distribute benefits "to individuals who were ESOP participants on the Effective Time." Under the Affiliation Agreement, a "Transaction" is defined as a "transaction whereby the excess shares (or cash value thereof) (i.e., those shares remaining after fully utilizing the section 415 limits . . .) either revert[ed] to Fifth Third or [were] transferred to an employee benefit plan of Fifth Third." (Affiliation Agreement, V.E.(1)). In other words, the Affiliation Agreement refers to two possible events to trigger a distribution of benefits: either a reversion of plan assets to Fifth Third or a transfer of plan assets to another employee benefit plan of Fifth Third.

Plaintiffs do not even allege that a "reversion" took place. Plaintiffs do suggest, however, that there was a "transfer" of plan assets. At paragraph 27 of the second amended complaint, Plaintiffs allege:

> "As of June 30, 1998, and thereafter, Fifth Third had taken control of the Excess ESOP Assets. Upon information and belief, Plaintiffs submit that the Excess ESOP Assets there placed into a Fifth Third employee benefit plan. In particular, the existing Suburban ESOP benefit plan was amended so as to permit Fifth Third employees to participate in the plan thereby creating a Fifth Third employee benefit plan."

Plaintiffs specifically argue that this amendment of the plan means that the assets "were transferred to an employee benefit plan of Fifth Third." (Plaintiffs' response brief, p. 14). In making such an argument, however, Plaintiffs ignore the established meaning of "transfer" in the

-7-

context of employee benefit plans. Indeed, Plaintiffs cite no authority, case law, or regulation supporting their claim that an amendment of an ERISA plan to permit new participants is the same as a transfer of an ERISA plan's assets to a different plan because there is no such authority. A transfer of an ERISA plan's assets to a different plan is an act that is drastically different than an amendment of an ERISA plan to allow in new participants. With a transfer, there are <u>two</u> independent plans; one plan's assets are placed into another plan. In contrast, with an amendment, there is one – and only one – plan and that plan's terms are modified. In the case *sub judice*, there can be <u>no</u> transfer because there is only <u>one plan</u>.

The United States Supreme Court has made this distinction clear. In a case very similar to the case before the Court, the United States Supreme Court in <u>Hughes Aircraft Co. v. Jacobson</u>, 525 U.S. 432 (1999), stated unequivocally: "The act of amending a pre-existing plan cannot, as a matter of law, create two *de facto* plans . . . ." In <u>Hughes Aircraft</u>, as in this case, the plaintiffs sued for unallocated assets in a plan and argued that the defendant's actions in amending the plan to add additional participants was an illegal transfer of assets to a new plan. (There are strict regulations for the transfer of assets from one plan to another and the plaintiffs claims these regulations were violated). This is the same argument Plaintiffs are making in this case. Plaintiffs contend that Fifth Third's act in amending the Suburban ESOP "thereby creat[ed] a Fifth Third employee benefit plan" to which the Suburban ESOP's assets were transferred. (Plaintiff's response brief at p. 14).

The United States Supreme Court explained its holding that an amendment of an existing plan – as the Plaintiffs in this case readily admit and allege Fifth Third did – is not the same as a transfer to another employee benefit plan, as follows:

> "ERISA provides an employer with broad authority to amend a plan. . . and nowhere suggests that an amendment creating a new benefit structure also creates a second plan."

Because the Plaintiffs' entire case hinges on a theory that the United States Supreme Court has rejected (that a plan amendment is the same as a transfer to another plan), it appears beyond a doubt that the Plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. As a matter of law, there has been no "Transaction" under the Affiliation Agreement, and therefore Plaintiffs are not entitled to the distribution of benefits they seek. Thus, even if the Affiliation Agreement did create a "resulting plan," Plaintiffs still have failed to state a claim upon which relief can be granted.

## CONCLUSION

Despite two amendments to their complaint, Plaintiffs still have failed to state a claim upon which relief can be granted. Defendant Fifth Third respectfully requests that the Court grant its motion to dismiss the second amended complaint and enter judgment in Fifth Third's favor.

Respectfully submitted,

_/s/ Sue C. Erhart_
Patrick F. Fischer (0039671)
Sue A. Erhart (0066639)
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202
Tel: (513) 579-6459
Fax: (513) 579-6457
pfischer@kmklaw.com
serhart@kmklaw.com
Attorneys for Defendant,
Fifth Third Bancorp

OF COUNSEL:

KEATING, MUETHING & KLEKAMP, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202
(513) 579-6400

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of October, 2003, a copy of the foregoing DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*Sue A. Erhart*
Sue A. Erhart

1154878.1