IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Joseph F. Hutchison, et al.    )
                               )
        Plaintiffs,            ) Case No. 1:01-cv-789
                               )
    vs.                        )
                               )
Fifth Third Bancorp,           )
                               )
        Defendant.             )

O R D E R

This matter is before the Court on Defendant's motion to dismiss the Second Amended Complaint (Doc. 31). Plaintiffs filed an opposition (Doc. 37) to which Defendant replied (Doc. 40).

**Background**

This lawsuit arises out of a merger between Suburban Bancorporation, Inc. ("Suburban") and Fifth Third Bancorp ("Fifth Third"), and that merger's effect on a leveraged employee stock ownership plan[1] established by Suburban ("Suburban ESOP").

On October 29, 2001, Plaintiffs Joseph F. Hutchinson and

---

    1    A leveraged ESOP plan is a benefit plan in which the plan borrows funds to buy shares of company stock. The shares of stock are then placed in a suspense account. Contributions to the plan are used to repay the loan. As the loan is repaid, the company stock is released from the suspense account and allocated to the plan participants. *See, e.g., Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 422 n.4 (6th Cir. 2002).

John A. Buchheid, on behalf of themselves and a potential class of former Suburban ESOP participants, along with a number of other individual plaintiffs, filed suit against Fifth Third in the Hamilton County Court of Common Pleas.  (Doc. 1, Att. A) That original complaint asserted claims for breach of contract, conversion, breach of fiduciary duty under ERISA, intentional misrepresentation, negligent misrepresentation, unjust enrichment, and breach of the covenant of good faith and fair dealing.  Fifth Third removed the case to federal court because the complaint stated an ERISA claim. (Doc. 1).  Plaintiffs then filed a pleading purportedly dismissing their ERISA claim and a motion to remand the case back to state court.  (Docs. 5 and 6) This Court denied Plaintiffs' motion for remand, finding that Plaintiffs' state law claims were preempted by ERISA. (Doc. No. 9)

    Fifth Third then moved to dismiss the complaint based on ERISA preemption. (Doc. 11)  In response, Plaintiffs amended their complaint to add back their ERISA claim.  (Doc. 15)  Fifth Third moved to dismiss the ERISA claim because Plaintiffs had failed to exhaust their administrative remedies. (Doc. 19).  This Court granted dismissal of all Plaintiffs' claims except for the ERISA claim.  (Doc. 24)  Plaintiffs then successfully sought leave to file a Second Amended Complaint (Doc. 27), which is the subject of Fifth Third's pending motion to dismiss.

<u>The Second Amended Complaint</u>.

Plaintiffs' Second Amended Complaint alleges that in 1997, Suburban merged with Fifth Third. Prior to the merger, Suburban and Fifth Third entered into an Affiliation Agreement, which controlled the effect of the merger on the Suburban ESOP. (¶14) At the time of the merger, the parties were aware that Fifth Third had no plans to continue the Suburban ESOP after the merger. (¶15) Since some important factors concerning termination of the Suburban ESOP were unknown when the Affiliation Agreement was signed, the Agreement addressed the effect of the merger on the Suburban ESOP. (¶16) If all of the ESOP shares could be allocated within the Section 415 limits[2], the ESOP would be terminated on June 30, 1998 and all assets distributed to the ESOP members. (¶17)

The Affiliation Agreement also anticipated the possibility that the ESOP could not be terminated by the projected date, causing excess shares to remain in the Plan. (¶21) In that event, the Agreement stated that if Fifth Third either accepted the excess assets or transferred them to a Fifth Third plan, regardless of whether an IRS approval letter was issued, then Fifth Third would distribute the equivalent amount of the excess

---

2. "Section 415" refers to the Internal Revenue Code, 26 U.S.C. § 415. This section imposes maximum contribution and benefit limits which an individual may receive from plans maintained by an employer.

to the Plaintiffs. (¶25)

The Suburban ESOP was not terminated as of June 30, 1998. Plaintiffs allege that, rather than distributing the excess assets to them, Fifth Third amended the Suburban ESOP to permit Fifth Third employees to participate in the plan, contrary to the Affiliation Agreement. (¶27-28)  Plaintiffs allege that Fifth Third breached fiduciary duties owed to Plaintiffs by failing to pay them the benefits owed under the Agreement.  They seek damages measured by the value of the excess stock as of June 30, 1998, prejudgment interest, punitive damages and attorneys fees under 29 U.S.C. §1132(g)(1).

<u>Relevant Sections of the Affiliation Agreement</u>.

Section V.E(1) of the Affiliation Agreement requires Suburban to develop a timetable for (1) making ESOP contributions and/or selling unallocated Plan shares in order to fully repay the existing ESOP loan; (2) amending the ESOP to authorize the sale of those shares and to make other tax changes; (3) terminating the ESOP; and (4) obtaining IRS determination that the ESOP is tax qualified on termination.  With regard to that timetable, the Agreement states that "the parties agree they intend that, to the extent not prohibited by applicable law, the ESOP shall be maintained through the date of its final termination for the exclusive benefit of individuals who had become ESOP participants on or before the Effective Time."  The parties anticipated that the ESOP would terminate no later than

June 30, 1998.  The only exception would be if the termination and allocation of remaining shares would violate Section 415.

The Agreement then states:

> If, upon development of the written description and timetable referred to above, the parties agree in good faith that allocation of all or any shares of stock held in the ESOP's suspense account would violate [IRC section 415] . . ., Suburban Bancorp shall apply to the IRS for approval . . . of a transaction (the "Transaction") whereby the excess shares (or cash value thereof) (i.e., those shares remaining after fully utilizing the section 415 limits. . .) either revert to Fifth Third or are transferred to an employee benefit plan of Fifth Third. If and only if the IRS approves such a Transaction, or Fifth Third otherwise proceeds with the Transaction without IRS approval, Fifth Third will thereafter pay (out of its corporate assets and not plan assets) an equivalent amount (determined using the fair market value of the transferred plan assets at the time of the transfer), reduced by expenses incurred, to individuals who were ESOP participants on the Effective Time and who shall divide such payment pro rata based on their relative ESOP account balances on June 30, 1997.

Section XI of the Agreement states: "This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns but except as specifically set forth herein or as contemplated in Sections V.D., V.E.1, ... none of the provisions hereof shall be binding upon and inure to the benefit of any other person, firm or corporation whomsoever."

Plaintiffs allege (and Defendant does not dispute) that the "Description and Timetable" attached to the Second Amended Complaint as Exhibit B is the timetable described in Section V.E(1) of the Agreement.  The Timetable's Section 2.A states (in pertinent part):  "If the loan is fully discharged as of June 30,

1998, the ESOP shall terminate immediately; if the loan is not fully discharged, the ESOP shall be terminated thereafter as soon as is practicable, in accordance with Section V.E.1 of the affiliation agreement between the Company and Fifth Third."

Fifth Third's Motion.

Fifth Third seeks dismissal of the Second Amended Complaint, arguing (1) the Affiliation Agreement is not a "resulting plan" subject to ERISA and confers no benefits on Plaintiffs; and (2) even if the Agreement is a separate ERISA Plan, Plaintiffs are not entitled to any benefits under the Agreement because the conditional language concerning distribution of excess Suburban ESOP assets has never been triggered.

## Standard of Review

The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true. See Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993)(citing Nishiyama v. Dickson County, 814 F.2d 277, 279 (6th Cir. 1987)). To that end, for purposes of a motion to dismiss under the Rule, the complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true. See Scheuer v. Rhodes, 416 U.S. 232 (1974); Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995). To survive a motion to dismiss under Rule 12(b)(6), "a . . . complaint must contain either direct or inferential allegations respecting all the

material elements to sustain a recovery under some viable legal theory." <u>Scheid v. Fanny Farmer Candy Shops, Inc.</u>, 859 F.2d 434, 436 (6th Cir. 1988)(citations and internal quotation marks omitted).  The test for dismissal under Rule 12(b)(6), however, is a stringent one.  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Hartford Fire Insurance Co. v. California</u>, 509 U.S. 764, 811 (1993)(quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  See also <u>Monette v. Electronic Data Systems Corp.</u>, 90 F.3d 1173, 1189 (6th Cir. 1996).  Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless no law supports the claim made, the facts alleged are insufficient to state a claim, or an insurmountable bar appears on the face of the complaint.

### **Analysis**

Plaintiffs initially contend that Fifth Third's motion is in reality seeking summary judgment.  Plaintiffs object to Fifth Third's submission of an unverified copy of the Suburban ESOP in support of its motion.  While the Suburban ESOP obviously figures prominently in Plaintiffs' Second Amended Complaint, Plaintiffs do not expressly claim that Fifth Third violated the terms of the Suburban ESOP itself.  Rather, Plaintiffs contend that Fifth Third violated the Affiliation Agreement, which Plaintiffs allege is a separate plan subject to ERISA.

The Sixth Circuit has stated that documents attached to a

dismissal motion are considered part of the pleadings if they are referred to in the Complaint and are central to the claim. <u>Weiner v. Klais & Co., Inc.</u>, 108 F.3d 86, 88 (6th Cir. 1997). See also <u>Song v. Elyria</u>, 985 F.2d 840, 842 (6th Cir. 1993), holding that an attachment to a motion that does not "rebut, challenge, or contradict" the complaint does not convert a Rule 12(b)(6) motion to one under Rule 56. Since the Suburban ESOP is clearly central to Plaintiffs' claim, the Court need not deny the motion to dismiss, nor convert the motion to one under Rule 56. The Court will consider Fifth Third's attachments, if necessary, to the extent they do not rebut, challenge, or contradict the well-pleaded allegations of the Second Amended Complaint.

The Court agrees that Fifth Third makes arguments and factual assertions in its motion that cannot be tested under Rule 12(b)(6). For example, Fifth Third suggests (at p. 4) that it was Suburban Bancorp alone that incorrectly projected the ESOP shares could be allocated by June 30, 1998. This suggestion contradicts Plaintiffs' allegation (¶19 of the Second Amended Complaint) that counsel for Fifth Third and Suburban **jointly** prepared the timetable projections, and that Fifth Third raised no objection to them. Fifth Third also asserts - in a footnote - that because Suburban failed to accurately predict the Section 415 problem, the "conditional" language in the Agreement was not included in the timeline. Yet, as noted above, Section 2A of the Timetable appears to expressly contemplate what would happen if the ESOP loan was not fully discharged by June 30, 1998. The

Court will not consider Fifth Third's arguments to the extent they contradict Plaintiffs' allegations, nor to the extent they raise contested issues of fact.

Fifth Third's first argument in support of its motion to dismiss contends that no "resulting plan" can exist when an ERISA plan already exists, because employer representations or promises cannot contradict the plain terms of an ERISA plan. Fifth Third relies on Nester v. Allegiance Healthcare Corp., 162 F.Supp.2d 901 (S.D. Ohio 2001), affirmed 315 F.3d 610 (6th Cir. 2003). In Nester, the former employer promised certain transition benefits to employees if they agreed to go to work for a spin-off company, Allegiance. The employees did so, relying on the promise of those continued benefits. Allegiance then implemented a formal ERISA plan, which included the transition benefits but conditioned receipt of those benefits upon employment at the end of each Plan year. When Allegiance later sold the facility, the benefits ceased. The Court granted summary judgment to Allegiance, holding that even if the prior representations amounted to a separate ERISA plan, the plaintiffs had no competent evidence establishing that their former employer promised them the benefits for a specific period of time, or that the employer had "contracted away its right" to amend or terminate those benefits. Id. at p. 904. Here, however, Plaintiffs allege that the Affiliation Agreement is a separate plan, and/or that it did restrict Fifth Third's right to amend (or terminate) the pre-existing Suburban ESOP.

Moreover, contrary to Fifth Third's argument, an ERISA plan can be created by documents separate from an already existing ERISA plan. See, e.g., Elmore v. Cone Mills Corp., 23 F.3d 855, 861 (4th Cir. 1994), holding that an informal plan may exist independent of, and in addition to, a formal plan as long as the informal plan meets all of the necessary ERISA requirements. See also, Deboard v. Sunshine Mining Co., 208 F.3d 1228 (10th Cir. 2000), holding that letters from the employer to retired employees created an ERISA plan for those employees; and Williams v. Wright, 927 F.2d 1540 (11th Cir. 1991), finding that a letter to a single employee created both a pension benefit and employee welfare plan for that employee.

The Sixth Circuit has held that the test set forth in Donovan v. Dillingham, 688 F.2d 1367 (11th Cir. 1982) (en banc) should be applied to determine whether an ERISA plan exists. See Williams v. WCI Steel Co., 170 F.3d 598, 602-03 (6th Cir. 1999), and Thompson v. American Home Assurance Co., 95 F.3d 429, 435 (6th Cir. 1996). Under Dillingham, a plan exists if a reasonable person can ascertain (1) the intended benefits, (2) the class of beneficiaries, (3) the source of financing, and (4) the procedures for receiving benefits. Williams, 170 F.3d at 602-603. The plan need not be formally denominated as an "ERISA Plan," and the court must consider the "surrounding circumstances" to determine if the four Dillingham factors are satisfied.

Section V.E(1) of the Affiliation Agreement addresses all

four Dillingham factors, at least sufficiently to withstand dismissal under Rule 12(b)(6). The intended benefits are the excess ESOP shares (or the cash value of those shares) held in the suspense account that could not be allocated without violating Section 415. The class of beneficiaries are the Suburban ESOP participants on the "Effective Time" (defined in Section IX as the end of the day the merger formally closes). The source of financing for the benefits is Fifth Third's corporate assets. The procedure for payment is that the fair market value of the plan assets at the time of the reversion or transfer to Fifth Third, reduced by expenses incurred, shall be divided pro rata among the defined class of beneficiaries based on their ESOP account balances on June 30, 1997. The Affiliation Agreement thus differs from the agreement at issue in Williams, supra, which the Sixth Circuit held did not meet the Dillingham test. There, a Memorandum Agreement adequately defined the class of beneficiaries and the source of funding. But there was no procedure in the Agreement by which the actual distribution of benefits would be made, nor did the Agreement describe the extent or even the type of the benefits. The Court noted that if the ERISA claim were to proceed, ". . . the district court would have to fashion essentially all of the details of the purported plan and determine exactly what benefits would go to which employees or retirees, since no one can ascertain what WCI intended to provide for its workers." Id. at 603.

    Fifth Third also relies on Sprague v. Gen. Motors Corp., 133

F.3d 388 (6th Cir. 1998) (en banc), to argue that a binding bilateral contract creating a separate plan on top of an existing ERISA plan is not to be "lightly inferred." The principal is obviously sound, but it does not mean that such separate plans can never exist. Moreover, <u>Sprague</u> involves materially different facts. There, plaintiffs contended that General Motors could not amend its long-standing Plan and change retiree health benefits in a manner allegedly contrary to oral and written representations, because those health benefits had vested. The Court held that the employees had not met the difficult burden of showing that their health benefits had **vested** upon their retirement. It was clear that GM had expressly stated that the benefits could change, and that it had the right to amend the Plan. Here, the Affiliation Agreement describes the agreed-upon termination procedure for the Suburban ESOP. Section V.E(1) does not on its face disclose a reserved right to amend that procedure. And the Plaintiffs are identified as third-party beneficiaries of the Agreement. When considering an action brought under ERISA to enforce a plan, the court may interpret and apply agreements that restrict an employer's right to modify that plan. See, e.g., <u>Boyer v. Douglas Components Corp.</u>, 986 F.2d 999, 1005 (6th Cir. 1993),and <u>Nester v. Allegiance</u>, <u>supra</u>, 162 F.Supp.2d at 904.

    Whether the Affiliation Agreement is ultimately determined on the merits to be a "resulting plan," or a contract that limits Fifth Third's right to amend or terminate the Suburban ESOP, or a

document that forecloses Plaintiffs' claims, the Court finds that the Second Amended Complaint states a claim for relief based on the Affiliation Agreement.

Fifth Third's second argument in support of its motion to dismiss is that, even if the Affiliation Agreement is a "Plan" subject to ERISA, the Agreement confers no benefits on the Plaintiffs. Fifth Third argues that the language of Section V.E(1), concerning the excess share distribution to Plaintiffs, was conditional and was never triggered because Suburban's Timetable predicted that all the ESOP shares would be allocated by June 30, 1998, and because Suburban never sought the IRS approval described in Section V.E(1) of the Agreement. Fifth Third contends that because the language was never triggered, it had the right to amend the Suburban ESOP, a right specifically included in the ESOP. Contrary to Fifth Third's interpretation, Plaintiffs allege that the provisions of the Agreement were triggered, and that Fifth Third violated the terms of the Agreement.

This Court's March 11, 2003 Order (Doc. 24), denying Fifth Third's prior motion to dismiss, noted that Fifth Third's interpretation of the Affiliation Agreement obviously differs from that of Plaintiffs. However, when considering a motion to dismiss, a court must take all the facts and allegations in the complaint as true. See Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993)(citing Nishiyama v. Dickson County, 814 F.2d 277, 279 (6th Cir. 1987)). Therefore, the Court must accept Plaintiffs'

13

allegations about the Affiliation Agreement for the purposes of ruling on Fifth Third's motion to dismiss.

The proper interpretation of the Affiliation Agreement and the Timetable, their effects (if any) on the Suburban ESOP, and Fifth Third's right to amend the Suburban ESOP after June 30, 1998 in the manner that it did, are all subjects properly addressed in motions for summary judgment.  The Court cannot make these determinations at this stage of the proceedings.

## CONCLUSION

For all of the foregoing reasons, Fifth Third Bancorp's motion to dismiss Plaintiffs' Second Amended Complaint is denied.


DATED: November 2, 2004              s/ Sandra S. Beckwith
                                     Sandra S. Beckwith, Chief Judge
                                       United States District Court