UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH F. HUTCHISON, et al.** | : | **CASE NO.    C-1-01-789** |
| **Plaintiffs** | : | **(Judge Beckwith)** |
| v. | : | |
| **FIFTH THIRD BANCORP.** | : | |
| **Defendant** | : | |

## MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Come now the Plaintiffs, by counsel, and submit the within memorandum of facts and law in support of their motion for an Order certifying the within action as a class action under Fed.R.Civ.P. 23.

### I.    INTRODUCTION

Plaintiffs bring this action on behalf of themselves and all other similarly situated former Suburban Bancorporation, Inc. (hereinafter "Suburban") employees against Fifth Third Bancorp (hereinafter "Fifth Third"), for amounts due to them from Fifth Third under the specific terms of an Affiliation Agreement which governed Fifth Third's use of the Suburban Employee Stock Ownership Plan (hereinafter "Suburban ESOP"). Plaintiffs seek to represent the following class:

> All persons who were participants in the Suburban ESOP as of July 1, 1997, employees of Suburban Bank Corporation, Inc. as of July 25, 1997, and intended beneficiaries of the Affiliation Agreement dated March 13, 1997, between Fifth Third and Suburban.

Fifth Third's document production in this case has disclosed that there were 67 former Suburban employees who were participants in the Suburban ESOP as of the merger date with Fifth Third, namely July 25, 1997.

## II.  NATURE OF CLAIMS

In two previous Orders in this case, the Court has described the nature of Plaintiffs' claims herein. (Doc. Nos. 9 and 24)  The core complaint is that Fifth Third took assets belonging to former Suburban employees and distributed them to its own employees.

In brief, this case arises out of the merger of Suburban and Fifth Third and, in particular, the merging parties' Affiliation Agreement of March 13, 1997. Section V.E.(1) of the Affiliation Agreement addressed the transfer of the Suburban ESOP to Fifth Third as one element of the merger.  A copy of this provision is provided in Attachment A.

Section V.E.(1) of the agreement provided that Suburban would prepare a "written description and timetable" for Fifth Third's review and approval. Discovery in this case has confirmed that legal counsel for Fifth Third did in fact review and approve the contents of this document.  It addressed four items: 1)

Suburban's final contributions to the ESOP; 2) certain amendments to the ESOP made necessary by the merger; 3) termination of the ESOP; and 4) IRS approval of the termination. The intent of the parties in adopting Section V.E.(1) was stated as follows:

> In connection with the development of the written description and timetable referred to above <u>and resolution of the ESOP</u>, the parties agree they intend that, to the extent not prohibited by applicable law the ESOP shall be maintained through the date of its final termination for the exclusive benefit of individuals who had become ESOP participants on or before the Effective Time (emphasis added).

In context, the ESOP participants referred to in the quoted language were Suburban employees at the time of the merger. By the terms of the Affiliation Agreement, the putative class members' claims herein based on Section V.E.(1) are to be allocated as follows: "Individuals who were ESOP participants on the Effective Time . . . shall divide such payment pro rata based on their relative ESOP account balances on June 30, 1997."

The parties' intent to maintain the ESOP for the exclusive benefit of these former Suburban employees was effected by that language in Section V.E.(1) that allowed Fifth Third to assume dominion over the plan assets in exchange for paying an amount equal to the value of the plan assets to "individuals who were ESOP participants on the Effective Time." The specific language of Section V.E.(1) relating to Fifth Third's right to exercise dominion over the plan assets

was "either revert to Fifth Third or are transferred to an employee benefit plan of Fifth Third." Discovery in this case has disclosed that in May 1999 Fifth Third did in fact exercise dominion over the plan assets by transferring them to a Fifth Third employee benefit plan. Fifth Third accomplished this transfer in two stages:

(1) In May 1999, Fifth Third amended the Suburban ESOP definition of a plan participant to permit 1,633 Fifth Third employees to become participants in the Suburban ESOP; [1]

(2) The same amendment provided for the termination of the Suburban ESOP, whereby the 1,633 Fifth Third employees were permitted to transfer their allocated shares in the Suburban ESOP into a Fifth Third employee benefit plan. [2]

In its Order of March 11, 2003, the Court defined the issue in this case arising out of the foregoing facts as follows:

---

[1] By the addition of 1,633 Fifth Third employees to the 67 former Suburban employees, the effect of the May 1999 amendment was to increase the number of participants in the Suburban ESOP by a factor of 2,530%.

[2] Discovery in this case has also disclosed that Fifth Third allocated four shares of Fifth Third stock to each of its employees who became participants in the Suburban ESOP by virtue of the 1999 amendment. These shares had an aggregate value of approximately $588,000, including interest from 1999 to the present based on the average Constant Maturity Treasury Rate for the years in question (4 x 1,633 x $71.67 + $119,858).

> In this case, the benefits being sought are not related to the interpretation of the ERISA plan itself. Rather, they are dependent on the interpretation of the Affiliation Agreement between Fifth Third and Suburban Bancorporation and the propriety of Fifth Third's actions under the Affiliation Agreement. Thus, the decision to disburse the claimed benefits rests not on Fifth Third's interpretation of the plan but on its interpretation of its legal duties under the Affiliation Agreement.

*See* Doc. No. 24, p. 13.

Plaintiffs' claim based on Section V.E.(1), as described by the Court, is a contract claim for damages. Following the Court's interlocutory Order of March 11, 2003, such a claim was recognized by the Sixth Circuit to be a viable claim in Penny/Ohlman/Nieman, Inc. v. Miami Valley Pension Corp., 399 F.3d 692, 699 (6th Cir. 2005) ("The mere fact that an employee benefit plan is implicated in the dispute, however, is not dispositive of whether the breach-of-contract claims are preempted.") and Marks v. Newcourt Credit Group Inc., 342 F.3d 444 (6th Cir. 2003) ("Because this conduct may constitute a breach of Marks's employment contract irrespective of the plan, the breach of contract claim is not preempted.").

The recent Miami Valley opinion marks a deliberate turning point in Sixth Circuit ERISA preemption case law. Thus an even more recent district court opinion, citing Miami Valley, stated:

> The Sixth Circuit has recently noted the Supreme Court's narrowing of ERISA's preemptive scope, which the Supreme Court had previously described

> as "conspicuous for its breadth" and "deliberately expansive." Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp., 399 F.3d 692, 697 (6th Cir. 2005). As the Sixth Circuit has explained, the Supreme Court now instructs that the words "relate to" must not be taken to their "most logical extension," or else " 'pre-emption would never run its course,' "because, as Justice Scalia has noted, "'everything is related to everything else.' "

See Toledo Blade Newspaper Unions-Pension Plan v. Investment Performance Services, LLC, 2005 WL 1397888*6 (N.D. Ohio, June 15, 2005).

As the above case law makes clear, whether a claim sounds in contract law or is governed by ERISA depends to a large extent on whether the defendant's conduct at issue was performed in a fiduciary or a non-fiduciary role. Thus the Sixth Circuit recently held:

> Upon review, we conclude that PONI's state-law breach-of-contract claim against NCB, the trustee of the Savings Plan, is preempted under ERISA § 514(a), but its claim against MVP, a non-fiduciary service provider, is not.

Miami Valley, *supra*, 399 F.3d at 697. In that case, the Court also observed that an entity such as Fifth Third may serve in a dual capacity as both fiduciary and non-fiduciary:

> PONI correctly contends that an entity may serve both in a fiduciary and non-fiduciary capacity, because fiduciary status under ERISA turns on function rather than form. Pegram v. Herdrich, 530 U.S. 211, 225-26, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). Indeed, where the alleged conduct by the fiduciary is "entirely

- 6 -

>   unrelated to and outside the scope of [the fiduciary's] duties under the plan or in carrying out the terms of the plan," courts have found that ERISA's core objectives are not implicated and state-law claims may proceed.

Id. at 699.

In the case at hand, Fifth Third acted in a non-fiduciary role when it signed the Affiliation Agreement and consented to the terms of Section V.E.(1) dealing with the Suburban ESOP. However, when it amended the Suburban ESOP to include 1,633 of its own employees as participants in the plan, it was acting in a fiduciary capacity governed by ERISA standards of conduct. Therefore, just as the plaintiffs did in Toledo Blade, the claims herein are being asserted in the alternative:

>   Additionally, Plaintiffs indicate in their response that Count Two is plead in the alternative: Plaintiffs assert common-law negligence claims to the extent that Defendants are found not to be fiduciaries under ERISA.

Toledo Blade Newspaper Unions-Pension Plan v. Investment Performance Services, LLC, 2005 WL 1397888*6 (N.D. Ohio, June 15, 2005). Thus, in the case at hand, if the Court concludes that Fifth Third improperly used Suburban ESOP assets acting in a fiduciary role, the claim herein is governed by ERISA. If not, there is a viable claim for breach of the Affiliation Agreement. In either event, certification of the class action is the preferable manner of litigating this case.

**III.    THE PREREQUISITES TO CLASS CERTIFICATION ARE SATISFIED**

The requirements for class certification are set forth in Rule 23 of the Federal Rules of Civil Procedure.  That Rule sets out four prerequisites for any class action: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  *See* Fed.R.Civ.P. 23(a).  Assuming these threshold requirements are met, the action may be maintained as a class action if, under Fed.R.Civ.P. 23(b)(2), the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or if, under Fed.R.Civ.P. 23(b)(3), the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In the case at hand, as will be seen from the following case law discussion, the above requirements are easily met.  There are 67 former Suburban employees who were participants in the Suburban ESOP as of the merger closing date.  By the terms of Section V.E.(1), each of the 67 plan beneficiaries has a defined

interest in the damages sought herein ("pro rata based on their relative ESOP account balances on June 30, 1997"). The claim of each putative class member is based upon the same interpretation of Section V.E.(1). Fifth Third has denied the claim of each putative class member by asserting the same contrary interpretation of Section V.E.(1).[3] The named Plaintiffs have a large proportionate interest in the $588,000 due from Fifth Third under the terms of Section V.E.(1) of the Affiliation Agreement and therefore will adequately represent the interests of all putative class members.

### A.     NUMEROSITY

For a class action to be appropriate, the proposed class must be so numerous that joinder of members is impracticable. The plaintiffs need not demonstrate that it would be impossible to join all of the putative class members, but simply that joinder would be impracticable. <u>Putnam v. Davies</u>, 169 F.R.D. 89, 92 (S.D. Ohio 1996). There is no minimum number of class members required, but the court must examine the numerosity requirement on a case-by-case basis. <u>Id</u>. The United States Supreme Court has held that "class actions serve an

---

[3] Fifth Third will possibly contend that certain of the Plaintiffs, but not all putative class members, signed employment severance agreements in connection with the Suburban/Fifth Third merger and that the release language in the severance agreements acts to release their claims herein. The release language, however, is limited to severance benefits, not amounts due under Section V.E.(1) of the Affiliation Agreement.

important function in our system of civil justice…" Gulf Oil v. Bernard, 452 U.S. 89, 99 (1981); American Pipe and Construction Co. v. Utah, 414 U.S. 538, 550-51 (1974).

At the class certification stage, the court is required to assume that the substantive allegations of the complaint are true. Davis v. Avco Corp., 371 F.Supp. 782, 790 (N.D. Ohio 1974). [4] "In determining the propriety of a class action, the question is not whether the Plaintiff or Plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 178 (1974); Weathers v. Peters Realty Corp., 499 F.2d 1197, 1201 (6th Cir. 1974). Furthermore, in an uncertain case, "any error, if there is to be one, is to be committed in favor of allowing the class action." Davis, *supra*, 371 F.Supp. at 791; 7B Wright, Miller and Kane, Federal Practice and Procedure (1986), § 1785, p. 199. Plaintiffs' class allegations and detailed factual contention are sufficient, by themselves, to meet the requirements of Rule 23. "Satisfaction of a numerosity requirement does not require that joinder is impossible, but only that the Plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required." Boggs v. Divested

---

[4] *See also* In Re Catfish Anti-Trust Litig., 826 F.Supp. 1019 (N.D. Miss. 1993) ("the invitation to pre-try the case through a vehicle of this (class certification) motion must be respectfully declined… rather, a court's focus on a class certification motion is strictly on the requirements articulated in Rule 23").

Atomic Corp., 141 F.R.D. 58, 63 (S.D. Ohio 1991). The class proposed in this case of 67 persons meets the numerosity requirement. In Basile v. Merril Lynch, Pierce, Senner and Smith, Inc., 105 F.R.D. 506 (S.D. Ohio 1985), the trial court held that as few as 23 class members satisfied the requisite numerosity. Id. at 505. It is readily apparent that joining 67 or more individuals would be "impracticable" within the meaning of Rule 23.

### B.  COMMONALITY

The commonality requirement is satisfied when the members of a proposed class share at least one common factual or legal issue. S*ee* In re Fernald Litig., 1986 U.S. Dist. LEXIS 20723 (S.D. Ohio September 8, 1986); 1 Newburg & Conte, Newburg on Class Actions § 3.10, at 3-48-50 (3d. ed. 1992); 5 James W. Moore, Moore's Federal Practice § 23.23[2] (3d. ed. 1997).

Rule 23(b)(3) has two primary requirements: (1) common issues must predominate over individual issues, and (2) class treatment must be superior to the methods of adjudication. "In order to 'predominate', common issues must constitute a significant part of the individual cases." Jenkins v. Raymark Industries, 782 F.2d 468, 472 (5th Cir. 1986). It "requires a **predominance** of common questions, not a **unanimity** of them." Hanrahan v. Britt, 174 F.R.D. 356, 365 (E.D. Pa. 1997) (*emphasis added*) (*citing* Sharp v. Coopers & Lybrand, 70 F.R.D. 544, 547 (E.D. Pa. 1976), *aff'd*, 649 F.2d 175 (3rd Cir. 1981), *cert. denied*, 455

U.S. 938 (1982)).  The predominance requirement is satisfied when "the litigation will concern 'similar or standardized oral representations containing' significant legal and factual question which are common to the class."  Hanrahan, 174 F.R.D. at 365, *quoting*, Zacharjasz v. Lomas & Nettleton Co., 1988 U.S. Dist. LEXIS 4947, at *16 (E.D. Pa. May 23, 1988); s*ee also* In re School Asbestos Litig., 789 F.2d 996, 1010 (3rd Cir.), *cert. denied*, 479 U.S. 852 (1986) (even a few common issues may satisfy the predominance requirement if resolution of issues "will so advance the litigation that they may fairly be said to predominate").  The focus is whether the efficiency and economy of common adjudication outweigh the interests of individual autonomy.

In this case each putative class member has the same overriding legal issue: whether the Suburban employees as of July 25, 1997 are entitled to any proceeds under the terms of the Affiliation Agreement equivalent to the amount allocated to non-Suburban Fifth Third employees.  See In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 310 & n.47 (3d Cir. 1998); Duhaime, *supra*, 177 F.R.D. at 63; Seidman v. American Mobile Sys., Inc., 157 F.R.D. 354, 360 (E.D. Pa. 1994) (allegations of ongoing course of conduct satisfied the commonality requirement); Day v. NLO, Inc., 144 F.R.D. 330, 333 (S.D. Ohio 1992), *quoting*, Sweet v. General Tire & Rubber Co., 74 F.R.D. 333, 335 (N.D. Ohio 1976) (holding that commonality "is satisfied 'as long as the members of the class have allegedly

been affected by a *general* policy of the defendant and the general policy is the focus of the litigation.'"

    **C.    TYPICALITY**

Typicality is satisfied if the plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claim of other class members, and if his or her claims are based on the same legal theory." In re American Medical Sys., Inc., 75 F.3d 1069, 1082 (6th Cir. 1996), *citing* 1 Newberg & Conte, Newberg on Class Actions, § 3-13 at 3-76.  The Sixth Circuit has explained that a "necessary consequence of the typicality requirement is that the representative's interests be aligned with those of the represented group, and in pursuing his own claims, the named Plaintiff will also advance the interests of the class members." In re American Medical Sys., 75 F.3d at 1082.

> A Plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory…The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named Plaintiff and those of other class members.

De La Fuente v. Stokely-VanCamp, Inc., 713 F.2d 225 232, (7th Cir. 1983); *see also* Senter v. General Motors Corp., 532 F.2d 511, 525 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976).

In the case at hand, the conduct of Fifth Third in transferring assets in two stages from the Suburban ESOP to a Fifth Third benefits plan and its resulting obligation to pay the putative class members under the Affiliation Agreement will define their right to an amount of money equivalent to the value of the unallocated assets in the Suburban ESOP as of May 1999. Each putative class member's legal rights are identical under the Affiliation Agreement. *See* Prudential, *supra*, 148 F.3d at 311 (holding typicality requirement met in case involving churning, vanishing premium and investment plan claims because the alleged "overarching" fraudulent scheme perpetrated by Prudential was the "lynchpin" of the complaint); Duhaime, *supra*, 177 F.R.D. at 63 (holding the typicality requirement was met where named plaintiffs "were subjected to the same deceptive sales techniques"). The claims of the representative parties and of other class members need not be identical; rather, where, as here, they rest on the same broad factual and legal bases, the typicality requirement is satisfied. *See* Senter, 532 F.2d at 525. Determination of Fifth Third's liability to the named Plaintiffs will also be a determination of liability to the entire class. Furthermore, the named Plaintiffs have no interests adverse to the interests of other putative members of the class. The typicality requirement has been satisfied.

D.     **ADEQUACY OF REPRESENTATION.**

The adequacy of representation requirement of Rule 23, which "serves to uncover conflicts of interest between named parties and the class they seek to represent," Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625 (1997), is met when (i) the representatives have common interests with unnamed members of the class and (ii) it appears that the representatives will vigorously prosecute the interests of the class through qualified counsel. S*ee* Senter, *supra*, 532 F.2d at 525. The interests of the Plaintiffs are completely harmonious with the class members, in that the legal and remedial theories raised by the named Plaintiffs are shared with the other members of the Class.  See Prudential, *supra*, 148 F.3d at 31; Duhaime, *supra*, 177 F.R.D. at 63-64.

Moreover, the named Plaintiffs and their qualified counsel have vigorously represented the interests of the class.  Lead counsel in this case, Deters, Benzinger & LaVelle, P.S.C., have experience in the litigation of class actions, and are clearly qualified to represent the Plaintiffs and class members in this action.  Furthermore, Plaintiffs' counsel will assert and defend the interests of the Plaintiffs and class members with vigor and the requisite expertise at trial. Plaintiffs' counsel includes experienced attorneys who have a proven track record in the prosecution and litigation of significant class action cases.

Plaintiffs' counsel are qualified, experienced and able to conduct this class action litigation. Therefore, the adequacy requirement has been satisfied.

IV. **CONCLUSION**

Plaintiffs have demonstrated above that they meet each of the prerequisites set forth in Rule 23 and that certification is appropriate. Accordingly, Plaintiffs urge the Court to grant their motion to certify this action to proceed as a class action on behalf of all persons who were participants in the Suburban ESOP as of July 1, 1997, employees of Suburban Bancorporation, Inc., as of July 25, 1997, and intended beneficiaries of the Affiliation Agreement dated March 13, 1997, between Fifth Third and Suburban.

Plaintiffs further request the Court to direct notice to the class pursuant to Rule 23(c) at the earliest practicable time.

                      Respectfully submitted,

                      _____
                      Richard G. Meyer
                      William J. Moran, Jr.  #0059707
                      John R. Kirk
                      Deters, Benzinger & LaVelle, P.S.C.
                      441 Vine Street, Suite 3500
                      Cincinnati, Ohio 45202-3007
                      513-241-4110
                      513-241-4551 (Fax)
                      *Trial Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the foregoing memorandum in support of motion for class certification has been served via hand delivery on this 27th day of June, 2005, upon Patrick F. Fischer and Sue A. Erhart of Keating, Muething & Klekamp, P.L.L., 1 East Fourth Street, Suite 1400, Cincinnati, Ohio 45202.

                                                                     _____

                                                                     Richard G. Meyer