UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOSEPH F. HUTCHISON, et al. | : | CASE NO.  1:01cv00789 |
| Plaintiffs | : | (Judge Beckwith) |
| | : | |
| v. | : | |
| | : | |
| FIFTH THIRD BANCORP | : | |
| Defendant | : | |

## MOTION FOR RECONSIDERATION

Come now the Plaintiffs, by counsel, and move the Court for an Order reconsidering its interlocutory Order of March 11, 2003, dismissing Plaintiffs' breach of contract claim as preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. 1001 *et seq*., for the reason that the Sixth Circuit Court of Appeals has significantly narrowed the scope of ERISA preemption in a recent decision, as set forth in the following memorandum.

## SUPPORTING MEMORANDUM

I.   **INTRODUCTION**

In <u>Toledo Blade Newspaper Unions-Blade Pension Plan v. Investment Performance Services, LLC</u>, 2005 WL 1397888 (N.D. Ohio, June 15, 2005), the court described a recent significant change in the Sixth Circuit's approach to ERISA preemption:

> The Sixth Circuit has recently noted the Supreme Court's narrowing of ERISA's preemptive scope, which the Supreme Court had previously described as "conspicuous for its breadth" and "deliberately expansive." As the Sixth Circuit has explained, the Supreme Court now instructs that the words "relate to" must not be taken to their "most logical extension," or else "'pre-emption would never run its course,'" "because, as Justice Scalia has noted, "'everything is related to everything else.'"

Id. at *6, citing Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp., 399 F.3d 692 (6th Cir. 2005) (hereinafter "PONI"). Indeed, based on a noticeable shift in Supreme Court ERISA preemption case law, the Sixth Circuit in PONI adopted a more constricted approach to applying preemption principles:

> More recently, however, the Supreme Court has narrowed the preemptive scope of ERISA, moving away from the broadest meaning of the provision. The Court has stated that the phrase "insofar as they … relate" contains words of limitation that were purposefully written into the statute.
>
> Therefore, in interpreting ERISA's preemption clause, a court "must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."

Id. at 697-98. This tighter construction of ERISA preemption contrasts sharply with the Sixth Circuit's fairly recent observation concerning the broad scope of ERISA preemption:

> In keeping with the Supreme Court's recognition of the broad scope of ERISA preemption, the Sixth Circuit has repeatedly recognized that virtually all state law claims

>relating to an employee benefit plan are preempted by ERISA.

Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 452 (6th Cir. 2003) (case citation and interior quotation marks omitted).

In both PONI and Marks, although the earlier Marks opinion referenced a broader scope of preemption, the Sixth Circuit has clarified the proper interpretation of ERISA preemption in relation to state law breach of contract claims involving employee benefit plans.[1]  Thus in PONI the Court held:

>The mere fact that an employee benefit plan is implicated in the dispute, however, is not dispositive of whether the breach-of-contract claims are preempted.

Id. at 699.  In fact, one of the breach of contract claims in that case, involving the non-fiduciary defendant, was held to be exempt from ERISA preemption under the narrow construction adopted in that opinion.  Likewise, the contract at issue herein was also executed by an entity while acting in a non-fiduciary role and the obligation breached did not arise from an ERISA plan, but from a separate contract.  In PONI, the existence of a separate contract was dispositive in relation to the claim against the other defendant, which was acting in a fiduciary capacity:

>In this case, by contrast, all of NCB's obligations arise from the plan itself, and thus the breach-of-contract claim is

---

[1] The Marks opinion was issued on September 4, 2003, six months after this Court dismissed Plaintiffs' state law claims. (Doc. No. 24, p. 6)  The PONI opinion was issued on March 4, 2005.  Both addressed breach of contract claims.

>   necessarily a claim that a fiduciary breached the terms of the ERISA plan.

Id. at 699.  In the case at hand, the obligation underlying Plaintiffs' breach of contract claim also arises from an agreement which was distinct from the ERISA plan.  And, as stated, the breach was committed by Defendant in a non-fiduciary role.

Despite the broader preemption standard referenced in Marks, the Court arrived at a holding consistent with the PONI opinion:

>   Because this conduct may constitute a breach of Marks's employment contract irrespective of the plan, the breach of contract claim is not preempted.

Id. at 453.[2]  In the case at hand, just as in Marks, enforcement of the contract at issue will have no effect on the Employee Stock Option Plan involved herein.  Considered in combination, therefore, the Marks and PONI opinions provide sufficient grounds for the Court to reconsider its interlocutory Order dismissing Plaintiffs' breach of contract claim against Fifth Third.

---

[2] The Marks opinion held that every state law claim involving employee benefit plans is subject to the broad scope of ERISA preemption, with only certain narrowly defined exceptions.  Id. at 453.  In PONI, the Sixth Circuit adopted the opposite approach, whereby all "garden variety" state law claims are exempt from ERISA preemption unless they fall within the three categories described by the Supreme Court in N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co., 514 U.S. 645 (1995).  See PONI, 399 F.3d at 698, citing Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1468 (4th Cir. 1996).

II.   **GROUNDS FOR RECONSIDERATION**

Such a case law change of direction will justify a motion to reconsider as within the inherent powers of the court. Thus a motion to reconsider is not limited by the restrictions in Fed.R.Civ.P. 60 for altering a final judgment:

> Thus, the power of a court to modify an interlocutory judgment or order at any time prior to final judgment remains unchanged and is not limited by the provisions of Rule 60(b).

Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2852 (2d ed. 1995, vol. 11, p. 233). Although not favored, a motion to reconsider may definitely be granted when there is an intervening change in the controlling law:

> There are three basic situations in which a court will reconsider its order: 1) there has been an intervening change in the controlling law, 2) there is new evidence which has become available, and 3) there is a need to correct clear legal error or to prevent manifest injustice.

Gessler v. Ford Motor Company, 185 F.Supp.2d 724, 729 (W.D. Ky. 2001).

That the PONI opinion represents a very recent change in the law is acutely evident from the opinion in Ramsey v. Formica Corporation, 398 F.3d 421 (6th Cir. 2004), which referenced the "broad sweep of the Act's preemption provision in relation to state law claims" and cited Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272 (6th Cir. 1991) for the proposition that "virtually all state law claims relating to an employee benefit plan are preempted by ERISA." Id. at 424. Arising out of this Court, the Ramsey opinion affirmed the dismissal of state law negligent misrepresentation and

promissory estoppel claims because they stemmed "from the actions of Formica in the processing of their benefit payments" and "the amount that Formica would owe … is a function of how much the pension plan pays to each plaintiff." Id. at 424-25.

Although the same result in that particular case would have been reached under PONI, the result would not have been derived from "the broad sweep of the Act's preemption provision" nor supported by a citation to Cromwell's direction to preempt "virtually all state law claims." Instead, the claim in Ramsey would have been preempted under the first of the three Travelers Insurance preemption categories relating to "employee benefit structures or their administration," or the second category relating to "alternate enforcement mechanisms." Id. at 698. In the case at hand, neither of these Travelers Insurance categories is applicable. Thus there is no processing of plan payments issue in this case nor any other aspect of plan administration. Moreover, Plaintiffs' breach of contract damages are not determined from the Plan at issue, but rather from a separate contract. In sum, Plaintiffs claim is not subject to preemption under current Sixth Circuit case law:

> [W]here state law claims fall outside the three areas of concern identified in Travelers, arise from state laws of general application, do not depend upon ERISA, and do not affect the relationships between the principal ERISA participants; the state law claims are not preempted.

Toledo Blade Newspaper Unions-Blade Pension Plan v. Investment Performance Services, LLC, 2005 WL 1397888*10-11 (N.D. Ohio, June 15, 2005).

### III. PROCEDURAL HISTORY

In the Order of March 11, 2003, the Court traced the procedural history of this case. (Doc. No. 24) Briefly, Plaintiffs original complaint in state court asserted various state law claims, including breach of contract, and ERISA violations. (Doc. No. 1) After removal to this Court, Plaintiffs' motion to remand was denied on the basis that Plaintiffs' state law claims, including their breach of contract claim, were preempted by ERISA. (Doc. No. 9) Thereafter, Fifth Third filed a Rule 12(b)(6) motion to dismiss both state law and ERISA claims. The Court at that time dismissed the state claims as preempted, but allowed the ERISA claim to proceed. (Doc. No. 24) The Order dismissing Plaintiffs' state law claims was not denominated as final and appealable under Fed.R.Civ.P. 54(b). Plaintiffs are now requesting that the Court reconsider and vacate the interlocutory Order of March 11, 2003, dismissing the state law breach of contract claim.

### IV. NATURE OF CLAIM

Plaintiffs' core complaint is that Fifth Third took assets belonging to former employees of Suburban Bancorporation, Inc. (hereinafter "Suburban") and distributed them to its own employees, without compensating Plaintiffs in an equal amount from its own assets. In its Order of March 11, 2003, the Court noted that this core assertion is

not based on the terms of an ERISA plan, but rather is based on the merger agreement between Suburban and Fifth Third:

> In this case, the benefits being sought are not related to the interpretation of the ERISA plan itself. Rather, they are dependent on the interpretation of the Affiliation Agreement between Fifth Third and Suburban Bancorporation and the propriety of Fifth Third's actions under the Affiliation Agreement. Thus, the decision to disburse the claimed benefits rests not on Fifth Third's interpretation of the plan but on its interpretation of its legal duties under the Affiliation Agreement.

*See* Doc. No. 24, p. 13. In brief, therefore, this case arises out of the merger of Suburban and Fifth Third and, in particular, the merging parties' Affiliation Agreement of March 13, 1997. Section V.E.(1) of the Affiliation Agreement addressed Fifth Third's acquisition of the Suburban ESOP as one element of the merger. A copy of this provision is provided in Attachment A. In entering into this contractual commitment, Fifth Third was not acting in a fiduciary capacity in relation to the Suburban ESOP. Fifth Third did not undertake a fiduciary role with regard to the Suburban ESOP until after the merger was consummated on July 25, 1997, four months after it signed the contract which Plaintiffs allege herein that Fifth Third breached.

The intent of the parties in adopting Section V.E.(1) was stated as follows:

> … the parties agree they intend that, to the extent not prohibited by applicable law the ESOP shall be maintained **through the date of its final termination** for the exclusive benefit of individuals who had become ESOP participants on or before the Effective Time (emphasis added).

*See* Section V.E.(1) of the Affiliation Agreement in Attachment A.[3]

The parties' intent to maintain the ESOP for the exclusive benefit of these former Suburban employees, through the date of its final termination, was effected by that language in Section V.E.(1) which allowed Fifth Third to assume dominion over the plan assets in exchange for paying an amount equal to the value of the plan assets to "individuals who were ESOP participants" at the time of the merger. The specific language of Section V.E.(1) relating to Fifth Third's right to exercise dominion over the plan assets was "either revert to Fifth Third or are transferred to an employee benefit plan of Fifth Third." By Section V.E.(1), the parties agreed to give Fifth Third these options, to be exercised at Fifth Third's discretion, with or without IRS approval.

Discovery in this case has disclosed that by a plan amendment adopted in May 1999, Fifth Third did in fact exercise dominion over the plan assets by transferring them, in two stages, to its own Fifth Third employee benefit plan. The first stage permitted 1,633 Fifth Third employees to become participants in the Suburban ESOP, joining the 67 former Suburban employees/participants. Each of the new participants received four shares of Fifth Third stock from the previously unallocated Suburban ESOP assets. The

---

[3] The final allocation of plan assets occurred in May 1999. At that time, Fifth Third provided Plan participants with the notification of final benefits letter which commences the termination process under 29 U.S.C. § 1341(b). In March 2001, Fifth Third applied to the IRS for a determination letter requesting IRS approval of the termination. Benefit distributions were made in the interim between the benefit notification letter and the request for determination letter.

second stage of the transfer permitted the 1,633 Fifth Third employees to roll over each of their four shares of stock allocated from the Suburban ESOP into the Fifth Third Master Pension Plan. Fifth Third made this two-stage transfer of Suburban ESOP assets, valued at the time at approximately $468,000, without compensating Plaintiffs, despite its agreement in Section V.E.(1) of the Affiliation Agreement to pay an equivalent amount "out of its corporate assets and not plan assets." Plaintiffs in this action are therefore seeking breach of contract damages in this amount, plus prejudgment interest from May 1999 to the date of judgment.

## V.     A SEPARATE AGREEMENT

In the merger negotiations between Suburban and Fifth Third relating to the Suburban ESOP, Suburban was represented by its Chief Financial Officer, Chris Henn, and attorneys from a Washington, D.C. law firm, Housley Kantarian & Bronstein, P.C., including Dan Hogans. Fifth Third was represented by Paul Reynolds, in-house counsel for Fifth Third, and Steve Goodson of Keating, Muething & Klekamp, P.L.L.

In order to implement the provisions of Section V.E.(1) of the Affiliation Agreement, Hogans proposed an amendment to Section 17.1 of the Suburban ESOP addressing the termination issue. By that proposed amendment, Fifth Third would have been obligated by the terms of the Plan itself to pay to the Suburban participants "out of corporate assets and not out of Plan assets" an amount equal to unallocated

assets. On July 1, 1997, this section of the proposed amendment was removed by the attorney for Fifth Third. *See* a copy of Goodson's letter in Attachment B.

Based upon this sequence of events, it is clear that Fifth Third's obligation to make payment to Plaintiffs "out of its corporate assets and not plan assets" is an obligation that does not arise out of the Plan, but rather out of a separate contract which Fifth Third negotiated at arm's length and not in a fiduciary role. Therefore, under the constricted scope of ERISA preemption adopted by the Sixth Circuit in PONI, the breach of contract claim based on that separate contract of a non-fiduciary is not subject to preemption under 29 U.S.C § 1144(a).

## VI.  CONTRACTED SCOPE OF PREEMPTION

In Marks, *supra*, although the Sixth Circuit noted the broad scope of ERISA preemption, it also recognized certain limited exceptions, one of which is applicable to the case at hand. Thus in Marks the Court of Appeals reversed the dismissal of plaintiff's breach of contract claim (allegedly the employer reduced plaintiff's job responsibilities and annual bonus despite an agreement not to do so) on the basis that the only connection between this state law claim and the ERISA plan was plaintiff's allegation that his breach of contract damages equaled "the benefits he would have received under the plan." Id. at 453. Even though proof of the breach of contract would also have aided plaintiff's ERISA claim for severance plan benefits, the Court of

- 11 -

Appeals concluded that the connection between the plan and the breach of contract claim was too tenuous to justify preemption:

> Marks alleges that, without cause, Newcourt significantly altered his duties and reduced his compensation. Because this conduct may constitute a breach of Marks' employment contract irrespective of the plan, the breach of contract claim is not preempted.

Id. at 453. In the case at hand, Plaintiffs assert that under Section V.E.(1) of the Affiliation Agreement, Fifth Third owes the former Suburban employees and ESOP participants an amount equaling the value of plan assets as of the effective date in May 1999 of Fifth Third's transfer of Suburban ESOP assets to its own employee benefit plan. By the specific language of Section V.E.(1), Fifth Third was required to pay this amount "out of its own assets." When it transferred some 6,500 shares of stock in the Suburban ESOP to its own non-Suburban employees, Fifth Third breached the Affiliation Agreement by not paying the value of these shares to Plaintiffs out of its own assets. Although Plaintiffs' damages are calculated in reference to the Suburban ESOP, as in Marks, Fifth Third's conduct constitutes a breach of contract "irrespective of the plan" and is therefore not subject to ERISA preemption. Id. at 453.

The result is abundantly more clear from the PONI opinion:

> The mere fact that an employee benefit plan is implicated in the dispute, however, is not dispositive of whether the breach-of-contract claims are preempted.

PONI, 399 F.3d at 699. In that case, the employer/sponsor of three ERISA plans incurred approximately $177,000 in damages when the record-keeper (MVP) for two of the plans and the trustee (NCB) for the third plan caused the plans to be "top heavy" in violation of Internal Revenue Code provisions. Id. at 695-96. The district court held that plaintiff's breach of contract claims against MVP and NCB were subject to ERISA preemption. The Sixth Circuit affirmed as to NCB, but reversed as to MVP:

> Upon review, we conclude that PONI's state law breach-of-contract claim against NCB, the trustee of the Savings Plan, is preempted under ERISA Section 514(a), but its claim against MVP, a non-fiduciary service provider is not.

Id. at 697.

First noting that the Supreme Court has struggled with the broad language of the ERISA preemption text in 29 U.S.C. § 1144(a) (construing this language in 20 cases in 24 years), the Sixth Circuit concluded that the Supreme Court has more recently focused on the "words of limitation that were purposefully written into the statute." Id. at 697. Instead of looking at the "unhelpful text," courts should "look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." Id. at 698.

In that case, although MVP's record-keeping services did relate to the two ERISA plans, the objectives of the Act were not served by disallowing a breach of contract claim against a non-fiduciary record-keeper. On the other hand, NCB was a trustee of the plan without a separate contract for performing record-keeping services:

> … all of NCB's obligations arise from the plan itself, thus the breach-of-contract claim is necessarily a claim that a fiduciary breached the terms of the ERISA plan.

Id. at 699.[4]  In this regard, ERISA provides a "carefully crafted" scheme for enforcement of a fiduciary's performance under an ERISA plan.  A separate breach of contract action would conflict with that scheme:

> Indeed, where the alleged conduct by the fiduciary is entirely unrelated to and outside the scope of the fiduciary's duties under the plan or in carrying out the terms of the plan, courts have found that ERISA's core objectives are not implicated and state law claims may proceed.  In this case, however, because the contract at issue in the breach-of-contract claim is the ERISA plan itself, the claim is clearly preempted.

Id. at 699-70 (case citations and interior quotation marks omitted).[5]

---

[4] Although both defendants in PONI were allegedly liable on the basis of the very same record-keeping responsibilities, the claim against NCB was preempted because its record-keeping obligations derived from the plan itself, not a separate contract, and it performed its record-keeping duties in a fiduciary capacity.  Even though it breached this duty by failing to take steps to integrate plaintiff's three benefit plans to prevent top-heavy violations, state law claims based on this failure were preempted because ERISA provides its own enforcement scheme for such failures by a plan fiduciary.

[5] The Supreme Court has recently emphasized in a unanimous opinion that any "alternate enforcement" state law claim, no matter how it is labeled will be preempted in order to preserve the "integrated enforcement mechanism" Congress put in place in ERISA.  Aetna Health Inc v. Davila, 124 S.Ct. 2488, 2496 (2004).  Following PONI, *supra*, cases in the Sixth Circuit such as Ramsey, *supra*, would be decided under this rationale rather than the broad presumption in favor of preemption "in virtually all cases" under Cromwell, *supra*.

In the case at hand, Fifth Third's obligation to pay the former Suburban employees "out of its own assets," in the event that it transferred plan assets to its own non-Suburban employees, did not affect the operation of the plan itself. Nor was Fifth Third acting in a fiduciary capacity when it failed to honor the terms of the Affiliation Agreement requiring that an equal amount be paid to Plaintiffs. Unlike NCB, the trustee in PONI, Fifth Third did have a separate contract and its breach of Section V.E.(1) of that contract did not relate to its everyday administration of the Suburban ESOP. Therefore, it is a logical extension of the opinion in PONI to allow plaintiffs' breach of contract claim to proceed. Such an action does not run counter to any ERISA objectives or enforcement schemes.

### VII. SUBJECT MATTER JURISDICTION

In seeking a reconsideration of the Court's previous interpretation and application of the ERISA preemption doctrine, Plaintiffs are not asking this Court to reconsider its Order denying Plaintiffs' motion to remand this case to state court. (Doc. No. 9) To the contrary, Plaintiffs are acknowledging federal court jurisdiction over their state law claim under 28 U.S.C. § 1367(a) since their breach of fiduciary duty claim under ERISA arises out of the same factual scenario. However, Plaintiffs recognize that the ERISA claim may fail for the reason that Fifth Third was not acting as a fiduciary in

breaching the terms of the Affiliation Agreement.[6] Nevertheless, even if the ERISA claim fails, this Court may exercise supplemental jurisdiction to decide the breach of contract claim.

The Sixth Circuit recently addressed the issue of the district court's discretion to retain jurisdiction over stand-alone state law claims:

> It follows that no federal question remained in the case once Harper dismissed his Title VII claim. The remaining question is whether the district court properly retained supplemental, or "pendent," jurisdiction over Harper's remaining state law claims.

Harper v. Autoalliance International, Inc., 392 F.3d 195, 210 (6th Cir. 2004). The Court resolved this issue as follows:

> Accordingly, because the district court's jurisdiction originally was premised on a federal claim and that claim subsequently was dismissed, remand to the state court was a matter of discretion.
>
> "'A trial court must balance the interests ... when deciding whether to resolve a pendent state claim on the merits.'" Id. (*quoting* Aschinger v. Columbus Showcase Co., 934 F.2d 1402, 1412 (6th Cir. 1991)) (*quoting* Province v. Cleveland Press Publishing Co., 787 F.2d 1047, 1055 (6th Cir. 1986)). "A district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law

---

[6] Fifth Third may claim that it had the right under the terms of the ESOP to amend the Plan as it did in May 1999 and that Plaintiffs' claim therefore is an ERISA claim merely labeled as a breach of contract claim. Plaintiffs disagree, but until there is a decision on this issue, and other possible defenses raised by Fifth Third, Plaintiffs are retaining their alternate ERISA claim as asserted in the Second Amended Complaint. (Doc. No. 27)

> issues." Landefeld, 994 F.2d at 1182 (*quoting* Aschinger, 934 F.2d at 1412).

Id. at 211. Also, in holding "that the district court did not abuse its discretion in retaining supplemental jurisdiction over Harper's state law claims," the Harper opinion cited to practical considerations expressed in Taylor v. First of America Bank-Wayne, 973 F.2d 1284, 1288 (6th Cir. 1992):

> Here, the interests of judicial economy and fairness both favored the district court's retention of jurisdiction. First, this case had been on the district court's docket for almost two years. Second, the parties had completed discovery and compiled a voluminous record. Third, plaintiffs' federal claim was not abandoned until the filing of the amended complaint. Fourth, an extensively briefed summary judgment motion was ripe for a ruling by the district court.

Id. at 211. The same considerations apply to the case at hand and therefore weigh in favor of this Court retaining jurisdiction in the event that this Court should hold that the breach of contract claim is the only legally viable claim herein.

## VIII. CONCLUSION

Based upon the Sixth Circuit's recent decisions in Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp., 399 F.3d 692 (6th Cir. 2005) and Marks v. Newcourt Credit Group, Inc., 342 F.3d 444 (6th Cir. 2003), Plaintiffs request that the Court reconsider its Order of March 11, 2003, and reinstate Plaintiffs' state law breach of contract claim. Regardless of the outcome of Plaintiffs' alternative breach of fiduciary

duty claim under ERISA, Plaintiffs also request that the Court retain jurisdiction under 28 U.S.C. § 1367(a).

          Respectfully submitted,

          **s/ Richard G. Meyer**
          Richard G. Meyer
          William J. Moran, Jr.  #0059707
          John R. Kirk
          Trial Attorneys for Plaintiffs
          Deters, Benzinger & LaVelle, P.S.C.
          441 Vine Street, Suite 3500
          Cincinnati, Ohio 45202-3007
          Tel.: 513-241-4110  /  Fax: 513-241-4551
          E-mail: rmeyer@dbllaw.com

**CERTIFICATE OF SERVICE**

     I hereby certify that on June 29th, 2005, I electronically filed the foregoing memorandum in support of motion for reconsideration with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Patrick F. Fischer and Sue A. Erhart of Keating, Muething & Klekamp, P.L.L., and I hereby certify that this same memorandum was served via hand delivery on June 29th, 2005, to: Patrick F. Fischer and Sue A. Erhart 1 East Fourth Street, Suite 1400, Cincinnati, Ohio 45202.

          **s/ Richard G. Meyer**