

## DESCRIPTIVE TIMETABLE FOR TERMINATION OF SUBURBAN BANCORPORATION, INC. ESOP

1.  A.  Suburban Bancorporation, Inc. (the "Company") or Suburban Federal Savings Bank will contribute $42,000 to the ESOP for the plan year ended June 30, 1997, which amount (in addition to $133,635 accrued and contributed to the ESOP for the period July 1, 1996 to February 28, 1997) will be applied to the $200,451 principal and interest due under the ESOP loan, leaving $24,816 in accrued but unpaid interest.

    B.  The remaining $24,816 of accrued but unpaid interest under the ESOP loan will be repaid through the ESOP's surrender of 1,241 shares (at a value of $19.99 per share).

    C.  As a result of scheduled principal and interest payments, 12,167 shares will be released from collateral under the ESOP loan for allocation to participants' accounts as of June 30, 1997.

    D.  The ESOP loan will be discharged on June 30, 1997 to the extent possible under the Code Section 415 limits, resulting in 4,805 shares being transferred to the Company in its capacity as lender to the ESOP (or being sold on the open market and the proceeds used to repay the loan), and 9,605 shares being released from collateral thereby. The exact number of shares to be transferred (or sold) and to be released from collateral shall be determined only after the ESOP's recordkeeper determines that the allocations do not exceed the Code Section 415 limits (as interpreted pursuant to Private Letter Rulings 9648054 and 9426048).

    E.  Thus, as of June 30, 1997, the 85,104 shares remaining under collateral from the prior plan year end will be reduced by 6,046 shares applied to reduce the ESOP loan and 21,772 shares released from collateral for allocation to participants' accounts — for a going-forward balance of 57,286 shares.

2.  A.  Prior to July 25, 1997, the ESOP shall be amended to provide for the discharge of the ESOP loan, as of June 30, 1997 and June 30, 1998, up to the limits applicable under Code Section 415 (as interpreted pursuant to PLRs 9648054 and 9426048). If the loan is fully discharged as of June 30, 1998, the ESOP shall terminate immediately; if the loan is not fully discharged, the ESOP shall be terminated thereafter as soon as is practicable, in accordance with Section V.E.(1) of the affiliation agreement ("Affiliation Agreement") between the Company and Fifth Third.

    B.  Based on the $19.99 per share value of Company common stock determined as of June 30, 1997 and as converted to Fifth Third Bancorp shares pursuant to the conversion ratio applicable under the Affiliation Agreement, it is projected that annual additions resulting from the discharge of the ESOP loan on June 30, 1998 (estimated at $286,287) will be less than 25% of projected eligible payroll ($328,137) determined based on available data as of June 30, 1997.

Timetable
Page 2

C. After June 30, 1997 but prior to March 1, 1998, it is expected that a request for a determination that the ESOP is tax-qualified upon its termination will be prepared by Housley Kantarian & Bronstein, P.C. and filed with the Internal Revenue Service, but only if it is reasonably projected (as agreed by Fifth Third) that the ESOP can be terminated on June 30, 1998 without violation of the Code Section 415 limits and without any unallocated shares or amounts remaining in the ESOP's suspense account. <u>Notwithstanding the foregoing, the ESOP loan will be discharged on June 30, 1998 to the extent permissible under the Code Section 415 limits, however</u> in no event shall the ESOP terminate on June 30, 1998 if the unallocated assets may not be fully allocated as of June 30, 1998 without violating the Code Section 415 limits (as interpreted pursuant to Private Letter Rulings 9648054 and 9426048).

D. Following receipt of a favorable determination letter from the IRS, the accounts of ESOP participants shall be distributed as soon thereafter as is practicable.