## SEVERANCE AGREEMENT

THIS AGREEMENT entered into this 30th day of September, 1993 ("Effective Date"), by and between Suburban Federal Savings Bank (the "Bank"), Suburban Bancorporation, Inc. (the "Corporation"), and Christopher L. Henn (the "Employee").

WHEREAS, the Employee has heretofore been employed by the Bank as Vice President; and

WHEREAS, the Corporation and the Bank deem it to be in their best interest to enter into this Agreement as additional incentive to the Employee to continue as an executive employee of the Bank; and

WHEREAS, the parties desire by this writing to set forth their understanding as to their respective rights and obligations in the event of termination of Employee's employment under the circumstances set forth in this Agreement.

NOW, THEREFORE, it is AGREED as follows:

1.   **Payment in the Event of Change in Control.**

(a)  If the Employee's employment under this Agreement is terminated by the Corporation or the Bank, without the Employee's prior written consent and for a reason other than Just Cause, in connection with or within twelve (12) months after any change in control of the Bank or the Corporation, the Employee shall be paid an amount equal to the difference between (i) the product of 2.99 times his "base amount" as defined in Section 280G(b)(3) of the Internal Revenue Code of 1986, as amended (the "Code") and regulations promulgated thereunder, and (ii) the sum of any other parachute payments (as defined under Section 280G(b)(2) of the Code) that the Employee receives on account of the change in control.  Said sum shall be paid in one lump sum within ten (10) days after such termination.  The term "change in control" shall mean (1) the ownership, holding or power to vote more than 25% of the Bank's or Corporation's voting stock, (2) the control of the election of a majority of the Bank's or Corporation's directors, (3) the exercise of a controlling influence over the management or policies of the Bank or Corporation by any person or by persons acting as a group within the meaning of Section 13(d) of the Securities Exchange Act of 1934, or (4) during any period of two consecutive years, individuals who at the beginning of such period constitute the Board of Directors of the Corporation or the Bank (the "Company Board") (the "Continuing Directors") cease for any reason to constitute at least two-thirds thereof, provided that any individual whose election or nomination for election as a member of the Company Board was approved by a vote of at least two-thirds of the Continuing Directors then in office shall be considered a Continuing Director.  The term "person" means an individual other

than the Employee, or a corporation, partnership, trust, association, joint venture, pool, syndicate, sole proprietorship, unincorporated organization or any other form of entity not specifically listed herein.

(b) The Employee may voluntarily terminate his employment under this Agreement within twelve (12) months following a change in control of the Bank or the Corporation, and the Employee shall thereupon be entitled to receive the payment described in Section 1(a) of this Agreement, upon the occurrence of any of the following events, or within ninety (90) days thereafter, which have not been consented to in advance by the Employee in writing: (i) the requirement that the Employee perform his principal executive functions, more than thirty-five (35) miles from his primary office as of the Effective Date of this Agreement; (ii) a reduction in the Employee's base compensation as in effect on the Effective Date of this Agreement or as the same may have been increased from time to time; (iii) the failure by the Bank or the Corporation to continue to provide the Employee with compensation and benefits substantially similar to those provided to him under any of the employee benefit plans in which the Employee becomes a participant, or the taking of any action by the Corporation or the Bank which would directly or indirectly reduce any of such benefits or deprive the Employee of any material fringe benefit enjoyed by him at the time of the change in control; (iv) the assignment to the Employee of material duties and responsibilities other than those normally associated with his position as referenced in the recitals above; or (v) a material diminution or reduction in the Employee's responsibilities or authority (including reporting responsibilities) in connection with his employment with the Bank or the Corporation.

(c) The Employee shall not be required to mitigate the amount of any payment provided for in this Agreement by seeking other employment or otherwise and no such payment shall be offset or reduced by the amount of any compensation or benefits provided to the Employee in any subsequent employment.

2. Term. This Agreement shall remain in effect for the period commencing on the Effective Date and ending on the earlier of (i) the date thirty-six months after the Effective Date, and (ii) the date on which the Employee terminates employment with the Corporation and the Bank; provided that the Employee's rights hereunder shall continue following the termination of his employment with the Bank under any of the circumstances described in Paragraphs 1(a) or (b) hereof. Additionally, prior to each annual anniversary date from the Effective Date, the term of this Agreement shall be extended for a one-year period beyond the then effective expiration date, provided the Board of Directors of the Bank or the Corporation determines in its discretion in a duly adopted resolution that the performance of the Employee has met such reasonable standards as the Board of Directors of the Bank

and/or the Corporation may establish from time to time ("Performance Standards"), and that this Agreement shall be extended.

3. <u>Termination or Suspension Under Federal Law</u>.

(a) Termination for "Just Cause" shall mean termination because of, in the good faith determination of the Corporation's or the Bank's Board of Directors, the Employee's personal dishonesty, incompetence, willful misconduct, breach of fiduciary duty involving personal profit, intentional failure to perform stated duties, consistent failure to meet Performance Standards (after notice to the Employee), willful violation of any law, rule or regulation (other than traffic violations or similar offenses) or final cease-and-desist order, or material breach of any provision of this Agreement. The Employee shall have no right to receive compensation or other benefits for any period after termination for Just Cause.

(b) If the Employee is removed and/or permanently prohibited from participating in the conduct of the Bank's affairs by an order issued under Sections 8(e)(4) or 8(g)(1) of the Federal Deposit Insurance Act ("FDIA") (12 U.S.C. 1818(e)(4) and (g)(1)), all obligations of the Bank under this Agreement shall terminate, as of the effective date of the order, but the vested rights of the parties shall not be affected.

(c) If the Bank is in default (as defined in Section 3(x)(1) of FDIA), all obligations of the parties under this Agreement shall terminate as of the date of default, but this Section 3(c) shall not affect any vested rights of the parties.

(d) All obligations under this Agreement shall terminate, except to the extent that continuation of this Agreement is necessary for the continued operation of the Bank: (i) by action of the Director of the Office of Thrift Supervision ("Director of OTS"), or his or her designee, at the time that the Federal Deposit Insurance Corporation ("FDIC") or the Resolution Trust Corporation enters into an agreement to provide assistance to or on behalf of the Bank under the authority contained in Section 13(c) of FDIA; or (ii) by action of the Director of the OTS, or his or her designee, at the time that the Director of the OTS, or his or her designee approves a supervisory merger to resolve problems related to operation of the Bank or when the Bank is determined by the Director of the OTS to be in an unsafe or unsound condition. Such action shall not affect any vested rights of the parties.

(e) If a notice served under Section 8(e)(3) or (g)(1) of the FDIA (12 U.S.C. 1818(e)(3) and (g)(1)) suspends and/or temporarily prohibits the Employee from participating in the conduct of the Bank's affairs, the Bank's and the Corporation's obligations under this Agreement may be suspended as of the date of

such service, unless stayed by appropriate proceedings. If the charges in the notice are dismissed, the Bank shall (i) pay the Employee all or part of the compensation withheld while its contract obligations were suspended, and (ii) reinstate (in whole or in part) any of its obligations which were suspended.

4. <u>Expense Reimbursement</u>.

In the event that any dispute arises between the Employee and the Bank or the Corporation as to the terms or interpretation of this Agreement, whether instituted by formal legal proceedings or otherwise, including any action that the Employee takes to enforce the terms of this Agreement or to defend against any action taken by the Bank or the Corporation, the Employee shall be reimbursed for all costs and expenses, including reasonable attorneys' fees, arising from such dispute, proceedings or actions, provided that the Employee shall obtain a final non-appealable judgment by a court of competent jurisdiction in favor of the Employee. Such reimbursement shall be paid within ten (10) days after the Employee furnishes to the Bank and the Corporation written evidence, which may be in the form, among other things, of a cancelled check or receipt, of any costs or expenses incurred by the Employee. At the option of any party hereto any such dispute shall be submitted to arbitration in Cincinnati, Ohio, under the commercial arbitration rules of the American Arbitration Association then in effect. Notwithstanding anything herein to the contrary, in no event shall the Bank's or Corporation's liability under this Section 4 exceed $75,000.

5. <u>Successors and Assigns</u>.

(a) This Agreement shall inure to the benefit of and be binding upon any corporate or other successor of the Bank or Corporation which shall acquire, directly or indirectly, by merger, consolidation, purchase or otherwise, all or substantially all of the assets or stock of the Bank or Corporation.

(b) Since the Bank and the Corporation are contracting for the unique and personal skills of the Employee, the Employee shall be precluded from assigning or delegating his rights or duties hereunder without first obtaining the written consent of the Bank and the Corporation, such consent to be within the sole discretion of the Bank and the Corporation.

6. <u>Joint and Several Liability</u>. The Corporation and the Bank shall be jointly and severally liable for the payment of all amounts due, and shall be jointly and severally entitled to their benefits and remedies, of this Agreement.

7. <u>Amendments</u>. No amendments or additions to this Agreement shall be binding unless made in writing and signed by all of the parties, except as herein otherwise specifically provided.

8. <u>Applicable Law</u>. Except to the extent preempted by Federal law, the laws of the State of Ohio shall govern this Agreement in all respects, whether as to its validity, construction, capacity, performance or otherwise.

9. <u>Severability</u>. The provisions of this Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof.

10. <u>Entire Agreement</u>. This Agreement, together with any understanding or modifications hereof as agreed to in writing by the parties, shall constitute the entire agreement between the parties hereto.

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first hereinabove written.

ATTEST:                                    SUBURBAN FEDERAL SAVINGS BANK

_____                  By: _____
Secretary                                  Its: Chairman/Board

ATTEST:                                    SUBURBAN BANCORPORATION, INC.

_____                  By: _____
Secretary                                  Its: Chairman/Board

WITNESS:

_____                  _____
                                           CHRISTOPHER L. HENN

-5-

Exhibit One

# VICE PRESIDENT/
# CHIEF FINANCIAL OFFICER

Reports to President.

## General Summary

Responsible for ensuring the accuracy and quality of financial information provided to the Board of Directors, Regulatory Agencies, and Stockholders. Oversees the development and implementation of corporate financial planning. Responsible for implementation of asset/liability management and investment strategies. Actively participates in overall management of the company.

## Principal Responsibilities and Duties

A.  Serves as a member of senior management for the Bank and Holding Company in developing and implementing policies, programs, and objectives.

B.  Serves on the following operating committees:
    1)  Loan Committee
    2)  Asset/Liability Committee
    3)  Classified Asset Committee
    4)  Budget Committee
    5)  Investment Committee

C.  Directs the preparation and filing of periodic financial reports to the Securities and Exchange Commission, Office of Thrift Supervision, and NASDAQ.

D.  Reviews all internal financial reports for accuracy and quality.

E.  Prepares press releases for publication on financial information networks.

F.  Directs the development of budgets, business plans, and strategic plans for the Bank and Company.

G.  Assists the President in evaluating and implementing investment strategies.

H.  Directs the acquisition of wholesale funding for the Bank.

I.  Directs the analysis of merger and acquisition opportunities for the Company.

J.  Evaluates performance of accounting department personnel.

K.  Performs other duties as required.

Skills and Abilities

A. Requires good to above average knowledge and experience in the following areas:

   1. Oral and written communication skills.
   2. Application of generally accepted accounting principles.
   3. Asset/liability management techniques and reporting.
   4. SEC and OTS reporting regulations.
   5. Financial markets.
   6. Analytical techniques and skills.

Working Conditions

A. Requires the ability to perform under the time pressure of deadlines.

B. Must be able to adjust work schedule to accommodate changes in priorities and the market environment.

C. Must be capable of exercising sound judgement and initiative as circumstances warrant.

FIRST AMENDMENT TO SEVERANCE AGREEMENT

THIS AMENDMENT, entered into this 30th day of September, 1994 by and between Suburban Federal Savings Bank (the "Bank"), Suburban Bancorporation, Inc. (the "Corporation"), and Christopher L. Henn (the "Employee").

WHEREAS, the Bank, the Corporation and the Employee have previously entered into a Severance Agreement dated September 30, 1993 (the "Agreement"); and

WHEREAS, pursuant to the provisions of Section 2 of the Agreement, the Boards of Directors of the Bank and the Corporation have resolved to extend the term of the Agreement for an additional one year period beyond September 30, 1996 and the Employee has consented to such extension; and

WHEREAS, the Board of Directors of the Bank and Corporation have resolved to include in the Agreement as Exhibit One, a job description of the employee.

NOW, THEREFORE, it is AGREED as follows:

The first sentence of Section 2 of the Agreement be and is hereby amended to read as follows:

"This Agreement shall remain in effect for the period commencing on the Effective Date and ending on the earlier of (i) September 30, 1997, and (ii) the date on which the Employee terminates employment with the Corporation and the Bank; provided that the Employee's rights hereunder shall continue following the termination of his employment with the Bank under any of the circumstances described in Paragraphs 1(a) or (b) hereof."

The first "WHEREAS" of the Severance Agreement be and is hereby amended to read as follows:

"WHEREAS, the Employee has heretofore been employed by the Bank as Vice President and whose duties and responsibilities are outlined as Exhibit One."

The last line of Section 1 (b) V is hereby amended to read as follows:

"with his employment with the Corporation or the Bank as outlined in Exhibit One."

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first hereinabove written.

ATTEST:                                    SUBURBAN FEDERAL SAVINGS BANK

_____              By: _____
                                               Its: _____


ATTEST:                                    SUBURBAN BANCORPORATION, INC.

_____              By: _____
                                               Its: _____


WITNESS:

_____              _____

SECOND AMENDMENT TO SEVERANCE AGREEMENT

THIS AMENDMENT, entered into this 30th day of September, 1995 by and between Suburban Federal Savings Bank (the "Bank"), Suburban Bancorporation, Inc. (the "Corporation"), and Christopher L. Henn (the "Employee").

WHEREAS, the Bank, the Corporation and the Employee have previously entered into a Severance Agreement dated September 30, 1993 (the "Agreement"); and

WHEREAS, pursuant to the provisions of Section 2 of the Agreement, the Boards of Directors of the Bank and the Corporation have resolved to extend the term of the Agreement for an additional one year period beyond September 30, 1997 and the Employee has consented to such extension; and

NOW, THEREFORE, it is AGREED as follows:

The first sentence of Section 2 of the Agreement be and is hereby amended to read as follows:

"This Agreement shall remain in effect for the period commencing on the Effective Date and ending on the earlier of (i) September 30, 1998, and (ii) the date on which the Employee terminates employment with the Corporation and the Bank; provided that the Employee's rights hereunder shall continue following the termination of his employment with the Bank under any of the circumstances described in Paragraphs 1(a) or (b) hereof."

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first hereinabove written.

ATTEST:                                    SUBURBAN FEDERAL SAVINGS BANK

_Cynthia R. Wells_                         By: _[signature]_
                                           Its: _President_

ATTEST:                                    SUBURBAN BANCORPORATION, INC.

_Cynthia R. Wells_                         By: _[signature]_
                                           Its: _President_

WITNESS:

_Cynthia R. Wells_                         _Christopher L. Henn_

THIRD AMENDMENT TO EMPLOYMENT AGREEMENT

THIS AMENDMENT, entered into this 30th day of September, 1996 by and between Suburban Federal Savings Bank (the "Bank"), Suburban Bancorporation, Inc. (the "Corporation"), and Christopher L. Henn (the "Employee").

WHEREAS, the Bank, the Corporation and the Employee have previously entered into a Severance Agreement dated September 30, 1993 (the "Agreement"); and

WHEREAS, pursuant to the provisions of Section 2 of the Agreement, the Boards of Directors of the Bank and the Corporation have resolved to extend the term of the Agreement for an additional one year period beyond September 30, 1998 and the Employee has consented to such extension; and

NOW, THEREFORE, it is AGREED as follows:

The first sentence of Section 2 of the Agreement be and is hereby amended to read as follows:

"This Agreement shall remain in effect for the period commencing on the Effective Date and ending on the earlier of (i) September 30, 1999, and (ii) the date on which the Employee terminates employment with the Corporation and the Bank; provided that the Employee's rights hereunder shall continue following the termination of his employment with the Bank under any of the circumstances described in Paragraphs 1(a) or (b) hereof."

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first hereinabove written.

ATTEST: _____

SUBURBAN FEDERAL SAVINGS BANK

By: _____
Its: Chairman

ATTEST: _____

SUBURBAN BANCORPORATION, INC.

By: _____
Its: Chairman

WITNESS: _____

_____
Christopher L. Henn