UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH F. HUTCHISON, et al.** | : | CASE NO. 1:01cv00789 |
| **Plaintiffs** | : | (Judge Beckwith) |
| v. | : | |
| | : | |
| **FIFTH THIRD BANCORP** | : | |
| **Defendant** | : | |

## RESPONSE TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Come now the Plaintiffs, by counsel, and submit the within memorandum in response to the summary judgment memorandum of the Defendant, Fifth Third Bancorp.

### I.   WHEN THE FOG IS LIFTED, WHAT APPEARS IS A TRANSFER OF $460,000 IN ASSETS FROM THE SUBURBAN ESOP AS PART OF DEFENDANT'S EMPLOYEE RETENTION PLAN.

Using the identical arguments from its failed motion to dismiss, Fifth Third Bancorp (herein "Fifth Third") continues in its summary judgment memorandum to distort Plaintiffs' proposed construction of Section V.E(1) of the Affiliation Agreement. Thus Fifth Third argues:

> Plaintiffs' claim for breach of fiduciary duty is based on one sentence of the detailed Affiliation Agreement wherein Fifth Third agreed not to transfer the assets of the Suburban ESOP to another plan and not to cause the assets of the plan to revert to Fifth Third itself.

See Fifth Third's summary judgment memorandum, p. 2. First, in response, Plaintiffs' claim is not based on one sentence, but two. The first of these two sentences memorializes the parties' intent:

> … The ESOP shall be maintained through the date of its final termination for the exclusive benefit of individuals who had become ESOP participants on or before the Effective Time.

See Section V.E(1) of the Affiliation Agreement attached as Exhibit B to the Chris Henn summary judgment affidavit. Plaintiffs also rely upon a subsequent sentence which effectuates the parties' intent:

> If and only if the IRS approves such a Transaction (reversion or transfer), **or Fifth Third otherwise proceeds with the Transaction** (reversion or transfer) without IRS approval, Fifth Third will therefore pay … an equivalent amount … to individuals who were ESOP participants on the effective time … (emphasis added).

Fifth Third's compound distortion serves two purposes in its summary judgment effort.[1] It serves first to ignore the intent of the Agreement, following the merger and all the way through to the termination of the Suburban ESOP (hereinafter the "Plan"), to maintain the Plan exclusively for those 67 Suburban employees who were participants at the time of the merger. See ¶¶ 8-10 and Exhibits D, E and F (p. 3) of the Henn affidavit. Also, by misrepresenting the Agreement as **prohibiting** Fifth Third

---

[1] Plaintiffs rely solely on these two provisions both for their ERISA breach of fiduciary duty claim and for their common law breach of contract claim (if reinstated under Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp., 399 F.3d 692 (6th Cir. 2005)). Likewise, Fifth Third's arguments apply equally to both claims, though its memorandum identifies only the ERISA claim.

2

from transferring the Plan assets, it sets up Fifth Third's argument that it had full discretion as Plan Trustee to amend the Plan, thereby permitting a transfer of assets despite the claimed prohibition. The reality is quite different. Section V.E(1) unquestionably did allow Fifth Third to transfer Plan assets, **but only by paying for them**. Thus in their depositions, Joe Hutchison, John Buchheid and Chris Henn all acknowledged, without any hesitation, that Fifth Third could transfer assets by amending the plan to include its own employees. But they were not asked the critical follow-up question, at what cost to Fifth Third. Therefore, Fifth Third's trumpeting of their incomplete deposition testimony entirely misses the point. See ¶¶ 15-16 of the Henn affidavit for a succinct statement of Plaintiffs' actual bottom-line position in this regard.

There are numerous other distortions in Fifth Third's memorandum, some petty, others more significant, but all intended to distract attention from the central point that Fifth Third breached the letter and intent of Section V.E(1) by taking $460,000 in assets without paying for them.[2] It did so, as James Girton testified, as part of an "overall

---

[2] One of the more egregious distortions is the implication diffused throughout Fifth Third's memorandum (see especially p. 5) that Suburban provided for only one eventuality in the Timetable, namely that the Plan would be terminated by June 30, 1998. To the contrary, as Fifth Third's attorney Paul Reynolds admitted, the Timetable was **prepared jointly by Suburban and Fifth Third** and it did take into account that Section 415 limits possibly would not allow termination by June 30, 1998. (P. Reynolds depo., pp. 26 and 74) Reynolds also admitted that, if the Plan did extend beyond that date, the Timetable provided that Fifth Third would have to follow Section V.E.(1) of the Affiliation Agreement. (pp. 27-8, ln. 19-25 and 1-4)

3

strategy to get employees on the Fifth Third (master) plan." (J. Girton depo., p. 68, ln. 1-4). Moreover, according to Girton the final decision to open the Plan to Fifth Third employees **as part of the process of terminating the Plan** was made by Paul Reynolds, Fifth Third's in-house legal counsel, not by an anonymous Committee which "took over the Suburban ESOP" after the merger, as Fifth Third pretends in its memorandum (p. 1). (J. Girton depo., p. 33, ln. 4-6 and 19-20) The intent of Fifth Third's Plan amendment was "to move all of the employees to the Fifth Third benefit package," not to solve an "excess shares" problem inherited by Fifth Third at the time of the merger, as Fifth Third pretends in its memorandum (pp. 1 and 4). (J. Girton depo., p. 40, ln. 13-14)

In fact, there is no evidence of an "excess shares" problem at the time of the merger. Fifth Third in its memorandum cites no record evidence for this fantasy. In fact, at the time of the merger, Reynolds said he did not have any problem with the contributions or allocations as set forth in the Timetable. When asked if he had any concerns, "in retrospect," he stated: "I don't know." (P. Reynolds depo. p. 19)

As set out with record citations in Plaintiffs' main brief, the parties' Timetable correctly forecasted the amount of "additions" (plan income) necessary to pay off the loan by June 30, 1998, but the value of the assets in the Suburban ESOP unexpectedly rose by $1.9 million, creating an excess shares problem eleven months after the merger was finalized in July 1997. See ¶¶ 12-15 and Exhibits I (p. 2) and J of the Henn affidavit. As Girton testified the remaining loan balance of $286,287 was paid off as of June 30,

4

1998 (as forecasted in the Timetable), but there remained an excess of unallocated shares as of that date:

> Yes. The shares in the plan were unallocated and the loan appears to be paid off.

See the James Girton depo., pp. 91-2, ln. 10-25 and 1-6.[3]

Why does Fifth Third ignore these facts as documented by its own Form 5500s? Despite hard facts to the contrary, Fifth Third is sticking to its storyline that somehow Plaintiffs or their Washington, D.C. legal counsel are responsible for creating a problem for which Fifth Third had to take strong corrective action. The subliminal message is that Fifth Third was justified in taking $460,000 in assets free of charge through a supposedly technical loophole in Section V.E(1) of the Affiliation Agreement.

## II. UNDER ERISA CASE LAW, THE WORDS USED IN SECTION V.E(1) MUST BE GIVEN THEIR PLAIN AND ORDINARY MEANING RATHER THAN A TECHNICAL MEANING.

Fifth Third has hired two experts to help it construe the word "transfer" in Section V.E(1). They insist upon a technical construction of "transfer" which conforms to the definition in Treas. Reg. §1.141(1)-1(b)(11), **although there is no reference in Section V.E(1) to this regulation**. Despite their vaunted expertise, they are ignoring the

---

[3] The forecast of additions in the Timetable was $286,287 (Exhibit C, p. 1 of Henn affidavit) and the actual additions for the plan year ending June 30, 1998 was $284,434 (Exhibit I, p. 2 of Henn affidavit). See also the P. Reynolds depo., pp. 33-4 and 38-41. There were no "predictions" in the Timetable as Fifth Third repeatedly misstates in its memorandum, but rather agreed-upon assumptions. See the J. Girton depo., p. 90, ln. 5-12.

most fundamental and universal rule of construction in ERISA cases, namely that words used in plan documents are to be given their plain and ordinary meanings.[4] In a recent ERISA case, this Court adhered to this federal common law rule of construction. Thus in <u>West v. AK Steel Corporation Retirement Accumulation Pension Plan</u>, 318 F. Supp.2d 579 (S.D. Ohio 2004), this Court stated:

> Defendants' argument, although creative, ignores a fundamental principle of ERISA law – the plain language of the plan controls.

<u>Id</u>. at 585, citing <u>Marquette General Hospital v. Goodman Forest Industries</u>, 315 F. 3d 629, 633 (6th Cir. 2003)("ERISA plans should be interpreted according to their plain meaning, in an ordinary and popular sense.")(case citation omitted). Just as the parties in the case at hand could have cited the Treasury Regulation definition of transfer, likewise in <u>West</u> this Court noted:

> If the Plan drafters had intended otherwise, (i.e., that §1.2 merely be a restatement of § 204(c)(3)), they could have indicated that intent in the language of the Plan. They did not do so.

<u>Id</u>. In the case at hand, since there is no special definition of "transfer" in the Affiliation Agreement, it must be given its ordinary meaning:

> The terms "layoff" and "permanent shutdown" are not defined in the Plan and for this reason, we have accorded such terms their plain meaning.

---

[4] See Exhibit A for a list of cases from each federal circuit which applies the ERISA plain and ordinary meaning rule of construction.

Morgan v. SKF USA, Inc., 385 F.3d 989, 991 (6th Cir. 2004). Apparently Fifth Third's experts are not up to speed on this case law or Fifth Third is merely getting the opinion it paid for.

The Sixth Circuit has adopted additional rules of construction as part of federal common law:

> When disputes arise, courts should first look to explicit language of the agreement to determine, if possible, the clear intent of the parties. The intended meaning of even the most explicit language can, of course, only be understood in the light of the context that gave rise to its inclusion.
>
> Each provision in an agreement should be construed consistently with the entire document such that no provision is rendered nugatory.

Armistead v. Vernitron Corp., 944 F.2d 1287, 1293 (6th Cir.1991) (citations omitted).

The context in the case at hand is unmistakable and undisputed: the parties intended to maintain the Plan for the exclusive benefit of the 67 Suburban participants at the time of the merger. In this context, the meaning of transfer, in its non-technical and popular sense, is also indisputable: should the Plan not be terminated as of June 30, 1998, and should Fifth Third choose to transfer plan assets, with or without IRS approval, it would pay the 67 Suburban participants the value of the assets.[5] This is the

---

[5] For a concise description of the two-stage transfer from the Suburban ESOP to the Fifth Third Master Profit Sharing Plan, please see the Henn affidavit (¶¶ 19-20 and

7

only interpretation of "transfer" which effectuates the overall intent and context of Section V.E(1). By any other construction the core intent of Section V.E(1) would be "rendered nugatory" as disallowed by <u>Armistead</u>.

### III.  SECTION V.E(1) OF THE AFFILIATION AGREEMENT IS AN ERISA PLAN DOCUMENT.

Even though attorney Reynolds acknowledged that the Affiliation Agreement controlled Fifth Third's handling of the Plan, should the Plan extend beyond June 30, 1998 (P. Reynolds depo., pp. 27-8, ln. 19-25 and 1-4), Fifth Third nevertheless argues in its summary judgment memorandum that the Affiliation Agreement (in particular Section V.E(1)) is not a plan document. In fact, this Court has already recognized as much:

> Prior to the merger, Suburban and Fifth Third entered into an Affiliation Agreement, which controlled the effect of the merger on a leveraged employee stock ownership plan ("Suburban ESOP").

Order and Opinion of March 11, 2003, p.1. (Doc. No. 24)  Indeed, under 29 U.S.C. § 1024(b)(4), a plan administrator is required, upon written request of a participant, to "furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, **contract**, or other instruments under which the plan is established or operated." (Emphasis added.)

---

Exhibits M and N) and the testimony of James Girton. (J. Girton depo., pp. 23, 41 and 65)

Clearly, the legislature intended to include within a plan any and all documents which govern the plan, even if the document is a separate contract.

The Sixth Circuit has accepted this logic:

> … we have never held that courts may only examine the original written agreement when interpreting pension disputes.

Parrett v. American Ship Building Company, 990 F.2d 854, 860 (6th Cir. 1993). Likewise in Rinard v. Eastern Company, 978 F.2d 265 (6th Cir.), *cert. denied*, 507 U.S. 1029 (1993), the Court held:

> The District Court correctly observed that there is no requirement in the regulations that the terms of an ERISA plan be contained in a single document. Nor does the requirement of 29 U.S.C. § 1102(a)(1), that the terms of an ERISA plan be contained in a written instrument, require that it be a single document.

Id. at 268. In fact, the Sixth Circuit clearly recognizes that a formal written plan can be modified via written agreement. While it is true that a pension plan governed by ERISA "shall be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), "it is not true that the written instrument ERISA requires is the Pension Plan alone and that no other documents may be considered by the plan administrator."

Courts routinely rely on separate contracts to construe ERISA plans. Thus in Wilson v. Moog Automotive, Inc., 193 F.3d 1004 (8th Cir. 1999), the court noted that

9

"[t]he 'written instrument' requirement is intended to ensure that participants are on notice of the benefits to which they are entitled and their own obligations under the plan. In addition, a written instrument provides guidelines, which likewise are known to the participants, for the plan administrator as he makes coverage decisions." Id. at 1008. Thus, the court held that a plant closing agreement was "a plan document relevant to the plan administrator's decision whether to award early retirement benefits to the plaintiffs. As such it cannot be ignored." Id. at 1008-9.

As it did in its failed motion to dismiss, Fifth Third again cites Nester v. Allegiance Health Care Corporation, 162 F.Supp.2d 901 (S.D. Ohio 2001), aff'd, 315 F.3d 610 (6th Cir. 2003) for the proposition that a formal ERISA plan cannot be amended by a separate writing. See Defendant's summary judgment memorandum, p. 16. According to Defendant, Nester holds that employer-created documents do not result in an ERISA plan when a formal ERISA plan already exists. However, the holding of Nester is much narrower than Defendant's sweeping conclusion. The employees alleged in that case that the employer's slide-show presentation and various bulletins created a contractual guarantee of benefits. Following this "contractual guarantee," the employer established a formal ERISA plan. The court held that the "formal written plan preempts any *prior* representations that Allegiance may have made to the plaintiffs regarding their entitlement to transition benefits." Id. at 908-909 (emphasis added). Thus Nester merely held that a formal ERISA plan is not affected by previous informal promises.

Nester does not hold that a formal ERISA plan is not impacted by *subsequent* written contracts. Nester is thus inapplicable to the case at hand in which the Affiliation Agreement occurred subsequent to the original ERISA plan. Other cases used by Defendant are similarly factually distinguishable.

**IV.    FIFTH THIRD BREACHED ITS FIDUCIARY DUTY AS A TRUSTEE UNDER 29 U.S.C. § 1104.**

As part of the merger, Fifth Third "accepted appointment as successor trustee" of the Suburban ESOP. This was acknowledged in the Goodson memo of August 22, 1997. See the Henn affidavit, Exhibit F, p. 1. As plan trustee and sponsor, Fifth Third had a fiduciary duty under ERISA to manage and administer the plan in the best interest of the participants of that Plan. Under 29 U.S.C. § 1132(a)(3), a "participant, beneficiary, or fiduciary" of a plan may bring a civil action to obtain "appropriate equitable relief" to redress violations of ERISA. Appropriate equitable relief does not include monetary damages, but does include the imposition of any typical trust remedy, such as the resulting trust requested by Plaintiffs. Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204, 209-21 (2002).

Attorney Reynolds admitted that the parties' intent, as expressed in Section V.E(1), was to maintain the Suburban ESOP for the exclusive benefit of the 67 Suburban employees from the time of the merger through the termination of the Plan. (P. Reynolds depo., p. 79, ln. 5-11) Reynolds also admitted that Fifth Third, despite its trustee role, violated this intent. (pp. 78-9, ln. 23-5 and 1-4) Reynolds also knew that

11

Fifth Third and Suburban had amended the Plan in 1997 to limit participants to Suburban employees. (p. 114, ln. 20-5) He knew this amendment was intended to effectuate the parties' intent to limit the Plan to Suburban employees. (p. 115, ln. 18-22) Reynolds also knew there was no provision in the Affiliation Agreement providing that Fifth Third could open the Plan to Fifth Third employees if Section 415 limits could not be met. (p. 102, ln. 12-16)

Despite Reynolds' knowledge, he approved a transaction with a "party in interest" in violation of 29 U.S.C. § 1106(a). In Harris Trust and Savings Bank v. Salomon Smith Barney, Inc., 530 U.S. 238 (2000), the Supreme Court reaffirmed its commitment, in cases where there is a "party in interest" violation, to call upon common law trust principles to remediate harm caused by breaches of fiduciary duties. Id. at 251-2. Congress enacted § 406(a)(1) of ERISA (29 U.S.C. § 1106(a)) to supplement the fiduciary's general duty of loyalty under § 404(a) to the plan's beneficiaries by barring certain transactions deemed "likely to injure the pension plan." Commissioner v. Keystone Consol. Industries, Inc., 508 U.S. 152, 160 (1993).

Relying solely on its experts' opinions, Fifth Third in its summary judgment memorandum does not even dispute that it breached its fiduciary duty by engaging in a transaction with a "party in interest." In fact, Fifth Third does not address Plaintiffs' breach of fiduciary duty assertion at all. In the alternative, if Fifth Third was not acting in a fiduciary capacity in amending the Plan without compensating Plaintiffs, Plaintiffs

have a viable breach of contract claim. Fifth Third does not address this contract claim either, although it narrowly concedes that:

> In short, even construing the Affiliation Agreement most strongly in Plaintiffs' favor, at most, it creates a scheme whereby Fifth Third agreed to pay some amount of money to Suburban's former employees (under certain circumstances not met here), but in no way did the Affiliation Agreement call for the establishment of a pension plan where the former Suburban employees were to become participants and Fifth Third was to become the sponsor of a new ERISA plan.

See Fifth Third's summary judgment memorandum, p.15. Plaintiffs of course disagree with Fifth Third's hedging. The "scheme" is an enforceable contract provision. The "certain circumstances" of a transfer of Plan assets did occur under ERISA or common law contract rules of construction. And, based on the case law cited above, this Court may cause "the establishment of a (benefits) plan" to do equity to the 67 participants. In this scenario, Fifth Third would not be "the sponsor of a new ERISA plan," but would merely be required to pay out of its corporate assets, into a court-imposed plan for the benefit of the 67 Suburban employees, an amount equaling the value of Suburban ESOP assets which Fifth Third transferred to its employees in the process of terminating the Suburban ESOP. If this result cannot be reached under ERISA, payment of a sum certain is payable as monetary damages to Plaintiffs for Fifth Third's breach of contract.

### V. IN ORDER TO COMPENSATE PLAINTIFFS FOR FIFTH THIRD'S BREACH OF FIDUCIARY DUTY, THE COURT SHOULD RECOGNIZE THAT SECTION V.E(1) CREATES A RESULTING TRUST IN FAVOR OF PLAINTIFFS.

Plaintiffs contend that the creation of a "resulting plan" would effectuate Fifth Third's obligation to pay the value of Plan assets under the Affiliation Agreement. Under Harris Trust and Savings Bank v. Salomon Smith Barney, Inc., 530 U.S. 238 (2000), this proposed remedy is the ERISA equivalent of a resulting trust. Id. at 251-252 It is well settled that "[t]he common law of trusts, which offers a "starting point for analysis [of ERISA] ... [unless] it is inconsistent with the language of the statute, its structure, or its purposes," should be used in the analysis of any ERISA claim. Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 447 (1999) (internal quotation marks omitted).

Under the law of trusts, a resulting trust is a common equitable vehicle used by courts to ameliorate some harm. Plaintiffs, by extension, contend that the Affiliation Agreement justifies the creation of a "resulting plan" for the benefit of the 67 Suburban employees who were participants in the Plan at the time of the merger. The creation of this "resulting plan" preserves Fifth Third's obligation to pay Plaintiffs as required by the Affiliation Agreement and therefore employs equity to redress financial harm to Plaintiffs. To address the inequity of Fifth Third taking Plan assets without paying for them to further its own business objectives, the Court may impose the equitable remedy of requiring Fifth Third to place its own corporate assets in this "resulting plan."

## VI. CONCLUSION

In its summary judgment memorandum, Fifth Third states that it would be "more than happy" to pay Plaintiffs their due amount:

> Fifth Third was more than happy to give Suburban the leeway to determine a way to distribute the excess shares to its employees, as long as Suburban did not violate the IRS laws in doing so.

See Fifth Third's summary judgment memorandum, p. 5.  **In fact, the provisions of Section V.E(1) accomplished just that goal.**  Instead of distributing the excess shares, however, the agreed-upon strategy was for Fifth Third, at its option, to transfer the excess shares to its own employee benefits plan and pay an equivalent amount to Plaintiffs.  Although the strategy is spelled out in Section V.E(1), Fifth Third believes it has found a technical loophole in claiming that "transfer" has a special meaning which the parties did not express in their agreement.  Nonetheless, Fifth Third argues that its two experts know what was meant by this term.  In addition, Fifth Third would urge the Court to exalt form over substance, denying the reality that Fifth Third accomplished a two-step transfer.  In response, Plaintiffs are "more than happy" to receive what Fifth Third promised either by way of a contract remedy or a resulting trust under ERISA.

For the foregoing reasons, Plaintiffs request that Fifth Third's motion for summary judgment be denied.

15

Respectfully submitted,

/s/ Richard G. Meyer
Richard G. Meyer
William J. Moran, Jr.  #0059707
John R. Kirk
*Trial Attorneys for Plaintiffs*
Deters, Benzinger & LaVelle, P.S.C.
441 Vine Street, Suite 3500
Cincinnati, Ohio 45202-3007
Tel.: 513-241-4110  /  Fax: 513-241-4551
E-mail: rmeyer@dbllaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 25th, 2005, I electronically filed the foregoing Response with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Patrick F. Fischer and Sue A. Erhart of Keating, Muething & Klekamp, P.L.L.

/s/ Richard G. Meyer
Richard G. Meyer

69071