UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH F. HUTCHISON,** *et al.*, | ) | Case No. 1:01-cv-789 |
| | ) | |
| Plaintiffs, | ) | (Judge Beckwith) |
| | ) | |
| -v- | ) | |
| | ) | **DEFENDANT FIFTH THIRD** |
| **FIFTH THIRD BANCORP,** | ) | **BANCORP'S MEMORANDUM IN** |
| | ) | **OPPOSITION TO PLAINTIFFS'** |
| Defendant. | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |

Plaintiffs motion for summary judgment is the latest in a salvo of pleadings filed by Plaintiffs' counsel in a desperate attempt to reinvent this litigation. The motion seeks judgment on a claim (breach of contract) which does not exist. The motion seeks a remedy ("pay Plaintiffs approximately $460,000 out of its own assets") which is not available in law, equity, or contract. The motion purportedly focuses on a breach of fiduciary claim involving an amendment to the Suburban Federal ESOP, even though: (a) Plaintiffs admit that Fifth Third had the right to amend; and (b) amendment of a plan is not a fiduciary act that can be legally challenged in a breach of fiduciary context. The motion desperately tries to recast the fiduciary claim as a breach of the Affiliation Agreement, even though: (a) any alleged breach of the Affiliation Agreement cannot form the factual basis of an ERISA breach fiduciary claim; (b) Plaintiffs have not pled and are barred from asserting a separate breach of Affiliation Agreement claim; and (c) Fifth Third did not breach the Affiliation Agreement.

Fifth Third previously filed a motion for summary judgment (*T.d. 71*), which addressed all of Plaintiff's arguments in its motion and which disposes of this litigation in its entirety. For the reasons more fully explained in Fifth Third's motion for summary judgment (incorporated by reference) and this memorandum in opposition, Fifth Third respectfully requests that the Court

deny Plaintiffs motion for summary judgment and grant Fifth Third's motion for summary judgment, putting an end to this litigation.[1]

## I. PROCEDURAL HISTORY

### A. The Second Amended Complaint Controls The Litigation And Is Deficient On Its Face

On June 11, 2003, more than two years ago, Plaintiffs filed their Second Amended Class Action Complaint (the "Second Amended Complaint" or "Complaint"),[2] which is the operative complaint in this litigation. Plaintiffs are bound by their own allegations in the Second Amended Complaint. *See Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 699 FN 1 (6th Cir. 2005) ("*PONI*"). It is critical before addressing the "merits" of Plaintiffs' motion for summary judgment, therefore, to understand the three key deficiencies of the Second Amended Complaint.

First, Plaintiffs have pled only one claim in the operative Complaint: a breach of fiduciary duty under the Employment Retirement Income Security Act of 1974 ("ERISA"). Notably, Plaintiffs do not allege that Fifth Third breached an actual fiduciary duty with respect to the Suburban Federal ESOP; instead, they attempt to argue that Fifth Third breached a fiduciary duty under the Affiliation Agreement and argue for the creation of a "resulting plan." Indeed, this Court has already noted:

---

[1] As this Court is well aware, Plaintiffs' motion for summary judgment was part of a flurry of motions filed by Plaintiffs to resurrect this litigation, including a motion for reconsideration (*T.d. 64*) and a belated motion for class certification filed four years after the litigation was commenced (*T.d. 62 & 63*). Fifth Third has already submitted its memorandum in opposition to the motion for reconsideration (*T.d. 81*) and has filed a motion to strike the motion for class certification as untimely (*T.d. 80*). This Court should hold these motions in abeyance and rule on the pending motions for summary judgment; granting Fifth Third's motion for summary judgment and denying Plaintiffs' motion for summary judgment moots both motions, which are both without merit.

[2] Second Amended Complaint, June 11, 2003 (*T.d. 27*).

> While the Suburban Federal ESOP obviously figures prominently in Plaintiffs' Second Amended Complaint, Plaintiffs do not expressly claim that Fifth Third violated the terms of the Suburban Federal ESOP itself. Rather, **Plaintiffs contend that Fifth Third violated the Affiliation Agreement, which Plaintiffs allege is a separate plan subject to ERISA.**

*Order, Nov. 2, 2004, pg. 7 (emphasis added)* (T.d. 46).

Second, Plaintiffs only seek money damages. Plaintiffs request ". . . **monies** rightfully owing to them," including the value of the ESOP Assets, as of June 30, 1998, in proportion to the alleged "class members ESOP account" as of June 30, 1997, prejudgment interest, punitive damages, and attorneys fees. *Second Amended Complaint,* ¶¶ 40-42 *(T.d. 27) (emphasis added)*. Plaintiffs fail to allege and seek appropriate equitable or injunctive relief, which are the only viable remedies available on a breach of fiduciary claim. This deficiency is fatal. As explained *supra*, the single Sixth Circuit case that Plaintiffs rely upon to characterize money damages as "other equitable relief" has been explicitly overruled by the Sixth Circuit and is no longer good law. Plaintiffs have not pled an appropriate remedy for any purported ERISA breach of fiduciary duty claim, and therefore cannot recover in this litigation.

Third, Plaintiffs allege in the Second Amended Complaint and argue throughout their motion for summary judgment that Fifth Third violated the Affiliation Agreement. Plaintiffs do not have a viable breach of contract claim in this litigation. They cannot seek summary judgment on a claim that is not pled, and it is a waste of time and resources to brief arguments and issues that are not part of the operative pleadings. Plaintiffs have filed a motion for reconsideration asking the Court to allow it to assert a breach of contract claim; Fifth Third has already opposed the motion and outlined why Plaintiffs' arguments are legally and factually wrong. Plaintiffs' motion for summary judgment puts the proverbial cart before the horse.

This review is important because Plaintiffs have created a procedural quagmire attempting to recover relief they cannot legally obtain. They have asserted an ERISA breach of fiduciary duty claim, but have put forth no facts to show that Fifth Third violated the Suburban Federal ESOP and they do not seek any of the equitable remedies available under ERISA. They argue that Fifth Third breached the Affiliation Agreement, even though this claim is preempted. As a result, they pay lip service to the viable claim in captions but spend all of their argument arguing the breach of the Affiliation Agreement – the disconnect is obvious. Compounding the problem, Plaintiffs are asking this Court to award them money damages personally when ERISA law provides no such remedy. In fact, this is how the parties got into this problem in the first place. Plaintiffs wanted the benefit of the suspense shares in the Plan and could not find a legal way to obtain the shares. Recognizing that ERISA law does not provide them any options, they now simply ask the Court to ignore all statutes and case law to the contrary and to simply give them the monetary value of shares as a matter of equity. This Court should not, and frankly cannot, accede to this request.

It is critical that the Court recognize the technical deficiencies of Plaintiffs' claims, which Plaintiffs blur in this motion.

**B.   The Relevant Factual Background Is Summarized In Fifth Third's Motion For Summary Judgment, Incorporated By Reference**

Fifth Third has already filed a detailed motion for summary judgment (*T.d. 71*) which contains a details factual history and citations to all relevant documents. To avoid duplication, Fifth Third incorporates this factual history by reference.

## II. ARGUMENT

### A. This Court Should Abstain from Ruling On Any Purported Breach of Contract Claim in Plaintiffs' Motion for Summary Judgment

For purposes of judicial economy, this Court should withhold consideration of Plaintiffs' Motion for Summary Judgment on any purported breach of contract claim until it has rendered a decision on Fifth Third's Motion for Summary Judgment and Plaintiffs' Motion for Reconsideration.

Fifth Third's Motion for Summary Judgment requests this Court to declare that no genuine issue of material fact or law exists as to Plaintiffs' ERISA claim. If this Court grants Fifth Third's motion, this litigation is concluded. Plaintiffs have no valid breach of contract claim. The Court would have to grant Plaintiffs' motion to reconsider; allow Plaintiffs to file another amended complaint after the close of discovery; and deal with further briefing and discovery issues related to the breach of contract claim before any motion for summary judgment related to the claim is ripe. Plaintiffs' current motion is obviously premature and should not be given any consideration, unless and until, all of the above takes place.

### B. Even if Plaintiffs' ERISA Claim Withstands Fifth Third's Motion for Summary Judgment, Plaintiff is Not Entitled to Summary Judgment on its ERISA Claim

In their complaint, Plaintiffs allege a general ERISA claim, unidentified statutorily, which the Court has characterized as a claim alleging "[breach of] fiduciary duties owed to Plaintiffs by failing to pay them the benefits owed under the [Affiliation] Agreement. They seek damages measured by the value of the excess stock as of June 30, 1998, prejudgment interest, punitive damages and attorneys fees under 29 U.S.C. §1132(g)(1)." *Nov. 2, 2004 Order, pg. 4.* In their memorandum in support of summary judgment, Plaintiffs claim Fifth Third breached its fiduciary duty of loyalty existing pursuant to §§ 404 and 406(a) of ERISA, 29 U.S.C. §§ 1104,

1106(a).  *Plaintiffs' Memorandum in Support at 15-16*.  Plaintiffs do not assert a claim based on a breach of any other fiduciary duty either in their complaint or motion for summary judgment.[3]

Section 404(a) sets forth the general duties owed by an ERISA fiduciary, including the duty of loyalty.  *29 U.S.C. § 1104(a)*.  Specific to Plaintiffs' claim against Fifth Third, that Section provides a *fiduciary* must act "solely in the interest" of plan participants.  *Id.* at 1104(a)(1).  Likewise, ERISA does not prohibit a fiduciary from acting solely in accordance with its own interest or in accordance with a third party's interest when the fiduciary is not managing or administering the plan.  *See Friend v. Sanwa Bank Cal.*, 35 F.3d 466, 369 (9th Cir. 1994); *Berlin v. Mich. Bell Tel. Co.,* 858 F.2d 1154, 1163 (6th Cir. 1988).  In addition to § 404, ERISA § 406 delineates specific categories of transactions that violate ERISA's fiduciary responsibility rules.  Among those transactions, § 406(1)(a) prohibits the "sale, exchange, or lease of any property" between the plan and a party in interest.  *29 U.S.C. § 1106(1)(a)*.

> **1. Plaintiffs' Claim for Breach of Fiduciary Duty Pursuant to ERISA Sections 502(a)(2), 404, and 406(a)(1) must Fail**

To properly plead a claim for fiduciary duty, a plaintiff must prove that "(1) the defendant was a fiduciary of an ERISA plan who, (2) acting within his capacity as a fiduciary, (3) engaged in conduct constituting a breach of his fiduciary duty."  *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2005 U.S. Dist. LEXIS 3715, at *11 (S.D.N.Y. March 10, 2005).  While Fifth Third may have been, in some capacity, a fiduciary to the Suburban Federal ESOP plan, Fifth Third did not act within a fiduciary role by amending the Suburban Federal ESOP plan and it did not breach any duty allegedly owed to Plaintiffs.

---

[3] Further, in their Complaint, Plaintiffs assert no claim for benefits or equitable relief pursuant to ERISA Sections 502(a)(1) and 502(a)(3), respectively.

### a.) Plaintiffs' ERISA Claim must Fail Because Fifth Third Was Not Acting in a Fiduciary Capacity When It Amended the Suburban Federal ESOP.

Summary judgment cannot be awarded on Plaintiffs' breach of fiduciary duty claim because Fifth Third was not acting within a fiduciary capacity when it amended the Suburban Federal ESOP plan to include additional participants. Plaintiffs' allegation that Fifth Third should have only distributed the excess ESOP's shares to former Suburban Federal employees directly implicates Fifth Third's decision to amend the Suburban Federal ESOP. It is undisputed that Fifth Third was permitted to amend the plan and it is well-settled law that amending a plan is not a fiduciary function.

Fifth Third undisputedly possessed the authority to amend the plan as it so chose. First, § 16.1 of the Suburban Federal ESOP clearly reserved to Fifth Third the power to amend the Plan. *See* Suburban Federal ESOP, § 16.1, p. 54 (Attached to *Declaration of James Girton*, Tab 4 of the Appendix of Exhibits to Defendant Fifth Third Bank's Motion for Summary Judgment, manually filed on June 30, 2005 ("*Appendix of Exhibits*") ("The Company reserves the right at any time, and from time to time, by action of the Board of Directors, to modify or amend in whole or in part any or all of the provisions of the Plan."). In fact, Fifth Third's power to amend is limited only by a prohibition against modifying the actual account balance of the entire Suburban Federal ESOP plan.[4] *Id.* at 16.1(a), (b). The authority to amend was so invaluable to Fifth Third that it ensured that it was also reiterated in the Affiliation Agreement. *See* Affiliation Agreement, Section II, Q. 11. (Attached as Tab 7 to *Appendix of Exhibits*). Section II, Q. 11, specifically provides that:

> . . . Suburban Bancorp or Thrift Subsidiary has all power and authority necessary to amend or terminate each Benefit Plan without incurring any

---

[4] Clearly, Fifth Third did not remove any monies from the fund since Fifth Third allowed additional contributions to be added by Suburban Federal prior to the merger.

> penalty or liability provided that, in the case of an employee pension benefit plan (as defined in section ? (2) of ERISA), benefits accrued as of the date of amendment or termination are not reduced.

*Id.*

Second, nothing in the Affiliation Agreement or Timetable limits Fifth Third's ability to amend the Suburban Federal ESOP. Even Plaintiffs agree that Fifth Third retained the authority to amend. *See Henn Depo. pg. 45, lines 13-20; Hutchison Depo. pg. 33, lines 13-23.* There is no question that Fifth Third had the authority to amend the plan.

In addition, regardless of contractual rights, the act of amending a plan cannot legally give rise to a breach of fiduciary duty claim.[5] A person or entity is a fiduciary only when performing certain functions, and an entity **does not** act in its fiduciary capacity when it is involved in plan adoption, amendment, design, or termination. *Abbott v. Pipefitters Local Union No. 522 Hosp., Medical, and Life Benefit Plan,* 94 F.3d 236, 239 (6th Cir. 1996). The United States Supreme Court, in *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996), specifically held that the act of amending a plan does not constitute an exercise of fiduciary duty:

> Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries. As we said with respect to the amendment of welfare benefit plans, '[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.' When employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust."

*Id.* at 890 (*quoting Curtiss-Wright Corp. v. Schoonejongen*, 514 US. 73, 78 (1995) (*citing Adams v. Avondale Indus., Inc.,* 905 F.2d 943, 947 (6th Cir. 1990).   Since the action complained of – amending the Suburban Federal ESOP – is not a fiduciary function, any claim of breach of fiduciary duty relating to amendment of the Plan must fail.

---

[5] For further support, see Fifth Third's Memorandum in Support of Motion for Summary Judgment, at 18-19.

        b.)      **Plaintiffs ERISA Claim Must Fail Because Fifth Third Did Not Breach Any Fiduciary Duty**

Assuming *arguendo* only that Fifth Third somehow acted in a fiduciary capacity by amending the Suburban Federal ESOP, Fifth Third did not breach either the general duty of loyalty set forth in § 404 or any specific duty of loyalty set forth in § 406.[6] First, Fifth Third properly implemented the amendment to the Suburban Federal ESOP that added additional participants to the Suburban Federal ESOP and it did not violate the Affiliation Agreement in the process. Second, even if another interpretation is possible, Fifth Third's interpretation and implementation must be given deferential judicial review. *See, e.g. Ershick v. United Missouri Bank of Kansas City, N.A.,* 948 F. 2d 660, 667 (10th Cir. 1991). As such, Fifth Third's reasonable interpretation of the Affiliation Agreement and implementation of the amendment does not give rise to any claim for breach of fiduciary duty.

        (i)      **Fifth Third Correctly Interpreted Section V.E of the Affiliation Agreement and Implemented the Amendment to the Suburban Federal ESOP**

Fifth Third correctly interpreted Section V.E of the Affiliation Agreement and implemented an amendment to the Suburban Federal ESOP. Contrary to Plaintiffs' argument, Fifth Third owes no obligation to Plaintiffs because the conditions precedent that would have triggered the alleged obligation never occurred.[7]

The Affiliation Agreement provided that Fifth Third would be obligated to pay former Suburban Federal Bancorp employees an amount equal to distributions made to participants other than former Suburban Federal Bancorp employees only in the instance that **both** (1)

---

[6] For further support, see Fifth Third's Memorandum in Support of Motion for Summary Judgment at 7-13.

[7] A condition precedent is generally defined as an occurrence that must take place before an obligation in a contract or lease takes effect. *Kern v. Clear Creek Oil Co.* (Ohio Ct. App. 2002), 778 N.E.2d 115; *Sweeney Grange Mutual Casualty Co.* (2001), 146 Ohio App. 3d 380, 385. Like most contract terms, conditions precedent may be expressed or implied.

Suburban Federal Bancorp predicted a surplus of assets would exist in the Suburban Federal ESOP on June 30, 1998 **and** (2) Fifth Third would necessarily have transferred the surplus assets to another plan. These conditions precedent, however, never occurred because (1) Suburban Federal – although wrong – predicted that no such surplus would exist on June 30, 1998 and (2) Fifth Third made no transfer of the assets from the Suburban Federal ESOP to another plan.

>      **(a)    Suburban Bancorp Did Not Determine that A Surplus of Assets Would Exist in the Suburban Federal ESOP on June 30, 1998, Thereby Failing to Trigger the Condition Precedent that Would Have Required Fifth Third To Pay Plaintiffs a Monetary Amount Equivalent to the Assets Distributed to Fifth Third Employees**

Section V.E of the Affiliation Agreement governs the handling of the excess shares in the Suburban Federal ESOP for the express purpose of ensuring that the Suburban Federal ESOP could be terminated after the merger without violating the limits set in place by Internal Revenue Code § 415.[8] *See Reynolds Depo., Vol. II, pg. 100, lines 5-25 & pgs. 101-102, lines 9-11; Henn Depo. pg. 33, 12-17 & pg. 51, lines 5-25; Hutchison Depo. pg. 34, lines 6-12; Affiliation Agreement, V.E.(1).* While it was important to the principals of Suburban Federal Bancorp that the assets in the Suburban Federal ESOP be distributed to Suburban Federal Bancorp employees, it was equally important to Fifth Third that the Suburban Federal ESOP be terminated as soon as possible after the merger. Because Fifth Third was skeptical as to whether such a distribution could be made by June 30, 1998 without violating IRC § 415, Section V.E gave Suburban Federal Bancorp the opportunity to create a "timetable" to try to distribute the excess shares in the Suburban Federal ESOP consistent with § 415 limits. If Suburban Federal predicted that the Suburban Federal ESOP shares would be fully-utilized under the terms of the Suburban Federal

---

[8] IRC § 415 limits the amount of "annual additions" that a sponsor may contribute to a plan participant's account to the lesser of (1) $30,000 or (2) 25% of compensation.

ESOP by June 30, 1998, the Affiliation Agreement provided one set of instructions as to how the parties were to proceed:

> (1) Suburban Bancorp shall develop a written description and timetable which shall be provided to and approved by Fifth Third and its counsel, setting forth allocations necessary to (i) make contributions to the Suburban Bancorp, Inc. Employee Stock Ownership Plan ('ESOP') and/or to have the ESOP sell unallocated shares under the ESOP to fully repay the ESOP's existing loan, all in compliance, with the applicable requirements of ERISA and the Internal Revenue Code . . . (ii) amend the ESOP to authorize the sale of unallocated shares to repay the loan, to provide for the allocation of gain on the sale of unallocated shares . . . and to make such other changes as may be necessary to implement the termination, (iii) terminate the ESOP; and (iv) submit the ESOP to the Internal Revenue Service for a determination letter that the ESOP, as so amended and terminated, continues to be a qualified retirement plan . . . .

*Affiliation Agreement*, V.E.(1) (Emphasis supplied) (Tab 7 of *Appendix of Exhibits*). In other words, through the timetable, Suburban Federal was provided the opportunity to discern a way to distribute **all** of the excess shares – only if consistent with IRS regulations – to Suburban Federal employees so that the Suburban Federal ESOP could be terminated by June 30, 1998. However, if upon creation of the timetable, Suburban Federal projected there would be a remaining surplus of shares as of June 30, 1998, the Affiliation Agreement provided an alternative set of instructions as to how the parties would proceed:

> **If, upon development of the written description and timetable referred to above, the parties agree in good faith that allocation of all or any shares of stock held in the ESOP's suspense account would violate the Code's section 415 limitations** as interpreted by the IRS in private letter rulings 9648054 and 9426048, Suburban Bancorp shall apply to the IRS for approval (either through an IRS determination letter or other means reasonably acceptable to Fifth Third) of a transaction (the "Transaction") whereby the excess shares (or cash value thereof (i.e. those shares remaining after fully utilizing the section 415 limits . . . ) either revert to Fifth Third or are transferred to an employee benefit plan of Fifth Third. If and only if the IRS approves such a Transaction, or Fifth Third otherwise proceeds with the Transaction without IRS approval, Fifth Third will thereafter pay (out of its corporate assets and not plan assets) an equivalent amount . . . reduced by expenses incurred, to individuals who were ESOP participants on the Effective Time . . . .

*Id.* More specifically, the Affiliation Agreement specifically required that – if the timetable predicted that all of the shares could **not** be allocated – Suburban Federal would apply to the IRS for approval of a distribution that exceeded the § 415 limits.

Pursuant to the Affiliation Agreement, Suburban Federal did craft a "timetable" and determined that there would be no surplus shares remaining as of June 30, 1998. (*Timetable*, Tab 8 of *Appendix of Exhibits*). Likewise, the parties followed the first set of instructions in the Affiliation Agreement. Fifth Third permitted Suburban Federal to pay substantial contributions into the Suburban Federal ESOP (which would not have been permitted if Suburban Federal predicted a surplus, as there would have been no reason to add to a surplus). Fifth Third also made the maximum allowable allocations under the law (§ 415 of the Internal Revenue Code) to the Suburban Federal ESOP participants for the fiscal years ending in June 30, 1997 and June 30, 1998. After so doing, the obligations of Fifth Third and the rights of any particular Suburban Federal participant ended.

As noted, the Affiliation Agreement provides an alternative set of instructions that the parties would have followed in the event that Suburban Federal had correctly projected a remaining surplus of assets in the Suburban Federal ESOP as of June 30, 1998. In such an event, Suburban Federal would have been prohibited from making any additional and substantial contributions that it made to the ESOP. Further, Suburban Federal would have had to apply to the IRS for approval of a "Transaction" where the surplus assets would "either revert to Fifth Third" or be "transferred to an employee benefit plan of Fifth Third." Had this happened and had the IRS approved of such a reversion or transfer, Fifth Third would have been required to pay an equivalent amount, reduced by expenses incurred, to individuals who were Suburban Federal ESOP participants on the date of the merger. Because Suburban Federal failed to

determine that excess shares would remain in the Suburban Federal ESOP as of June 30, 1998, and did not seek the IRS determination, this set of instructions did not apply.

Plaintiffs cannot have it both ways, mixing and matching condition precedents and borrowing from various portions of the Affiliation Agreement at whim. Plaintiffs' prediction of no surplus was acted upon by all parties (with subsequent contributions made to the Plan) and negated the second set of instructions and any potential payout to Plaintiffs.

**(b)** **A Transfer of Assets From One Plan to Another Plan Did not Occur, Thereby Failing to Trigger the Condition Precedent that Would Have Required Fifth Third To Pay Plaintiffs a Monetary Amount Equivalent to the Assets Distributed to Fifth Third Employees**

Rather than focusing on the actual instructions set forth in the Affiliation Agreement, Plaintiffs boldly assume that the second or alternate set of instructions control. Likewise, Plaintiffs' motion focuses solely on the question of whether Fifth Third Bank "transferred" assets from the Suburban Federal ESOP to another employee benefit plan of Fifth Third. In effect, the Plaintiffs ask this Court to treat the alleged occurrence of such a "Transaction" as part of the first set of Affiliation Agreement instructions, which the parties were to follow **only if** Suburban Federal did **not** project a surplus. In addition to interjecting an unrelated clause into the first set of instructions, Plaintiffs request that this Court determine that a "Transaction," which would allegedly trigger Fifth Third's obligation to pay the Suburban Federal ESOP participants, actually occurred, even though the facts do not support such a finding.

Plaintiffs rely on one sentence of the Affiliation Agreement to support their claim that the Suburban Federal ESOP participants who were former Suburban Federal employees are entitled to damages; this sentence provides that Fifth Third will pay damages if it completes a "Transaction." In pertinent part, the Affiliation Agreement states: "If and only if the IRS

approves such a Transaction, or Fifth Third otherwise proceeds with the Transaction without IRS approval, Fifth Third will thereafter pay (out of its corporate assets and not plan assets) an equivalent amount . . . reduced by expenses incurred, to individuals who were Suburban Federal ESOP participants on the Effective Time . . . ." *Affiliation Agreement,* Section V.E.1.  In the Affiliation Agreement, "Transaction" is defined as either (i) a reversion of plan assets or (ii) a transfer of plan assets to a Fifth Third plan  *Id*.

In their Complaint, Plaintiffs allege that Fifth Third went ahead with the "Transaction" without IRS approval and so is obligated to make a distribution to the former Suburban Federal ESOP.  They write:

> As of June 30, 1998, and thereafter, Fifth Third had taken control of the Excess ESOP Assets.  Upon information and belief, Plaintiffs submit that the Excess ESOP Assets were placed into a Fifth Third employee benefit plan.  In particular, the existing Suburban Federal ESOP benefit plan was amended so as to permit Fifth Third employees to participate in the plan thereby creating a Fifth Third employee benefit plan.

*Second Amended Complaint* at ¶27.  As Plaintiffs' own allegations reveal, however, the Suburban Federal ESOP was amended; its assets were neither transferred nor reverted to Fifth Third.  Plaintiffs have offered no evidence whatsoever that Fifth Third either transferred the assets to Fifth Third or caused the assets to revert to Fifth Third and both U.S. law and common logic directly contravene Plaintiffs' assertions

The undisputed facts show that Fifth Third amended the Suburban Federal ESOP to allow-in additional participants into the ESOP.  After these participants were added, Fifth Third distributed assets to all of the plan participants, and all of those participants were permitted to dispose of those assets in any manner in which they so chose. *See Levo Depo., pgs. 24-25, lines 8-12.* At the time of distribution, some of the participants were Fifth Third employees, and some of those Fifth Third employees voluntarily rolled over the assets into a Fifth Third plan.  Other

Fifth Third employees did not. *See Reynolds Depo., Vol. I., pg. 32, lines 8-12; Girton Depo. pg. 41, lines 7-17.*

In **substance**, amending a plan to allow-in additional participants, which is followed by a distribution to plan participants, is completely different from a transfer. In similar circumstances, the United States Supreme Court has ruled that the amendment of a plan to add new participants is **not** the same as the creation of a second plan and a transfer of assets to that second plan. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 442 (1999). Further, Treasury Department Regulation 1.401(a)(31)-1, Q/A-15, explicitly disagrees with Plaintiffs' contention that a "participant rollover" is the same as a "transfer" in the following words:

> Q-15. For purposes of applying the plan qualification requirements of section 401(a), is an eligible rollover distribution that is paid to an eligible retirement plan in a direct rollover a distribution and rollover or is it a transfer of assets and liabilities?
>
> A-15. For purposes of applying the plan qualification requirements of section 401(a), a direct rollover is a distribution and rollover of the eligible rollover distribution and not a transfer of assets and liabilities. . . . Similarly, the direct rollover is not a transfer of assets and liabilities that must satisfy the requirements of section 414(l). Finally, a direct rollover is not a transfer of benefits for purposes of applying the requirements under section 411(d)(6), as described in §1.411(d)-4, Q&A-3. . . . The direct rollover requirements of section 401(a)(31) do not affect the ability of a qualified plan to make an elective or nonelective transfer of assets and liabilities to another qualified plan in accordance with applicable law (such as section 414(l)).

Accordingly, the Regulations are clear that a transfer and a rollover are not, **in substance** under U.S. law**,** the same. The Regulations point out the different tax and legal ramifications, which are dependent on the form of the transaction as either a rollover or a transfer.

Additionally, Fifth Third's actions did not cause a "transfer" in the layman's sense of the word. Fifth Third only amended the plan to add additional participants. After the plan terminated, the shares were distributed to the participants. Some participants were Fifth Third

employees, others were not. Some of the participants that were Fifth Third employees rolled over their shares into a Fifth Third account. None of the money transferred or reverted to Fifth Third, and Plaintiffs cite no facts to support such an absurd accusation.

Plaintiffs concede that no transfer took place in the ERISA context (*see Plaintiffs' Memorandum in Support at p. 10*) but they ask the Court to ignore Fifth Third's compliance with ERISA law and hold that a transfer nonetheless occurred. In other words, Fifth Third complied with the Affiliation Agreement and applicable law, but, nonetheless, Fifth Third should still pay. The undisputed chain of events does not equate to a "transfer" of funds under either the U.S. law's or the layman's definition of "transfer."

### (c) Fifth Third Correctly Interpreted Its Authority to Amend the Suburban Federal ESOP

Suburban Federal was substantially wrong in its calculation under the timetable; all of the shares could not be distributed within §415 limits and excess shares remained in the Suburban Federal ESOP after the merger. *Henn Depo. pgs. 49-50, lines 13-19*. As successor to Suburban Federal, Fifth Third became responsible for the wind up and termination of the Suburban Federal ESOP. In order to terminate the Suburban Federal ESOP without violating §415 limits, Fifth Third exercised its discretion to amend the Suburban Federal ESOP and to allow certain Fifth Third employees to participate in the plan. *Hutchison Depo. pg. 33, lines 17-23*. The Suburban Federal ESOP clearly reserves to the employer the right to amend the plan any time. Suburban Federal ESOP, §16.1. As a matter of law, Fifth Third had the right to so amend. *See*, *Gordon v. Barnes Pumps, Inc.*, 999 F.2d 133, 136 (6th Cir. 1993) ("[T]he company reserved the 'right to modify, suspend, or terminate the Plan, at any time and for any reason.' It is well established that an employer who reserves the right to alter a plan may exercise that right.") Because the Suburban Federal ESOP was amended after the Affiliation Agreement was signed, there can be

no argument from the Plaintiffs that the Affiliation Agreement controls their right to benefits under the Suburban Federal ESOP.

### (ii) Deferential Judicial Review is Owed to Fifth Third's Interpretation of the Affiliation Agreement

A fiduciary does not breach its fiduciary duties by interpreting a plan "in good faith, even if [the] interpretation is later determined to be incorrect." *See e.g., Challenger v. Local Union No. 1 of the Internat'l Bridge, Structural and Ornamental Ironworkers, AFL-CIO*, 619 F.2d 645, 649 (7th Cir. 1980). Further, a breach of fiduciary duty is measured by the fiduciary's conduct at the time of its decision, rather than the success or failure of the course of action. *See e.g., Hunter v. Caliber Sys.*, 220 F. 3d 702, 722 (6th Cir. 2000) ("plan fiduciaries can make honest mistakes that do not detract from a conclusion that their decisions were prudent at the time . . .") (*quoting Metzler v. Graham*, 112 F. 3d 207, 209 (5th Cir. 1997)). Likewise, a Court reviews such interpretations deferentially. *See, e.g. Ershick,* 948 F.2d at 667 (10th Cir. 1991).

### 2. Plaintiffs' ERISA Claim Fails Because There Is No Plan (or Plan Participants) to Which Fifth Third Might Owe a Fiduciary Duty

Recognizing that they have no facts to support an argument that Fifth Third breached its fiduciary duties to the Suburban Federal ESOP, Plaintiffs attempt to rely upon a "resulting plan" argument. Numerous courts have rejected this argument.

As detailed in Fifth Third's prior briefs, courts have uniformly rejected attempts to modify terms of an ERISA plan through an employer created document that exists outside of the plan documents. *See e.g., Helfrich v. Carle Clinic Assoc.*, 328 F.3d 915, 918 (7th Cir. 2003); *Sprague v. General Motors*, 133 F.3d 388 (6th Cir. 1998); *Cinelli v. Security Pacific Corp.*, 61 F.3d 1437, 1443 (9th Cir. 1995); *Miller v. Coastal Corp.*, 978 F.2d 622, 624 (10th Cir. 1992); *Nester v. Allegiance Healthcare Corp.*, 162 F. Supp. 2d 901 (S.D. Ohio 2001) (*affirmed* 315 F.3d 610 (6th Cir. 2003)). In order for a written document to amount to an amendment of an ERISA

plan, the document must contain "amendatory language" demonstrating that the document was intended to amend the plan. *See Cinelli*, 61 F.3d at 1442.

In this case, the Affiliation Agreement contains no language that might even suggest that the Agreement itself is an amendment to the Suburban Federal ESOP. Instead, the Affiliation Agreement expressly states that **one** of its purposes is to develop a timetable for the eventual amendment of the Suburban Federal ESOP:

> Suburban Bancorp shall develop a written description and timetable which shall be provided to and approved by Fifth Third and its counsel, setting forth all actions necessary to: . . . (ii) amend the ESOP to authorize the sale of unallocated shares to repay the loan, to provide for the allocation of gain on the sale of unallocated shares in a manner than complies with the position of the IRS in Private Letter Rulings 9648054 and 9426048 and to make such other changes as may be necessary to implement the termination . . . .

*Affiliation Agreement at pg. 23*. At best, the Affiliation Agreement is an agreement, which addresses the amendment of and the eventual termination of the Suburban Federal ESOP, but it, itself, does not create any particular rights for the participants in the Suburban Federal ESOP. Thus, Plaintiffs cannot – as a matter of law – rely on the Affiliation Agreement as part of the plan. The ERISA plan must fail because Plaintiffs cannot prove that Fifth Third breached fiduciary duties, when they do not allege an actual Plan to which Fifth Third could have breached such duties.

### 3. Plaintiffs' ERISA Claim Fails Because Plaintiffs Do Not Seek Proper Relief

Furthermore, Plaintiffs cannot maintain a claim for breach of fiduciary duty under ERISA because the suit seeks individual relief, not plan level relief. An ERISA breach of fiduciary duty claim arises from § 502(a)(2) (29 U.S.C. § 1132(a)(2)), which permits plan beneficiaries to seek relief under § 409 (29 U.S.C. §1109). Section 409 provides that a breach of fiduciary duty injures the plan itself, not the plan beneficiaries. Likewise, Courts have held that a claim for

breach of fiduciary duty is a plan level claim that must be brought on behalf of the plan and not on behalf of any particular individual. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985); *Bryant v. Int'l Fruit Prods. Co.*, 886 F. 2d 132, 135 (6th Cir. 1989) (*per curiam*).

Plaintiffs cannot maintain an action under ERISA § 502(a)(3) either because no such claim is pled in the Complaint. Plaintiffs have only sought recovery for individual "damages." While Plaintiffs' Motion for Summary Judgment alludes to equitable relief and cites ERISA § 502(a)(3), it is clear that Plaintiffs are seeking only money damages. The United States Supreme Court has held that in order to be allowable as a claim for equitable relief under ERISA § 502(a)(3), the claim must seek "not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002). Likewise, the Sixth Circuit in *Helfrich v. PNC Bank, Kentucky, Inc.*, 267 F.3d 477, 482 (2001) held that "ERISA does not permit plan beneficiaries to claim money damages from plan fiduciaries."

Plaintiffs attempt to bypass the fact that they have not sought "appropriate equitable relief" by citing a long quote taken directly from *Warren v. Society Nat'l Bank,* 905 F.2d 975 (6th Cir. 1990), which alludes to the possibility that equitable remedies may "include provision of monetary damages." Unfortunately for Plaintiffs, however, that opinion was abrogated by *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993) and the Sixth Circuit has at least twice recognized that *Warren* is no longer good law. *See Fraser v. Lintas: Campbell-Ewald*, 56 F.3d 722, 724 (1995) (*cert. denied,* 516 U.S. 975 (1995)); *Helfrich*, 267 F.3d at 482. As held by the Supreme Court in *Mertens*, a claim for money damages pursuant to ERISA § 503(a)(3) does not and cannot exist. *Mertens,* 508 U.S. at 255.

### III.  CONCLUSION

For the foregoing reasons, Fifth Third respectfully requests that this Court deny Plaintiffs' Motion for Summary Judgment and stay any consideration of any breach of contract claim.

                          Respectfully submitted,

                          /s Patrick F. Fischer

Patrick F. Fischer (0039671)
Sue A. Erhart (0066639)
Christy M. Nageleisen (0076600)
One East Fourth Street
Suite 1400
Cincinnati, Ohio 45202
Tel: (513) 579-6459
Fax: (513) 579-6457
pfischer@kmklaw.com
serhart@kmklaw.com
cnagelsien@kmklaw.com
Attorneys for Defendant,
Fifth Third Bancorp

OF COUNSEL:

KEATING MUETHING & KLEKAMP PLL
One East Fourth Street
Suite 1400
Cincinnati, Ohio 45202
(513) 579-6400

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing FIFTH THIRD BANCORP'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT WAS filed electronically and served upon William J. Moran, Jr., Deters, Benzinger & LaVelle, P.S.C., 3500 Carew Tower, 441 Vine Street, Cincinnati, Ohio 45202 and John R. Kirk and Richard G. Meyer, Deters, Benzinger & LaVelle, P.S.C., 207 Thomas More Parkway, Crestview Hills, KY 41017 by mail, this 1st day of August, 2005.

                          /s Patrick F. Fischer

                          Patrick F. Fischer

1478422.3