UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH F. HUTCHISON, et al.** | : | Case No.  1:01-789 |
| | : | |
| Plaintiffs | : | (Judge Beckwith) |
| | : | |
| -vs- | : | |
| | : | |
| **FIFTH THIRD BANCORP** | : | |
| | : | |
| Defendant | : | |

PLAITNIFFS' RESPONSE TO DEFENDANT'S
MOTION TO STRIKE CLASS ACTION CLAIM

Come now the Plaintiffs, by counsel, and submit the within memorandum in response to the Motion to Strike Plaintiffs' Motion for Class Certification, or in the alternative, Motion to Stay Further Briefing of Defendant, Fifth Third Bancorp.

**I.     ALTHOUGH PLAINTIFFS DID NOT UNTIL RECENTLY FILE A RULE 23 MOTION TO CERTIFY, DEFENDANT'S SUCCESSIVE MOTIONS TO DISMISS DELAYED THIS CASE FOR THREE YEARS.**

On November 14, 2001, shortly after Plaintiffs filed their initial class action complaint in state court, Fifth Third removed it to the U.S. District Court.  As the Court is aware from its three previous Orders in this case (Doc. 9, 24 and 46), all dealing with procedural matters, this case did not advance beyond the motion practice stage until three years later on November 2, 2004.  At that time the Court issued an Order denying Fifth Third's motion to dismiss Plaintiffs' second amended complaint.  (Doc. 46) In fact,

while its successive motions to dismiss were pending, Fifth Third did not even file an answer in this case until December 21, 2004. (Doc. 51) That answer asserted five defenses to Plaintiffs' class action allegations, including: "3. Defendant denies that this is a proper class action, as alleged in paragraph 3." (Doc. 51, p. 1) Thus, as of December 21, 2004, Fifth Third defended against the class action, but did not assert the 120-day limit in Local Rule 23.3.

Defendant now claims that it was not aware during discovery that Plaintiffs are intent on seeking class action relief.[1] To the contrary, not only was Fifth Third aware of Plaintiffs' class allegations at the time it filed its answer, it was also on notice that the Court had not dismissed Plaintiffs' class action allegations under Local Rule 23.3, which gives the Court the discretion to dismiss class action allegations:

> If no such motion is filed, the Court **may enter** an order that the action is not maintainable as a class action (emphasis added).

Moreover, the Court made it very clear in its Order of March 10, 2003, that the issues in this case affect all putative class members (subsequently discovered to total 67 members). Thus the Opinion noted:

---

[1] Although Fifth Third did not follow up its defenses to class action status with Interrogatories or Requests for Production of Documents, Fifth Third itself has possession of numerous documents relating to the putative class members, including the asset distribution letters and notices of Plan termination sent to all 1,700 Plan participants, including the 67 former Suburban employee/participants. See Exhibits M and N to the C. Henn summary judgment affidavit. (Doc. 76) Thus the argument by Fifth Third that it could have used discovery to learn the class members' addresses, in order to establish their geographical proximity, is pure subterfuge.

2

> The Court does not find this lawsuit to be frivolous, rather it raises legitimate issues that could potentially impact numerous former participants of the Suburban ESOP.
>
> Finally, as this case involves questions regarding the legal interpretation of the Affiliation Agreement, the factual record of individual claims is of little importance in resolving this matter.

(Doc. 24, p. 14)  This Order therefore specifically, though indirectly, commented on the numerosity and commonality requirements of Fed. R. Civ. P. 23(a).  Thereafter, in its Order of November 2, 2004, the Court further noted the class action nature of Plaintiffs' claims for relief, observing that the putative class members are intended beneficiaries of Section V.E(1) of the Affiliation Agreement:

> … **except as specifically set forth** herein or as contemplated **in Section** V.D, **V.E.1**, … none of the provisions hereof shall be binding upon or inure to the benefit of any other person, firm or corporation whomsoever (emphasis added).

See the Order of November 2, 2004, p. 5 (Doc. 46), quoting the third-party beneficiary language of Section XI of the Affiliation Agreement.[2]  Moreover, this same Order noted that Section V.E(1) of the Agreement does in fact adequately describe a specific class:

> The class of beneficiaries are the Suburban ESOP participants on the "Effective Time" (defined in Section IX as

---

[2] "In order for a third person to enforce a promise made for his benefit, it must appear that the contract was made and entered into directly or primarily for the benefit of such third person."  American Rock Mechanics, Inc. vs. Thermex Energy Corporation, 80 Ohio App.3d 53, 58 (1992).  Based on the language of the Affiliation Agreement, there can be no doubt that under Ohio law the putative class members are intended beneficiaries of Section V.E(1).

3

the end of the day the merger formally closes).

(Doc. 46, p. 11) As a result of the Orders in this case, therefore, Fifth Third was on notice of the Court's perception of this case as a class action more than 120 days after Plaintiffs first asserted the existence of a class.

Since removing this case to federal court in November 2001, Defendant has filed three successive motions to dismiss. (Doc. 11, 19 and 31) The last such motion was overruled on November 2, 2004. During this lengthy interlude, for the same reason that Fifth Third did not file an answer, it was not logical or practical to file a motion for class action certification.[3] However, as a result of litigating the motions to dismiss it became obvious, as noted above, that the overriding issue in this case is the proper legal interpretation of Section V.E(1) of the Affiliation Agreement and that this interpretation affects the rights of all 67 former Suburban employees who were participants in the Suburban ESOP as of July 25, 1997, the closing date of the Suburban/Fifth Third merger. In these circumstances, the 120-day requirement of the Local Rule should yield to the discretion of the Court.

In exercising this discretion, Plaintiffs request that the Court consider the

---

[3] Fifth Third complains that Plaintiffs did not file their motion for class certification until after discovery was completed. To the contrary, the parties agreed to extend discovery indefinitely as permitted under Local Rules 7.3 and 37.1. In fact, Fifth Third took the deposition, by agreement, of Chris Henn on June 16, 2005, a month after the formal end of discovery. Henn is a putative class member, but not a named Plaintiff. Thus there was no impediment to Fifth Third undertaking class action discovery.

unusually lengthy pleading phase of this case and the admonition that there should be "an opportunity to present evidence on the maintainability of the class action." In re American Med. Sys., 75 F.3d 1069, 1079 (6th Cir. 1996). In this regard, discovery to develop such evidence in the case at hand did not even commence until after the Court's Order of November 4, 2004, overruling Fifth Third's motion to dismiss the second amended complaint. As soon as discovery was completed, Plaintiffs filed their Rule 23 motion, incorporating factual information gathered in discovery, as well as quotes from the Court's prior Orders relevant to Rule 23 requirements. (Doc. 62)

## II.    FIFTH THIRD IS NOT BEING FRANK WITH THE COURT IN CLAIMING PREJUDICE AND THE NEED FOR ADDITIONAL DISCOVERY PERTAINING TO CLASS ISSUES.

Defendant argues that, despite the three complaints in this case which sought class action relief and two Orders which implicated a class action approach, it refrained from conducting discovery of three potential class action issues: 1) the release issue, 2) the proximity issue, and 3) the issue of Plan participants who became Fifth Third employees after the merger.

### A.    The Release Issue

Even before this lawsuit was filed, counsel corresponded in regard to the release issue, which Fifth Third had raised at that time. See the correspondence of August 21, 2001, in Attachment A. Recently, as part of Plaintiffs' summary judgment motion, the release agreements signed by Suburban's three former officers (Joseph Hutchison, Chris

Henn and John Buchheid) were addressed in the Chris Henn summary judgment affidavit. See ¶¶ 33-4 of the affidavit. (Doc. 76)  As Henn stated therein, each of the three former officers signed identical Severance Agreements, which **did not relate** in any way to their ESOP benefits.  Thus the Termination and Release Agreements signed at the time of the merger, referencing the Severance Agreements, did not release their claims herein.[4]  In addition, copies of the Severance Agreement and the Termination and Release Agreement were attached as Exhibits Q and R, respectively, to Henn's affidavit so that there could be no argument that their ESOP claims in this case had been released.  In its summary judgment response memorandum, Fifth Third did not even mention or attempt to rebut any portion of Henn's affidavit, including the specific paragraphs addressing the release issue.  Therefore the facts as stated by Henn on this issue are undisputed and Plaintiffs are entitled to summary judgment on the release issue.

      Despite Henn's unrebutted affidavit, Fifth Third contends in support of its motion to strike that it needs additional discovery on the release issue to prove that the named Plaintiffs cannot assert class claims.  (Doc. 80, pp. 9-10)  However, in arguing that Hutchison, Henn and Buchheid may have released their claims herein, Fifth Third failed to advise the Court that it had not opposed Henn's summary judgment affidavit

---

[4] The Termination and Release Agreement, prepared by Fifth Third, referenced the earlier Severance Agreement as the "Employment Contract."  See Exhibit R to the C. Henn summary judgment affidavit. (Doc. 76)

6

on this issue. Nor did Fifth Third advise the Court that it had actually paid out ESOP benefits to Hutchison, Henn and Buchheid as part of the Plan termination in May 1999, **two years after** they had signed the Severance Agreements supposedly releasing all claims related to the ESOP.[5] Fifth Third also failed to tell the Court that it had questioned Hutchison, Henn and Buchheid about the release issue in their depositions.

Thus on May 17, 2005, counsel for Fifth Third deposed Buchheid, inquiring about his Termination and Release Agreement, Exhibit 5 to his deposition. (J. Buchheid depo., pp. 14 and 34-5) Similarly, on May 19, 2005, counsel for Fifth Third deposed Hutchison, inquiring about his Termination and Release Agreement, Exhibit 15 to his deposition. In response to counsel's questions, Hutchison acknowledged that he had read the document before he signed it and understood that it released claims based on his "employment agreement." (J. Hutchison depo., pp. 62-3) Fifth Third never asked for a copy of Hutchison's or Buchheid's actual Severance Agreement ("employment contract"). Similarly, when Fifth Third deposed Chris Henn on June 16, 2005, counsel inquired about his Termination and Release Agreement. (C. Henn depo., pp. 75-6)

Thus Fifth Third's motion to strike is based on a dead end issue which was first

---

[5] Fifth Third admits that this post-merger distribution included benefits allocated to Hutchison, Henn and Buchheid on June 30, 1998, thereby conclusively disproving Fifth Third's fabricated release argument. "Fifth Third also made the maximum allowable allocations under the law to the Suburban Federal ESOP participants for the fiscal (*sic*) years ending in June 30, 1997 and June 30, 1998." Defendant's summary judgment response memorandum, p. 12. (Doc. 82)

raised even before this suit was filed, is directly contradicted by the subsequent payment of ESOP benefits to the three releasees in May 1999, was partially addressed by Fifth Third in discovery, and was fully laid to rest in Henn's summary judgment affidavit, to which Fifth Third made no response.  In these circumstances, Fifth Third should not have had the temerity to claim prejudice based on this phony issue.

**B.**     **The Proximity Issue**

Fifth Third also objects to the Rule 23 numerosity requirement on the grounds that discovery could have disclosed that each of the 67 putative class members could file a separate claim, either in a separate lawsuit or by joinder (Fifth Third does not specify), because of their geographical proximity.  Thus, Fifth Third argues, it could have discovered their addresses from the named Plaintiffs, had it known that Plaintiffs were intent on pursuing their class action allegations.  See p. 8 of Defendants' memorandum. (Doc. 80)  As stated above, however, Fifth Third already knows the addresses of the 67 former Suburban employee/participants.  Thus in May 1999, as trustee of the Suburban ESOP, **Fifth Third mailed each of the 67 participants notice that it was terminating the Plan and it distributed their previously allocated benefits to them.  The alleged need for discovery on this issue is therefore another subterfuge.**

Moreover, even if the class members still live in the same Greater Cincinnati area, it is inconvenient to resolve the very same legal question in 67 different claims.  "The representatives only need to show that it is extremely difficult or inconvenient to join all

the members of the class." Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1762, p. 176. The inconvenience standard was also adopted in In re Cincinnati Radiation Litigation, 187 F.R.D. 549, 552 (S.D. Ohio 1999), where the Court held that 80 putative class members were enough to satisfy the numerosity requirement.

C.  **Suburban Employees Hired by Fifth Third**

Fifth Third similarly contests the commonality issue as if discovery could have revealed subclasses with differing interests. However, the supposed antagonism between Suburban ESOP participants who became Fifth Third employees and those who did not is also a non-starter. As the court stated in Bittinger v. Tecumseh Products Company, 123 F.3d 877 (6th Cir. 1997):

> In particular, some class members including Bittinger, signed papers releasing the company from liability when they accepted the partially-funded alternative plans. Not all of the class members signed these releases. Again, however, this difference is not enough to justify rejection of class certification.

Id. at 884. As this Court has already noted, however, the critical date which binds together all putative class members in a community of interests is the Effective Time:

> The class of beneficiaries are the Suburban ESOP participants on the "Effective Time" (defined in Section IX as the end of the day the merger formally closes).

(Doc 46, p. 11). Moreover, the Court has already noted that "the factual record of individual claims is of little importance in resolving this matter." (Doc. 24, p. 14)

To be sure, those Suburban employees who commenced employment with Fifth

9

Third after the Effective Time have the very same claim as those who were not hired by Fifth Third, namely that Fifth Third owes both groups, collectively, an amount which equals the value of Plan assets (Fifth Third stock valued as of May 3, 1999) distributed to non-Suburban Fifth Third employees.[6] That was Fifth Third's obligation as set out in Section V.E(1) of the Affiliation Agreement, which also set out the formula for distributing the money paid by Fifth Third. At any rate, the test under Rule 23 is not complete identity of claims:

> It is important to note that this provision does not require that all the questions of law and fact raised by the dispute be common nor does it establish any quantitive or qualitative test of commonality.

Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1763, pp. 215-17.

### III.    FIFTH THIRD'S MOTION TO STRIKE SHOULD BE TREATED AS A RESPONSE MEMORANDUM TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION.

Stripped of its vitriol and phony discovery issues, Fifth Third's motion and memorandum to strike raise standard defenses to class allegations, the same defenses

---

[6] In accordance with the May 1999 Plan amendment, those former Suburban employees who were Fifth Third employees as of May 3, 1999, did receive an additional 3% allocation of Plan assets from the suspense account. See the Henn affidavit, Exhibit O, p. 2. These participants also received the option, without tax penalty, of transferring their ESOP benefits to the Fifth Third master plan, as did all other non-Suburban Fifth Third employee/participants. Therefore, the 3% group may have an offset issue which could slightly increase the amount due to the non-Fifth Third employee/participants. This insignificant issue, not even mentioned by Fifth Third, should not affect class action certification.

set out in Fifth Third's answer of December 21, 2004 to Plaintiffs' second amended complaint. In response, Plaintiffs' alternative ERISA or breach of contract claims, since both stem from the same interpretation of Section V.E(1) of the Affiliation Agreement, are archetypal class action claims. As Judge Rice observed in <u>Thompson v. Community Insurance Co.</u>, 213 F.R.D. 284 (S.D. Ohio 2002), although claims such as promissory estoppel and fraud may not be appropriate for class certification, contract interpretation claims "present the classic case for treatment as a class action." <u>Id</u>. at 292.

In the case at hand, each putative class member is the intended beneficiary of the parties' intent, as set out in Section V.E(1), that the Plan be maintained through its termination exclusively for the Suburban participants:

> … the parties agree they intend … the ESOP shall be maintained through the date of its final termination for the exclusive benefit of individuals who had become ESOP participants on or before the Effective Time.

As Fifth Third's attorney, Steve Goodson of Keating, Muething & Klekamp, explained: "The plan will continue to cover only former Suburban Federal employees (and no other unrelated Fifth Third employees)." <u>See</u> Exhibit F to the C. Henn summary judgment affidavit, p. 3. (Doc. 76) Yet Fifth Third's interpretation of Section V.E(1) would completely frustrate this intent by providing no compensation to class members for Fifth Third's use of Plan assets. On the other hand, the intent of this document would be fully implemented by paying the class members the value of Plan assets which Fifth Third transferred out of the Plan as part of its employee retention initiative.

11

Fifth Third's director of employee benefits, James Girton, described this transfer of assets in his deposition. As Girton testified, he recommended "cleaning up" the Suburban ESOP by opening it up to a large group of Fifth Third employees as a step in terminating the Plan in order "to move all of the employees to the Fifth Third benefit package." (J. Girton depo., p. 40, ln. 13-14) Thus, according to Girton, the Suburban ESOP was terminated as part of "the overall strategy to get employees on the Fifth Third plan." (p. 68, ln. 1-4) To further this objective, the Fifth Third participants were "given an option to transfer their allocated shares (from the Suburban ESOP) into the Fifth Third plan." (p. 23, ln. 13-16) As described by Girton, therefore, Fifth Third did a two-stage transfer of Suburban ESOP assets into its own plan, triggering the obligation to compensate Plaintiff class members under Section V.E(1) of the Affiliation Agreement.

This issue is the lynchpin whether this case proceeds under the ERISA "prohibited transactions" provisions of 29 U.S.C. § 1106 or, if spared from preemption under the rationale of Penny/Ohlman/Nieman, Inc. v. Miami Valley Pension Corp., 399 F.3d 692, 699 (6th Cir. 2005) (herein "PONI"), as a breach of contract claim.[7] Obviously, there are many more issues in an ERISA case than in a breach of contract case. However, the additional issues in this case related to an ERISA claim do not implicate

---

[7] Please see Plaintiffs' reconsideration and reply memoranda for more thorough discussion of the PONI opinion as related to the issues herein. (Doc. 64 and 84)

the status or conduct of the putative class members. Thus, class action status is appropriate whether or not Fifth Third was acting in a fiduciary capacity in failing to pay Plaintiffs the value of Plan assets distributed to its employees.[8] If not, Plaintiffs have a viable breach of contract action under PONI. Likewise, whether or not the Court may grant equitable relief under Great-West Life & Annuity Insurance Company v. Knudson, 534 U.S. 204, 214 (2002) by imposing the ERISA equivalent of a resulting trust on Fifth Third's corporate assets for engaging in a § 404(a) prohibited transaction, class action treatment is appropriate for both an ERISA prohibited transaction claim and a breach of contract claim. Thus, even when eliminating all the complex facets of an ERISA claim, Plaintiffs' alternative contract claim is most expeditiously resolved in a class action format.

Defendant's objections to class certification are therefore not well taken regardless whether Plaintiffs have a viable prohibited transaction claim under 29 U.S.C. § 1106 or a more straightforward breach of contract claim. As the Court is aware, Defendant has framed most of its objections to class certification as if they were legitimate discovery issues justifying its motion to strike or for a continuance. Since Defendant is merely posturing by casting its objections in this light, Plaintiffs request

---

[8] Thus in PONI, the negligence claim against the non-fiduciary record-keeper was held to fall outside of ERISA preemption, whereas the same negligence claim asserted against the fiduciary record-keeper was held to be preempted, since that Defendant's record-keeping duties were delineated in the ERISA plan itself and not in a separate agreement.

that the Court treat Defendant's motion and memorandum as a response memorandum to Plaintiffs' motion for class certification and thereby deny the motion and proceed with consideration of class certification issues. Regarding the 120-day rule, Plaintiffs request that the Court take into consideration that (1) this case did not get on track until after the Court denied Defendant's third motion to dismiss, and (2) the Sixth Circuit case law governing the preemption issue in this case was only recently issued.

## CONCLUSION

Plaintiffs request that the motion to strike be denied and that the Court enter an Order certifying the within action as a proper class action under Rule 23 of the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/ Richard G. Meyer_____
Richard G. Meyer
William J. Moran, Jr. #0059707
John R. Kirk
*Trial Attorneys for Plaintiffs*
441 Vine Street, Suite 3500
Cincinnati, Ohio 45202-3007
Tel.: 513-241-4110  /  Fax: 513-241-4551
E-mail: rmeyer@dbllaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 17th, 2005, I electronically filed the foregoing Response with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Patrick F. Fischer and Sue A. Erhart of Keating, Muething & Klekamp, P.L.L.

/s/ Richard G. Meyer_____
Richard G. Meyer