# DETERS, BENZINGER & LAVELLE, P.S.C.
### Attorneys at Law

| | | |
|---|---|---|
| CHARLES H. DETERS** | 125 EAST COURT STREET | MICHAEL W. WESTLING* |
| GERALD E. BENZINGER** | SUITE 350 | THOMAS R. SCHOENFELD |
| JOHN C. LAVELLE* | | JED K. DETERS** |
| RICHARD G. MEYER** | CINCINNATI, OHIO 45202 | EDWARD M. ZERHUSEN** |
| JAMES A. DRESSMAN III* | TELEPHONE (513) 241-4110 | R. STEPHEN BURKE* |
| KURT A. PHILIPPS, JR.* | TELECOPIER (513) 241-4551 | WILLIAM J. MORAN, JR. |
| STEPHEN J. BREWER* | | PATRICK R. HUGHES* |
| ROBERT M. HOFFER** | | DAVID W. BURLEIGH* |
| JOSEPH A. CLEVES, JR.* | 723 DAYTON STREET | RACHEL PAYNE VARDIMAN* |
| ALAN J. HARTMAN* | HAMILTON, OHIO 45011 | JAMES A. DIETZ** |
| ROBERT G. STEVENS** | | KELLY A. SCHOENING*† |
| DANIEL T. MISTLER** | TELEPHONE (513) 868-3663 | JEREMY J. DETERS* |
| DAVID V. KRAMER** | TELECOPIER (513) 868-9848 | S. DOUGLAS FISH** |
| MARK D. GUILFOYLE** | | GARY E. HOLLAND, JR. |
| ELIZABETH GRAHAM WEBER* | | MICHAEL T. BUTLER** |
| MATHEW R. KLEIN, JR.* | OTHER OFFICES | DENNIS P. KENNEDY** |
| | COVINGTON, KENTUCKY | |
| | (859) 341-1881 | JAMES A. DRESSMAN, JR.** |
| | | OF COUNSEL |
| | PLEASE REPLY TO: | * Also admitted in Kentucky |
| | CINCINNATI | ** Admitted in Kentucky |
| | | † Also admitted in Indiana |

August 21, 2001

Mr. Stephen M. Goodson, Esq.
KEATING, MUETHING & KLEKAMP, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

    Re:    <u>Joseph Hutchinson, et al. v. Fifth Third</u>

Dear Steve:

    This letter is in response to your correspondence dated July 25, 2001 regarding the above-referenced matter. Apparently, Fifth Third Bancorp ("Fifth Third") now asserts that Paragraph 5 of the Termination and Release Agreements ("Termination Agreements") signed by Messrs. Hutchinson and Buchheid would somehow preclude the class action we are contemplating. We strongly disagree. The release contained in Paragraph 5 of the Termination Agreements does not apply to or in any way preclude the claims our clients now seek to advance.

    Paragraph 5 of the Termination Agreements provides:

> **GENERAL RELEASE AND DISCHARGE.** Except for those obligations created by or arising out of this Agreement, Individual, on behalf of himself and all others claiming under him, hereby covenants not to sue and fully releases and discharges Suburban and [Fifth Third Bancorp] with respect to any further payments to be made to the Individual under the Employment Contract or with respect to the termination thereof or arising out of or in any way connected with the Individual's termination of employment hereunder.

The Termination Agreements were executed on July 25, 1997.

Mr. Stephen M. Goodson
August 21, 2001
Page 2

      The language of Paragraph 5 does not specifically mention any rights to excesses in the ESOP suspense account. Moreover, at the time the Termination Agreements were executed, neither Suburban Bancorp ("Suburban") nor Fifth Third had projected that any surplus would exist in the ESOP suspense account. Likewise, our clients were not aware that any such surplus would exist. It was not until *after* our clients executed the Termination Agreements that they learned of the surplus which we maintain should have been distributed to them in accordance with the Section V. E. (1) of the March 13, 1997 Affiliation Agreement between Fifth Third and Suburban ("Affiliation Agreement").

      Despite Fifth Third's contention, Messrs. Hutchinson and Buchheid did not release or waive their rights to the unknown surplus at the time they signed the Termination Agreements. On July 25, 1997, Messrs. Hutchinson and Buchheid were not aware that there would be a surplus, nor did they know that Fifth Third would not distribute the surplus in accordance with Section V. E. (1) of the Affiliation Agreement. I note that the United States Court of Appeals for the Sixth Circuit has held that "general language of release will not encompass claims of which the releasor was unaware" at the time of the execution of the release. *Forry, Inc. v. Neundorfer, Inc.*, 837 F. 2d 259, 263 (6th Cir. 1988). *See also, Manis v. CSX Transportation, Inc.*, 806 F. Supp. 177, 179 (N.D. Ohio 1992). At the very least, a release that purports to "waive[] rights unknown to the releasor at the time of the signing of the waiver...[will] be particularly scrutinized" to determine what the parties intended. *Adams v. Phillip Morris, Inc.*, 67 F. 3d 580, 584 (6th Cir. 1995) (citing *AM Int'l, Inc. v. International Forging Equip. Corp.*, 982 F. 2d 989 (6th Cir. 1993). Certainly, Fifth Third cannot reasonably contend that the parties to the Termination Agreements intended a waiver and release of rights to a surplus that none of the parties knew existed. Our clients could not have knowingly and voluntarily waived claims or rights that had not yet accrued as of the date of the Termination Agreements.

      Even if the release can successfully be raised against the three individuals who executed them, it is our position that Fifth Third would still be obligated to distribute all of the assets of the ESOP plan, as required by the Affiliation Agreement. What the ESOP trustees do with the distributed assets is not addressed in the Affiliation Agreement, but the obligation to distribute the assets still remains.

      As we have discussed on several occasions, it remains our position that our clients are intended third party beneficiaries of the Affiliation Agreement. Section V. E. (1) of the Affiliation Agreement entitles our clients to relief that they are seeking.

      If you have any questions or comments regarding our position on this issue, please feel free to contact me. It is our sincerest hope that this matter can be resolved amicably and without resort to further legal action. In that regard, please contact me within the next two weeks so that we can move forward to either settle this matter or, if necessary, begin legal proceedings.

Sincerely,

Thomas R. Schoenfeld
Attorney at Law
*(513) 241-5075*
*trs@dbllaw.com*

P.S. In past discussions you agreed to provide a list of the names and addresses of the ESOP participants. Please forward that information.

Q:\APPS\SHARE\Cmv\Jad\letters\SGoodsonLtr2.doc