```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION

Joseph F. Hutchison, et al.,  )
                              )
            Plaintiffs,       ) Case No. 1:01-CV-789
                              )
    vs.                       )
                              )
Fifth Third Bancorp,          )
                              )
            Defendant.        )
```

O R D E R

This matter is before the Court on Plaintiff Joseph Hutchison, et al.'s motion for class certification (Doc. No. 62) and motion for summary judgment (Doc. No. 75) and Defendant Fifth Third Bancorp's motion for summary judgment (Doc. No. 71) and motion to strike Plaintiffs' motion for class certification (Doc. No. 80). For the reasons that follow, Plaintiffs' motion for summary judgment is not well-taken and is **DENIED**; Defendant's motion for summary judgment is well-taken and is **GRANTED**; Plaintiffs' motion for class certification and Defendant's motion to strike Plaintiffs' motion for class certification are **MOOT**.

I. Background

The facts essential to resolution of this lawsuit are undisputed. Plaintiffs contend that Defendant Fifth Third Bancorp ("Fifth Third") breached its fiduciary duty under the Employee Retirement Income Security Act ("ERISA") when it amended the Suburban Banccorporation Employee Stock Ownership Plan ("the ESOP") to allow participation in the plan by Fifth Third

employees. The Court finds no breach of fiduciary duty in this action, and, consequently, Plaintiffs' claims are without merit.

The Court has set forth the factual background of this lawsuit in a series of orders. Doc. Nos. 9, 24, 46, 90. Therefore, only a brief summation of the facts is required.

Fifth Third and Suburban Banccorporation ("Suburban") merged in 1997. At the time of the merger, Suburban maintained a leveraged employee stock ownership plan for the benefit of its employees. Fifth Third did not want to continue the ESOP after the merger was consummated. Suburban on the other hand, wanted to find a way to distribute the excess shares of Suburban stock in the plan to Suburban employees. The parties both recognized, however, that Suburban might not be able to complete the distribution of stock to the participants without violating Internal Revenue Code restrictions on maximum annual contributions. Accordingly, the affiliation agreement between Fifth Third and Suburban provided in pertinent part:

> Suburban Bancorp shall develop a written description and timetable which shall be provided to and approved by Fifth Third and its counsel, setting forth all actions necessary to: (i) make contributions to the Suburban Bancorp, Inc. Employee Stock Ownership Plan ("ESOP") and/or have the ESOP sell unallocated shares under the ESOP to fully repay the ESOP's existing loan, all in compliance with the applicable requirements of ERISA and the Internal Revenue Code, including Code Sections 415 (as interpreted by the IRS in Private Letter Rulings 9648054 and 9426048) and 404; (ii) amend the ESOP to authorize the sale of unallocated shares to repay the loan, to provide for allocation of gain on the sale of unallocated shares in a manner that

complies with the position of the IRS in Private Letter Rulings 9648054 and 9426048 and to make such other changes as may be necessary to implement the termination; (iii) terminate the ESOP; and (iv) submit the ESOP to the Internal Revenue Service for a determination letter that the ESOP, as so amended and terminated, continues to be a qualified retirement plan and employee stock ownership plan under Sections 401(a) and 4975(e)(7) of the Code.  Upon development and approval by Fifth Third of said written description and timetable, Suburban Bancorp shall take such actions as described therein as are approved by Fifth Third. Distribution of the shares and any other assets of the ESOP shall (i) not occur until after the receipt of the foregoing IRS determination letter and (ii) occur prior to the Effective Time only with the express written consent of Fifth Third, which shall not be unreasonably withheld.  In connection with the development of the written description and timetables referred to above and resolution of the ESOP, the parties agree they intend that, to the extent not prohibited by applicable law, the ESOP shall be maintained through the date of its final termination for the exclusive benefit of the individuals who had become ESOP participants on or before the Effective Time.  In furtherance of this intention, such timetable and plan shall include provisions: (a) that Suburban Bancorp may make contributions to the ESOP for the plan year ending June 30, 1997 in the amount accrued in the ordinary course through February 28, 1997; (b) That Suburban may make contributions to the ESOP for the plan year ending June 30, 1997, in the amount accrued and to be accrued in the ordinary course from March 1, 1997, through June 30, 1997, but in no event greater than $42,000 and in no event may any amount be contributed that would create or increase an amount in the ESOP suspense account which, under the written description and timetable referred to above (assuming termination of the ESOP on June 30, 1998) may not be allocated within the limits of Code section 415 (as interpreted by the IRS in Private Letter Rulings 9648054 and 9426048); (c) that no interest shall accrue on the existing ESOP loan after June 30, 1997; and (d) that the ESOP shall terminate no later than June 30, 1998 if at that time there would be no amount in the ESOP suspense account which may not be allocated within the limits of Code section 415 (as interpreted by the IRS in Private Letter Rulings 9648054 and 9426048).  If, upon

>development of the written description and timetable referred to above, the parties agree in good faith that allocation of all or any shares of stock in the ESOP's suspense account would violate the Code's section 415 limitations as interpreted by the IRS in Private Letter Rulings 9648054 and 9426048, Suburban Bancorp shall apply to the IRS for approval (either through an IRS determination letter or other means reasonably acceptable to Fifth Third) of a transaction (the "Transaction") whereby the excess shares (or cash value thereof)(i.e., those shares remaining after fully utilizing the section 415 limits (as interpreted by the IRS in Private Letter Rulings 9648054 and 9426048) either revert to Fifth Third or are transferred to an employee benefit plan of Fifth Third.  If and only if the IRS approves such a Transaction, or Fifth Third otherwise proceeds with the Transaction without IRS approval, Fifth Third will thereafter pay (out of its corporate assets and not plan assets) an equivalent amount (determined using the fair market value of the transferred plan assets at the time of the transfer), reduced by expenses incurred, to individuals who were ESOP participants on the Effective Time and who shall divide such payment pro rata based on their relative ESOP account balances on June 30, 1997.

Doc. No. 71, Ex. 7, Affiliation Agreement § V.E.1.

Suburban, however, was not able to develop a plan in which the remaining shares in suspense could be distributed to the participants.  Nor did Suburban obtain an IRS determination letter approving a reversion of the shares to Fifth Third.  Under this scenario, pursuant to the terms of § V.E.1., Fifth Third would have been required to pay the participants out of corporate assets an amount equal to the fair market value of the shares.  Instead, in order to close the ESOP, Fifth Third amended the plan to make existing Fifth Third employees eligible to participate in the ESOP.  Fifth Third then distributed the remaining shares in

suspense to the participants and terminated the ESOP. Some of the participants rolled over their ESOP distribution to other Fifth Third retirement plans.

Plaintiffs, who are former Suburban employees and original participants in the ESOP, contend that Fifth Third effected a transfer of ESOP assets when it amended the plan to allow Fifth Third employees to become participants. Therefore, Plaintiffs claim that pursuant to § V.E.1. of the Affiliation Agreement, Fifth Third is obligated to pay them the value of the shares distributed out of corporate assets.

As the Court indicated in previous orders, Plaintiffs asserted a variety of state law claims against Fifth Third to recover the value of the stock. The Court, however, found that each of Plaintiffs' state laws claims is preempted by ERISA. Remaining for disposition is Plaintiffs' claim that Fifth Third breached its fiduciary duty under ERISA, 29 U.S.C. § 1104, to maintain the ESOP for the exclusive benefit of the original ESOP participants in accordance with the intent of the Affiliation Agreement. In turn, this claim has two alternative components. Plaintiffs first contend that Fifth Third engaged in a prohibited transaction involving an exchange of property with a party in interest. Alternatively, Plaintiffs argue that the Court should use its equitable powers to create a resulting trust or plan to

carry out the intent expressed in the Affiliation Agreement that the ESOP benefit only its original participants.

The parties have submitted cross-motions for summary judgment on the issue whether Fifth Third has any obligation to pay Plaintiffs for the value of the shares distributed as a result of the ESOP amendments. Additionally, Plaintiffs have filed a motion to certify a class of plaintiffs consisting of the original ESOP participants. Fifth Third has moved to strike Plaintiffs' motion for class certification on the grounds that it was filed out of time.

## II. Summary Judgment Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. United States v. Diebold, Inc., 369 U.S. 654 (1962). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The

Court will not grant summary judgment unless it is clear that a trial is unnecessary.  The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson, 477 U.S. at 250.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Id.

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment.  Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962).  "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial."  First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are

designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence.  Id.; Anderson, 477 U.S. at 250.  Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim.  Id.  Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits."  Accordingly, where the non-moving party will bear the burden of proof at trial on a

dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### III. Analysis

As indicated, Plaintiffs claim that Fifth Third breached its fiduciary duty to the original ESOP participants by amending the plan to allow a distribution of plan assets to new Fifth Third employee-participants.

It is well-established, however, that an employer does not act in a fiduciary capacity when it adopts plan amendments. Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996). Therefore, Fifth Third cannot be held liable for breach of fiduciary duty for the mere fact that it amended the ESOP to allow new participants into the ESOP. Id.; see also Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 442-44 (1999).

Nor did Fifth Third engage in a prohibited transaction with a party or parties in interest when it amended the plan and distributed ESOP assets to new participants. ERISA forbids plan fiduciaries from engaging in transactions with parties in interest. 29 U.S.C. § 1106(a)(1). These so-called prohibited transactions include, and indeed appear to be limited to, those transactions listed in § 1106(a)(1): (A) sale or exchange, or leasing, of any property between the plan and a party in interest; (B) lending of money or other extension of credit

between the plan and a party in interest; (C) furnishing of goods, services, or facilities between the plan and a party in interest; (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title. See id.; Jordan v. Michigan Conf. of Teamsters Welfare Fund, 207 F.3d 854, 858 (6th Cir. 2000)(stating that § 1106 should be interpreted narrowly). Subsections (A) or (D) of § 1106(a)(1) have the most applicability here, but the payment of benefits to participants pursuant to the terms of an otherwise lawful plan is not a violation of § 1106(a)(1). See Spink, 517 U.S. at 892. This remains true even if Fifth Third gained some incidental benefit from the distribution of assets, such as increasing employee compensation without increasing wages. See id. at 893-94. Thus, by distributing ESOP assets to new plan participants, Fifth Third did not execute a prohibited transaction.

      Thus remaining is Plaintiffs' contention that the Court should use its equitable powers to impose a resulting trust on the distributed ESOP shares to effectuate the intent expressed in the Affiliation Agreement that the ESOP was intended to benefit only its original participants. Plaintiffs are limited to obtaining an injunction or other appropriate equitable relief upon demonstrating a breach of fiduciary duty. Allinder v.

Inter-City Prod. Corp. (USA), 152 F.3d 544, 551-52 (6th Cir. 1998). Nevertheless, before the Court can impose a resulting trust, it must still find some breach of fiduciary duty by Fifth Third before such relief can be granted. This record demonstrates, however, that Fifth Third did not breach its fiduciary duty to Plaintiffs. Assuming without deciding that the Affiliation Agreement became one of the terms of the ESOP, and it was the intent of the agreement that the ESOP should benefit only the original participants, Fifth Third still committed no fiduciary breach when it amended the plan as it did. It is undisputed that in the plan document, the employer reserved the right to amend any or all of the plan's provisions at any time. See Doc. No. 71, Ex. 4, Plan Document § 16.1. As the Court noted in Sprague v. General Motors Corp., 133 F.3d 388 (6th Cir. 1998), it is not incompatible, and certainly no breach of fiduciary duty, to extend the promise of a benefit in one hand while reserving the right to withdraw the benefit in the other. Id. at 401. Hence, there was no breach of fiduciary duty by Fifth Third even assuming the plan amendments disregarded the intent allegedly expressed in the Affiliation Agreement.

Again assuming that the Affiliation Agreement became one of the terms of the ESOP, Fifth Third was not obligated to pay Plaintiffs for the distributed suspense shares. Fifth Third was only required to pay Plaintiffs if plan assets reverted to

Fifth Third or were transferred to another Fifth Third plan. The assets clearly did not revert to Fifth Third because they were distributed among the group of employee-participants. Moreover, as Fifth Third correctly points out, amending the plan to allow additional participants does not create a new plan. Hughes, 525 U.S. at 442-43. Lastly, even though some ESOP participants rolled over their ESOP distributions to other Fifth Third retirement plans, this is not considered to be a transfer of plan assets to another plan. See 26 C.F.R. § 1.401(a)(31)-1 (2005); 26 U.S.C. § 414(l). Thus, there was no transfer of plan assets which triggered a duty by Fifth Third to pay Plaintiffs.

<u>Conclusion</u>

In summary, the record demonstrates that Fifth Third did not breach any fiduciary duty owed to Plaintiffs. Accordingly, Fifth Third's motion for summary judgment is well-taken and is **GRANTED**; Plaintiffs' motion for summary judgment is not well-taken and is **DENIED**. As a result of this ruling, Plaintiffs' motion for class certification and Fifth Third's motion to strike Plaintiffs' motion for class certification are **MOOT**. The second amended complaint is **DISMISSED WITH PREJUDICE. THIS CASE IS CLOSED.**

**IT IS SO ORDERED**

Date October 7, 2005                   s/Sandra S. Beckwith
                                       Sandra S. Beckwith, Chief Judge
                                         United States District Court