UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH F. HUTCHISON, et al.** | ) | Case No. 1:01-789 |
| | ) | |
| Plaintiffs, | ) | **(Judge Beckwith)** |
| | ) | **(Magistrate Judge Hogan)** |
| -v- | ) | |
| | ) | |
| **FIFTH THIRD BANCORP,** | ) | **DEFENDANT'S MOTION FOR AN** |
| | ) | **AWARD OF ATTORNEYS' FEES** |
| Defendant. | ) | |
| | ) | |
| | ) | |

Defendant, Fifth Third Bancorp ("Fifth Third") hereby moves for an award of attorneys' fees under the Employee Retirement Income Security Act of 1974 ("ERISA"). Pursuant to 29 U.S.C. § 1132(g), Fifth Third respectfully submits that it is entitled to an award of fees. Fifth Third makes this motion in compliance with Federal Rule of Civil Procedure 54(d). This motion is supported by the attached memorandum and the affidavit of Patrick F. Fischer, which is filed contemporaneously herewith.

Fifth Third advises the Court that Fifth Third has offered to Plaintiffs not to file this motion and instead to work out a much lower amount for attorneys' fees and costs if Plaintiffs would agree not to prolong this case by filing an appeal or other post-trial motions with this Court. Plaintiffs have rejected Fifth Third's offer, thus requiring Fifth Third to file this motion to preserve its rights.

       Respectfully submitted,

       /s/ Sue A. Erhart
       Patrick F. Fischer (0039671)
       Sue A. Erhart (0066639)
       Suite 1400
       One East Fourth Street
       Cincinnati, Ohio 45202
       Tel: (513) 639-3929
       Fax: (513) 579-6457
       pfischer@kmklaw.com
       serhart@kmklaw.com
       Attorneys for Defendant,
       Fifth Third Bancorp

OF COUNSEL:

KEATING, MUETHING & KLEKAMP, P.L.L.
Suite 1400
One East Fourth Street
Cincinnati, Ohio 45202
(513) 579-6400

## MEMORANDUM IN SUPPORT

**I.     INTRODUCTION**

On October 7, 2005, this Court issued an Order granting Defendant Fifth Third's motion for summary judgment and denying Plaintiffs' cross motion for summary judgment. (A copy of the Order is attached hereto as Exhibit A). On that same day, this Court entered judgment in Fifth Third's favor, terminating this case. Having prevailed in this ERISA action, Fifth Third now moves for an award of its attorneys' fees pursuant to section 502(g) of ERISA, codified at 20 U.S.C. § 1132(g).

**II.    DISCUSSION**

Fifth Third is well aware that many courts are reluctant to impose fee awards on individuals who lose a case to large corporation. Fifth Third itself shares in this reluctance. After thoughtful consideration, however, Fifth Third files this motion for attorneys' fees, because in this specific case, an award of fees is more than justified given the complete lack of merit in the Plaintiffs' position as well as the need to deter similarly situated plaintiffs – and their counsel – from filing such suits in the future. Fifth Third respectfully requests that the Court grant this motion, awarding Fifth Third its reasonable and necessary fees in defending this litigation.

    **A.     Fifth Third Submits This Motion In Compliance With Rule 54.**

Federal Rule of Civil Procedure 54(d) provides the guidelines for a motion for an award of attorneys' fees. Rule 54(d) contains several requirements: (1) first, the request for fees must be made by motion; (2) second, the motion must be filed within 14 days after entry of the judgment; (3) third, the motion must identify the statutory or other legal basis for an award of fees; and (4) fourth, the motion must provide a fair estimate of the fees sought.

Fifth Third is in full compliance with Rule 54. It has filed this motion within 14 days after this Court entered judgment in favor of Fifth Third. To support the amount of fees sought,

Fifth Third attaches to this motion (as Exhibit B) an affidavit of its counsel, Patrick F. Fischer, detailing the fees incurred.  And, as discussed below, the legal authority clearly supports Fifth Third's request for fees.

### B.     ERISA Gives The Court Discretion To Award Attorneys' Fees.

ERISA states that "[i]n any action under this subchapter . . ., the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g).[1] This language has been interpreted by the Sixth Circuit as granting "substantial discretion" to the district court to grant or deny a request for attorney fees in an ERISA action.  Jordan v. Michigan Conf. of Teamsters Welfare Fund, 207 F.3d 854, 860 (6th Cir. 2000); see Schwartz v. Gregori, 160 F.3d 1116, 1119 (6th Cir. 1998).

As a general rule, a reasonable attorneys' fee should be awarded to the party who prevails in an ERISA action.  See, e.g., Fase v. Seafarers Welfare and Pension Plan, 589 F.2d 112 (2d Cir. 1978); Huge v. Reid, 468 F. Supp. 1024 (N.D.Ala.1979); Huge v. Maximeadows Mining Co., 459 F. Supp. 267 (N.D.Ala.1978); Carter v. Montgomery Ward & Co., 76 F.R.D. 565 (E.D.Tenn.1976).  Moreover, the courts have adopted a multi-factor test to assist a court in determining whether an award of attorneys' fees is warranted.  Those factors are:  (1) the degree of the opposing party's culpability; (2) the ability of the opposing party to satisfy the award; (3) whether such an award would deter similar parties from acting in like fashion in the future; and (4) the relative merits of the parties' respective position.  These factors should be used flexibly, with no single factor being dispositive of the request for fees.  Firestone Tire & Rubber Co. v. Neusser, 810 F.2d 550, 558 (6th Cir. 1987).[2]

---

[1] Separately, Fifth Third filed its Bill of Costs; this motion only seeks recovery of Fifth Third's attorneys' fees.

[2] In some cases, the courts refer to a "five-factor" test for determining whether an award of fees is appropriate.  The fifth factor is "whether the party requesting fees sought to confer a common benefit on

### C. An Award Of Fees Should be Issued In This Case.

#### 1. Plaintiffs' Culpability In Pursuing This Litigation

Fifth Third notes at the outset that this factor gauges the degree of culpability of the party who is found to be at fault. In the present case, this Court determined that defendant Fifth Third was not at fault; thus an inquiry into culpability may seem unwarranted. Given that there was a finding of no liability in this case, Fifth Third asserts that the Court should instead examine the Plaintiffs' culpability in pursuing a case in which no liability was found.

In order to understand Plaintiffs' culpability for pursuing this litigation, the Court must first understand the tortured history of the case.[3] As the Court is well aware, the gist of Plaintiffs' allegations was that Fifth Third had effected a "transfer" of plan asset and thus was required to make a distribution to the former members of the Suburban ESOP. That position has been shown to be wholly without merit. Significantly, prior to the commencement of this litigation; Fifth Third advised Plaintiffs of the lack of legal authority for their position. Plaintiffs demanded distributions from Fifth Third and – as early as August of 1999 – Fifth Third's counsel, Stephen Goodson, thoroughly explained the fallacy of Plaintiffs' legal position:

> "In your letter, you again state that the assets of the ESOP 'have been merged into other retirement plans of Fifth Third.' You go on to state that it was agreed in the Affiliation Agreement that if the Suburban ESOP merged into any other Fifth Third plans after the June 30, 1998 plan year, former Suburban employees would be paid by Fifth Third from corporate assets the value of the plan assets that were not allocated to Suburban employees.
>
> In response to these assertions, please note that the Suburban ESOP was *not* merged into any other plan of Fifth Third. Instead,

---

all participants or resolve significant legal questions regarding ERISA." *See* Schwartz v. Gregori, 160 F.3d 1116 (6th Cir. 1998). Given that the Plaintiffs were not successful in the underlying litigation and that it is defendant Fifth Third that is seeking fees, this factor has no application to this case.

[3] Fifth Third will not burden the Court with yet another recitation of the facts of this case, which have been detailed in the many prior filings and summarized by this Court in its October 7, 205 Order granting Fifth Third's motion for summary judgment.

> Fifth Third amended the Suburban ESOP to allow other Fifth Third employees to participate. Perhaps this clarification is sufficient to satisfy you that Fifth Third is not obligated to pay any amount to former Suburban employees. . . . "

(Ex. C, attached hereto.) (Emphasis in original.)[4]

Despite Mr. Goodson's efforts to provide Plaintiffs with a reasoned and accurate rebuttal of their claims, Plaintiffs continued to pursue Fifth Third, demanding payment. This time Mr. Goodson responded with a seven-page letter detailing why Plaintiffs' legal position was incorrect. (Ex. C). Plaintiffs were specifically advised that they themselves bore responsibility for the preparation of the Timeline, which projected that there would be no surplus of shares in the Suburban ESOP. Moreover, Mr. Goodson explained to Plaintiffs that Suburban had never applied to the IRS for a determination letter to approve the distribution of the excess shares. The Plaintiffs were further informed (again) that their argument regarding a "transfer" of assets was baseless. Mr. Goodson summarized: "The IRS did not approve such a Transaction (as Suburban and its counsel did not apply for approval) and Fifth Third did not otherwise proceed with such a Transaction." (Ex. C). Mr. Goodson made clear that Plaintiffs had received all they were entitled to receive from the Suburban ESOP: "Under the terms and intent of the Affiliation Agreement and Agreed Timetable, [Plaintiffs] are entitled to nothing more." Id. Through Mr. Goodson, Fifth Third took considerable effort to understand Plaintiffs' charges, to address those charges, and to follow up when Plaintiffs had further questions about Fifth Third's conduct.

In response to Mr. Goodson's detailed efforts to explain Fifth Third's legal theory, Plaintiffs offered nothing. At no time did Plaintiffs identify a legal theory that would support their claim that Fifth Third acted improperly or that Fifth Third had effected a "transfer" of assets. Despite the inability to articulate any legal theory to support their claim, Plaintiffs

---

[4] Mr. Goodson's letters were attached to the First Amended Complaint, T.d. 15. For the Court's convenience, copies of those letters are attached to this motion as Exhibit C.

nonetheless filed a complaint against Fifth Third in the Hamilton County Court of Common Pleas.  That state court complaint alleged seven causes of action, one of which was a breach of fiduciary duty claim titled as a "Violation of ERISA."  (Ex. A to T.d. 1).  Given this facial invocation of the federal ERISA statute, Fifth Third removed the case to federal court.  (T.d. 1).  In an attempt to deprive this Court of jurisdiction, Plaintiffs then filed a voluntary notice of dismissal of the "Violation of ERISA" claim (which was Count III) and thereafter filed a motion to remand the case to state court.  (T.d. 5, 6).  Fifth Third opposed the motion to remand, arguing that the mere dismissal of the single ERISA claim did not divest this Court of jurisdiction.  Although there were only state law claims left at issue, ERISA still provided jurisdiction under the theory of complete preemption.  (T.d. 7).  This Court agreed with Fifth Third, concluded that ERISA provided jurisdiction, and denied the motion to remand.  (T.d. 9).

Thereafter, Fifth Third filed a motion to dismiss the complaint, which now contained only state law claims that were preempted by ERISA.  (T.d. 11).  In response to the motion to dismiss, Plaintiffs filed their First Amended Complaint, reinstating the previously voluntarily-dismissed Count III, "Violation of ERISA."  (T.d. 15).  This Court granted Fifth Third's motion to dismiss the state law claims, concluding that all of the state law claims were preempted by ERISA.  (T.d. 24).  Plaintiffs then filed a Second Amended Complaint, adding further factual allegations to bolster their claim that Fifth Third breached its fiduciary obligations.  (T.d. 27).  Discovery proceeded, with Fifth Third limiting discovery to the only allegation in the Second Amended Complaint, a claim for breach of fiduciary duty.

During all phases of this lawsuit, Fifth Third made efforts to settle this case, but such efforts were hindered by Plaintiffs' outrageous settlement demands.  Indeed, the amount of damages that the Plaintiffs sought from Fifth Third was wholly unsupportable.  In response to

- 8 -

efforts by Fifth Third to settle this case from the beginning, Plaintiffs demanded "about $2 million" or "above $1.5 million." (Ex. B, Fischer Aff. para. 2). Despite repeated evidence showing that the amount of damages – even if Plaintiffs were able to prove that Fifth Third breached a fiduciary obligation, which it did not – was at most $350,000, Plaintiffs were still demanding a settlement of $1.6 million as late as May and June of 2005. (Ex. B, Fischer Aff. para. 3). Counsel for Fifth Third again rejected that demand and informed Plaintiffs' counsel that such a demand was outrageous. (Ex. B, Fischer Aff. para. 4).

Not until the summer of 2005 – almost four years after the lawsuit was filed and six years after this dispute first arose – did Plaintiffs finally concede that their compensatory damages were no more than $350,000 (the amount of the surplus assets in the Suburban ESOP). (Ex. B, Fischer Aff. para. 5). Had Plaintiffs made this concession earlier in the case and come to the table with a reasonable settlement demand, Fifth Third could have avoided incurring thousands of dollars in fees and could have negotiated a settlement earlier in the case to avoid those fees. Because of Plaintiffs' outrageous and unsupported settlement demands, Fifth Third was forced to litigate this case to conclusion.

Plaintiffs also burdened this Court and Fifth Third with needless motions. Despite well-settled law on federal court jurisdiction over ERISA disputes, Plaintiffs sought to remand this case to state court, causing Fifth Third to incur fees in opposing that motion. And, after discovery was completed and just days before the dispositive motion deadline, Plaintiffs filed a motion asking this Court to reconsider the dismissal of Plaintiff's state law breach of contract claim, seeking to reinstate the state law claims. (T.d. 64). Thereafter, Fifth Third filed a response to the motion for consideration, urging the Court to deny the motion because discovery was complete and Fifth Third already had filed a motion for summary judgment on the only

claim at issue. This Court agreed with Fifth Third and denied the motion for reconsideration. (T.d. 90). And, as indicated above, the Court then granted Fifth Third's motion for summary judgment (denying Plaintiffs' cross motion for summary judgment), entering judgment in Fifth Third's favor.[5]

As the above procedural history makes clear, Plaintiffs themselves made this case more costly than it needed to be by the filing of unsupported motions and filings, not the least of which was the motion to remand and the motion for reconsideration. *See* Crosby v. Bowater, 262 F.Supp. 2d 804, 812 (W.D. Mich. 2003) (finding party culpable for taking unreasonable positions in the litigation). Moreover, Plaintiffs' shifting litigation strategy – dismissing claims only to add them back later and asking the Court to rule on claims already dismissed – also made this case more costly to litigate. Fifth Third, on the other hand, consistently took one, and only one, position in this case: that Plaintiffs were entitled to no further distributions from the Suburban ESOP because neither a reversion nor a transfer had occurred when Fifth Third amended the plan. Notably, Fifth Third made Plaintiffs aware of this position prior to the start of this litigation. Fifth Third pressed this same argument when it filed its motion for summary judgment nearly four years later.

There can be no doubt that Plaintiffs were aware of Fifth Third's legal position – a position that was ultimately vindicated by this Court. Despite their complete understanding of Fifth Third's legal position, Plaintiffs willingly pursed this litigation and refused to engage in realistic settlement negotiations. This factor suggests that Plaintiffs bear culpability for the manner in which this case was handled and should be held responsible for Fifth Third's fees.

---

[5] Yet another example of Plaintiffs' actions making this litigation more costly was the belated filing of Plaintiffs' motion for class certification. (T.d. 62). Despite that the Local Rules require that any such motion be filed within 120 days of the pleading asserting class status, Plaintiffs waited until after discovery was closed – and years after the deadline – to file their class certification motion. Fifth Third incurred significant fees dealing with that motion, which this Court ultimately denied as moot.

### 2.    Plaintiffs' Ability To Satisfy The Fees

Another factor for the Court to consider is Plaintiffs' ability to satisfy a fee award. The two named Plaintiffs in this case are Joseph Hutchison and John Buccheid, both former highly-paid executives of Suburban Bancorporation.[6] Moreover, Mr. Hutchison and Mr. Buccheid were involved in the negotiation of the Affiliation Agreement. If there was any plan participant who understood the legal import of the Affiliation Agreement, it was these two individuals.

In addition, Fifth Third asserts that Plaintiffs' counsel shares some responsibility for the incurrence of fees in this case. Plaintiffs' counsel, the law firm of Deters, Benzinger & Lavelle PSC, should be held jointly responsible for any fee award. Deters, Benzinger & Lavelle had an obligation to explain to Plaintiffs the merit (or lack thereof) of their clients' position and was most certainly responsible for the litigation strategy Plaintiffs employed. It is within this Court's discretion to require Plaintiffs' counsel to share some of the burden of the fees incurred. *See, generally*, Chambers v. Nasco, Inc., 501 U.S. 32 (1991).

Last, Fifth Third notes that there are courts that have held individuals responsible for fees in ERISA cases. For instance, the Seventh Circuit upheld a $160,000 award of attorneys' fees against two doctors who had sued their employer for alleged misstatements relative to a pension plan. *See* Helfrich v. Carle Clinic Assn., 328 F.23d 915 (7th Cir. 2003). The doctors claimed that their employer provided documents that suggested that the doctors could contribute a certain amount to their pension plan, when the plan documents themselves contained a different cap; the doctors sued the employer under section 502(a) of ERISA. The court concluded that the documents did not trump the terms of the plan itself, which contained caps, and therefore there was no breach of a duty under ERISA. Significantly, there was no discussion by the court of

---

[6] If Hutchison or Buccheid claim that they are unable to pay fees, Fifth Third requests that it be permitted to conduct discovery on this limited issue.

"bad faith" and no finding that the claims of the doctors were frivolous. Nonetheless, the court awarded the employer its fees in defending the litigation. The same result is warranted in this case.

### 3. The Deterrence Effect Of A Fee Award

Courts are more than willing to require corporations to pay fee awards when they lose an ERISA case. The courts rationalize that other corporations will be deterred from similar conduct if fees are awarded. This rationale remains true in the case before this Court. Given many courts' propensity to award fees to prevailing ERISA plaintiffs, it appears that ERISA plaintiffs – and their attorneys – have nothing to lose by filing suit against employers and ERISA plans. Participants can pursue ERISA claims – no matter how frivolous – with the expectation that if they prevail, they will be awarded fees. These same plaintiffs also understand that if they lose the case, no court is likely to impose a fee award on them, making the initiation of ERISA litigation a proposition with no downside.[7]

If there was ever a case for the imposition of fees on the ERISA plaintiffs, this is such a case. Throughout this case, Plaintiffs asserted that Fifth Third had effected a transfer of plan assets, yet Plaintiffs offered no legal support for this position. Moreover, the named Plaintiffs were involved in the drafting of the Affiliation Agreement and thus had the opportunity to negotiate a limitation on Fifth Third's actions; they did not. Instead, when Plaintiffs realized that there was additional money in the Suburban ESOP suspense account (money that could not be distributed to them without violating the section 415 limits), they came after Fifth Third seeking payments to which they were not entitled. This conduct should not be sanctioned.

---

[7] This is especially troubling because employee benefit plans are voluntary; employers are not required to create or maintain them. And, if the costs of maintaining such plans escalate because of the costs of litigation such as this suit, employers will be less likely to offer benefit plans to their employees If courts are willing to impose fee awards, both plaintiffs and their attorneys will be more circumspect about filing such suits.

- 12 -

Future plaintiffs will be deterred by an award of fees in this case. Future plaintiffs – and more importantly, their counsel – will carefully weigh their decision to file suit and will no longer assume that the initiation of an ERISA lawsuit is a risk-free proposition without any cost. This factor weighs in favor of the imposition of fees in this case.

### 4. The Relative Legal Merit Of The Parties' Positions

This Court's Order granting Fifth Third's motion for summary judgment evinces the relative legal merit of the parties' respective position. This Court rejected the Plaintiffs' arguments and concluded that Fifth Third had done nothing improper when it amended the Suburban ESOP – a position that Fifth Third has maintained all along. Clearly, there can be no doubt that the legal merit of Fifth Third's position supports an award of fees in this case.

### D. The Amount Of Fees

Attached to this motion as Exhibit B is the affidavit of Patrick F. Fischer, a partner with Keating, Muething & Klekamp, PLL, summarizing the fees billed to and paid by Fifth Third in defending this litigation. The total amount of fees was $206,531.24. (Ex. B, Fischer Aff. para. 6). It is worth noting that this amount does not include the fees incurred before the start of the litigation, when Fifth Third expended great efforts to understand the Plaintiffs' position and to refute their allegations.

As the affidavit states, the rates charges by Fifth Third's counsel are the customary and usual rates for the attorneys who worked on this case and are normal rates for attorneys practicing in the Cincinnati area. (Ex. B, Fischer Aff. para. 7). And, the amount of fees sought by this motion is a total of the fees actually paid by Fifth Third to Keating, Muething & Klekamp. (Ex. B, Fischer Aff. para. 8).

Fifth Third believes that, consistent with Ohio Code of Professional Responsibility D.R. 2-106, these fees are reasonable given the complexity of the issues, the Plaintiffs' shifting

litigation strategy, and the number of motions filed in this case. (Ex. B, Fischer Aff. para. 9). Moreover, Fifth Third believes that these fees are reasonable given the length of time that this case has been pending; the original complaint was filed in 2001. (Ex. B, Fischer Aff. para. 10). Last, should the Court have any questions regarding the fees incurred, Fifth Third would be willing to provide further detail to the Court, including providing redacted invoices detailing the fees incurred.

### III.   CONCLUSION

Fifth Third is well aware that courts are reluctant to impose fee awards on individuals. Fifth Third asserts, nonetheless, that this is a case where an award is imminently justified. For the reasons stated above, Fifth Third respectfully requests that the Court grant this motion, awarding Fifth Third its fees in this case.

Respectfully submitted,

/s/ Sue A. Erhart
Patrick F. Fischer (0039671)
Sue A. Erhart (0066639)
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202
Tel: (513) 639-3929
Fax: (513) 579-6457
pfischer@kmklaw.com
serhart@kmklaw.com
Attorneys for Defendant,
Fifth Third Bancorp

OF COUNSEL:

KEATING, MUETHING & KLEKAMP, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202
(513) 579-6400

- 15 -

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEYS' FEES was served upon Richard G. Meyer and Todd V. McMurtry, Deters, Benzinger & Lavelle PSC, 125 E. Court Street, Suite 950, Cincinnati, Ohio 45202 via the Court's electronic docket, this 21st day of October, 2005

             ___/s/ Sue A. Erhart_____

1524218.1