UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH F. HUTCHISON, et al.** | : | CASE NO. 1:01cv00789 |
| | : | |
| Plaintiffs | : | (Judge Beckwith) |
| | : | |
| v. | : | |
| | : | |
| **FIFTH THIRD BANCORP** | : | |
| | : | |
| Defendant | : | |

PLAINTIFFS' RESPONSE TO MOTION
FOR AN AWARD OF ATTORNEY'S FEES

The Sixth Circuit Court of Appeals has "rejected a presumption" that the prevailing party in an ERISA case is entitled to an award of attorney's fees under 29 U.S.C. § 1132(g)(1). First Trust Corporation vs. Bryant, 410 F.3d 842, 851 (6th Cir. 2005). In Bryant, the Court of Appeals held that the District Court had abused its discretion in awarding attorney fees to a plan trustee. In reaching this decision, the Sixth Circuit applied the five factors first adopted in Secretary of Department of Labor vs. King, 775 F.2d 666, 669 (6th Cir. 1985). These five factors do not represent ironclad rules, but are part of the Sixth Circuit's "flexible approach." Bryant, 410 F.3d at 851.

In brief fashion, these factors are degree of bad faith, ability to satisfy an award, deterrent effect, conferring a common benefit and relative merits. In its supporting memorandum, Fifth Third Bancorp ("Fifth Third") has presented a discussion of these

factors, other than conferring a common benefit, which it admits it did not provide. Plaintiffs' response will focus primarily on the "relative merits" and "degree of bad faith" considerations. Although an award of attorney's fees may have a deterrent effect on frivolous lawsuits, the following discussion of relative merits and bad faith will demonstrate that this lawsuit was not pursued with frivolity. Moreover, the deterrence factor appears to be directed at "deliberate misconduct" which "warrants punishment," as suggested by the Court of Appeals in Foltice vs. Guardsman Products, Inc., 98 F.3d 933, 937 (6th Cir. 1996). There is no reasonable basis for concluding that Plaintiffs engaged in deliberate misconduct warranting punishment.

The "relative merits" and "bad faith" considerations require some discussion of the underlying merits of this litigation. As the Court is aware, discovery in this case disclosed that in May 1999, Fifth Third took the remaining assets in the Suburban Federal ESOP and distributed them to approximately 1,630 of its non-Suburban employees. Plaintiffs contend that, by the terms of the merger agreement between Suburban Federal and Fifth Third, Fifth Third at that time should have paid the Plaintiff class members, 67 former Suburban Federal employees and participants in the ESOP, the value of these assets, approximately $460,000. It is undisputed that Fifth Third **never made any contribution of its own assets** to the Suburban ESOP and had **never reached an agreement** with Suburban Federal that it could use these ESOP assets for its own benefit **without paying for them**. Fifth Third merely took the $460,000 in assets

without any consideration and used them for its own benefit, i.e., as part of a Fifth Third employee retention initiative.

In their summary judgment papers, Plaintiffs based their $460,000 claim primarily upon the deposition testimony of James Girton, Fifth Third's Director of Employee Benefits and Compensation, and an internal memorandum prepared by Fifth Third's legal counsel, Steve Goodson. The Girton deposition and the Goodson memorandum dispel any notion that Plaintiffs engaged in any bad faith in pursuing this action.

Girton testified that Fifth Third simultaneously amended and terminated the Suburban ESOP in May 1999, allowing over 1,600 Fifth Third employees into the Plan, in order to "move all of the employees to the Fifth Third benefit package."[1] This Plan amendment/termination was part of Defendant's "overall strategy to get employees on the Fifth Third plan." Although Defendant could not force its employees into its master benefits plan, the employees were given the option to roll their Suburban ESOP allocations into the Fifth Third Master Plan as part of Fifth Third's employee retention plan and Fifth Third amended its master plan to allow these new participants. As the Court is aware, the merger agreement between Suburban Federal and Fifth Third contemplated that a transfer of assets from the Suburban ESOP to a Fifth Third plan triggered Fifth Third's obligation to pay Plaintiffs for the value of those assets. Plaintiffs

---

[1] Deposition citations by page and line numbers appear in Plaintiffs' summary judgment memorandum filed on July 6, 2005 . (Doc. 75)

3

contend that under the "substance over form" doctrine Fifth Third's use of the ESOP assets constituted a transfer of these assets within the meaning and intent of the merger agreement between Suburban Federal and Fifth Third.[2]

The Steve Goodson internal memorandum, obtained by Plaintiffs through pretrial discovery, summarized the essential provisions of the Suburban ESOP as follows:

> The plan will continue to cover only former Suburban Federal employees and no other unrelated Fifth Third employees.

Goodson never told Girton, as Girton testified in his deposition, that the Suburban ESOP was to remain strictly for the benefit of former Suburban Federal employees. Girton also admitted that he had never read Section V.E(1) of the merger agreement. It was this Section of the agreement which memorialized the parties' intent that only former Suburban Federal employees would obtain benefits from the ESOP (unless of course Fifth Third paid Plaintiffs for its use of the assets).

Although the transfer of plan assets described by Girton does not satisfy the Treasury Regulation definition of a transfer, ERISA plan language is not to be given technical meanings. Instead, plan language must be given its popular and ordinary meaning. Marquette General Hospital vs. Goodman Forest Industries, 315 F.3d 629, 633

---

[2] For a discussion of the meaning of "transfer" under the substance over form doctrine, see Kluener vs. Commissioner of Internal Revenue, 154 F.3d 630 (6th Cir. 1998). See also In re: Elder-Beerman Stores Corporation, 207 B.R. 548, 554 (S.D.Ohio 1997) and Heer vs. Secretary of Health and Human Services, 670 F.2d 653 (6th Cir. 1982).

(6th Cir. 2003) ("ERISA plans should be interpreted according to their plain meaning, in an ordinary and popular sense."); Morgan vs. SKF USA, Inc., 385 F.3d 989, 991 (6th Cir. 2004) (undefined terms must be given their "plain meaning"); and Perez vs. Aetna Life Insurance Company, 150 F.3d 550, 556 (6th Cir. 1998) ("The general principles of contract law dictate that we interpret the Plan's provisions according to their plain meaning, in an ordinary and popular sense.").

     Although not every one of the 1,600 plus Fifth Third employees exchanged their Suburban shares for shares in the Fifth Third Master Benefit Plan, it was certainly Fifth Third's intent, as Girton testified, to effectuate such a transfer as part of an employee retention initiative. Certainly, Fifth Third gave the transfer option to every one of the employees, and it used Suburban ESOP assets to provide this transfer option. Given the unmistakable intent of the merger parties to retain the ESOP for the exclusive benefit of the former Suburban Federal participants (or pay them for Fifth Third's use of plan assets), the document must be construed to effectuate the parties' clear intent and each provision must be construed consistently so that no provision is "rendered nugatory." Armistead vs. Vernitron Corp., 944 F.2d 1287, 1293 (6th Cir. 1991). Plaintiffs contend that construing "transfer" in a technical sense only and overlooking Fifth Third's scheme to transfer Suburban Federal assets to its own Master Benefits Plan is not consistent with established rules of construction.

Under 29 U.S.C. § 1106, "Prohibited Transactions," a fiduciary may not deal with plan assets "in his own interest or for his own account." Such conduct constitutes a *per se* violation of the fiduciary's duty to the plan beneficiaries. *See* Jordan v. Michigan Conference of Teamsters Welfare Fund, 207 F.3d 854, 858 (6th Cir. 2000). Plaintiffs are not complaining about lawful payments made to the non-Suburban employees. Plaintiffs' complaint is rather that Fifth Third did not pay the Suburban ESOP participants for its use of the plan assets. This is the "prohibited transaction," not the allocations of ESOP assets to non-Suburban Fifth Third employees. That this conduct can be broken down into two segments, allocating ESOP shares without paying for them, does not salvage this conduct in Plaintiffs' opinion from the remedial provisions of 29 U.S.C. § 1106.

Although Fifth Third counters that it was not acting in a fiduciary capacity in amending the plan to include 1,630 plus Fifth Third employees, Plaintiffs have always agreed with this contention. In fact, there was no provision in the merger agreement which prevented Fifth Third from so amending the plan. Again, that is not Plaintiffs' complaint. Rather, the fiduciary obligation which Fifth Third undertook was to pay Plaintiffs the value of the assets given gratuitously to non-Suburban Fifth Third employees.

In the alternative, Fifth Third was acting in a non-fiduciary capacity when it used ESOP assets to provide its low-level employees with an equity stake in the bank, but

6

strictly as a party to a merger agreement. In this latter capacity, Fifth Third was not acting as a fiduciary or as a plan sponsor amending a plan. It was simply acting as a party to a contract. Thus, if Fifth Third was merely acting as a party to a contract giving rise to an obligation to pay for plan assets distributed to its own employees as part of an employee retention plan, then Plaintiffs have a non-preempted contract claim under the more restricted version of ERISA preemption recently adopted by the Sixth Circuit. In other words, Plaintiffs contend that they then have a breach of contract claim against a merger partner, not against a traditional plan entity, under <u>Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.</u>, 399 F.3d 692, 697 (6th Cir. 2005).

On two occasions, Fifth Third filed motions requesting that the Court dismiss Plaintiffs' claims as a matter of law under Rule 12(b)(6). On both occasions, the Court refused to do so. *See* Doc. Nos. 24 and 46. In light of the underlying merits of the case and this procedural history, there are no grounds for claiming that Plaintiffs acted in bad faith in pursuing their claims or that there was such relative disparity in the merits of the parties' cases that Plaintiffs should pay Defendant's attorney's fees. In this regard, attorney's fees should not be awarded where the losing parties' position "was no more devoid of merit than that of any other losing litigant." <u>Foltice vs. Guardsman Products, Inc.</u>, 98 F.3d 933, 938 (6th Cir. 1996).

Fifth Third, however, claims that Plaintiffs' settlement demands were too outrageous, until recently, especially since Steve Goodson told them before the lawsuit

7

was filed that they did not have a case. The irony of this argument is that Plaintiffs are basing their case to a large extent on Steve Goodson's internal memorandum, discussed above, which contradicts his pre-litigation correspondence to Plaintiffs. Thus Goodson stated in his letter: "Your position that the ESOP assets were to go only to former Suburban employees was a position Suburban took during negotiations of the Affiliation Agreement. Fifth Third did not agree with this …" Yet his internal memorandum acknowledged just the opposite, namely that the parties had agreed that the ESOP would be maintained strictly for former Suburban employees. There were numerous other outright misrepresentations in the Goodson pre-litigation correspondence. *See* the summary judgment affidavit of Christopher L. Henn, ¶¶ 17-24. (Doc. 76)

In regard to the amount of Plaintiffs' initial settlement demands, exceeding $1 million, the demands were all prefaced with the comment that only Fifth Third knew the value of the assets which it transferred to its own employees. Without providing any documentation, Fifth Third stated that the amount was $350,000. In his deposition, James Girton stated the value was between $200,000 and $500,000. When Plaintiffs were able to obtain the documents themselves through discovery, Plaintiffs for the first time learned that the actual value was approximately $460,000. As Defendant admits, Plaintiffs then made a settlement demand within that range. Thus the settlement demands must be understood in the context of pretrial discovery. Until the Court

overruled the Defendant's second Rule 12(b)(6) motion to dismiss in November 2004, Fifth Third refused to participate in discovery until its motion to dismiss was ruled upon. As a result, Plaintiffs did not obtain any meaningful discovery until December 2004 and, even then, Fifth Third protested that it was not able to locate many of the documents pertaining to the Suburban ESOP.

In sum, Defendant's grounds for an award of attorney's fees does not meet the factors adopted by the Sixth Circuit for such an award and therefore, if the Court opts to decide this motion while Plaintiffs' appeal is pending, it ought to be denied.

Respectfully submitted,

s/ Richard G. Meyer
Richard G. Meyer
William J. Moran, Jr.
John R. Kirk
Deters, Benzinger & LaVelle, P.S.C.
207 Thomas More Parkway
Crestview Hills, Kentucky 41017
(859) 341-1881
(859) 341-1469 (Fax)
E-mail: rmeyer@dbllaw.com
*Trial Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 11th, 2005, I electronically filed the foregoing Response with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Patrick F. Fischer and Sue A. Erhart of Keating, Muething & Klekamp, P.L.L.

s/ Richard G. Meyer