# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH F. HUTCHISON, et al.** | ) | **Case No. 1:01-789** |
| | ) | |
| **Plaintiffs,** | ) | **(Judge Beckwith)** |
| | ) | **(Magistrate Judge Hogan)** |
| -v- | ) | |
| | ) | |
| **FIFTH THIRD BANCORP,** | ) | **DEFENDANT'S REPLY** |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| **Defendant.** | ) | **MOTION FOR AN AWARD OF** |
| | ) | **ATTORNEYS' FEES** |

Defendant Fifth Third Bancorp ("Fifth Third") files this reply in support of its Motion for an Award of Attorneys' fees.

## I.   INTRODUCTION

Plaintiffs argue that they are not liable for the attorney fees of Fifth Third by merely rehashing certain parts of this litigation. In so doing, Plaintiffs ignore this Court's decision that no "transfer" occurred from the Suburban ESOP to a Fifth Third Plan, which was the position Fifth Third took years ago before this litigation commenced. Plaintiffs further ignore this Court's rebuff of Plaintiff's unmeritorious argument that *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692 (6th Cir. 2005), somehow changed ERISA law in the Sixth Circuit and that the case is applicable to this litigation. Plaintiffs are either incapable of understanding the applicable law or, more likely, Plaintiffs hope that by continually pushing this litigation they will swindle Fifth Third into paying an unjustified settlement. It is this same attitude and legal strategy that created this case's tortured litigation history, that wasted Fifth Third's and this Court's time and money, and that requires deterrence of similar future conduct by other plaintiffs and their counsel.

Fifth Third's Motion for Attorneys Fees pursuant 20 U.S.C. § 1132(g) should be granted because Plaintiffs assumed untenable positions throughout the course of this litigation. Plaintiffs assumed those positions despite Fifth Third's repeated pre-litigation advice that Plaintiffs' postures were without legal or factual bases.

## II.    PLAINTIFFS ACTED WITH DELIBERATE MISCONDUCT, WARRANTING PUNISHMENT IN THE FORM OF ATTORNEY FEES

Plaintiffs contend in their opposition memorandum that deterrence is not warranted in this case because Plaintiffs did not partake in deliberate misconduct warranting punishment. Opposition Memorandum, p. 2, (T.d. 97), citing *Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 937 (6th Cir. 1996). They attempt to support this argument on three indefensible grounds: (1) that the law supports Plaintiffs' legal theories; (2) that the complaint was not dismissed for failure to state a claim; and (3) that Plaintiffs' legal theories and outrageous settlement demands of $1.5 to $2 million dollars were never reasonable, even in light of Plaintiffs' misconstruction of Mr. Goodson's April 27, 1999 memorandum.

As demonstrated below, none of these factors justifies Plaintiffs' repetitive motion practice, baseless legal strategy, and outrageous settlement demands. Plaintiffs' repetitive filing of unsupported motions made this case much more costly than it ever should have been; their baseless motions to remand and to reconsider are just two examples. Further, Plaintiffs' shifting litigation strategy and their history of dismissing claims, reasserting those dismissed claims, and asking the Court to rule on claims already dismissed, exponentially inflated Fifth Third's defense costs. No matter what Plaintiffs argue, however, Fifth Third fails to comprehend how Plaintiffs excuse the fact that, by their conduct in this case, they cost Fifth Third more than $200,000 in defense costs for a meritless lawsuit that, (even assuming that Plaintiffs had a viable claim) at most could have shown damages only worth $500,00: $350,000 in compensatory damages, plus

possible attorneys' fees and costs. This number is certainly far less – by a ratio of 3 or 4 times – than the $1.5 million to $2.0 million Plaintiffs continued to demand into the Summer of 2005. If ever there were a quintessential case requiring a plaintiff and/or his or her counsel to pay defense fees, it is this one.

A.    **As a Matter of Law, Plaintiffs' Claims are Unjustifiable**

Plaintiffs argue that Fifth Third is required to pay Suburban ESOP participants $460,000, even though this Court specifically rejected Plaintiffs' arguments that Fifth Third was required to contribute its own assets to the Suburban ESOP, or that it effected a "transfer" when some Suburban Federal employees rolled over their interest to a Fifth Third plan. In this Court's most recent Order, dated October 7, 2005, the Court found that Fifth third did not act in its fiduciary capacity by adopting a plan amendment, nor did it engage in any prohibited transaction. Order, 10/7/05, pp. 9, 11 (T.d. 91). The Court further found that "there was no transfer of plan assets which triggered a duty by Fifth Third to pay Plaintiffs." *Id.* at p. 12.

Fifth Third fails to understand how Plaintiffs' arguments rebut the reality that Plaintiffs proceeded in bad faith. Before Plaintiffs filed their Complaint, Fifth Third repeatedly advised Plaintiffs of the groundlessness of their legal arguments. Plaintiffs ignored these arguments and, instead, sued Fifth Third. Then, Plaintiffs raised and re-raised the same issues, forcing Defendant to brief and re-brief the same issues throughout the course of litigation. Raising these issues again now, after all of their claims have been dismissed with prejudice on summary judgment, exemplifies why Fifth Third is entitled to fees. It is this type of repetitive argument – the rehashing of issues already decided – that has caused this litigation to continue unnecessarily for nearly five years, costing Fifth Third nearly a quarter of a million dollars in defense costs. Further, if Plaintiffs had not repeatedly demanded a settlement amount that tripled and/or quadrupled the maximum amount Plaintiffs' could ever hope to recover – if they had a claim –

Fifth Third would not have incurred these legal fees. Fifth Third's legal fees should be reimbursed, in whole or in part, because Plaintiffs caused extensive and unnecessary litigation.

**B.    The Mere Fact that Plaintiffs' Sole ERISA Claim was Not Dismissed Pursuant to 12(b)(6) Does Not Justify Plaintiffs' Motion Practice and Litigation Strategy**

Plaintiffs further justify their actions by arguing that their claims must be valid because this Court did not dismiss Plaintiffs' ERISA claim pursuant to Federal Rule of Civil Procedure 12(b)(6). By making this argument, Plaintiffs disregard the legal standard applied to such a motion.[1] A motion to dismiss for failure to state a claim upon which relief can be granted tests whether, as a matter of law, a plaintiff is entitled to the legal relief he seeks. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). Only if it appears that a plaintiff can prove no set of facts upon which relief can be granted, the complaint should be dismissed. *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993). This Court's earlier decisions not to dismiss Plaintiffs' claims, because the face of the Complaint *appeared* to suggest facts in support of their claims, does not support Plaintiffs' argument denying their responsibility for Fifth Third's legal fees. As history has proven, after lengthy and costly discovery was completed, Plaintiffs could not provide any facts to support their claims under the law.

Any potential plaintiff can draft a complaint to survive dismissal under Rule 12, but that does not justify Plaintiffs' conduct in filing and handling this litigation. Plaintiffs filed their Complaint despite the fact that Fifth Third representatives met with Plaintiffs prior to the lawsuit,

---

[1] Plaintiffs are notorious for misrepresenting facts and law throughout this litigation, which in turn increased the costs. For example, in their opening paragraph to their Opposition Memorandum to this Motion for Attorneys Fees, Plaintiffs cite *First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005), to support their argument that a District Court abuses "its discretion in awarding attorney fees to a plan trustee." However, Plaintiffs ignore that the plan trustee in that case was not awarded fees because it acted in bad faith and with culpable conduct. *Id.* at 851. In fact, the Court noted that the plan trustee – like the Plaintiffs in this case – engaged in vexatious litigation. *Id.* at 853. This is yet another basis to award Fifth Third its fees.

presented the facts in a manner consistent with the Court's holding, and asked Plaintiffs not to bring suit and cause unnecessary attorney fees for each party. Fifth Third also sent two lengthy letters, authored by Mr. Goodson, which outlined the same issues discussed during that meeting. Utilizing that information, Plaintiffs should had performed a reasonable investigation of the law and facts. Through such an investigation, Plaintiffs would have discovered what more than four years of litigation and discovery confirmed: that no legal grounds for suit existed. Thus, an award of attorneys' fees to Fifth Third is appropriate.

C.    **Plaintiffs Refused to Observe Fifth Third's Repeated Advisement on the Existing Law and Made Outrageous Settlement Demands Throughout the Course of Litigation**

Throughout the course of litigation, Fifth Third repeatedly attempted to resolve the case extra-judicially. During the time Mr. Schoenfeld represented Plaintiffs, Mr. Fischer discussed settlement with him on several occasions. Affidavit of Patrick Fischer in Support of Reply in Support of Motion for Attorneys' Fees ("Fischer Aff."), ¶ 1. Plaintiffs' counsel demanded around $2 million, later saying his clients might settle for $1.5 million. *Id.* ¶ 2. Mr. Fischer consistently responded that, even if Plaintiffs' liability theory was correct, based upon the number of shares involved in the litigation and the highest possible price of the Fifth Third shares, the total damages would not equal more than $350,000, absent attorneys' fees. Fischer Aff., ¶ 3. Even if Plaintiffs were correct legally and factually, the amount recoverable could never exceed $500,000. *Id.* After new lawyers were brought in to the litigation to represent Plaintiffs, the new lawyers continued to demand $1.6 million during the Summer of 2005. *Id.* at ¶ 4. Clearly, this case requires an award of damages on behalf of Fifth Third.

**D.      Plaintiffs Misconstrue the Content of Mr. Goodson's Internal Memorandum to Justify their Legal Theories and Outrageous Settlement Demands**

Plaintiffs also attempt to justify their unsupportable legal theories and unreasonable settlement demands of "$2 million" or "above $1.5 million" by misconstruing the content of Steve Goodson's memorandum dated August 22, 1997. Out of context, Plaintiffs point to a single sentence in the entire memorandum that reads: "The plan will continue to cover only former Suburban Federal employees and no other unrelated Fifth Third employees." Opposition Memorandum, p. 4. Not only does this sentence fail to legally support any of their claims, but it mischaracterizes the quotation's meaning because it is cited out of context. When placed in context with the rest of the memorandum, it is clear that this sentence speaks only of the allocations to be made for June 30, 1997, which had not been completed at the time of the memorandum, and the future June 30,1998 allocations. It does not, in any way, address what would occur if a surplus was left in the Suburban ESOP after the June 30, 1998 allocations were made (which the parties had predicted would not occur.) Instead, the memo expresses the hope that there would be *no* surplus left after June 30, 1998:

> It is hoped that there will be sufficient employees left at June 30, 1998 to allow all of the shares held in the suspense account to be used to repay the loan with the remaining shares allocated to the participants within the limits of 415. As soon as all amounts can be allocated out of the suspense account without violating 415, the ESOP is to terminate. (Goodson Memorandum, Aug. 22, 1997, p. 3.)

Clearly, when read in its proper context, this sentence does not, in any way justify Plaintiffs' attempt to legitimize their claims. Further, it does not explain give credence to the $1.5 to $2.0 million demands.

Even more telling of Plaintiffs' mischaracterization of the internal memo are two other excerpts from the memorandum that address Fifth Third's distrust of the Plaintiffs and their lawyers. These excerpts demonstrate Fifth Third's fear that Plaintiffs and their lawyers might

attempt measures to distribute the surplus to ex-Suburban employees, in violation of the
Affiliation Agreement and the Section 415 limits which would have put Fifth Third at great legal
risk:

> During the course of the negotiations it became apparent that [plaintiffs' lawyer]
> was not mindful of any liability to Fifth Third that could result from the actions
> he would propose taking.  Although these Suburban plans are now the
> responsibility of Fifth Third, pursuant to the Affiliation Agreement, [plaintiffs'
> lawyers are] to remain involved with these plans.  Nevertheless, please do not
> assume that they will be looking out for the best interests of Fifth Third in their
> actions. (*Id.* at p. 1.)
>
> ...
>
> Overview of ESOP – This has been a continuing area of controversy with
> Housley Kantarian.  Essentially, they wished to have the ESOP terminated and all
> suspense amounts allocated without regard to the 415 limits.  This would have
> exposed Fifth Third to substantial liability due to disqualification of the plan.
> Ultimately, it was agreed that the plan would be terminated but only in
> compliance with the 415 limits. (*Id.* at p. 4.)

When the entire memorandum is read as a whole, it is clear that Plaintiffs utterly
mischaracterized the quotation and that the quotation does not show even the possibility of
demanding a settlement somewhere in the realm of $1.5 to $2.0 million.[2]

This memorandum, coupled with Mr. Goodson's extensive pre-litigation efforts to
provide Plaintiffs with a reasoned and accurate rebuttal of Plaintiffs' claims, demonstrates just
one more reason why Plaintiffs' actions are indefensible.  At no time before Plaintiffs filed a
complaint and at no time during litigation did Plaintiffs ever identify a legal theory to support
their claim that Fifth Third acted improperly or effected a "transfer" of assets.  Likewise, none of
Plaintiffs' alleged evidence or theories support their outrageous settlement demands that plagued
this litigation from the beginning.

---

[2] And this is yet another of Plaintiffs' attempts to mischaracterize the record.  Plaintiffs take one sentence
– quote it out of context – and then build their entire argument around it.  It is this sort of myopic view of
the evidence that has caused this litigation to drag on unnecessarily for so many years.

## III.    **CONCLUSION**

Despite their complete understanding of Fifth Third's legal position before this action was filed, Plaintiffs chose to and willingly pursed this litigation, refused to engage in any realistic settlement negotiations, unpardonably fostered extended motion practice, and thereby inflated Fifth Third's legal fees.  As such, Plaintiffs are culpable for the manner in which this case was handled and Plaintiffs and/or their counsel should be held responsible for all or some of Fifth Third's fees.  For these reasons and the reasons stated in Plaintiffs' Memorandum in Support of its Motion for Attorneys' Fees, Fifth Third respectfully requests that this Court grant its motion and award Fifth Third its defense fees and costs.

Respectfully submitted,

/s/ Christy M. Nageleisen
Patrick F. Fischer (0039671)
Sue A. Erhart (0066639)
Christy M. Nageleisen (0076600)
One East Fourth Street
Suite 1400
Cincinnati, Ohio 45202
Tel: (513) 639-3929
Fax: (513) 579-6457
pfischer@kmklaw.com
serhart@kmklaw.com
cnageleisen@kmklaw.com
Attorneys for Defendant,
Fifth Third Bancorp

OF COUNSEL:

KEATING, MUETHING & KLEKAMP, P.L.L.
One East Fourth Street
Suite 1400
Cincinnati, Ohio 45202
(513) 579-6400

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF A MOTION FOR AN AWARD OF ATTORNEYS' FEES** was served upon Richard G. Meyer, William J. Moran, and John R. Kirk, Deters, Benzinger & Lavelle, PSC, Thomas More Park, 207 Thomas More Parkway, Crestview Hills, KY 41017-2596 via the Court's electronic docket, this 22nd day of November, 2005.


　　　　　　　　　　　　　　　　　　　　　　/s/ Christy M. Nageleisen

1542942.1