CHARLES H. DETERS**
GERALD E. BENZINGER**
RICHARD G. MEYER**
JAMES A. DRESSMAN III*
ROBERT M. HOFFER*
JOSEPH A. CLEVES, JR.*
ALAN J. HARTMAN*
ROBERT G. STEVENS**
DANIEL T. MISTLER**
DAVID V. KRAMER**
MARK D. GUILFOYLE**
ELIZABETH GRAHAM WEBER*
MATHEW R. KLEIN, JR*
MICHAEL W. WESTLING*
JED K. DETERS**
LEV K. MARTYNIUK†
TODD V. MCMURTRY*
EDWARD M. ZERHUSEN**
R. STEPHEN BURKE*
WILLIAM J. MORAN, JR.*
PATRICK R. HUGHES*
DAVID W. BURLEIGH*



**EXHIBIT A**

JEREMY J. DETERS*
S. DOUGLAS FISH**
RENEÉ L. ALSIP*
DENNIS P. KENNEDY**
CARLA M. VENHOFF**
ELLEN M. HOUSTON*
SUSANNE R. WHERLEY*
CATHY L. STICKELS**
ROBERT A. WHITEHOUSE II*
ANGELA M. GATES*
EMILY A. KIRTLEY*
M. SUZANNE VAN WERT**
PETER A. SCHMID

PIERCE E. CUNNINGHAM
JAMES A. DRESSMAN, JR.**
OF COUNSEL

JOHN C. LAVELLE (1945-2003)
KURT A. PHILIPPS, JR. (1945-2003)

ATTORNEYS AT LAW

3500 Carew Tower
441 Vine Street
Cincinnati, Ohio 45202-3007

Phone (513) 241-4110
Fax (513) 241-4551
www.dbllaw.com
Other Offices
Crestview Hills, Kentucky

* Also admitted in Kentucky
** Admitted in Kentucky
† Also admitted in Indiana

Writers Direct:
Phone: (513) 241-5077
Fax: (513) 241-4551
E-mail: bmoran@dbllaw.com

May 23, 2005

**VIA E-MAIL:  Pfischer@kmklaw.com & REGULAR MAIL**

Patrick F. Fischer, Esq.
Keating, Muething & Klekamp, PLL
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio  45202

  Re: Joseph F. Hutchison, et al. vs. Fifth Third Bancorp

Dear Pat:

  This is in response to your request for a settlement demand in the Suburban ESOP case. Please disregard Bill's letter of May 20, 2005, for the reasons we discussed after Jim Girton's deposition. The within demand is being made on behalf of the 67 former Suburban employees who were ESOP participants as of the merger date of July 25, 1997. In the next week or so, we will be filing a motion for class certification.

  As you know, Plaintiffs are asserting two claims, the first based upon Section V.E.(1) of the Affiliation Agreement and the second based upon Fifth Third's breach of its fiduciary duty to the Plan which it inherited from Suburban Federal. Both claims are based on the agreed-upon intent of both merger parties to restrict the ESOP to former Suburban employees/participants. As your Steve Goodson stated in his memo (SU0857-61) of August 22, 1997:

> "The plan will continue to cover only former Suburban Federal employees (and no other unrelated Fifth Third employees)."

Patrick F. Fischer
May 23, 2005
Page 2 of 3

Likewise, the independent auditors' report by Deloitte & Touche (SU0265-73) states:

> "Fifth Third Bank (the "Bank"), as successor to Suburban Federal Savings Bank, maintains the Plan for employees who were previously employed by Suburban Federal Savings Bank."

As part of the merger negotiations, of course, this mutual agreement was memorialized in Section V.E.(1) of the Affiliation Agreement:

> "In connection with the development of the written description and timetable referred to above **and resolution of the ESOP**, the parties agree they intend that, to the extent not prohibited by applicable law, the ESOP shall be maintained **through the date of its final termination** for the exclusive benefit of individuals who had become ESOP participants on or before the Effective Time."

The parties also agreed in the Descriptive Timetable for Termination (the "Timetable") that if the Plan was not terminated by June 30, 1998, the ESOP would be terminated "as soon as is practicable" in accordance with the above Section of the Affiliation Agreement. According to your Responses to Plaintiff's Requests for Admission, Fifth Third is acknowledging that it approved this Timetable. Obviously, only Fifth Third would have known if the Timetable was realistic for termination by June 30, 1998, since only Fifth Third knew the salary amounts of Suburban employees it intended to hire. As Judge Beckwith has already ruled, separate documents such as the Affiliation Agreement and the approved Timetable may be used in interpreting the Suburban ESOP. See, e.g., Boyer v. Douglas Components Corp., 986 F.2d 999, 1005 (6th Cir. 1993), and Nester v. Allegiance, 162 F.Supp.2d at 904.

As you know, it is Plaintiffs' contention that in 1999 Fifth Third violated the agreed-upon intent of the parties when it transferred the plan as of May 3, 1999, into a Fifth Third plan benefiting some 1,630 Fifth Third employees. This transfer occurred when Fifth Third allowed its employees to join the Plan as of that date in order to allow them the opportunity to roll over Plan assets into a Fifth Third plan. As Mr. Girton explained, this was part of an employee retention initiative.

Fifth Third understandably contends that this transaction does not meet the technical definition of a transfer under the Internal Revenue Code. However, whether the substance of a transaction, as opposed to the mere form, is in reality a transfer must be determined from all the surrounding facts and circumstances. Kluener v. Commissioner of Internal Revenue, 154 F.3d 630, 637 (6th Cir. 1998). See also Heer v. Secretary of Health and Human Services, 670 F.2d 653 (6th Cir. 1982), applying the substance over form doctrine in a Social Security case. In this case, Mr. Girton's testimony strongly supports the contention that the transfer occurred.

Moreover, even if the 1999 amendment was not a transfer in substance (which it assuredly was), Fifth Third breached its fiduciary duty to the Plan and its 67 Suburban employees/participants by diluting their exclusive interest in the Plan. The exclusive interest of

Patrick F. Fischer
May 23, 2005
Page 3 of 3

the participants was explicitly made part of the Plan by means of the 1997 amendment limiting the Plan to these participants. When Fifth Third reversed this amendment in 1999, it engaged in a conflict of interest by allowing 1,630 non-Suburban employees to participate in the Plan. That Fifth Third owed an exclusive fiduciary duty to the 67 Suburban employees is evident from the recital provision of the Fifth Third's first 1999 amendment:

> "WHEREAS, the Fifth Third Bank (the "Employer") as successor to Suburban Federal Savings Bank, maintains the Suburban Bancorporation, Inc. Employee Stock Ownership Plan (the "Plan") for employees who were previously employed by Suburban Federal Savings Bank"

Shortly after this amendment, acting in its own self-interest and contrary to the interest of the former Suburban employees, Fifth Third substantially reduced their interest. Thus, according to Fifth Third's Form 5500 for the plan year ending June 30, 1998, the value of the plan assets was $3,075,869, which equates to approximately 49,340 Fifth Third shares. The Suburban employees should have received all of these shares. Instead, they did not receive some 6,530 of these shares, which had a value of approximately $468,000 as of May 3, 1999.

Under either of the above two alternative theories of recovery, therefore, Plaintiffs will be seeking judgment in the amount of $468,000, plus prejudgment interest of approximately $120,000, which was calculated at a rate of 3.5% over six years. The interest calculation is based upon the average Constant Maturity Treasury Rate for those years. This rate was approved for an award of prejudgment interest under ERISA in Ford v. Uniroyal Pension Plan, 154 F.3d 613, 616 (6th Cir. 1998).

Plaintiffs also believe that the District Court will award attorney fees in accordance with the five-factor analysis in Gettings v. Building Laborers Local 310 Fringe Benefits Fund, 349 F.3d 300, 310 (6th Cir. 2003). To date, for purposes of settlement only, our attorney fees are approximately $90,000. If the case is not settled, we believe the Court would adjust the fees upward by our current billing rates, rather than historic rates over the last five years of this case. See Barnes v. City of Cincinnati, 401 F.3d 729 (6th Cir. 2005), citing Missouri v. Jenkins, 491 U.S. 274, 283 (1989).

Altogether, therefore, Plaintiffs will be seeking $678,000 through today's date on behalf of the putative class members. The named Plaintiffs are willing to settle their damages, prejudgment interest and attorney fee claims for the total amount of $650,000. Please provide me with Fifth Third's response at your earliest convenience.

Very truly yours,

Richard G. Meyer

RGM/jbh