UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
CASE NO. 05-4389

JOSEPH F. HUTCHISON, etc., et al.,                 *Plaintiffs-Appellants*

v.        On Appeal from the United States District Court
for the Southern District of Ohio
Western District
at Cincinnati

**FIFTH THIRD BANCORP**                 *Defendant-Appellee*

### PETITION FOR PANEL REHEARING

Come now the Plaintiffs-Appellants (hereinafter "*Hutchison*"), by counsel, pursuant to Federal Rule of Appellate Procedure 40, and submit the within Petition for Panel Rehearing of the Opinion and Judgment (hereinafter the "*Opinion*") decided and filed on November 30, 2006, in favor of Defendant-Appellee (hereinafter "*Fifth Third*").

                                         Richard G. Meyer
                                         John R. Kirk
                                         Deters, Benzinger & LaVelle, P.S.C.
                                         207 Thomas More Parkway
                                         Crestview Hills, Kentucky 41017
                                         Tel.: (859) 341-1881 Fax: (859) 341-1469
                                         *Attorneys for Plaintiffs-Appellants*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 14th day of December 2006, a copy of the within Petition for Panel Rehearing was served by ordinary U.S. mail, postage prepaid, upon the Attorney for Defendant-Appellee, Patrick F. Fischer, One East Fourth Street, Suite 1400, Cincinnati, OH. 45202.

                                           /s/ Richard G. Meyer
                                           Richard G. Meyer

I.   THE LYNCHPIN CASE WHICH THE OPINION RELIES UPON IS A "COMPLETE" PREEMPTION CASE THAT DOES NOT ADDRESS THE "ORDINARY" PREEMPTION ISSUES IN THE CASE AT HAND.

The Opinion relies heavily on Aetna Health, Inc. v. Davila, 542 U.S. 200 (2004), but that case does not address ordinary or defensive preemption under the "related to" language of 29 U.S.C. § 1144(a). Instead, Davila is a "complete" or removal jurisdiction case based on ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B). Thus, writing for a unanimous Court, Justice Thomas observed:

> We hold that the causes of action are completely pre-empted and hence removable from state to federal court.

Davila, 542 U.S. at 204. Instead of construing the "related to" language of §1144(a), the complete preemption issue depends on whether the plaintiff's state law claim comes "within the scope" of ERISA §502(a)(1)(B):

> We hold that respondents' state causes of action fall 'within the scope of' ERISA §502(a)(1)(B) and are therefore completely pre-empted by ERISA §502 and removable to federal district court.

Davila, 542 U.S. at 214. The Sixth Circuit has emphasized the importance of distinguishing between complete preemption under 29 U.S.C. §1132(a)(1)(B) and ordinary or defensive preemption governed by 29 U.S.C. §1144(a):

> The Court in Van Camp did not keep complete preemption and ordinary preemption doctrine separate and distinct. It mistakenly allowed removal in a case not covered by §1132(a)(1)(B) and only arguably covered by §1144(a).
>
> Thus the Van Camp case must be overruled.

2

Warner v. Ford Motor Co., 46 F.3d 531, 535 (6th Cir. 1995), overruling Van Camp v. AT&T Information Systems, 963 F.2d 119 (6th Cir.), cert. denied, 506 U.S. 934 (1992). Relying upon Warner, a recent New York District Court opinion noted this distinction:

> Complete preemption is sufficient to confer federal subject matter jurisdiction over a claim, even if that claim is not also subject to conflict (ordinary or defensive) preemption.

Borden v. Blue Cross and Blue Shield of Western New York, 418 F.Supp. 2d 266, 271-72 (W.D. N.Y. 2006). As will be seen in detail, not adhering to the distinction between complete and ordinary preemption resulted in misapplication of controlling ERISA preemption principles to the facts under review.[1]

## II. HUTCHISON'S CLAIM AGAINST FIFTH THIRD FOR ITS BREACH OF THE MERGER AGREEMENT DOES NOT COME WITHIN THE SCOPE OF ERISA.

The Opinion correctly observed that the claim in Davila differs from the claim herein. "We recognize that there are differences between the claim in this case and the claim in Davila." See the Opinion, p. 5. However, the Opinion did not advert to the most essential difference, namely that Davila involves only complete preemption issues for the reason that plaintiff/respondents in that case, unlike Hutchison herein, never asserted an ERISA claim:

> Petitioners removed the cases to Federal District Courts, arguing that respondents' causes of action fit within the scope of, and therefore were completely pre-empted by, ERISA §502(a). The respective District Courts agreed, and declined to remand the cases to state court. Because respondents refused to amend their complaints to bring explicit ERISA claims, the District Courts dismissed the complaints with prejudice.

---

[1] Since Fifth Third did not cite or rely upon the Davila opinion in its preemption arguments below nor in its brief to this Court, this is the first opportunity which Hutchison has had to argue the inapplicability of Davila to his claim under state law, namely that Fifth Third breached section V.E(1) of the merger contract between Fifth Third and Suburban Federal by not paying for the Suburban ESOP assets when it amended the plan in a de facto *transfer* of plan assets to its own plan (the operative word in section V.E.(1) being "transfer").

3

Davila, 542 U.S. at 205. The upshot of Davila was that plaintiff/respondents' state law claims, if valid, could have been pursued under ERISA because "interpretation of the terms of respondents' benefit plans forms an essential part of their (state law) claim." Id. at 213.[2]

Just the opposite is true in the case at hand, i.e., Hutchison did assert, *as an alternative to his breach of contract claim*, that Fifth Third violated its fiduciary duties under ERISA. Ultimately, however, the District Court granted Fifth Third's motion for summary judgment on the ERISA claims. (R. 91, Order Granting Defendant's Motion for Summary Judgment, JA 163-175) Indisputably therefore, and in contrast to plaintiff/respondents in Davila, Hutchison had no remedy available under ERISA. By virtue of having no such remedy, Hutchison arguably does have a non-preempted state law remedy. As Judge Beckwith recently observed:

> All parties agree, however, that the ultimate test for preemption is whether the remedy sought in a common-law claim is also available through ERISA. If the remedy sought is available, the claim must be preempted, but if the remedy sought is not available, the claim may proceed.

Ball v. Transcom Employment Co., 2006 WL 462435, *5 (S.D. Ohio 2006), citing Lion's Volunteer Blind Industries v. Automated Group Administration, Inc., 195 F.3d 803, 808 (6th Cir. 1999). See also Perry v. P*I*E Nationwide Inc., 872 F.2d 157, 162 (6th Cir. 1989) ("preemption should apply to a state law claim only if Congress has provided a remedy for the wrong or wrongs asserted").

---

[2] In asserting his breach of contract claim, Hutchison is not merely "recasting" his breach of fiduciary duty ERISA claim, as suggested in the Opinion (p. 7). To the contrary, the breach of fiduciary duty claim is based on an assertion that Fifth Third had a fiduciary responsibility not to amend the plan as it did, whereas the state law claim assumes that Fifth Third had the right to transfer, by plan amendment, Suburban ESOP plan assets to its own Fifth Third plan. Only in the latter event would Fifth Third be required, under section V.E(1) of the Affiliation Agreement, to compensate Hutchison out of its corporate assets. Thus Davila involved respondents' refusal to pursue judicial construction of their benefit plans, whereas the case at hand involves alternative state and ERISA claims founded on opposing suppositions.

Hutchison had no remedy under the Suburban Federal ESOP because, as the District Court held below, Fifth Third's amendment of the Plan did not involve a fiduciary function ("It is well-established, however, that an employer does not act in a fiduciary capacity when it adopts plan amendments.").[3] Nor did Fifth Third, according to the District Court, engage in a prohibited transaction under 29 U.S.C. §1106(a)(1). (Doc. 91, Order Granting Summary Judgment, pp. 9-10, JA 163-175) The prohibited transaction claim, like the ERISA wrongful plan amendment claim, was also asserted only in the alternative, i.e., only if the Court concluded that Fifth Third breached a fiduciary duty would it be prohibited under ERISA from benefiting from the restructuring of the plan. The District Court concluded otherwise: "This record demonstrates, however, that Fifth Third did not breach its fiduciary duty to Plaintiffs." (Doc. 91, Order Granting Summary Judgment, pp. 9-10, JA 163-175)

In sum, Hutchison's alternative ERISA claims certainly provided a basis for complete preemption under Davila, but resolution of these issues in favor of Fifth Third has no bearing on the merits of Hutchison's claim that Fifth Third breached the terms of the Affiliation Agreement. That Hutchison had no valid ERISA claim, *for the reason that Fifth Third was not acting in a fiduciary capacity*, in fact militates against preempting his state law claim, a claim which actually presumes the propriety of Fifth Third's plan amendment.

---

[3] After pretrial discovery in this case disclosed documented evidence that Fifth Third had expressly rejected Suburban Federal's request that the operative terms of section V.E(1) be included in the Suburban ESOP itself (R. 68, P. Reynolds Depo, pp. 55-8, Ex. 31, JA 214-15 & 579-81), Hutchison abandoned his ERISA wrongful plan amendment claim. Nevertheless, the District Court dismissed this claim in response to Fifth Third's motion for summary judgment. Hutchison's breach of contract claim, the very opposite of his abandoned ERISA claim, is that Fifth Third's amendment of the plan was entirely proper, but triggered the obligation under section V.E(1) of the Affiliation Agreement to pay for the plan assets "out of its own corporate assets" (as stated in section V.E.(1)).

### III. HUTCHISON'S STATE LAW BREACH OF CONTRACT CLAIM IS NOT BASED UPON ANY INTERPRETATION OF THE SUBURBAN ESOP'S TERMS.

The "complete preemption" holding in Davila was based upon the inescapable fact that the claims therein relied on interpreting the medical benefits plans at issue ("respondents bring suit only to rectify a wrongful denial of benefits promised under ERISA-regulated plans"). See Davila, p. 201. In stark contrast, Hutchison's breach of contract claim is based solely on construing the language of section V.E(1) of the Affiliation Agreement. Hutchison is not contending that section V.E(1) prohibited Fifth Third from transferring plan assets to a Fifth Third plan that benefited only its own, non-Suburban employees.[4] To the contrary, such a transfer is a *sine qua non* of Hutchison's breach of contract claim! Indeed, unless such a transfer occurred, Hutchison and many of the other plaintiff/appellants get nothing (they were no longer plan participants at the time of the amendment). Since, as Hutchison alleges, such a transfer did occur, he is entitled to a share of Fifth Third assets (payable by Fifth Third "out of its corporate assets and not plan assets") as provided in section V.E(1).

The Opinion suggests that, although the breach of contract claim may not require an interpretation of the Suburban ESOP terms (as in Davila), nevertheless "the state-law contract claim would bind fiduciaries to particular choices, thereby functioning as a regulation of the ERISA plan." See the Opinion, p. 4. If by "particular choices" the Court is implying that section V.E(1) somehow prevents or discourages, contrary to ERISA, Fifth Third from amending the ESOP to eliminate the Suburban beneficiaries and replace them with Fifth Third beneficiaries,

---

[4] Thus the state law breach of contract claim and the ERISA breach of fiduciary duty claims were pleaded in the alternative, a completely acceptable approach to litigation. Herlihy Mid-Continent Co. v. Bay City, 293 F.2d 383, 385 (6th Cir. 1961). Indeed, only if Fifth Third's plan amendment was valid (and created a de facto transfer of plan assets) would Hutchison have any claim at all under section V.E(1) of the Affiliation Agreement. This is the opposite of the state law claims in Davila, which depended entirely on construing, to claimants' benefit, the terms of the medical benefits plans at issue in that case.

6

*this is not tying the hands of a fiduciary.* When a plan sponsor amends a plan, he is not acting in the role of a fiduciary. Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996)("Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries."). In fact, ERISA does not address an employer's decision to create a plan or choose the plan's beneficiaries:

> Nothing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan.

Spink, 515 U.S. at 887. Moreover, section V.E(1) is not forcing Fifth Third to do anything.[5] The import of section V.E(1), as construed by Hutchison, is that Fifth Third will, out of its own corporate assets, pay the value of assets which Fifth Third freely chooses to transfer to a Fifth Third plan. Thus section V.E(1) is completely voluntary and has no effect whatsoever on Fifth Third's role as a fiduciary. As a result, there is no analogy to Davila in construing section V.E(1) to require Fifth Third to pay the value of assets which it chooses (in the role of a non-fiduciary employer) to transfer to a plan exclusively benefiting its own non-Suburban employees.

### IV.  THE *DAVILA* OPINION PLAINLY DISTINGUISHED THE SITUATION WHERE, AS HERE, THE CLAIM IS BASED ON A CONTRACT SEPARATE FROM ANY BENEFIT PLAN.

In Davila, Justice Thomas made it clear that a claim dependent upon plan interpretation radically differs from a claim based upon a separate contract:

> So, unlike the state-law claims in Caterpillar, *supra*, respondents' THCLA causes of action are not entirely independent of the federally regulated contract itself.

542 U.S. at 212-14, distinguishing Caterpillar, Inc. v. Williams, 482 U.S. 386 (1987)(suit for

---

[5] Even if Fifth Third had been compelled by section V.E.(1) not to amend the Suburban ESOP in the fashion that it did, such a restructuring of a plan is not a fiduciary event governed by ERISA. Central Laborers' Pension Fund v. Heinz, 541 U.S. 739, 743 (2004)(unless vested rights are destroyed, restructuring a plan falls outside the ERISA ambit). Moreover, Hutchison's interpretation of section V.E(1) is that it permits Fifth Third to amend the plan in any fashion it chooses. However, if its choice amounts to a transfer of plan assets, such a choice triggers the obligation set out in section V.E.(1) that Fifth Third pay the value of the transferred assets.

7

breach of individual employment contract, even if defendant's action also constituted a breach of an entirely separate collective bargaining agreement, not pre-empted by LMRA §301) from Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985)(state-law tort of bad faith handling of insurance claim pre-empted by LMRA §301, since the "duties imposed and rights established through the state tort . . . derive[d] from the rights and obligations established by the contract") and Steelworkers v. Rawson, 492 U.S. 362 (1990)(state-law tort action brought due to alleged negligence in the inspection of a mine was pre-empted, as the duty to inspect the mine arose solely out of the collective-bargaining agreement).

Hutchison's breach of contract claim is based solely on section V.E(1) of the Affiliation Agreement. He personally has no claim whatsoever for benefits under the Suburban ESOP, whether it was properly amended or not. Since, following the merger, he was not hired by Fifth Third, Hutchison's entitlement to ESOP benefits expired before Fifth Third amended the plan.[6] Only employees with service hours in the plan year may participate in an Employee Stock Ownership Plan. That is the most fundamental and essential element of an ESOP. See Chao v. Hall Holding Co., Inc., 285 F.3d 415, 422, n. 4 (6th Cir. 2002) and the generic description of an ESOP at 26 C.F.R. § 54.4975-7(b)(8)(iv).

Thus, even if Fifth Third had not amended the plan to create a de facto transfer of plan assets (as contemplated by section V.E(1)), Hutchison and those other Suburban employee/plan participants not hired by Fifth Third would not have received any of the remaining plan assets. As a result, their state law claim, as recognized in Davila and Caterpillar, based on a contract separate and apart from the ESOP, is not subject to preemption:

---

[6] Fifth Third amended the plan in May 1999. Hutchison and many of the other former Suburban employees/appellants ceased being plan participants as of June 30, 1998, the end of the plan year following the July 1997 merger.

8

> Caterpillar's basic error is its failure to recognize that a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement.

Caterpillar, *supra*, 482 U.S. at 396; Davila, *supra*, 542 U.S. at 212. The Affiliation Agreement at issue herein is a merger document which, like the individual employment contract in Caterpillar, is a source of obligation separate and distinct from the Suburban ESOP.

## V. THE *DAVILA* OPINION MAKES A CLEAR DISTINCTION BETWEEN AN EMPLOYER/PLAN TRUSTEE ACTING IN A FIDUCIARY CAPACITY AND AN EMPLOYER/PLAN TRUSTEE ACTING IN A NON-FIDUCIARY CAPACITY.

The Supreme Court in Davila refused to extend its holding in Pegram v. Herdrich, 530 U.S. 211 (2000) to non-treating HMO physicians who make coverage decisions for plan beneficiaries who are not their patients. "Pegram cannot be read so broadly." 542 U.S. at 218. Under Davila, participants in HMO plans may not sue their physician/plan administrators for malpractice based on coverage decisions. Under Pegram, on the other hand, such participants may sue their treating physicians for malpractice under state law, but may not assert ERISA liability claims against them. This may appear to be a razor-thin distinction, since in both instances physician plan administrators are construing the coverage terms of the HMO. However, it is well-founded on a proper understanding of an ERISA fiduciary, as explained in Pegram.

In Pegram, unlike Davila, removal jurisdiction was not at issue.[7] Rather, in Pegram the dispositive issue was whether the treating physician, an HMO owner/administrator, was in reality

---

[7] "Herdrich does not contest the propriety of removal before us, and we take no position on whether or not the case was properly removed. As we will explain, Herdrich's amended complaint alleged ERISA violations, over which the federal courts have jurisdiction, and we therefore have jurisdiction regardless of the correctness of the removal." Pegram, 530 U.S. at 215, n. 2.

9

wearing two hats, only one of which entails ERISA liability:

> . . . the analogy between ERISA fiduciary and common law trustee becomes problematic. This is so because the trustee at common law characteristically wears only his fiduciary hat when he takes action to affect a beneficiary, whereas the trustee under ERISA may wear different hats.

530 U.S. at 225. Under the ERISA scheme, the analysis of fiduciary duty is not one of *status*, but of *function* in relation to the claim:

> In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

Id. at 227.[8] Since the physician/plan administrator's decision in that case was a mixed treatment and eligibility decision, rather than a pure plan coverage decision, the Court held that ERISA was not applicable to such conduct:

> We hold that mixed eligibility decisions by HMO physicians are not fiduciary decisions under ERISA. Herdrich's ERISA count fails to state an ERISA claim, and the judgment of the Court of Appeals is reversed.

Id. at 237. By the same analysis, in the case at hand Fifth Third was indisputably not wearing its fiduciary hat in relation to the Affiliation Agreement, including section V.E(1) of that Agreement, as it related to the Suburban Federal ESOP, either before or after the merger. To the

---

[8] In Briscoe v. Fine, 444 F.3d 478, 486 (6th Cir. 2006), this Court has recognized that the ERISA fiduciary issue raises a functional, not a status, question: "This court employs a functional test to determine fiduciary status. *See* Hamilton v. Carell, 243 F.3d 992, 998 (6th Cir.2001) (observing that '[t]he Supreme Court has recognized that ERISA 'defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan ···' ') (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 262 (1993)). In addition, several courts have focused on the phrase 'to the extent' in holding that '[f]iduciary status ··· is not an all or nothing concept,' and that they must therefore 'ask whether a person is a fiduciary with respect to the particular activity in question.' "

10

contrary, as a party to section V.E.(1) of the Affiliation Agreement Fifth Third was acting in the capacity of an arms' length merger partner, before and after the merger, and never in a fiduciary role. Thus the Opinion is at odds with the Pegram opinion in declaring that: "In contrast (to the non-fiduciary record keeper in PONI), Fifth Third is a fiduciary in this case." See the Opinion, p. 6. Under Pegram, it is not wearing its fiduciary hat *in relation to its contract obligations under section V.E.(1)*.

The analysis in the Opinion assumes, consistent with the common law of trusts but inconsistent with the ERISA understanding of fiduciary, that a plan trustee wears only one hat.[9] Thus the Opinion mistakenly concludes that Hutchison's state law claim is time-related ("the timing of the obligation is a fact insufficient to distinguish this case from Davila"). See the Opinion, p. 5. To the contrary, it is irrelevant to Hutchison's state law claim that the Affiliation Agreement was signed before Fifth Third assumed any fiduciary obligations in relation to the Suburban ESOP. Following the merger, Fifth Third did not become a fiduciary in performing any and all activities related to the ESOP. Changing the ESOP's structure by eliminating Suburban participants and replacing them with Fifth Third participants is not a fiduciary act just because it followed a merger in which Fifth Third became the Suburban ESOP sponsor/administrator/trustee. "Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries . . . employers or other plan sponsors are generally free under ERISA, for

---

[9] Hutchison's state law breach of contract claim assumes that Fifth Third was not acting in a fiduciary capacity when negotiating or executing the Affiliation Agreement nor when it declined to compensate him for its transfer of plan assets. By contrast, his ERISA claim was based upon the opposite presumption, namely that Fifth Third was acting in a fiduciary capacity in transferring plan assets for its own benefit. Thus, the breach of contract claim is not merely a "re-labeling" of an ERISA claim, as suggested in the Opinion, p. 7. Rather, it is traditional pleading in the alternative.

11

any reason at any time, to adopt, modify, or terminate welfare plans. When employers undertake those actions, they do not act as fiduciaries . . . ." Spink, *supra*, 517 U.S. at 890.

## VI. SINCE FIFTH THIRD IS NOT ACTING IN A FIDUCIARY CAPACITY BY FAILING TO ABIDE BY ITS OBLIGATION UNDER SECTION V.E(1), HUTCHISON'S CLAIM DOES NOT IMPLICATE RELATIONS AMONG TRADITIONAL ERISA PLAN ENTITIES.

The Opinion mistakenly concludes that since "Fifth Third is a fiduciary in this case," this case must implicate "relations among traditional ERISA plan entities." See Opinion, p. 6. This conclusion overlooks ERISA's firmly entrenched "dual capacity" doctrine acknowledged and explained in Pegram. Recently, like many other courts, the Fourth Circuit applied the Supreme Court's "dual capacity" doctrine to deny an ERISA preemption defense, stating:

> At first blush, it might appear that any claim by an ERISA plan participant or beneficiary against the plan administrator would of necessity be a claim for enforcement of ERISA rights that could be asserted only as a federal claim under §502. In many cases brought by ERISA beneficiaries against their plan administrators, courts have held state law claims to be preempted as alternative enforcement mechanisms. Unlike this case, however, those cases involved alleged misconduct by an administrator *that was clearly undertaken in the course of carrying out duties under a plan*. Still, it might be argued that any state claim by a beneficiary against the plan administrator necessarily implicates the relations among the traditional ERISA plan entities such as the plan fiduciaries and the beneficiaries, and that as a result the state claim should be preempted. *The Supreme Court has made clear, however, that many lawsuits* against ERISA plans for run-of-the-mill state-law torts committed by the ERISA plan *are not preempted, even though these suits obviously affect and involve ERISA plans and their trustees*. We conclude, therefore, that the simple fact that a defendant is an ERISA plan administrator does not automatically insulate it from state law liability for alleged wrongdoing against a plan participant or beneficiary.

Darcangelo v. Verizon, 292 F.3d 181, 191-2 (4th Cir. 2002) (case citations and interior quote marks omitted, emphasis added).

Likewise, in Cotton v. Massachusetts Mutual Life Ins. Co., 402 F.3d 1267 (11th Cir. 2005), the Court declined to resolve the preemption issue merely by considering the parties' status as ERISA entities:

12

> And when an insurer is not acting in its capacity as an ERISA entity, we can see no reason that Congress would have sought to immunize it from liability for fraud or similar state-law torts.

Id. at 1284.[10] Similarly, in Wilson v. Zoellner, 114 F.3d 713 (8th Cir. 1997), the Court rejected a mechanical status approach:

> Because Prudential is a fiduciary of the Prudential policy with Midway, Zoellner apparently argues that allowing Wilson to recover against Zoellner would affect a fiduciary's relation to a beneficiary, and should therefore be preempted. We reject this argument.

Id. at 718 ("Because Prudential does not face any liability incurred by its role as an ERISA entity, its relationship with other ERISA entities cannot be affected by Wilson's suit.").

The dual capacities approach to applying the "traditional ERISA entities" test was applied to HMOs in Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266 (3rd Cir. 2001), where the Court held that ERISA preemption attaches to an HMO's administrative functions but not to its medical services functions. Id. at 274 ("In both cases, we recognized that the HMO had assumed the dual role of an administrator of benefits and a provider of medical services."). *See also* Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1471 (4th Cir. 1996); and Providence Health Plan v. McDowell, 385 F.3d 1168, 1172 (9th Cir. 2004), *cert. denied*, 125 S.Ct. 1726, 1735 (2005).

The Sixth Circuit adopted the dual capacity approach in Firestone Tire & Rubber Company v. Neusser, 810 F.2d 550 (6th Cir. 1987), holding that a city tax ordinance was not preempted by ERISA because it "affects Firestone employees in their capacity as employees, without regard to their status as participants in an ERISA plan." Id. at 556. This Sixth Circuit case and all the "dual capacity" cases cited above rely upon the seminal case of Sommers Drug

---

[10] In amending the Suburban ESOP, Fifth Third was acting in the capacity of a non-fiduciary employer. In failing to compensate Hutchison the value of transferred plan assets ("out of its corporate assets and not plan assets"), Fifth Third was acting, and continues to act, in the non-ERISA capacity of a contracting party in breach of the contract.

Stores Co. Profit Sharing Trust v. Corrigan Enterprises, Inc., 793 F.2d 1456, 1468 (5th Cir. 1986), *cert. denied*, 479 U.S. 1034, 1089 (1987) ("thus, the state law does not affect relations between the ERISA fiduciary and the plan or plan beneficiaries as such; it affects them in their separate capacities as corporate director and shareholder.").[11] In the case at hand, section V.E(1) does not affect the relation between Fifth Third as fiduciary and Hutchison as plan beneficiary, but rather Fifth Third as a merger partner and employer and Hutchison as an intended third-party beneficiary of section V.E(1).

## VII. CONSTRUING SECTION V.E(1) REQUIRES REFERENCE TO THE ERISA PLAN AT ISSUE ONLY FOR A MATHEMATICAL CALCULATION.

No doubt, the application of section V.E(1) requires some reference to the Suburban ESOP since Fifth Third's obligation in the event of a transfer of plan assets is to pay the value of the assets to Suburban participants as of the date of the merger and in proportion to their interests as of that date. Under Sixth Circuit case law, this is not a sufficient nexus to support ERISA ordinary preemption. Thus, "a simple mathematical calculation of benefits" will not justify preemption. Peters v. Lincoln Electric Co., 285 F.3d 456, 469 (6th Cir. 2002).

See also Wright v. General Motors Corp., 262 F.3d 610, 615 (6th Cir. 2001) (a damages component of a discrimination and retaliation claim which entails GM's ERISA plan does not justify ERISA ordinary preemption); Crabbs v. Copperweld Tubing Products Company, 114 F.3d 85, 90 (6th Cir. 1997) (breach of employment contract claim not subject to ERISA preemption where plaintiff not seeking plan benefits); and Marks v. Newport Credit Group, Inc.,

---

[11] Following Sommers, the dual capacity doctrine is often referred to as the "first blush" doctrine. That is, at first blush it may appear that ERISA defensive preemption is appropriate because the defendant is a plan sponsor or administrator; but upon further analysis defendant is seen not to be acting in this capacity *in relation to the conduct complained of*.

342 F.3d 444 (6th Cir. 2003) (calculating damages by reference to an ERISA plan is an insignificant connection to the plan not justifying ERISA preemption).

## CONCLUSION

Reconsideration of the Opinion is justified where it is based largely on a Supreme Court case (<u>Davila</u>) which is not on point, especially considering that the same mistake in an earlier opinion (<u>Van Camp</u>) resulted in the overturning of that earlier mistaken opinion in a subsequent Sixth Circuit case (<u>Warner</u>). Even more significantly, the current Opinion invokes the "traditional ERISA entities" formulation from <u>PONI</u> without taking into consideration the substantial body of "dual capacity" case law, reinforced by the Supreme Court's opinion in <u>Pegram</u>, which denies traditional ERISA entity status to plan sponsors and participants which are not acting in a fiduciary role in relation to the conduct in question.

Respectfully submitted,

_____
Richard G. Meyer
John R. Kirk
Deters, Benzinger & LaVelle, P.S.C.
207 Thomas More Parkway
Crestview Hills, Kentucky 41017
Tel.: (859) 341-1881 Fax: (859) 341-1469
*Attorneys for Plaintiffs-Appellants*

112469.1