UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH F. HUTCHISON, et al.** : | CASE NO.  1:01cv00789 |
| : | |
| **Plaintiffs** : | **(Judge Beckwith)** |
| : | |
| v. : | |
| : | |
| **FIFTH THIRD BANCORP** : | |
| : | |
| **Defendant** : | |

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTIONS
FOR ATTORNEY FEES AND COSTS

**INTRODUCTION**

Plaintiffs have previously briefed the attorney fees and costs issues in their response to Fifth Third's original motion under the governing ERISA provision at 29 U.S.C. 1132(g)(1). *See* Plaintiffs' Response Memorandum of November 11, 2005. (Doc. 97)  Plaintiffs incorporate that memorandum into the current response to Fifth Third's renewed motion and amended bill of costs. (Docs. 109 & 111)

The present response will elaborate on only one of the five King factors for applying the statute as most recently addressed by the Sixth Circuit in First Trust Corporation v. Bryant, 410 F.3d 842, 851 (6th Cir. 2005)(finding that the District Court had abused its discretion in awarding attorney fees to a plan trustee) and Moon v. Unum Provident Corp., 461 F.3d 639 (6th Cir. 2006)(finding that the District Court had abused its discretion in failing to award attorney fees to a plan benefits claimant).  A discussion of the relative merits criterion will explain why Plaintiffs sought relief in the Court of Appeals and United States Supreme Court.

With regard to Fifth Third's continuing complaint about Plaintiffs' settlement demands, we ask that the Court again review the affidavit of counsel previously filed on this issue and the demand letter attached to the affidavit. (Doc. 99)  The letter refutes Fifth Third's out of context settlement negotiation arguments.  And we ask that the Court consider that, following Plaintiffs' demand letter, the parties had confidential settlement discussions in mediation conducted by Professor Marjorie Aaron.

Before discussing the detailed King factor, we ask that the Court consider the central, and undisputed, fact that gave rise to this litigation.  Fifth Third took 6,533 shares of stock, worth at the time $467,000, from the Suburban Federal ESOP, which had been paid for by Suburban Federal as a benefit to its employees, and distributed the shares to its own employees as part of a Fifth Third employee retention plan.  Fifth Third did not contribute a dime of its own money to the ESOP.  And Fifth Third agreed in the merger contract with Suburban Federal that the parties intended the ESOP to be maintained, through its termination, exclusively for the benefit of Suburban Federal employees/plan participants.  *See* the documents attached to the Summary Judgment Affidavit of Chris Henn. (Doc. 76)  Now, after taking $467,000 from the 67 Suburban Federal ESOP participants whom Plaintiffs represent, Fifth Third is seeking to take an additional $300,000 because it was forced to defend on technical grounds this outrageous conduct.

I.  **SUBSTANTIVE MERIT OF PLAINTIFFS' CASE**

   A.  **The ERISA Preemption Issue**

We address the relative merits issue, since this consideration relates directly to Plaintiffs' appeal to the Sixth Circuit Court of Appeals and their Petition for Writ of Certiorari seeking review by the United States Supreme Court.  As this Court is aware,

the most contentious issue in this case involved ERISA preemption under 29 U.S.C. 1144(a).  Initially, this Court acknowledged federal court removal jurisdiction under the doctrine of "complete" preemption. (Doc. 9)  Then the Court dismissed Plaintiffs' state law claims under the doctrine of "defensive" preemption. (Doc. 24)  On November 2, 2004, the Court denied Fifth Third's motion to dismiss Plaintiffs' alternative ERISA claim. (Doc. 46).

In another ERISA preemption case this Court succinctly stated the rationale for pleading state law and ERISA claims in the alternative, as Plaintiffs have attempted throughout this litigation:

> All parties agree, however, that the ultimate test for preemption is whether the remedy sought in a common-law claim is also available through ERISA. If the remedy sought is available, the claim must be preempted, but if the remedy sought is not available, the claim may proceed.

Ball v. Transcon Employment Co., 2006 WL 462435, *5 (S.D.Ohio 2006).  In the case at hand, Plaintiffs argued that they had a claim for contract damages based on Fifth Third's breach of the Affiliation Agreement (the merger contract between Fifth Third and Suburban Federal).  In the alternative, should the Court accept Fifth Third's characterization of Plaintiffs' claim as one for plan benefits, Plaintiffs argued that ERISA would provide a remedy.  Yet in the case at hand, this "either/or" proposition failed.

This Court held that Plaintiffs did not have a claim under ERISA and that their breach of contract claim was subject to defensive ERISA preemption. (Docs. 90 & 91) Plaintiffs argued that the Sixth Circuit had recently narrowed the scope of ERISA preemption, which this Court in Transcon also acknowledged:

> Early cases pertaining to the issue of preemption provided an extremely broad meaning to ERISA's preemption clause because the clause was

> deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern.
>
> However, since <u>Pilot Life</u>, the Supreme Court has narrowed its expansive reading of the preemption clause in order to better adhere to the objectives of ERISA.
>
> Accordingly, the Sixth Circuit Court of Appeals has determined that, in interpreting the scope of ERISA's preemption clause, a court must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive. The Sixth Circuit stated that the objective of the ERISA preemption clause was to avoid conflicting federal and state regulation and to create a nationally uniform administration of employee benefit plans.

2006 WL 462435 at *4 (case citations and internal quotation marks omitted).

In regard to the ERISA defensive preemption issue in the case at hand, the Sixth Circuit stated the critical issue was that Fifth Third was a fiduciary at the time of the alleged breach and therefore it is irrelevant that it was not a fiduciary when it entered into the Affiliation Agreement:

> Here, Fifth Third entered into the contract that is the basis for the state law claim before Fifth Third became the administrator of the ESOP. Nevertheless, a key element of the state law claim-albeit one that arose later-was the ERISA-governed action of Fifth Third in changing the beneficiary scheme. For this reason, the timing of the obligations is a fact insufficient to distinguish this case from <u>Davila</u>.
>
> Not permitting extra-ERISA regulation to restrict a fiduciary's ERISA-related decisions (whether the regulation creates obligations before or after the fiduciary's ERISA obligations arise) is consistent with the purposes that Congress had in mind when it passed ERISA. As the Supreme Court noted in <u>Davila</u>, "Congress enacted ERISA to protect ... the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to provide for appropriate remedies, sections, and ready access to the Federal courts."

<u>Hutchison v. Fifth Third Bancorp</u>, 469 F.3d 583 (6th Cir. 2006), at 589, citing <u>Aetna Health, Inc. v. Davila</u>, 542 U.S. 200 (2004).

Plaintiffs had three objections to this decisive conclusion by the Sixth Circuit. First, this Court dismissed Plaintiffs' ERISA claim partly on the basis that Fifth Third was not acting in a fiduciary capacity when it amended the Suburban Federal ESOP. (Doc. 91) Secondly, the U.S. Supreme Court in Pegram v. Herdrich, 530 U.S. 211 (2000) has emphatically rejected a "status" approach to assessing the liability of a fiduciary:

> ERISA does require, however, that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions. Thus, the statute does not describe fiduciaries simply as administrators of the plan, or managers or advisers. Instead it defines an administrator, for example, as a fiduciary only "to the extent" that he acts in such a capacity in relation to a plan. 29 U.S.C. § 1002(21)(A).

Id. at 225-26 (case citations omitted). Since ERISA fiduciary duty is not a status, but a function, the court must look to the defendant's function in relation to the claim:

> In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

Id. (case citations omitted).

Instead of a status approach therefore, the proper inquiry was whether Fifth Third (in the case at hand) was acting in a fiduciary capacity in relation to the actions complained of. As this Court itself concluded, Fifth Third was not acting in a fiduciary capacity either in entering into the Affiliation Agreement or in amending the Suburban Federal ESOP without paying Plaintiffs the value of assets it transferred from an exclusively Suburban Federal ESOP to an exclusively Fifth Third ESOP. (Docs. 90-91) The Sixth Circuit took the opposite approach concluding that Fifth Third was a fiduciary in relation to the ESOP, therefore it has immunity from state law claims at all times, even before the merger. 469 F.3d at 589. Thirdly, the Sixth Circuit simply ignored

Pegram and its dual capacity doctrine, and instead relied heavily on Davila, even though it is a "complete" preemption case, not a "defensive" preemption case. In baseball parlance, this is making two errors on the same play.

The Sixth Circuit had previously confused these two types of preemption, leading the Sixth Circuit to emphasize in a subsequent case the importance of distinguishing between complete preemption under 29 U.S.C. § 1132(a)(1)(B) and ordinary or defensive preemption governed by 29 U.S.C. § 1144(a):

> The Court in Van Camp did not keep complete preemption and ordinary preemption doctrine separate and distinct. It mistakenly allowed removal in a case not covered by §1132(a)(1)(B) and only arguably covered by §1144(a).
>
> Thus the Van Camp case must be overruled.

Warner v. Ford Motor Co., 46 F.3d 531, 535 (6th Cir. 1995), overruling Van Camp v. AT&T Information Systems, 963 F.2d 119 (6th Cir.), *cert. denied,* 506 U.S. 934 (1992). Moreover, Fifth Third never relied upon, or even cited, the Davila opinion in its Sixth Circuit briefing. Yet it became the lynchpin of the Sixth Circuit's opinion without any opportunity for Plaintiffs to point out how the Davila opinion itself expressly recognized the applicability of the "two hat" Pegram analysis of fiduciary liability. 542 U.S. at 202.

Admittedly, Pegram did not reject a "status" approach to ERISA fiduciary issues, in favor of its "dual capacity" approach, in an ERISA preemption context. However, numerous lower court opinions have used the dual capacity analysis in ERISA preemption cases.[1] This was the principal grounds discussed in Plaintiffs' Petition for Writ of Certiorari. In opposition to the Petition, Fifth Third argued that there was no reason for the Supreme Court to grant the Petition since Davila was plainly controlling,

---

[1] As stated, the Davila opinion recognized that the Supreme Court's dual capacity doctrine as articulated in Pegram has implications for ERISA preemption.

a case which Fifth Third, as stated, had never even cited to this Court or the Court of Appeals.

Plaintiffs are not reciting this lengthy procedural history to claim they should have prevailed on the merits. Instead, this history is indicative of the complexity surrounding ERISA preemption issues. In this regard, the Sixth Circuit in Firestone Tire & Rubber v. Neusser, 810 F.2d 550 (6th Cir. 1987) held that since "the issues involved are of recent origin, certainly are not free of doubt and are quite complex…" "the action of the [plaintiffs] in precipitating the action was necessary and entirely reasonable." Id. at 557.

  B. **The Transfer Issue**

Fifth Third claims this was a simple case which should never have been brought because Fifth Third sent a pre-litigation letter to Plaintiffs' counsel stating there was no "transfer" of suspense account collateral from the Suburban Federal ESOP to a Fifth Third ESOP, one of the operative terms in the Affiliation Agreement. Indeed, in granting Fifth Third's motion for summary judgment, this Court held that Fifth Third's actions with regard to the assets in the Suburban Federal ESOP suspense account did not satisfy the technical definition of a "transfer" as defined in the Treasury Regulation at 26 C.F.R. § 1.414(l)-1(b)(3). (Doc 91, p. 12)

This ruling came after the Court rejected Plaintiffs' motion to reconsider its defensive preemption ruling that § 1144(a) required the dismissal of Plaintiffs' state law breach of contract claim. (Doc. 90) As a result, the Court did not apply Ohio state law principles for construing the parties' use of "transfer" in the Affiliation Agreement, but used a technical definition from Treasury Regulations governing ERISA plans.

As Plaintiffs contended at the time, there are two applicable state law principles that would have governed the contract interpretation issue under Ohio law. First, the parties' intent in entering into the agreement is the paramount consideration in construing the agreement's disparate parts. Hamilton Insurance Services, Inc. v. Nationwide Insurance Companies, 86 Ohio St.3d 270, 273 (1999); and Kelly v. Medical Life Insurance Company, 31 Ohio St.3d 130, 132 (1987).

Second, courts must avoid technical definitions for commonly used words. Foster Wheeler & Enviresponse, Inc. v. Franklin County Convention Facilities Authority, 78 Ohio St.3d 353, 361 (1997). See also McClorey v. Hamilton Cty. Bd. of Elections, 130 Ohio App.3d 621, 625 (1998) ("The language and terms of the contract are to be given their plain, common, and ordinary meanings."); and First Nat. Bank of Van Wert v. Houtzer, 96 Ohio St. 404, 407 (1917) ("They are presumed to have intended to have given to the language of the contract the ordinary and usual meaning given to such language.").

The parties' intent in agreeing to the language at issue, namely Section V.E(1) of the Affiliation Agreement, was without a doubt to insure that the plan assets would go to Suburban Federal employees, not Fifth Third employees. Thus, shortly after the closing date of the merger, Fifth Third's outside legal counsel, Steve Goodson of Keating, Muething & Klekamp, reiterated the parties' intent, as expressed in Section V.E(1), in his summary description of August 22, 1997, stating:

> The plan will continue to cover only former Suburban Federal employees (and no other unrelated Fifth Third employees).

See the Affidavit of C. Henn, Ex. F to Plaintiffs' Summary Judgment memorandum. (Doc. 76) Goodson was the principal negotiator for Fifth Third in the merger

negotiations. In Section V.E(1) of the Affiliation Agreement, Fifth Third and Suburban set forth their intent with regard to the continuation of the ESOP following the merger:

> The parties agree they intend that ... the ESOP shall be maintained **through the date of its final termination** for the exclusive benefit of individuals who had become ESOP participants on or before the Effective Time (the closing date of the merger).

*See* Affidavit of C. Henn, Ex. B (emphasis added). (Doc. 76)

Also, the attorney who negotiated the merger terms on behalf of Fifth Third acknowledged in his deposition, over his counsel's objection, that the parties entered into the Affiliation Agreement with the intent to maintain the Plan for the exclusive benefit of the 67 Suburban participants:

> Q. Now, was it the intent of Fifth-Third, at the time of the affiliation agreement, that this Suburban ESOP be maintained for the exclusive benefit of individuals who had become ESOP participants on or before the Effective Time?
> Mr. Fischer: Same objection.
> A. Yes.

*See* the deposition of P. Reynolds, p. 79. (Doc. 68)

Not only was the parties' intent indisputable, namely that there was to be no transfer of the shares remaining in the ESOP to a Fifth Third plan without Fifth Third paying for those assets, there was a transfer in substance if not strictly in form. Thus for example, in Kluener v. Commissioner of Internal Revenue, 154 F.3d 630 (6th Cir. 1998), using the substance over form doctrine, the Sixth Circuit construed the meaning of "transfer." Under that doctrine, courts view a transaction as a whole, and each step is relevant to the court's determination of the issues. Id. at 634.

Courts look to substance over form because "to permit the true nature of a transaction to be disguised by mere formalisms ... would seriously impair the effective

administration" of the policies of Congress." Id. at 634 (citing Commissioner v. Court Holding Co., 324 U.S. 331, 334 (1945)). In that case the Court held that there was no transfer of the taxpayer's property to his closely held corporation because the property was not useful to the corporation and, based on the totality of circumstances, the transfer was a sham to avoid taxes on the sale of the property by the corporation to a third party.

In the case at hand, there was a substantive transfer of Suburban ESOP assets from one plan to another, though in form the assets remained in the Suburban ESOP. Thus originally the Plan consisted of 67 participants, all former Suburban employees. By amendment, Fifth Third added 1,633 non-Suburban Fifth Third employees. The purpose of the original Plan was to benefit, exclusively, the 67 Suburban participants as of the merger date. In contrast, the purpose of the amended Plan was to benefit, exclusively, non-Suburban Fifth Third employees in order to promote employee loyalty and retention. This was part of Fifth Third's "overall strategy to get employees on the Fifth Third Plan." *See* the deposition of J. Girton, pp. 40 and 68. (Doc. 69) In this regard, Fifth Third amended its own Master Pension and Profit Sharing Plan to allow these otherwise unqualified employees to participate by rolling over their Suburban ESOP shares, once the Suburban ESOP was terminated, into the Master Plan.

Moreover, Fifth Third did not make a monetary contribution to finance the new Fifth Third plan, but merely used the enhanced value of the assets in the original Plan. In addition, by avoiding a "technical" transfer, the economic benefit to Fifth Third was a substantial savings of $467,000. While the form of amending the Plan may not fit neatly into the Treasury regulation definition of "transfer," the substance of the

transaction shows that a "transfer" from one plan, an all Suburban plan, to another plan, an all Fifth Third plan with $467,000 in assets, did in fact occur.

Under Ohio state law principles governing the interpretation of contracts, these rules would have allowed the Court to conclude that a substantive transfer had occurred and that the parties intended, in such circumstances, for Fifth Third to pay the 67 Suburban Federal former employees and plan participants the value of the transferred shares, at the time $467,000, out of its corporate assets.  This is what Section V.E(1) of the Affiliation Agreement called for, using contract interpretation principles.  This Court did not employ state law principles because it found that ERISA preempted Plaintiffs' state law claims. (Doc. 90)  By all accounts, ERISA preemption is a tangled doctrine which the U.S. Supreme Court has addressed no less than twenty times since 1980. *See* H. Shapiro, R. Thorne and E. Harold, ERISA Preemption:  To Infinity and Beyond and Back Again? (A Historical Review of Supreme Court Jurisprudence), 58 La. Law Review 997 (1998).

District courts within the Sixth Circuit have recently held that "the issue of ERISA preemption is a complicated and complex matter." McMurtry v. Wiseman, 445 F.Supp.2d 756, 778 (W.D. Ky., 2006).  *See also*, Rankin v. Rots, 2006 WL 1791377, *3 (E.D. Mich. 2006).  Similarly, in Schwartz v. Gregori, 160 F.3d 1116 (6th Cir. 1998) the Sixth Circuit affirmed the district court's denial of attorney fees related to an appeal because "the issue concerning ERISA remedies that Gregori raised on appeal was a novel and complicated one which required significant discussion by our Court to resolve." Id. at 1121.

Likewise, in the present case, the Sixth Circuit has acknowledged that this was a complicated case, and gave extensive consideration to the Plaintiff's arguments – particularly the arguments concerning pre-merger acts versus post-merger acts.

## CONCLUSION

As discussed above and in Plaintiffs' prior Response, Plaintiffs sought relief for the removal of $467,000 from an ESOP that was intended to be exclusively for their benefit. Due to the highly complex and technical issues that arise in all ERISA cases, Plaintiffs unfortunately lost at all levels of the judicial system. The fact that Plaintiffs lost however does not detract from the merits of their case or amplify the merits of Fifth Third's position. Fifth Third's victory in court however does not mean that it should be victorious in its quest for attorney fees and cost.

An award of fees and costs to Fifth Third would only add insult to injury and go against the Sixth Circuit's long-standing reluctance to award fees to defendants. Further, Fifth Third's request to have Plaintiffs pay Fifth Third's attorney fees and costs fails to meet any of the five part test set forth in <u>King</u> and adopted by the Sixth Circuit. Therefore, Fifth Third's motion for attorney fees and bill of costs should be denied.

Respectfully submitted,

/s/ Richard G. Meyer
Richard G. Meyer
William J. Moran, Jr.
John R. Kirk
Deters, Benzinger & LaVelle, P.S.C.
207 Thomas More Parkway
Crestview Hills, Kentucky 41017
(859) 341-1881
(859) 341-1469 (Fax)
e-mail:  rmeyer@dbllaw.com
*Trial Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 30, 2007, I electronically filed the foregoing Response with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Patrick F. Fischer and Sue A. Erhart of Keating, Muething & Klekamp, P.L.L.

      /s/ Richard G. Meyer

133333.1