UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH F. HUTCHISON, et al.,** | ) | Case No. 1:01-789 |
| | ) | |
| Plaintiffs, | ) | **(Judge Beckwith)** |
| | ) | |
| -v- | ) | **(Magistrate Judge Hogan)** |
| | ) | |
| **FIFTH THIRD BANCORP,** | ) | **DEFENDANT FIFTH THIRD'S REPLY** |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| Defendant. | ) | **DEFENDANT'S MOTIONS FOR** |
| | ) | <u>**ATTORNEYS' FEES**</u> |

**I.     INTRODUCTION**

Plaintiffs' Memorandum in Opposition to Fifth Third's Motions for Attorneys' Fees ("Memorandum in Opposition") exemplifies the reason that Plaintiffs must be responsible for Fifth Third's attorneys' fees that were incurred defending this matter – it merely retreads old ground that has been litigated and re-litigated throughout the course of this litigation.

Plaintiffs do not dispute: [1] the applicable legal standards the Court should apply for determining an award of fees and costs in this litigation; [2] the calculation or reasonableness of the attorneys' fees and costs submitted by Defendant Fifth Third Bancorp ("Fifth Third"); and [3] the fact that the two Plaintiffs and/or counsel have the ability to pay those fees and costs. Rather, Plaintiffs' opposition focuses exclusively on the one "merits" prong of the *King* test, and simply rehashes the same arguments rejected by this Court, the Sixth Circuit Court of Appeals, and the U.S. Supreme Court.  Plaintiffs even label the first numbered heading of their Memorandum in Opposition as the "Substantive Merits of Plaintiffs' Case," despite the fact that **all of the "merits" arguments identified in that section have been repeatedly and consistently rejected by all courts throughout this litigation.**  This constant re-argument and

rehashing of issues is just another example of the tortured procedural history and unnecessary motion practice, and actually further supports Fifth Third's motion for fees.

Fifth Third's motion for attorneys' fees should be granted because Plaintiffs' culpable conduct and excessive litigation tactics greatly increased those fees and their actions should not be condoned by this Court. Plaintiffs' factual positions and legal arguments have never held any real merit and they have been repeatedly defeated, as respectively established by this Court's grant of summary judgment in favor of Fifth Third and the unanimous affirmation by all three courts of Fifth Third's legal position. Further, Plaintiffs' shifting litigation strategy and motion practice unnecessarily increased the cost of the litigation even more. The Plaintiffs, who do not dispute their ability to pay these fees, should be, likewise, responsible. Forcing the Plaintiffs to bear the cost of Fifth Third's attorneys' fees, in whole or in part, will deter future Plaintiffs from engaging in similar conduct.

Most significantly, this Court should consider the point that if the roles of the parties were reversed, Plaintiffs would be demanding attorneys' fees. The Court should, therefore, place Fifth Third on equal footing with the Plaintiffs and treat Fifth Third as it would those individuals when deciding this case.

## II. DISCUSSION

The Sixth Circuit and the Southern District of Ohio utilize the five-factor *King* test to assess whether a losing party should be assessed the prevailing party's attorneys' fees: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorneys' fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions. *See First Trust Corp. v. Bryant,* 410

- 3 -

F.3d 842, 851 (6th Cir. 2005). Fifth Third analyzed each of these factors in detail in its original motion for an award of attorneys' fees (T.d. 94) and its reply memorandum in support of that motion (T.d. 98), both of which Fifth Third incorporates by reference. Given that Plaintiffs' latest opposition focuses exclusively on the "merits" prong, Fifth Third will focus on the lack of merit of Plaintiffs' legal position(s) (factor 5), and the deterrent effect of an award for attorneys' fees in this case given the meritless position advocated by Plaintiffs in the litigation (factor 3). Fifth Third also will expose how Plaintiffs continue to display their culpability or bad faith (factor 1) with their substantial misstatements of the record, as found again in their most recent brief (T.d. 113).

     **A.    The Merits of Plaintiffs' Positions Were Untenable and Caused Unnecessary Litigation and Legal Expenses**

          **1.    Plaintiffs' Untenable Position and Shifting Litigation Strategy Caused Fifth Third to Expend a Great Amount on Legal Fees**

The procedural history of this litigation embodies the primary reason that Plaintiffs should be held responsible for Fifth Third's attorneys' fees: Plaintiffs made this case more costly than it needed to be through erratic litigation methods (dismissing claims only to add them back later, and asking the Court to rule on claims already dismissed), and by filing numerous unsupported motion and filings.

The following is a list of some of Plaintiff's ineffective and costly litigation tactics. Read together, these tactics demonstrate the haphazard nature of Plaintiffs' legal strategy and the lack of merit in Plaintiffs' position(s).

    1. Plaintiffs filed a complaint against Fifth Third in the Hamilton County Court of Common Pleas that alleged claims that were facially preempted by ERISA. One of the seven causes of action alleged in that Complaint was even entitled "Violation of ERISA." (Ex. A to t.d. 1). Given this facial invocation of the federal ERISA statute, Fifth Third removed the case to federal court.

2. Plaintiffs then improperly attempted to deprive this Court of jurisdiction by voluntarily filing a notice of dismissal of a single count, the "Violation of ERISA" claim, and then attempting to remand the case to state court. (T.d. 5, 6). This strategy, however, all but ignored ERISA's longstanding doctrine of complete preemption. It further caused Fifth Third to expend more legal fees to oppose the motion to remand. (T.d. 7). The Court, again, agreed with Fifth Third and denied the Plaintiffs' motion to remand. (T.d. 9).

3. Purportedly faced with only state law claims, Fifth Third rightfully moved to dismiss the state law claims as preempted by ERISA. In response, Plaintiff filed a First Amended Complaint reinstating their previously dismissed "Violation of ERISA" claim. (T.d. 11, 15). The Court dismissed all of the state law claims, leaving only the one ERISA claim.

4. Plaintiffs then filed a Second Amended Complaint to allege new facts in an attempt to bolster their claim that Fifth Third breached its fiduciary obligations. (T.d. 24, 27).

5. After discovery was completed and years after the filing of the initial complaint, despite the Local Rule requiring that any motion for class treatment be filed within 120 days of the pleading asserting class status, Plaintiffs filed a much belated motion for class certification (T.d. 62) to which Fifth Third had to respond. This Court denied Plaintiffs' motion as moot.

6. After discovery was completed and just days before the dispositive motion deadline, Plaintiffs filed a motion asking this Court to "reconsider" the long before dismissed Plaintiff's state law breach of contract claim, seeking to reinstate the state law claim. (T.d. 64). Fifth Third was then forced to oppose this motion because discovery was already complete and because a motion for summary judgment had already been filed. Again, the Court denied Plaintiffs' motion for reconsideration. (T.d. 90).

7. After losing its case in this Court, Plaintiffs appealed to the Sixth Circuit and challenged only the dismissal of their clearly-preempted state law breach of contract claim. (T.d. 96). Not surprising, the Sixth Circuit unanimously reaffirmed this Court's holding that the state law claim was preempted by ERISA. *Hutchison v. Fifth Third Bancorp,* 469 F.3d 583 (6th Cir. 2006).

8. Plaintiffs then filed a petition for writ of certiorari with the Supreme Court of the United States and attempted to bolster their non-preemption argument by asserting – for the first time – a new "dual capacity" contention. (T.d. 108). The Supreme Court denied the Petition on June 25, 2007. (*Hutchison v. Fifth Third Bancorp*, U.S., No. 06-1387, *cert. denied* 6/25/07.)

As demonstrated by the foregoing, Fifth Third is entitled to receive payment of its attorneys' fees because much of them were incurred by responding to complaints, motions, and appeals lacking any substantive merit. If Fifth Third had acted as Plaintiffs did in this case, surely the Court would be assessing attorneys' fees against Fifth Third.

### 2. The Relative Lack of Merit of Plaintiffs' Claims

While Fifth Third has exhaustively briefed the substantive matters of this case and is loathe to reiterate those arguments, the following addresses a few of the key issues raised by the Plaintiffs' in their Memorandum in Opposition (T.d. 113).

First, Plaintiffs mischaracterize the litigation by alleging that "the most contentious issue in this case involved ERISA preemption." (*Id.* at p. 3). This statement, however, is incorrect. It is true that Plaintiffs vehemently and repeatedly moved the Courts to reconsider the "complete" preemption doctrine of ERISA, but Plaintiffs' arguments were always futile because they blindly ignored the long history of case law providing for such preemption. It has long been settled that "any state law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). For this reason, the Sixth Circuit concluded that this Court's decision on summary judgment was consistent with *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), and with Sixth Circuit authority both pre-*Davila* and post-*Davila*. *Hutchison v. Fifth Third Bancorp,* 469 F.3d 583, 589-90 (6th Cir. 2006) (*citing Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692 (6th Cir. 2005) and *Briscoe v. Fine*, 444 F.3d 478 (6th Cir. 2006)).

In addition to the foregoing, Plaintiffs based their certiorari petition on an alleged "split" among the circuits regarding the "dual capacity doctrine." This alleged "doctrine" is not identified by that phrase in their pre-certiorari briefs, much less referred to in any case law cited

in support of their position, **and a "split" in circuits is therefore nonexistent**. The Plaintiffs attempted to argue this newly alleged concept in order to (unsuccessfully) "back door" the ERISA preemption analysis that they could not successfully argue in this Court and in front of the Sixth Circuit.

Second, in Plaintiffs' Memorandum in Opposition, they again try to argue the moot point that Fifth Third achieved "a substantive transfer of Suburban ESOP assets from one plan to another." (T.d. 113, p. 10). Plaintiffs' argument, however, ignores the strict regulatory scheme of ERISA and the Internal Revenue Code and the definition given to "transfer" by ERISA experts. *See, e.g.*, 29 U.S.C. § 1058 (providing specific requirements if plan assets are transferred to another plan); Treasury Regulation Section 1.414(1)-1(b)(11); Minutolo Dec. at ¶ 9, Ex. 9 to T.d. 71. More importantly, however, Plaintiffs failed to support this definition of "transfer" with any case law. They, therefore, could not argue – in good faith – for an extension of the law on this issue.

As more fully briefed in Fifth Third's previous memoranda in support of its motions for attorneys' fees (T.d. 94, 98), Plaintiffs unreasonably pursued this litigation, fostered extended motion practice, and thereby inflated Fifth Third's legal fees. Because Plaintiffs are responsible for the manner in which this case was handled, Plaintiffs and/or their counsel should be held responsible for Fifth Third's fees.

**B.    An Award of Attorneys' Fees will Deter Future Plaintiffs – and Plaintiffs' Counsel – From Filing Unsubstantiated ERISA Claims**

While most courts are reluctant to impose fee awards on individuals who lose a case to a large corporation, this is an appropriate case for such an award given that Plaintiffs' claims were entirely lacking in merit, Fifth Third was besieged by the Plaintiffs' frivolous motion practice and erratic litigation strategy, and there is no dispute that the two Plaintiffs have the ability to

pay any award of fees and costs awarded by the Court. Plaintiffs began this suit by attempting to forum-shop for a "friendly jurisdiction" in state court by first filing an ERISA claim in state court and then improperly attempting to dismiss the single federal ERISA claim once the case was removed to this Court. Also, Plaintiffs frivolously attempted to create some basis on which to recover from Fifth Third by: (1) asserting that Fifth Third had effected a transfer of plan assets, despite the lack of legal authority to support this position; and then by (2) asserting an alleged "dual-capacity" doctrine that no court has ever defined, let alone followed.

A quick review of the procedural history of this case (set forth above) demonstrates that Plaintiffs blindly sought to create *some* unknown claim against Fifth Third in order to extract from Fifth Third a settlement sum to which Plaintiffs were not entitled. For these reasons, Plaintiffs should be required to pay Fifth Thirds' attorneys' fees as a way of deterring similarly-situated plaintiffs and their counsel from filing such suits in the future.

### C. Plaintiffs Culpability' and/or Bad Faith Require that Plaintiffs Pay Fifth Third's Attorneys' Fees

In addition to the foregoing, it is important to note Plaintiffs' culpable conduct throughout this litigation that continues even through Plaintiffs' Memorandum in Opposition. Plaintiffs' pleadings have been riddled with misstatements of law and fact and these misrepresentations should not go unidentified.

#### 1. Plaintiffs' Claim that $467,000 was the Amount in Dispute

Plaintiffs' Memorandum in Opposition begins with the statement that it is a "central, and undisputed, fact" that the amount in dispute was $467,000. (T.d. 113, p. 2). Ironically, however, for years Plaintiffs never made a settlement demand that came even close to that number. Instead, Plaintiffs religiously sought a settlement ***sum of an amount in the range of $1.5 to $2***

*million*. Had Plaintiffs made a reasonable demand at the start of litigation, perhaps Fifth Third's legal fees and costs would not have reached the undisputable amount over $300,000.

### 2. Misrepresentation of Fifth Third's Pre-Litigation Settlement Attempts

Plaintiffs also state on page seven of their Memorandum in Opposition state that: "Fifth Third claims this was a simple case which should never have been brought because Fifth Third sent a pre-litigation letter to Plaintiffs' counsel stating there was no "transfer" of suspense account collateral . . . one of the operative terms in the Affiliation Agreement." This statement is yet, another misrepresentation of fact. It understates and misrepresents the importance of Mr. Goodson's November 19, 1999 letter. Not only did that letter properly point out that a "transfer" had not taken place, but it also pointed out that the other prerequisites stated in the Affiliation Agreement had not been met. This included the fact that Suburban had not been able to develop a plan in which the remaining shares could be distributed to Suburban participants and the fact that Suburban had not obtained an IRS determination letter approving a transaction.

Ultimately, this Court agreed that these prerequisites had not been met. Fifth Third never received any sort of explanation of Plaintiffs' position. Instead, Plaintiffs simply demanded $1.5 to $2 million without the benefit of any explanation as to why they might be entitled to such amount of money.

### 3. Misstatements in Plaintiffs' Petition for Writ of Certiorari.

This Court, in its October 7, 2005 Order, specifically found that Fifth Third's amendment of the Suburban ESOP did not trigger any obligation on the part of Fifth Third to pay Suburban participants. (T.d. 91). However, in the Plaintiffs' Petition for Writ of Certiorari to the U.S. Supreme Court, they stated: "Fifth Third's amendment of the plan no doubt triggered its contractual obligation to pay Petitioners the value of the remaining plan assets 'out of its

corporate assets.'"  (See Petition, attached as Exhibit A, p. 15, fn. 7).  In making this false statement, Plaintiffs gave no hint whatsoever to the U.S. Supreme Court that this Court had found to the contrary.

The Plaintiffs made many other misstatements to the U.S. Supreme Court in its Petition, including its statement that "in May, 1999, Fifth Third did make such a transfer by amending the ESOP."  Again, Plaintiffs made no mention anywhere in their Petition that this Court held exactly the opposite in its October 7, 2005 Order.  (*Id.*).

The questionable legal tactics identified above illustrate Plaintiffs' culpability for Fifth Third's legal fees.  As a result of the Plaintiffs' erratic litigation strategy and unwarranted and extensive motion practice, Fifth Third was forced to defend this case at an extraordinary cost and the Plaintiffs should, likewise, have to pay for those fees.

### III.  CONCLUSION

For these reasons and the reasons stated in Fifth Third's motion for an award of attorneys' fees and the memoranda in support, Fifth Third respectfully requests that this Court grant its motion and award Fifth Third its defense fees in the undisputed amount of $304,235.68.

In addition, Fifth Third moves this court to award Fifth Third its costs in the undisputed amount of $10,415.18.  Pursuant to Fed. R. 54(D), these costs should be awarded even if the Court decides not to grant Fifth Third's motion for attorney fees.  The mandatory language of Rule 54 provides that "costs shall be" awarded to the prevailing party.

           Respectfully submitted,

           s/ Christy M. Nageleisen
           Patrick F. Fischer (0039671)
           Sue A. Erhart (0066639)
           Christy M. Nageleisen (0076600)
           One East Fourth Street, Suite 1400
           Cincinnati, Ohio 45202
           Tel: (513) 639-3929

OF COUNSEL:           Fax: (513) 579-6457
           pfischer@kmklaw.com
KEATING, MUETHING & KLEKAMP, P.L.L.   serhart@kmklaw.com
One East Fourth Street, Suite 1400   cnageleisen@kmklaw.com
Cincinnati, Ohio 45202       Attorneys for Defendant,
(513) 579-6400          Fifth Third Bancorp

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing DEFENDANT FIFTH THIRD'S REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS FOR ATTORNEYS' FEES was served upon Richard G. Meyer, William J. Moran, and John R. Kirk, Deters, Benzinger & Lavelle, PSC, Thomas More Park, 207 Thomas More Parkway, Crestview Hills, KY 41017-2596 via the Court's electronic docket, this 13th day of August, 2007.

           s/ Christy M. Nageleisen
           Christy M. Nageleisen

2146423.1