No. ______

# In the Supreme Court of the United States

JOSEPH F. HUTCHISON, ET AL.,
*Petitioners*,

v.

FIFTH THIRD BANCORP,
*Respondent*.

**On Petition for a Writ of Certiorari to the United States Court of Appeals for the Sixth Circuit**

## PETITION FOR WRIT OF CERTIORARI

RICHARD G. MEYER
JOHN R. KIRK
*Counsel of Record*
PETER A. SCHMID
DETERS, BENZINGER & LAVELLE, P.S.C.
207 THOMAS MORE PARKWAY
CRESTVIEW HILLS, KY 41017
(859) 341-1881

*Counsel for Petitioners*

April 4, 2007

Becker Gallagher · Cincinnati, OH · Washington, D.C. · 800.890.5001

## QUESTION PRESENTED

Under what circumstances, if any, are the provisions of a merger contract concerning the disposition of an ERISA plan by the successor company in the merger enforceable under state law? Petitioners contend that this issue should be addressed by analyzing the capacities in which the parties acted, or failed to act, in relation to the state law claim at issue. Although the Sixth Circuit Court of Appeals refused to consider the parties' respective capacities in relation to Respondent's breach of the merger contract at issue, a majority of the Circuit Courts have endorsed such an approach in resolving ERISA preemption issues.

## RULE 14.1(b) STATEMENT

A list of all parties to the proceeding in the court whose judgment is the subject of this petition is as follows:

*Plaintiffs-Appellants and Petitioners:* Joseph F. Hutchison, John A. Buchheid, Randall Fields, Paul Neiser, Mark Brandon, Robert Zihlman, Karen Hack, Mary L. Medicott, Mary Rengers, Vonda Zimmerman, Audrey Howard, Janet Mueller, Winifred Jansing, Bonnie Cahill, Violet Gay, Betty Rensing and Pamela Karaus.

*Defendant-Appellee and Respondent:* Fifth Third Bancorp.



## TABLE OF CONTENTS

Question Presented . . . . . . . . . . . . . . . . . . . . . . . . . i

Rule 14.1(b) Statement . . . . . . . . . . . . . . . . . . . . . . ii

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . iii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . vi

Opinions Below . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statutory Provisions Involved . . . . . . . . . . . . . . . . . . 2

Statement Of The Case . . . . . . . . . . . . . . . . . . . . . . 2

Reasons For Granting The Petition . . . . . . . . . . . . . . 6

I. THE SIXTH CIRCUIT'S REFUSAL TO EMPLOY THE DUAL CAPACITY DOCTRINE IN THIS BREACH OF CONTRACT CASE IS OUT OF STEP WITH THE MAJORITY OF CIRCUIT COURTS . . . . . . . . . . . . . . . . . . 8

A. In A Merger Case Involving The Successor Company's Actions With Regard To An ESOP, The Ninth Circuit Relied On The Dual Capacity Doctrine To Avoid ERISA Preemption Of Various State Law Claims, Including A Breach Of Contract Claim . . . . 8

B. Since The Fifth Circuit's Seminal Opinion In *Sommers*, The Majority Of Circuit Courts Analyze The Parties' Capacities In Relation To The Claim Being Asserted To Resolve ERISA Preemption Issues . . . . . . . . . . . . . . . . . . 10

II. THE DUAL CAPACITY APPROACH TO RESOLVING PREEMPTION ISSUES IS CONSISTENT WITH, BUT ADDS ADDITIONAL CONTENT AND CLARIFICATION TO, THE SUPREME COURT'S RECENT PREEMPTION CASE LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

A. The "Independent Source Of Duty" Formulation In *Davila* Does Not Address The Commonplace Occurrence of Merger Contracts Dealing With The Disposition Of ERISA Benefit Plans . . . . . . . . . . . . . . . . 12

B. In *Pegram,* the Supreme Court laid the groundwork for the general acceptance of a dual capacity approach to resolving preemption issues . . . . . . . . . . . . . . . . . . 13

C. Adoption of the dual capacity analysis is a logical extension of this Court's efforts in many ERISA preemption cases to provide the lower courts with guidance in applying the nebulous statutory language . . . . . . . . . . . . 14

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16



Appendix

Appendix A - January 4, 2007 Sixth Circuit Order denying Rehearing . . . . . . . . . . . . . . . . . . . . . . 1a

Appendix B - Sixth Circuit Opinion – November 30, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3a

Appendix C - District Court Decision and Order – October 5, 2005 . . . . . . . . . . . . . . . . . . . . . . . 19a

Appendix D - Petitioners' State Court Complaint . 26a

Appendix E - Relevant Language from Affiliation Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . 48a

Appendix F - Statutory Provisions Involved – 29 U.S.C. §§ 1132 and 1144(a); 26 U.S.C. § 415; 26 C.F.R. § 54.4975-7(b)(8)(iv) . . . . . . . . . . . . . . . 51a

## TABLE OF AUTHORITIES

**Cases**

*Abraham v. Norcal Waste Systems, Inc.*, 265 F.3d 811 (9th Cir. 2001), *cert. denied*, 535 U.S. 1015 (2002) . . . . . . . . . . . . . . . . 8, 9, 13

*Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004) . . . . . . . . . . . . . . . . . . *passim*

*Avco Corp. v. Machinists*, 390 U.S. 557 (1968) . . . . . . 13

*Bank of Louisiana v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237 (5th Cir. 2006) . . . . . . . . . . . . . . . . 10

*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1981) . . . . . . . . . . . . . . . . . . 12, 13

*Cotton v. Massachusetts Mutual Life Ins. Co.*, 402 F.3d 1267 (11th Cir. 2005) . . . . . . . . . . . . . . . 10

*Coyne & Delany Co. v. Selman*, 98 F.3d 1457 (4th Cir. 1996) . . . . . . . . . . . . . . . 12

*Darcangelo v. Verizon*, 292 F.3d 181 (4th Cir. 2002) . . . . . . . . . . . . 11, 12

*Lockheed Corp. v. Spink*, 517 U.S. 882 (1996) . . . . . . . . . . . . . . . . . . . . . 10

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995) . . . . . . . . . . . . . . . . . . . 8, 12



*Pegram v. Herdrich*, 530 U.S. 211 (2000) . . . . 6, 13, 14

*Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266 (3rd Cir. 2001) . . . . . . . . . . . . . . . 11

*Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456 (5th Cir. 1986) . . . . . . . . . . . 8, 9, 10

*Wilson v. Zoellner*, 114 F.3d 713 (8th Cir. 1997) . . . . . 11

**Statutes, Regulations and Rules**

28 U.S.C. § 1254(1) . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2101(c) . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. § 1001 et seq. . . . . . . . . . . . . . . . . . . . . 2

29 U.S.C. § 1132 . . . . . . . . . . . . . . . . . . . . . 2, 4, 7

29 U.S.C. § 1144(a) . . . . . . . . . . . . . . . . . . . 2, 4, 5

26 U.S.C. § 415 . . . . . . . . . . . . . . . . . . . . . . . . 2

26 C.F.R. § 54.4975-7(b)(8)(iv) . . . . . . . . . . . . . . . 2

Sup. Ct. R. 13.1 . . . . . . . . . . . . . . . . . . . . . . . . 1

**Miscellaneous**

H. Shapiro, R. Thorne and E. Harold, *ERISA Preemption: To Infinity and Beyond and Back Again? (A Historical Review of Supreme Court Jurisprudence)*, 58 La. L. Rev. 997, 1030 n.252 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

## PETITION FOR A WRIT OF CERTIORARI

Joseph F. Hutchison, John A. Buchheid, Randall Fields, Paul Neiser, Mark Brandon, Robert Zihlman, Karen Hack, Mary L. Medicott, Mary Rengers, Vonda Zimmerman, Audrey Howard, Janet Mueller, Winifred Jansing, Bonnie Cahill, Violet Gay, Betty Rensing and Pamela Karaus respectfully petition for a writ of certiorari to review the opinion and judgment of the U.S. Court of Appeals for the Sixth Circuit.

## OPINIONS BELOW

The opinion of the U.S. Court of Appeals for the Sixth Circuit, dated November 30, 2006, is officially reported at 469 F.3d 583, and is reproduced at App. B, 3a-18a.

The Memorandum Opinion and Order of the U.S. District Court for the Southern District of Ohio, Western Division, dated October 5, 2005, is reproduced at App. C,19a-25a.

## JURISDICTION

The judgment of the U.S. Court of Appeals for the Sixth Circuit sought to be reviewed was entered on November 30, 2006; Petitioners' Petition for Rehearing was denied on January 4, 2007. This petition is timely under 28 U.S.C. § 2101(c) and Supreme Court Rule 13.1 because it is being filed within 90 days of the denial of Petitioners' Petition for Rehearing. The Court has jurisdiction to review the judgment of the U.S. Court of Appeals for the Sixth Circuit pursuant to 28 U.S.C. § 1254(1).

## STATUTORY PROVISIONS INVOLVED

The relevant statutory provisions involved are 29 U.S.C. §§ 1132 and 1144(a) of the Employee Retirement Security Act, 29 U.S.C. § 1001 et. seq. ("ERISA"). The relevant statutory provisions are reproduced at App. F, 51a.

## STATEMENT OF THE CASE

Petitioners represent a class of 67 former employees of Suburban Federal Savings Bank ("Suburban"), which Respondent, Fifth Third Bancorp ("Fifth Third"), acquired in a 1997 stock exchange merger. Four years prior to the merger, Suburban had established an Employee Stock Ownership Plan ("ESOP") as a retirement plan for its employees. Each of the 67 class members was a participant in the ESOP at the time of the merger when Fifth Third exchanged shares of its stock for all of Suburban's outstanding shares, including those undistributed shares still remaining in the ESOP's suspense account.[1]

Federal tax code limitations on allocations of suspense account shares to employee participants prevented termination of the plan prior to the merger. *See* 26 U.S.C. § 415. As a result, the ESOP was a continuing Suburban asset which passed to Fifth Third in the merger, with Fifth Third then

[1] This was a leveraged ESOP in which shares of Suburban stock (and subsequently shares of Fifth Third stock) served as collateral for the ESOP's loan which the employer over time retired with periodic contributions to the ESOP. Since Fifth Third made no contributions to the ESOP either before or after the merger, the ESOP assets were paid for by Suburban alone and not at all by Fifth Third. For a generic description of a leveraged ESOP, *see* the illustration at 26 C.F.R. § 54.4975-7(b)(8)(iv).



assuming the role as successor plan sponsor, administrator and trustee. The merger contract between Suburban and Fifth Third, which the parties denominated the Affiliation Agreement ("Agreement"), explicitly set out the parties' intent that the ESOP would, through its termination, remain exclusively for the benefit of the 67 Suburban employee participants. A copy of the relevant language from the Agreement is reproduced at Appendix E.

Nonetheless, recognizing the limits which the tax code imposed on a timely termination of the ESOP, the parties also stipulated in the Agreement that Fifth Third could, in its sole discretion, transfer the ESOP's remaining assets to its own Fifth Third benefit plan by paying the value of these assets to the 67 former Suburban employee participants. The Agreement also provided that Fifth Third would make such payment "out of its corporate assets and not plan assets." To make these provisions enforceable, the Agreement provided that the Suburban participants were intended third party beneficiaries of the ESOP provisions in the merger contract.

In May 1999, Fifth Third did make such a transfer by amending the ESOP to exclude the former Suburban participants, replacing them with non-Suburban Fifth Third employees as part of Fifth Third's employee retention program, and simultaneously terminating the Suburban ESOP. The value of the ESOP assets (shares of Fifth Third stock) at that time was $467,000. After making demand upon Fifth Third to pay this amount to the former Suburban participants out of its corporate assets, which Fifth Third refused to do, Petitioners filed suit in state court alleging various state law

claims, including breach of the merger contract.[2] A copy of the state law complaint is reproduced at Appendix D.

After Fifth Third removed the lawsuit to federal court, the U.S. District Court asserted federal court jurisdiction over the breach of contract claim on the basis of complete preemption under § 502(a) of the Employee Retirement Income Security Act ("ERISA"), 26 U.S.C. § 1132(a). Thereafter, in response to Fifth Third's motion to dismiss, the District Court held that Petitioners' breach of contract claim was subject to conflict preemption under § 514(a) of ERISA, 26 U.S.C. § 1144(a). In response to the dismissal of their breach of contract claim, Petitioners then amended their Complaint to challenge Fifth Third's plan amendment as an ERISA violation and thereafter commenced pre-trial discovery.

At the conclusion of discovery, Petitioners requested that the District Court reconsider its preemption order dismissing their breach of contract claim. Petitioners at that time also advised the District Court that, unless it found that Fifth Third was acting in a fiduciary capacity in refusing to abide by the terms of the Agreement, Petitioners were abandoning their ERISA claim. The District Court found that Fifth Third was not performing a fiduciary function in this regard. It therefore dismissed the ERISA claim as a matter of law, but declined to reinstate Petitioners' breach of contract claim on the ground that this state law claim implicated relations between traditional ERISA plan entities and, as such, this

[2] In the alternative, Petitioners alleged that the court could construe the provisions in the Agreement relating to the ESOP as a resulting trust governed by ERISA if the court concluded that Fifth Third breached a fiduciary duty owing to Petitioners. Eventually, in the subsequent District Court proceedings, Petitioners abandoned this ERISA claim.



claim was subject to preemption under 26 U.S.C. §1144(a), ERISA's conflict preemption provision. A copy of the District Court's Order and Opinion are reproduced in Appendix C.

Ultimately, the Sixth Circuit Court of Appeals affirmed the District Court's preemption ruling, concluding that Fifth Third's amendment of the ESOP constituted an essential element of Petitioners' breach of contract claim and that therefore, citing *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004), the Agreement did not give rise to any duty which was independent of ERISA or the terms of the ESOP. *Hutchison v. Fifth Third Bancorp*, 469 F.3d 583, 588 (6th Cir. 2006). The Sixth Circuit also held that Fifth Third is a plan fiduciary and Petitioners are challenging a fiduciary's plan amendment. *Id.* at 590.

In a Petition for Panel Rehearing, filed pursuant to FRAP 40, Petitioners urged the Sixth Circuit to join the majority of other Circuit Courts by analyzing ERISA preemption using the "dual capacity" doctrine. Under this approach, Petitioners argued, in refusing to pay them the value of plan assets as required by the Agreement, Fifth Third was not acting in the capacity of a plan sponsor or fiduciary, but rather in the capacity of an arm's length party to a merger contract. Likewise, Petitioners argued, they were not asserting their claim to contract damages in the capacity of ESOP participants (which they in fact no longer were), but in their capacity as intended third party beneficiaries of the

Agreement.[3] On January 4, 2007, the Sixth Circuit issued an order denying without opinion the rehearing petition.

## REASONS FOR GRANTING THE PETITION

In resolving conflict preemption issues under ERISA § 514(a), many of the Circuit Courts have employed the dual capacity doctrine, focusing on the exact capacities in which the parties acted (or failed to act) in relation to the state law claim at issue. In a merger contract case, the appropriate inquiry under this doctrine would be whether, in relation to a claim that the merger contract was breached, plaintiff and/or defendant were acting in the capacity of parties to the contract or, on the other hand, were acting in the capacities of plan participant and successor plan sponsor, administrator or trustee. This Court has never explicitly endorsed this doctrine for resolving § 514(a) conflict preemption claims in the context of a merger contract or any other context.[4]

[3] Petitioners had put forward these same contentions, based on dual capacity case law, in their main and rebuttal briefs to the Sixth Circuit. However, the Sixth Circuit chose not to address the dual capacity doctrine, though informed by Petitioners that the Third, Fourth, Fifth, Eighth, Ninth and Eleventh Circuits relied on this doctrine to resolve preemption issues.

[4] In *Pegram v. Herdrich*, 530 U.S. 211 (2000), this Court provided some support for the dual capacity approach by recognizing that the ERISA statute itself envisions that plan fiduciaries may act in a non-fiduciary capacity when performing certain functions. *Id.* at 225-26. Although *Pegram* is not an ERISA preemption case, Petitioners urge this Court to extend *Pegram's* rationale to preemption cases in which the parties arguably acted in a non-plan capacity in relation to the claim at issue.



In complete preemption cases under § 502(a), ERISA's civil enforcement section, a similar inquiry stems from the very language used:

> A civil action may be brought – (1) by a participant or beneficiary - . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). Thus the complete preemption provision itself directs the court to consider whether the claim is being asserted by a plan participant against a person or entity which purportedly owes plan benefits. Under § 514(a), however, only judicial gloss rather than the words of this provision would direct an analysis toward what capacity each party is acting in relative to the particular claim at issue. For this reason, Petitioners are asking the Court to explicitly adopt the dual capacity doctrine for resolving ERISA conflict preemption issues.

## I. THE SIXTH CIRCUIT'S REFUSAL TO EMPLOY THE DUAL CAPACITY DOCTRINE IN THIS BREACH OF CONTRACT CASE IS OUT OF STEP WITH THE MAJORITY OF CIRCUIT COURTS.

### A. In A Merger Case Involving The Successor Company's Actions With Regard To An ESOP, The Ninth Circuit Relied On The Dual Capacity Doctrine To Avoid ERISA Preemption Of Various State Law Claims, Including A Breach Of Contract Claim.

More than half the Circuit Courts have used the dual capacity doctrine to resolve ERISA preemption issues.[5] In *Abraham v. Norcal Waste Systems, Inc.*, 265 F.3d 811 (9th Cir. 2001), *cert. denied*, 535 U.S. 1015 (2002), the Ninth Circuit held that a state law claim based on the breach of a trust indenture related to an ESOP, was not subject to complete preemption under § 502(a). *Id.* at 820-23. The opinion noted that 44 of the plaintiffs in that case were actually participants in the ESOP, yet their claims were no different than the claims of other former shareholders and current note holders who were never plan participants. *Id.* at 817 and 822. Relying upon *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456 (5th Cir. 1986), the Court concluded that "any

---

[5] Since this Court's opinion in *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995), in which the Court held that preemption issues must be resolved primarily in light of Congress's objectives in enacting ERISA, rather than by a literal construction of the "relate to" language of § 514(a), all of the Circuit Courts employing the dual capacity analysis have explicitly done so in a manner that comports with Congress's objectives as identified in *Travelers*.



duties owed by the plan to the ESOP participant Plaintiffs are also parallel (as in *Sommers*) but independent to those owed to them as note holders." *Abraham, supra*, at 822. The Court also noted: "Although some Plaintiffs were also ESOP participants and Norcal employees, their claims were brought solely in their capacity as former shareholders and current creditors." *Id.* at 823.

Likewise, in the case at hand, although Petitioners are former employees of Suburban and some became Fifth Third employees following the merger, and all of them were former participants in the ESOP, their breach of contract claim does not arise from these relationships to the ESOP. Rather, they are asserting this state law claim in their capacity as intended third party beneficiaries of the Agreement. Also, they are asserting this claim against Fifth Third in its capacity as an arm's length party to a merger contract, not in its relationship to the ESOP.

In sum, on facts which are strikingly similar, the Sixth and Ninth Circuits reached diametrically opposite results, accounted for by the Ninth Circuit's use of the dual capacity doctrine as initially formulated by the Fifth Circuit in *Sommers*. The role of *Sommers* in the development of ERISA preemption law has been described as follows:

> The emphasis on these traditional ERISA relationships, also described as the 'ERISA quartet' as a touchstone for preemption, was developed initially in *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456 (5th Cir. 1986), *cert. denied*, 479 U.S. 1034, 1089 (1987).

H. Shapiro, R. Thorne and E. Harold, *ERISA Preemption: To Infinity and Beyond and Back Again? (A Historical Review of*

*Supreme Court Jurisprudence)*, 58 La. L. Rev. 997, 1030 n.252 (1998).

**B. Since The Fifth Circuit's Seminal Opinion In *Sommers*, The Majority Of Circuit Courts Analyze The Parties' Capacities In Relation To The Claim Being Asserted To Resolve ERISA Preemption Issues.**

Recently, in *Bank of Louisiana v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237 (5th Cir. 2006), relying on its earlier opinion in *Sommers*, the Fifth Circuit held that ERISA did not preempt a breach of contract claim against the plan administrator because it was not acting in a fiduciary capacity in negotiating a stop-loss insurance contract or in performing its duties under this contract. *Id.* at 243-44. Likewise, Fifth Third was not acting in a fiduciary capacity in amending the ESOP. "Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). In refusing to pay Petitioners the value of plan assets transferred from the ESOP (which Suburban had paid for by its contributions to the plan), Fifth Third's liability stems from its role as an arm's-length party to the merger contract with Suburban.

In *Cotton v. Massachusetts Mutual Life Ins. Co.*, 402 F.3d 1267 (11th Cir. 2005), the Eleventh Circuit declined to resolve the preemption issue merely by considering the parties' status as ERISA entities:

> And when an insurer is not acting in its capacity as an ERISA entity, we can see no reason that Congress would have sought to immunize it from liability for fraud or similar state-law torts.



*Id.* at 1284. In *Wilson v. Zoellner*, 114 F.3d 713 (8th Cir. 1997), the Eighth Circuit rejected a mechanical status approach:

> Because Prudential is a fiduciary of the Prudential policy with Midway, Zoellner apparently argues that allowing Wilson to recover against Zoellner would affect a fiduciary's relation to a beneficiary, and should therefore be preempted. We reject this argument.

*Id.* at 718 ("Because Prudential does not face any liability incurred by its role as an ERISA entity, its relationship with other ERISA entities cannot be affected by Wilson's suit.").

The dual capacities approach was also adopted in *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266 (3rd Cir. 2001), where the Third Circuit held that ERISA preemption attaches to an HMO's administrative functions but not to its medical services functions. "In both cases, we recognized that the HMO had assumed the dual role of an administrator of benefits and a provider of medical services." *Id.* at 274. "As these defendants (a physician group) disclaim any administrative authority or responsibility with respect to the plan, it follows that the preemption afforded by § 514(a) for claims 'relating to' a plan is inapplicable." *Id.* at 280. The Third Circuit used the dual capacity analysis both in relation to complete preemption under § 502(a) and express preemption under § 514(a).

In *Darcangelo v. Verizon*, 292 F.3d 181 (4th Cir. 2002), the Court held that the ERISA plan administrator was not acting in its administrative capacity in obtaining a plan participant's medical records to assist in opposing an employment discrimination claim. *Id.* at 192-94. "The clear

implication of these allegations is that CORE was not performing a fiduciary function, but was simply behaving as a rogue administrator, acting entirely outside the scope of its duties under the plan." *Id.* at 193. The Court also noted that its preemption ruling based upon the defendant's capacity in relation to the claim was consistent with the "objectives" analysis adopted by this Court in *Travelers*. *Id.* at 194. See also *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1471 (4th Cir. 1996).

## II. THE DUAL CAPACITY APPROACH TO RESOLVING PREEMPTION ISSUES IS CONSISTENT WITH, BUT ADDS ADDITIONAL CONTENT AND CLARIFICATION TO, THE SUPREME COURT'S RECENT PREEMPTION CASE LAW.

### A. The "Independent Source Of Duty" Formulation In *Davila* Does Not Address The Commonplace Occurrence of Merger Contracts Dealing With The Disposition Of ERISA Benefit Plans.

In *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), this Court held that claims for negligence brought under the Texas Health Care Liability Act ("THCLA") were subject to complete preemption under ERISA § 502(a) because the duty of care imposed by that statute does "not arise independently of ERISA or the plan terms." *Id.* at 212. To the contrary, only an erroneous interpretation of the plan would create THCLA liability. *Id.* This Court therefore rejected the argument that the statutory duty of care constituted an independent legal duty under *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1981), dealing with individual employees' contracts which predated the collective bargaining agreement governed by the Labor Management Relations Act



("LMRA").[6] A THCLA claim must be based on a faulty plan interpretation, whereas the collective bargaining agreement in *Williams* was a non-issue.

Neither *Williams*, which held that the state law breach of contract claim was not subject to LMRA preemption, nor *Davila*, which held that the alleged state law violation claim was preempted, addressed the precise issue at hand, where the state law claim is based on the breach of a merger contract dealing with the disposition of ERISA plan assets. In *Williams*, the employees' individual contracts did not in any way connect with the collective bargaining agreement governed by LMRA. 482 U.S. at 395. In *Davila*, the plan administrator had to make an erroneous coverage decision to incur liability under the Texas statute. 542 U.S. at 213. By contrast, in the case of a contract dealing with the disposition of ERISA plan assets by the plan sponsor, administrator or trustee, the preemption issue is best resolved by a dual capacity analysis, just as the Ninth Circuit concluded in *Abraham v. Norcal Waste Systems, Inc.*, *supra*, 265 F.3d 811. Without guidance from this Court, the Sixth Circuit failed to recognize the applicability of the dual capacity analysis.

### B. In *Pegram*, the Supreme Court laid the groundwork for the general acceptance of a dual capacity approach to resolving preemption issues.

In *Pegram v. Herdrich*, 530 U.S. 211 (2000), the Court refused to recognize a breach of fiduciary claim against an

---

[6] Like the ERISA statute, LMRA has been construed to completely preempt certain state law claims. *Avco Corp. v. Machinists*, 390 U.S. 557 (1968).

HMO that offered incentives to its physicians to limit medical treatment. In arriving at this result, the Court elaborated on the well-entrenched ERISA concept that plan fiduciaries certainly may function in non-fiduciary capacities relative to a plan. *Id.* at 220-23. This concept flows directly from the statutory definition of an ERISA fiduciary, which eschews a status approach in favor of a functional description. *Id.* at 221.

Although *Pegram* did not directly address preemption issues, it nevertheless provides a basis for resolving preemption issues related to fiduciaries by use of a dual capacity analysis. Therefore, at least to this extent, Petitioners' advocacy of such an analysis is certainly consistent with the *Pegram* opinion. In fact, most if not all of the dual capacity preemption holdings by Circuit Courts and federal district courts since the *Pegram* decision was issued are based in part upon the explanation in *Pegram* that the common law understanding of a fiduciary is status related and therefore unchanging, whereas the ERISA approach is purely functional and therefore can be determined only in relation to the particular activity in question. This is an approach which is easily transferable to any traditional ERISA plan entity, including plan participants as in the case at hand.

**C. Adoption of the dual capacity analysis is a logical extension of this Court's efforts in many ERISA preemption cases to provide the lower courts with guidance in applying the nebulous statutory language.**

Although the *Davila* opinion mentioned *Pegram's* dual capacity analysis in passing, it did not incorporate this analysis into its preemption holding. Instead, it merely distinguished *Pegram* as relating only to mixed eligibility and



treatment decisions by HMO physicians. 542 U.S. at 220-21. In the case at hand, Petitioners are seeking to extend the dual capacity analysis to state law breach of contract cases where the contract at issue deals with the disposition of an ERISA plan. Without an explicit adoption of the dual capacity analysis by this Court, the rationale in *Davila* can easily be misapplied, as in the case at hand.

Relying upon *Davila*, the Sixth Circuit properly noted that a claim for damages, as distinct from plan benefits, may be preempted where a plan benefit determination is an element of the state law claim. *Hutchison*, 469 F.3d at 588. The Sixth Circuit also concluded based upon *Davila* that "Fifth Third is an ERISA plan fiduciary and it is Fifth Third's amendment of the plan that is directly challenged, not just implicated, in this suit." *Id.* at 590.[7] In fact, the Sixth Circuit stated: "In contrast, Fifth Third is a fiduciary in this case." *Id.* at 589. Under a dual capacity analysis, however, it is clear that Fifth Third was not acting in the capacity of a fiduciary in amending the plan and that Petitioners are not seeking plan benefits in the capacity of plan participants. To the contrary, since most of the 67 class members were no longer Fifth Third employees at the time of the plan amendment, their only capacity was as third party beneficiaries of the merger contract between Suburban and

---

[7] Fifth Third's amendment of the plan no doubt triggered its contractual obligation to pay Petitioners the value of the remaining plan assets "out of its corporate assets." Indeed, Petitioners would not have a contract claim at all if Fifth Third had not amended the plan to replace former Suburban participants with exclusively Fifth Third participants. Nevertheless, Fifth Third did not owe this obligation as plan fiduciary, it did not violate a fiduciary duty in amending the plan, and Petitioners had no right to these damages as plan participants.

Fifth Third. Such an analysis is beyond the scope of *Davila*. Therefore Petitioners are seeking direction from this Court that the lower courts must analyze the parties' capacities in relation to the claim at issue.

## CONCLUSION

For the foregoing reasons, the petition for a writ of certiorari should be granted.

Respectfully Submitted,

Richard G. Meyer
John R. Kirk
*Counsel of Record*
Peter A. Schmid
Deters, Benzinger & Lavelle, P.S.C.
207 Thomas More Parkway
Crestview Hills, KY 41017
(859) 341-1881

*Counsel for Petitioners*

April 4, 2007

# APPENDIX

## APPENDIX A

## IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

**Case No. 05-4389**

**[Filed January 4, 1007]**

JOSEPH F. HUTCHISON, et al.,

Plaintiffs,

vs.

FIFTH-THIRD BANCORP,

Defendant.

BEFORE: ROGERS and GRIFFIN, Circuit Judges; HOOD, Chief District Judge.*

## ORDER

Upon consideration of the petition for rehearing filed by the Appellant,

* The Honorable Joseph M. Hood, united States Chief District Judge for the Eastern District of Kentucky, sitting by designation.

It is **ORDERED** that the petition for rehearing be, and it hereby is, **DENIED**.

**ENTERED BY ORDER OF THE COURT**

/s/ Leonard Green
Leonard Green, Clerk



**APPENDIX B**

**IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

**Case No. 05-4389**

**[Filed November 30, 2006]**

JOSEPH F. HUTCHISON, et al.,
Plaintiffs,
vs.
FIFTH-THIRD BANCORP,
Defendant.

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 01-00789.

Before: ROGERS and GRIFFIN, Circuit Judges; HOOD, Chief District Judge.*

* The Honorable Joseph M. Hood, United States Chief District Judge for the Eastern District of Kentucky, sitting by designation.

## OPINION

ROGERS, Circuit Judge. This complicated case involves a merger agreement in which Fifth Third guaranteed that the participants in Suburban Bancorporation's pre-merger employee benefit plan would receive funds from Fifth Third's general assets if certain conditions were met. Joseph H. Hutchison, suing on behalf of a class of former Suburban employees, claims that Fifth Third promised to abide by the terms of the merger agreement, induced class members to vote their shares in favor of the merger, and then breached its contract by refusing to allocate general funds to class members. Fifth Third argues that the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, preempts Hutchison's state law breach of contract claim because the claim "relates to" the administration of the ERISA benefit plan, and, in the alternative, that Fifth Third did not breach its contract. The district court properly held that ERISA preempts the breach of contract claim and dismissed the claim. We therefore affirm.

In 1997, Suburban Federal Savings Bank and Fifth Third negotiated a merger "Affiliation Agreement" between the two companies. The Affiliation Agreement contained language covering Suburban's Employee Stock Ownership Plan ("ESOP") because the ESOP held shares of Suburban. *See generally* 26 C.F.R. § 54.4975-7(b)(8)(iv). Hutchison and other members of the proposed class were participants in the ESOP. After reading the representations contained in § V.E.(1) of the Affiliation Agreement, class members voted the ESOP's Suburban shares in favor of the merger. The two companies merged in 1997.

Section V.E.(1) of the Affiliation Agreement began by discussing how class members could obtain funds from the



ESOP. The page-and-a-half, single-paragraph section required Suburban to develop a written description and timetable discussing funding, amending, and terminating the ESOP before class members could obtain the plan's funds. Because Suburban and Fifth Third were concerned about the tax implications associated with distributing ESOP funds prematurely, the Affiliation Agreement also required Suburban to obtain from the IRS a determination that the ESOP, as amended, satisfied relevant tax provisions.[1] Class

---

[1] The first two sentences of § V.E.(1) read:

Suburban Bancorp shall develop a written description and timetable which shall be provided to and approved by Fifth Third and its counsel, setting forth all actions necessary to: (i) make contributions to the Suburban Bancorp, Inc. Employee Stock Ownership Plan ("ESOP") and/or have the ESOP sell unallocated shares under the ESOP to fully repay the ESOP's existing loan, all in compliance with the applicable requirements of ERISA and the Internal Revenue Code, including Code Section 415 (as interpreted by the IRS in Private Letter Rulings 9648054 and 9426048) and 404; (ii) amend the ESOP to authorize the sale of unallocated shares to repay the loan, to provide for the allocation of gain on the sale of unallocated shares in a manner that complies with the position of the IRS in Private Letter Rulings 9648054 and 9426048 and to make such other changes as may be necessary to implement the termination; (iii) terminate the ESOP; and (iv) submit the ESOP to the Internal Revenue Service for a determination letter that the ESOP, as so amended and terminated, continues to be a qualified retirement plan and employee stock ownership plan under Section 401(a) and 4975(e)(7) of the Code. Upon development and approval by Fifth Third of said written description and timetable; Suburban Bancorp shall take such actions as described therein as are approved by Fifth Third.

members could not receive any funds until the IRS made such a determination.[2] Finally, the section provided that "[i]n connection with the . . . resolution of the ESOP, the parties agree they intend that, to the extent not prohibited by applicable law, the ESOP shall be maintained through the date of its final termination for the exclusive benefit of individuals who had become ESOP participants on or before the Effective Time," namely the class members.

Section V.E.(1) then included a contingency plan, the meaning of which is in dispute. It stated that, if the parties agreed in good faith that allocating the ESOP's shares would violate certain IRS provisions, Suburban would apply to the IRS for approval allowing ESOP funds to "either revert to Fifth Third or [be] transferred to an employee benefit plan of Fifth Third."[3] The next sentence reads, "If and only if the IRS

---

[2] The third sentence reads:

Distribution of the shares and any other assets of the ESOP shall (I) not occur until after the receipt of the foregoing IRS determination letter and (ii) occur prior to the Effective Time only with the express written consent of Fifth Third, which shall not be unreasonably withheld.

[3] The sixth sentence reads:

If, upon development of the written description and timetable referred to above, the parties agree in good faith that allocation of all or any shares of stock held in the ESOP's suspense account would violate the Code's section 415 limitations as interpreted by the IRS in private letter rulings 9648054 and 9426048, Suburban Bancorp shall apply to the IRS for approval (either through an IRS determination letter or other means reasonably acceptable to Fifth Third) of a transaction (the "Transaction") whereby the excess shares (or cash value thereof) (i.e., those shares remaining after fully utilizing the section 415



approves such a Transaction [for reverting or transferring the funds], or Fifth Third otherwise proceeds with the Transaction without IRS approval," Fifth Third will pay class members "out of its corporate assets and not plan assets" the amount of money in the ESOP at the time of the merger, minus administrative costs.[4]

Suburban began, but did not complete, the steps outlined in Section V.E.(1) to distribute ESOP funds to class members. First, it adopted a Plan Amendment that limited participation in the ESOP to member of the current class. Second, Suburban proposed, and Fifth Third approved, a schedule to accelerate termination of the ESOP. Suburban, however, never obtained the necessary IRS determination letter, and class members, as a result, did not receive ESOP funds.

---

limits as interpreted by IRS in private rulings 9648054 and 9426048) either revert to Fifth Third or are transferred to an employee benefit plan of Fifth Third.

[4] The parties dispute the interpretation of this provision. Fifth Third refused to pay class members because it interpreted these two sentences as requiring both (1) a good faith determination about tax implications and (2) either IRS approval or "Fifth Third otherwise" proceeding. Because there was no good faith determination about the tax implications and Suburban did not seek a determination letter from the IRS, Fifth Third argues that the necessary precondition for recovery did not occur. Hutchison, meanwhile, argues that this court should read the "Fifth Third otherwise" clause independently and that class members could recover if (1) the parties have good faith concerns about the tax implications but the IRS approves the plan modifications *or* (2) Fifth Third otherwise reverts or transfers ESOP funds. Because ERISA preempts Hutchison's claim, we do not reach the merits of this dispute.