## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH F. HUTCHISON, *et. al.*,** | : | **Case No. 1:01-789** |
| | : | |
| **Plaintiffs** | : | **(Judge Beckwith)** |
| | : | |
| **vs.** | : | **PLAINTIFFS' REBUTTAL** |
| | : | **MEMORANDUM RE:** |
| **FIFTH THIRD BANCORP,** | : | **ATTORNEY FEES AND COSTS** |
| | : | |
| **Defendants** | : | |

Come now the Plaintiffs, by counsel, and with leave of Court submit the following Rebuttal Memorandum in opposition to the motion of Fifth Third Bancorp ("Fifth Third") for an award of attorney fees and costs.

## I.    INTRODUCTION

Lost amid Fifth Third's accusations and vitriol in its supporting memoranda is the undisputed fact that Fifth Third took $467,000 belonging to Plaintiffs in their retirement fund and gave it to its employees in a Fifth Third employee retention program. Fifth Third has never denied this core factual assertion and its Reply Memorandum does not even address this inexcusable conduct. In a nutshell, it was this brazen taking without compensation which gave rise to Plaintiffs' alternative state law and ERISA claims.

Instead of attempting to justify its conduct (not possible), Fifth Third argues that Plaintiffs' opposition to its attorney fees and costs motion is based on no more than a rehash of substantive issues that Plaintiffs lost or that the Supreme Court declined to entertain.  (Doc. 114, p. 1)  That Fifth Third won without Plaintiffs having the opportunity to pursue their state law breach of contract claim provides no grounds for

an award of fees and costs. <u>Marchant v. Faurecia Exhaust Systems, Inc.</u>, 411 F. Supp. 2d 834, 836 (S.D. Ohio 2005) ("When examining the first factor, the degree of defendant's culpability or bad faith, the necessary degree of culpability is not established by the fact that defendant eventually was found liable.").

Fifth Third's reply memorandum belittles the merits of Plaintiffs' claims by arguing that its counsel's pre-litigation letter warned that Fifth Third did not violate the merger contract ("Affiliation Agreement"), of which Plaintiffs are intended third-party beneficiaries. (Doc. 114, p. 8)  For present purposes the real import of this letter (which Plaintiffs made part of the trial court record) is twofold:  (1) the contents of the letter contradicted the express intent of the Affiliation Agreement to assure that any remaining ESOP assets went to Plaintiffs; and (2) according to the letter, if Plaintiffs had a valid claim, it was a claim for plan benefits that would be governed by ERISA.  Thus, this pre-litigation letter was the origin of Plaintiffs' claims, asserted in the alternative, for breach of contract damages or damages under ERISA.  (Doc. 76, Ex. L)

Fifth Third's last-minute reliance on <u>Aetna Health, Inc. v. Davila</u>, 542 U.S. 200 (2004), **which it never cited to this Court or to the Sixth Circuit**, merely demonstrates the intractable nature of ERISA preemption.  In fact, neither this Court nor the Sixth Circuit based its ERISA preemption rulings on any case law or legal arguments which Fifth Third presented to this Court or to the Sixth Circuit.  The consequence for Plaintiffs in this case was that they never even got a chance to contest the applicability of <u>Davila</u> except in their Petition for Rehearing to the Sixth Circuit.

Finally, by way of introduction, the dual capacity doctrine of <u>Pegram v. Herdrich</u>, 530 U.S. 211 (2000) should be a part of any ERISA preemption analysis when the parties to the controversy have a non-plan contractual relationship.  <u>Id</u>. at 225-26.  A

leading case predating Pegram applied the dual capacity doctrine as follows:

> Thus, the state law does not affect relations between the ERISA
> fiduciary and the plan or the plan beneficiaries as such; it affects them
> in their separate capacities as corporate director and shareholder.

Abraham v. Norcal Waste Systems, Inc., 265 F.3d 811, 822 (9th Cir. 2001), *cert. denied*,

535 U.S. 1015 (2002).  As in that case, Plaintiffs herein were not seeking in their breach

of contract claim to enforce the Affiliation Agreement ***in their capacity*** as Suburban

Federal ESOP beneficiaries and Fifth Third was not acting ***in the capacity*** of a plan

sponsor, administrator or fiduciary when it executed the Affiliation Agreement.

Since Pegram is an ERISA case, but not an ERISA preemption case, it was

Plaintiffs, not Fifth Third, who were attempting to "resolve significant legal questions

regarding ERISA." *See* Secretary of Dept. of Labor v. King, 775 F.2d 666, 669 (6th Cir.

1985)("The courts have mentioned the following five factors  . . . (4) whether the party

requesting fees sought to confer a common benefit on all participants and beneficiaries

of an ERISA plan or ***resolve significant legal questions regarding ERISA*** . .

.")(emphasis added).   Plaintiffs attempted to advance ERISA case law principles by

presenting this dual capacity case law to the Sixth Circuit and subsequently requesting

that the Supreme Court extend its Pegram holding to an ERISA preemption case.  At

every juncture, Fifth Third attempted to foil Plaintiffs' efforts to advance ERISA case law

principles.  At no time did Fifth Third attempt to resolve significant legal questions

regarding ERISA.

## II.    REBUTTAL ISSUES

### A.    THE GOODSON & GIRTON DISCLOSURES

In its reply memorandum, Fifth Third contends that Plaintiffs knew from the pre-

litigation letter of attorney Stephen M. Goodson that they did not have a legitimate

claim and, Fifth Third contends, certainly not a claim based on a transfer of Suburban Federal ESOP assets to a Fifth Third plan. (Doc. 114, p. 8)  Plaintiffs themselves placed Goodson's letter into the record as part of their summary judgment papers. *See* Exhibit L to the Chris Henn summary judgment affidavit. (Doc. 76)  There is no discussion at all about the transfer issue in Goodson's letter, which said in conclusion that Plaintiffs would have to make a claim for plan benefits.  (Doc. 76, Ex. L, p. 3)  In his letter, therefore, Goodson portrayed Plaintiffs' claim as one coming within ERISA's ambit.

Goodson's letter did address (erroneously) the intent of the Affiliation Agreement in relation to the ESOP:

> Your position that the ESOP assets were to go only to former Suburban employees was a position Suburban took during negotiations of the Affiliation Agreement.  Fifth Third did not agree with this . . .

(Doc. 76, Ex. L, p. 1)  Yet, during discovery, Plaintiffs learned that Goodson took the exact opposite position in an internal memorandum, in which he was providing an "Overview of ESOP."  Goodson in the memorandum stated: "The plan will continue to cover only former Suburban Federal employees (and no other unrelated Fifth Third employees)." (Exhibit F to Henn affidavit, p. 3)  As the Court is aware, Plaintiffs' central contention in this case is that **both parties** to the Affiliation Agreement intended that the shares of stock in the ESOP suspense account were to remain, **through the termination of the ESOP**, for the exclusive benefit of former Suburban Federal employees and not unrelated Fifth Third employees - - just as Goodson said in his "overview" of the ESOP.

Moreover, in the deposition of Fifth Third's benefits administrator, it was learned for the first time that Fifth Third amended the Suburban Federal ESOP as a part of Fifth Third's employee retention plan. (J. Girton depo., pp. 40 and 52-53)  In large part,

-4-

Plaintiffs based their summary judgment motion on Girton's testimony and Goodson's internal memorandum. (Docs. 75 and 85) Neither critical piece of evidence (Goodson's memo or Girton's admission) was available to Plaintiffs until shortly before they filed their summary judgment motion, certainly not from Goodson's pre-litigation correspondence, which discovery in this case ultimately proved to be untrue and misleading.

Likewise, Plaintiffs were not aware of the amount of shares, or the value of those shares, which Fifth Third transferred to its non-Suburban employees out of the ESOP suspense account. When they did find out through discovery that it was approximately 6,500 shares having a value of $467,000, Plaintiffs reduced their pre-litigation settlement demand, both informally and via mediation, to reflect this value. Fifth Third therefore is dead wrong in claiming that Plaintiffs persisted in making outrageous settlement demands (to which Fifth Third made no response at all until mediation).

## B.     FIFTH THIRD'S RELIANCE ON *DAVILA*

Fifth Third also contends that ERISA preemption was never a serious issue in this case. (Doc. 114, p. 2) Yet Fifth Third removed this case from Common Pleas based upon ERISA "complete" preemption and filed two motions to dismiss based upon ERISA "defensive" preemption. (Docs. 11 & 19) And most recently Fifth Third represented to the U.S. Supreme Court (following the Sixth Circuit's lead) that this case was governed by the Court's ERISA preemption ruling in Aetna Health, Inc. v. Davila, 542 U.S. 200 (2004):

> In deciding this case, the Sixth Circuit simply applied and followed Davila.

> The court's recent unanimous decision in (Davila) is controlling and dispositive of the Petition.

The Sixth Circuit affirmed the District Court by simple application of
Davila.

(*See* pp. 1, 12 and 15 of Fifth Third's Brief In Opposition in Attachment A)   The
complexity of the ERISA preemption doctrine is clear from Fifth Third's eleventh-hour
reliance on Davila.[1]  Despite Fifth Third's argument to the Supreme Court, never once in
this Court or in its filings with the Sixth Circuit did it cite Davila, much less argue that it
was the controlling case.   In fact, the Sixth Circuit relied on Davila, an irrelevant
complete preemption case, ***even though neither Fifth Third nor Plaintiffs
briefed or relied on this opinion in their appellate submissions***.  Plaintiffs'
subsequent argument, in its Petition for Rehearing, that Davila is easily distinguishable
fell on deaf ears.  The Sixth Circuit denied the Petition without issuing an opinion.

## C.    THE *PEGRAM* DUAL CAPACITY DOCTRINE

Fifth Third also contends that Plaintiffs never relied upon the ERISA "dual
capacity" doctrine, as articulated in Pegram v. Herdrich, 530 U.S. 211 (2000), prior to
their Petition for Writ of Certiorari. (Doc. 114, pp. 5-6)  To the contrary, Plaintiffs'
motions for reconsideration and summary judgment in this case were framed in the
alternative, depending on the capacity in which Fifth Third was acting in relation to
Plaintiffs' claim. *See* Plaintiffs' motions and supporting memoranda. (Docs. 64, 65, 84

---

[1] The preemption ruling in Davila is distinguishable on the basis of Caterpillar Inc. v.
Williams, 482 U.S. 386 (1981), which held that a state law breach of contract claim was
not subject to complete preemption under the Labor Management Relations Act, 29
U.S.C.A. § 185, because, as in the case at hand with the Affiliation Agreement, the
individual employment contracts in that case were not superseded by the subsequent
collective bargaining agreement and therefore remained an independent source of
employer liability. Id. at 395-96. In the case at hand, the Affiliation Agreement actually
triggered Fifth Third's obligation to pay "out of its own corporate assets" the value of
ESOP shares which Fifth Third used for its own employees' retirement fund. Thus the
Affiliation Agreement remained, like the individual employment contracts in Williams,
an independent source of liability.

and 85)

If Fifth Third acted in a fiduciary capacity when amending the ESOP (while not paying Plaintiffs the value of the assets in the ESOP suspense account as required by the Affiliation Agreement), then Plaintiffs stated a viable claim under ERISA. *See* Plaintiffs' summary judgment memoranda. (Docs. 75 and 85) Alternatively, Plaintiffs argued, if Fifth Third was not acting in a fiduciary capacity, then the Court should reinstate their state law breach of contract claim and find that Fifth Third breached the terms of the Affiliation Agreement by not paying "out of its own corporate assets" the value of the ESOP suspense account shares transferred to the new, all Fifth Third ESOP.[2] Subsequently, in its briefing to the Sixth Circuit, Plaintiffs cited the seminal ERISA preemption "dual capacity" case of Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc., 793 F.2d 1456 (5th Cir. 1986), *cert. denied*, 479 U.S. 1034, 1089 (1987). *See* pp. 39-42 of Plaintiffs' Sixth Circuit brief provided herewith in Attachment B.[3]

---

[2]  Plaintiffs also argued in support of their summary judgment motion that they were not asserting their breach of contract claim in their (former) capacity as plan beneficiaries, but rather as third-party beneficiaries of the Affiliation Agreement. Indeed, by the time Fifth Third amended the Suburban Federal ESOP most of the Plaintiffs were no longer (or had never been) Fifth Third employees. As a result, they no longer had a claim against Fifth Third for ESOP benefits. A similar fact scenario in Abraham v. Norcal Waste Systems, Inc., 265 F.3d 811 (9th Cir. 2001), *cert. denied*, 535 U.S. 1015 (2002) led the Ninth Circuit to reject ERISA preemption on the basis that plaintiffs could not be bringing their claim as "traditional plan entities." *Id.* at 822. In the case at hand, in relation to the breach of contract claim, neither Fifth Third nor Plaintiffs were acting in the roles of "traditional plan entities."

[3]  Admittedly, Plaintiffs did not cite Sommers to this Court in its motion to reconsider memoranda. (Docs. 64 and 84) Regrettably, it should have done so. However, Fifth Third never once argued the "traditional plan entities" preemption test on which this Court relied in overruling Plaintiffs' motion to reconsider (Doc. 90), the preemption test to which the "dual capacity" doctrine is most applicable.

In their Sixth Circuit Reply Brief (Attachment C), Plaintiffs elaborated on the "dual capacity" doctrine as an exception to the "traditional ERISA plan entities" test for preempting state law claims under the "narrowed" ERISA preemption formula adopted in such cases as Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp., 399 F.3d 692, 697-98 (6th Cir. 2005)("More recently, however, the Supreme Court has narrowed the preemptive scope of ERISA. . ."); and Ball v. Transcon Employment Co., 2006 WL 462435, at *4 (S.D. Ohio 2006)(recognizing that "... the Supreme Court (in *Travelers)* has narrowed its expansive reading of the preemption clause in order to better adhere to the objectives of ERISA"). ***Despite Plaintiffs' citation to a formidable body of dual capacity case law, the Sixth Circuit did not even mention this doctrine in its opinion***.

### III.    CONCLUSION

One thing that Fifth Third does not dispute in its reply memorandum, or in any other pleading, is that it took $467,000 in Suburban Federal ESOP suspense account shares and, without paying a dime for these shares, distributed them to its own employees as part of an employee retention program.    Yet Fifth Third is now complaining that it had to pay attorney fees and costs to defend against its own inexcusable conduct.    It never denied this conduct.    But instead it argued that such conduct did not technically constitute a "transfer" under the Treasury Regulation at 26 C.F.R. § 1.414(l)-1(b)(3).    In a state law breach of contract action, this technical definition would not override the parties' mutual intent to preserve the ESOP assets exclusively for Plaintiffs by, in the circumstances of this case, paying Plaintiffs $467,000 "out of its own corporate assets and not Plan assets" as expressly provided in the Affiliation Agreement.

Finally, Fifth Third contends, without any documentation or other proof, that Plaintiffs have the financial wherewithal to pay its attorney fees and costs. Fifth Third has the capacity to pay its own fees and costs. It took $467,000 in stock value from the Suburban Federal ESOP suspense account, for which it paid absolutely nothing. Its fees and costs are payable out of this booty. Also, just recently Fifth Third purchased a North Carolina bank for $1.09 billion. *See The Enquirer* article of August 17, 2007 in Attachment D. The fees and costs which it incurred in the case at hand are a relatively modest cost of doing business the Fifth Third way.

Respectfully submitted,

/s/ Richard G. Meyer
Richard G. Meyer
William J. Moran, Jr.
John R. Kirk
Deters, Benzinger & LaVelle, P.S.C.
207 Thomas More Parkway
Crestview Hills, Kentucky 41017
(859) 341-1881
(859) 341-1469 (Fax)
e-mail: rmeyer@dbllaw.com
*Trial Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2007, I electronically filed the foregoing Rebuttal Memorandum with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Patrick F. Fischer and Sue A. Erhart of Keating, Muething & Klekamp, P.L.L.

/s/ Richard G. Meyer

135076.1

# ATTACHMENT

# A

No. 06-1387

IN THE

# Supreme Court of the United States

JOSEPH F. HUTCHISON, *et al.*,

*Petitioners,*

v.

FIFTH THIRD BANCORP.

*Respondent.*

ON PETITION FOR A WRIT OF CERTIORARI TO THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

## BRIEF IN OPPOSITION

PATRICK F. FISCHER
*Counsel of Record*
JOSEPH M. CALLOW, JR.
SUE A. ERHART
KEATING MUETHING & KLEKAMP PLL
  One East Fourth Street, Suite 1400
  Cincinnati, Ohio 45202
  (513) 579-6400

*Counsel for Respondent*

208776

COUNSEL PRESS

1

## STATEMENT OF CASE

This case presents no basis for certiorari review. This Court recently addressed and defined the scope of ERISA preemption in *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004). In deciding this case, the Sixth Circuit simply applied and followed *Davila*. *Hutchison v. Fifth Third Bancorp*, 469 F.3d 583 (6th Cir. 2006).

In *Davila*, this Court determined whether specific causes of action fell "within the scope" of the civil enforcement provisions of ERISA § 502(a). This Court held that "any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Davila*, 542 U.S. at 209. In this case, Petitioners' so-called breach of contract claim directly involves Fifth Third's administration, amendment, and allocation of plan assets. Thus, it obviously relates to an employee benefit plan and clearly falls within the scope of ERISA preemption as outlined in *Davila*.

As the Sixth Circuit Court of Appeals recognized, the District Court ruled on the merits of Petitioners' ERISA breach of fiduciary duty claim and Petitioners did not appeal that adverse ruling. Nonetheless, in an effort to attack the District Court's ruling on the merits of the ERISA claim, Petitioners are re-characterizing their ERISA breach of fiduciary duty claim as a state law breach of contract claim in a desperate effort to circumvent the broad scope of ERISA preemption and the District Court's now non-appealable Order. As the Sixth Circuit Court of Appeals below recognized, regardless of the characterization of the claim and regardless of the relief sought, ERISA preemption applies

12

## I.    THE COURT'S RECENT UNANIMOUS DECISION IN *AETNA HEALTH INC. V. DAVILA*, 542 U.S. 200 (2004) ESTABLISHES THE LEGAL FRAMEWORK FOR ANALYZING ERISA PREEMPTION AND THERE IS NO POST-DAVILA SPLIT IN THE CIRCUITS.

The Court's recent unanimous decision in *Aetna Health Inc. v. Davila,* 542 U.S. 200 (2004) is controlling and dispositive of the Petition. In *Davila,* the Court recognized that Congress enacted ERISA: (a) to protect the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans; and (b) to provide for appropriate remedies, sanctions, and ready access to the federal courts. *Id.* at 208. The purpose of ERISA was to provide an uniform regulatory regime over federal benefit plans – "ERISA includes expansive preemption provisions which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Id.*

> The detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. The six carefully integrated civil enforcement provisions found in

15

The Court's unanimous *Davila* opinion clearly establishes the broad scope of ERISA preemption and the applicable legal analysis and public policy supporting its application.

## II. THE SIXTH CIRCUIT FOLLOWED AND APPLIED *DAVILA* IN THE UNDERLYING DECISION.

The Sixth Circuit affirmed the District Court by simple application of *Davila*. The Sixth Circuit reviewed the nature and basis for the state law breach of contract claim, the plan documents, and Affiliation Agreement. The Sixth Circuit held that Petitioners' breach of contract claim related to an employee benefit plan and was clearly preempted.

> As in *Davila*, ERISA limits plaintiffs' ability to challenge a plan administrator's decision regarding benefits. . . . In this case, Fifth Third's decision to amend the ERISA plan, making its current employees beneficiaries at the expense of class members, is just as much a subject of ERISA regulations as the benefit determination in *Davila*. Such a determination goes to the heart of what Congress intended ERISA to govern: the rights of beneficiaries under ERISA against plan administrators. Fifth Third's decision to amend the ESOP (a decision clearly "related to" ERISA, 29 U.S.C. § 1144) constituted an element of Hutchison's state law claim, and no class member could sue Fifth Third before the decision to exclude him or her from the ESOP. There is, therefore, no basis for distinguishing in terms of

# ATTACHMENT

# B

## CASE NO. 05-4389

IN THE
# UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

JOSEPH F. HUTCHISON, JOHN A. BUCHHEID,
RANDALL FIELDS, PAUL NEISER, MARK BRANDON,
ROBERT ZIHLMAN, KAREN HACK, MARY L. MEDICOTT,
MARY RENGERS,VONDA ZIMMERMAN, AUDREY HOWARD,
JANET MUELLER, WINIFRED JANSING, BONNIE CAHILL,
VIOLET GAY, BETTY RENSING AND PAMELA KARAUS
*Plaintiffs-Appellants*

v.

## FIFTH THIRD BANCORP
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of Ohio
Western Division
at Cincinnati

## BRIEF FOR APPELLANTS

Richard G. Meyer
John R. Kirk
Deters, Benzinger & LaVelle, P.S.C.
207 Thomas More Parkway
Crestview Hills, Kentucky 41017
(859) 341-1881
*Counsel for Plaintiffs-Appellants*

> **D.    Appellants' state law breach of contract claim does not implicate the relations among the traditional ERISA plan entities.**

No doubt, ERISA preemption is a vexing concept which has generated a score of U.S. Supreme Court opinions and literally thousands of lower federal court opinions:

> According to the Court, the high number of ERISA preemption cases reflects the complex and comprehensive nature of the statute, the prevalence of pension and welfare plans in the national economy, and their importance to the financial security of the American workforce.

H. Shapiro, R. Thorne and E. Harold, ERISA Preemption: To Infinity and Beyond and Back Again? (A Historical Review of Supreme Court Jurisprudence), 58 La. L. Rev. 997, 1001 (1998) (hereinafter "Shapiro"). When that article was published, there were 16 U.S. Supreme Court ERISA preemption opinions and over 4,000 lower court opinions. *Id.* at 1001 nn.28 and 29. For summaries of U.S. Supreme Court ERISA cases, *see* Attachment A to Appellants' motion to reconsider reply memorandum. (R.84, Reply Memorandum, Attachment A, JA 493-96)

The Sixth Circuit in PONI adopted the preemption standards which most federal Circuits have found to be consistent with the U.S. Supreme Court's more recent opinions. One of these standards addresses the capacities in which the parties are acting in relation to an ERISA governed plan:

> Congress did not intend, however, for ERISA to preempt
> traditional state-based laws of general applicability that
> do not implicate the relations among the traditional
> ERISA plan entities, including the principals, the
> employer, the plan, the plan fiduciaries, and the
> beneficiaries.

399 F.3d at 698 (internal quotation marks omitted). The Fifth Circuit originated

this test of ERISA preemption:

> The emphasis on these traditional ERISA relationships,
> also described as the 'ERISA quartet' as a touchstone for
> preemption, was developed initially in Sommers Drug
> Stores Co. Employee Profit Sharing Trust v. Corrigan
> Enters., Inc., 793 F.2d 1456 (5th Cir. 1986), cert. denied,
> 479 U.S. 1034, 1089 (1987).

Shapiro, supra, 58 La. L. Rev. at 1030 n.252. Although the court below adopted

this "ERISA quartet" test from PONI, it misapplied this test by characterizing

Appellants' breach of contract claim as if it were a claim by beneficiaries for plan

benefits against the employer/sponsor of the plan:

> Since Plaintiffs are beneficiaries of the ESOP plan and
> their breach of contract claim is against the employer –
> both traditional plan entities – PONI is not applicable to
> save the claim from preemption.

(R.90, Order denying Motion for Reconsideration, p. 7, JA 162).

It is instructive to review the Fifth Circuit's opinion in Sommers to locate

the source of the District Court's error. As the Fifth Circuit noted in that case: "At

first glance, the state common law of corporate fiduciary duty, as applied in this

case appears to do just that" ("affects relations among the principal ERISA

40

entities"). 793 F.2d at 1468. Since the defendant employer in <u>Sommers</u> had very similar fiduciary duties to the plaintiff profit sharing trust arising out of both ERISA and state law, it could appear on the surface that the plaintiff's state claim for breach of corporate fiduciary duty, asserted by the trust as shareholder, implicated the relation between the employer and the ERISA plan. However, the Fifth Circuit took a closer look, distinguishing between the defendant acting in the capacity of a plan sponsor versus the defendant acting in the capacity of a corporate director:

> The state law and ERISA duties are parallel but independent; as director, the individual owes a duty, defined by state law, to the corporation's shareholders, including the plan; as fiduciary, the individual owes a duty, defined by ERISA, to the plan and its beneficiaries. Thus, the state law does not affect relations between the ERISA fiduciary and the plan or plan beneficiaries as such; it affects them in their separate capacities as corporate director and shareholder.

*Id.* at 1468. Thus in applying the "ERISA quartet" test of ERISA preemption, it is essential to identify the capacities in which the parties are acting in relation to the state law claim.

Similarly, at first glance, it may appear that Appellants' breach of contract claim implicates the relations between the traditional plan entities of beneficiaries and employer. However, Appellants and Fifth Third were not acting in these capacities in relation to Appellants' breach of contract claim. Indeed, in relation to

41

the breach of contract claim, Appellants are third party beneficiaries of Section V. E(1) of the Affiliation Agreement and Fifth Third is an arm's length party to that same Agreement. This is the only relationship between Appellants and Fifth Third which engenders a breach of contract claim and the only relationship between the parties that is at issue under that claim.

The case for preemption herein is far less persuasive than in <u>Sommers</u>. Fifth Third had no duty to pay plan benefits to the 67 former Suburban employees. It did have a duty to pay them out of its corporate assets. Fifth Third owed no fiduciary duty to keep Fifth Third employees out of the Plan. It had a contractual duty to pay Plan participants at the "Effective Time" the value of remaining assets transferred to its non-Suburban employees. The Suburban participants had no vested interest in the Plan assets at issue. The Suburban participants did have a contractual right to Fifth Third's corporate assets in an equivalent amount of the assets transferred. The Suburban participants had no right of continued employment at Fifth Third and therefore no right of continued participation in the Suburban ESOP. In sum, the parties' contract capacities and Suburban ESOP capacities were not parallel, as in <u>Sommers</u>, but instead were quite divergent.

42

# ATTACHMENT

# C

# CASE NO. 05-4389

IN THE

# UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

---

### JOSEPH F. HUTCHISON, JOHN A. BUCHHEID, RANDALL FIELDS, PAUL NEISER, MARK BRANDON, ROBERT ZIHLMAN, KAREN HACK, MARY L. MEDICOTT, MARY RENGERS,VONDA ZIMMERMAN, AUDREY HOWARD, JANET MUELLER, WINIFRED JANSING, BONNIE CAHILL, VIOLET GAY, BETTY RENSING AND PAMELA KARAUS
*Plaintiffs-Appellants*

v.

### FIFTH THIRD BANCORP
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of Ohio
Western Division
at Cincinnati

---

## APPELLANTS' REPLY BRIEF

---

Richard G. Meyer
John R. Kirk
Deters, Benzinger & LaVelle, P.S.C.
207 Thomas More Parkway
Crestview Hills, Kentucky  41017
(859) 341-1881
*Counsel for Plaintiffs-Appellants*

### B. The "traditional ERISA entities" test must not be applied mechanically.

In assessing the applicability of the ERISA preemption defense to Appellants' breach of contract claim, it is not sufficient merely to identify Appellants as Suburban ESOP participants and Fifth Third as the successor plan sponsor/employer. Instead, the appropriate analysis is to determine whether the parties were acting in these respective capacities **in relation to the conduct in question.** *See* <u>Sommers</u>, *supra,* 793 F.2d at 1468.

In this case, Appellants were not "Qualifying Participants" in the Suburban ESOP when Fifth Third transferred the $467,000 in plan assets to its non-Suburban employees. To the contrary, this transfer triggered Appellants' rights as third-party beneficiaries of the Affiliation Agreement. Likewise, Fifth Third was acting in the capacity of an arm's length merger partner when it entered into the Affiliation Agreement giving rise to its obligation to pay the value of the transferred assets. As a result, Appellants' claim that Fifth Third breached the Affiliation Agreement does not implicate the relations between traditional ERISA plan entities.[10]

Thus in <u>Cotton v. Massachusetts Mutual Life Ins. Co.</u>, 402 F.3d 1267 (11th Cir. 2005), the Court declined to resolve the preemption issue merely by considering the parties' status as ERISA entities:

> And when an insurer is not acting in its capacity as an ERISA entity, we can see no reason that Congress would have sought to immunize it from liability for fraud or similar state-law torts.

---

[10] Rooted in the Act itself, a "dual capacity" approach to substantive ERISA liability, aside from preemption case law, has long been a feature of ERISA litigation. *See* <u>Pegram v. Herdrich</u>, 530 U.S. 211, 225-26 (2000) ("In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint"); and <u>Kalda v. Sioux Valley Physician Partners, Inc.</u>, 394 F.Supp.2d 1107, 1112 (D.S.D. 2005) ("The ERISA scheme envisions that employers will act in a dual capacity as both fiduciary to the plan and as employer. ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets.").

Id. at 1284. Likewise, in Wilson v. Zoellner, 114 F.3d 713 (8th Cir. 1997), the Court rejected a

mechanical status approach:

> Because Prudential is a fiduciary of the Prudential policy with
> Midway, Zoellner apparently argues that allowing Wilson to
> recover against Zoellner would affect a fiduciary's relation to a
> beneficiary, and should therefore be preempted. We reject this
> argument.

Id. at 718 ("Because Prudential does not face any liability incurred by its role as an ERISA

entity, its relationship with other ERISA entities cannot be affected by Wilson's suit.").

The dual capacities approach to applying the "traditional ERISA entities" test was

applied to HMOs in Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266 (3rd Cir. 2001), where the

Court held that ERISA preemption attaches to an HMO's administrative functions but not to its

medical services functions. Id. at 274 ("In both cases, we recognized that the HMO had assumed

the dual role of an administrator of benefits and a provider of medical services."). *See also*

Darcangelo v. Verizon, 292 F.3d 181, 191-2 (4th Cir. 2002); Coyne & Delany Co. v. Selman, 98

F.3d 1457, 1471 (4th Cir. 1996); and Providence Health Plan v. McDowell, 385 F.3d 1168, 1172

(9th Cir. 2004), *cert. denied*, 125 S.Ct. 1726, 1735 (2005).

In the case at hand, both Appellants and Fifth Third have dual capacities, Appellants as

former plan participants and current third-party beneficiaries of Section V.E(1) of the Affiliation

Agreement, Fifth Third as successor plan sponsor/employer and arm's length party to a merger

agreement. For both, it is the latter capacities which set the stage for Appellants' breach of

contract claim.

In sum, the Third, Fourth, Fifth, Eighth, Ninth and Eleventh Circuits have applied the

"traditional ERISA entities" analysis in a non-mechanical way that comports with the Supreme

Court's directive in *Travelers* that ERISA preemption must be constrained by "the objectives of the ERISA statute." 514 U.S. at 656.

# ATTACHMENT

# D

🖨 Print | ✖ Close Window

 **THE ENQUIRER**

Last Updated: 11:53 am | Friday, August 17, 2007

# Fifth Third buying N.C. bank

BY JEFF MCKINNEY | JMCKINNEY@ENQUIRER.COM

Fifth Third Bancorp's buyout of a Charlotte, N.C. bank will make it the fourth-largest bank in the city and bring it into North Carolina and the Atlanta market for the first time.

More important, the Cincinnati-based banking giant said it expects to continue to expand in North Carolina and Georgia through acquisitions and adding new branches.

"We would expect to build upon these positions in each state with additional acquisitions and de novo (or new branch) activity over time," Kevin Kabat, Fifth Third's president and chief executive, said in a statement.

Fifth Third's announcement Thursday that it will buy First Charter Corp. in a cash-and-stock deal valued at $1.09 billion would put it in one of the nation's most competitive banking markets, going head-to-head in Charlotte with powerhouses Wachovia Bank and Bank of America.

But Fifth Third is not in awe of the competition.

Debra DeCourcy, a spokeswoman for Fifth Third, said the company competes with the other banks in numerous markets. "We think we can be a significant player in the Charlotte market," she said.

Its latest acquisition will give Fifth Third 57 branches from First Charter in North Carolina, with the majority of those - 52 - in Charlotte, where the company will pick up $2.2 billion in deposits and more than 110,000 households served.

In Atlanta, Fifth Third will gain two branches and $366 million in deposits from First Charter.

Overall, the acquisition would give Fifth Third about $4.9 billion in assets and $3.2 billion in deposits from all of the markets where First Charter operates.

"This really opens up a very attractive growth market in North Carolina and specifically, some great markets like Charlotte, Raleigh-Durham, and two locations in suburban Atlanta," Kabat said.

Kabat called the price reasonable for the expansion, but at least one analyst disagreed, downgrading Fifth Third stock.

Gary B. Townsend of Friedman, Billings, Ramsey & Co. Inc. wrote that the deal is expensive for an out-of-market acquisition that will not help Fifth Third's profits in its first three years.

The deal is the second acquisition since Kabat took over as CEO in June 2006. In May, Fifth Third said it would buy Casselberry, Fla.-based R-G Crown Bank, which has 33 branches in central and northern Florida and Augusta, Ga., for $288 million and the assumption of $50 million of trust preferred securities. That deal is expected to close in the fourth quarter.

To acquire First Charter, Fifth Third will pay cash for 30 percent of the bank price and offer shares of Fifth Third for the remaining 70 percent, the company said.

The deal is expected to close in the first quarter of 2008 and reduce 2008 per-share earnings by 2 percent but will bring a savings of about $22 million in annual costs over the next two years, Fifth Third projected.

First Charter will become a Fifth Third affiliate, and Bob James, its president and chief executive, will be president of the Charlotte-based affiliate.

Fifth Third says it's the region's largest banking company. It has assets of $101 billion and 1,171 branches in Ohio, Kentucky, Indiana, Michigan, Illinois, Florida, Tennessee, West Virginia, Pennsylvania and Missouri.

Fifth Third stock closed Thursday at $36.39, down 99 cents, or 2.7 percent.

*The Associated Press contributed.*

🖶 Print | ✕ Close Window | Copyright 2007, *Enquirer.com*