IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Joseph Hutchison, et al.,    )
                             )
        Plaintiffs,          ) Case No. 1:01-CV-789
                             )
    vs.                      )
                             )
Fifth Third Bancorp,         )
                             )
                             )
        Defendant.           )

O R D E R

This matter is before the Court on Defendant Fifth Third Bancorp's motions for attorney's fees (Doc. Nos. 94 & 109) and Plaintiff Joseph Hutchison's motion for leave to file a rebuttal memorandum (Doc. No. 115). For the reasons set forth below, Defendant's motions for attorney's fees is not well-taken and is **DENIED**; Plaintiff's motion to file a rebuttal memorandum is **MOOT.**

In this ERISA case, Defendant Fifth Third Bancorp ("Fifth Third") moves for an award of attorney's fees pursuant to 29 U.S.C. § 1132(g)(1).[1]

---

[1]    This section provides:

   Attorney's fees and costs; awards in actions involving
   delinquent contributions

1

This lawsuit arises out of the 1997 merger between Fifth Third and Suburban Bancorp ("Suburban"). At the time, Suburban had in place a leveraged employee stock ownership plan ("ESOP"). Fifth Third, however, did not want to continue the ESOP after the merger. Suburban, on the other hand, in terminating the ESOP wanted to distribute the assets to the current participants of the plan. There was an issue, though, whether the assets could be distributed among the participates without violating the Section 415 limits on annual contributions to employee benefit plans. Therefore, the affiliation agreement between Fifth Third and Suburban contained a provision which specifically addressed the problem of closing out the ESOP post-merger:

> Suburban Bancorp shall develop a written description and timetable which shall be provided to and approved by Fifth Third and its counsel, setting forth all actions necessary to: (i) make contributions to the Suburban Bancorp, Inc. Employee Stock Ownership Plan ("ESOP") and/or have the ESOP sell unallocated shares under the ESOP to fully repay the ESOP's existing loan, all in compliance with the applicable requirements of ERISA and the Internal Revenue Code, including Code Sections 415 (as interpreted by the IRS in Private Letter Rulings 9648054 and 9426048) and 404; (ii) amend the ESOP to authorize the sale of unallocated shares to repay the loan, to provide for allocation of gain on

---

(1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

the sale of unallocated shares in a manner that complies with the position of the IRS in Private Letter Rulings 9648054 and 9426048 and to make such other changes as may be necessary to implement the termination; (iii) terminate the ESOP; and (iv) submit the ESOP to the Internal Revenue Service for a determination letter that the ESOP, as so amended and terminated, continues to be a qualified retirement plan and employee stock ownership plan under Sections 401(a) and 4975(e)(7) of the Code.  Upon development and approval by Fifth Third of said written description and timetable, Suburban Bancorp shall take such actions as described therein as are approved by Fifth Third. Distribution of the shares and any other assets of the ESOP shall (i) not occur until after the receipt of the foregoing IRS determination letter and (ii) occur prior to the Effective Time only with the express written consent of Fifth Third, which shall not be unreasonably withheld.  In connection with the development of the written description and timetables referred to above and resolution of the ESOP, the parties agree they intend that, to the extent not prohibited by applicable law, the ESOP shall be maintained through the date of its final termination for the exclusive benefit of the individuals who had become ESOP participants on or before the Effective Time.  In furtherance of this intention, such timetable and plan shall include provisions: (a) that Suburban Bancorp may make contributions to the ESOP for the plan year ending June 30, 1997 in the amount accrued in the ordinary course through February 28, 1997; (b) That [sic]  Suburban may make contributions to the ESOP for the plan year ending June 30, 1997, in the amount accrued and to be accrued in the ordinary course from March 1, 1997, through June 30, 1997, but in no event greater than $42,000 and in no event may any amount be contributed that would create or increase an amount in the ESOP suspense account which, under the written description and timetable referred to above (assuming termination of the ESOP on June 30, 1998) may not be allocated within the limits of Code section 415 (as interpreted by the IRS in Private Letter Rulings 9648054 and 9426048); (c) that no interest shall accrue on the existing ESOP loan after June 30, 1997; and (d) that the ESOP shall terminate no later than June 30, 1998 if at that time there would be no amount in the ESOP suspense account which may not be allocated within the limits of Code section 415 (as interpreted by the IRS in Private

> Letter Rulings 9648054 and 9426048).  If, upon
> development of the written description and timetable
> referred to above, the parties agree in good faith that
> allocation of all or any shares of stock in the ESOP's
> suspense account would violate the Code's section 415
> limitations as interpreted by the IRS in Private Letter
> Rulings 9648054 and 9426048, Suburban Bancorp shall
> apply to the IRS for approval (either through an IRS
> determination letter or other means reasonably
> acceptable to Fifth Third) of a transaction (the
> "Transaction") whereby the excess shares (or cash value
> thereof)(i.e., those shares remaining after fully
> utilizing the section 415 limits (as interpreted by the
> IRS in Private Letter Rulings 9648054 and 9426048)
> either revert to Fifth Third or are transferred to an
> employee benefit plan of Fifth Third.  If and only if
> the IRS approves such a Transaction, or Fifth Third
> otherwise proceeds with the Transaction without IRS
> approval, Fifth Third will thereafter pay (out of its
> corporate assets and not plan assets) an equivalent
> amount (determined using the fair market value of the
> transferred plan assets at the time of the transfer),
> reduced by expenses incurred, to individuals who were
> ESOP participants on the Effective Time and who shall
> divide such payment pro rata based on their relative
> ESOP account balances on June 30, 1997.

Doc. No. 71, Ex. 7, Affiliation Agreement § V.E.1.

Suburban was not able to develop a timetable for distributing the ESOP shares to the participants without violating the Section 415 limits.  Moreover, Suburban did not apply to the Internal Revenue Service for a determination letter approving a reversion of the assets to Fifth Third.  When Fifth Third became the ESOP plan sponsor after the merger, it amended the plan to allow approximately 1,600 Fifth Third employees to become participants.  Fifth Third then distributed the ESOP shares among the new participants and terminated the ESOP.  Some

4

participants rolled over their ESOP distribution to other retirement plans sponsored by Fifth Third.

Believing that Fifth Third's actions in amending and terminating the ESOP triggered Fifth Third's obligation under the affiliation agreement to pay the ESOP participants the value of the plan assets, Plaintiff Joseph Hutchison and other plan participants filed suit against Fifth Third in the Hamilton County Court of Common Pleas.  The original complaint asserted claims against Fifth Third under state law for breach of contract, conversion, intentional and negligent misrepresentation, and breach of the covenant of good faith and fair dealing.  The complaint also asserted a claim for breach of fiduciary duty under ERISA.  Fifth Third removed the case from state court pursuant to 28 U.S.C. § 1441 because this Court had original jurisdiction over the ERISA claim.

Once the case was in federal court, Plaintiffs voluntarily dismissed their ERISA claim and moved the Court to remand the case to state court. (Doc. Nos. 5 & 6).  However, despite Plaintiffs' voluntary dismissal of their ERISA claim, the Court found that ERISA completely preempted their state law claims.  Therefore, the Court found that Fifth Third properly removed the case and denied Plaintiffs' motion to remand it to state court.  Doc. No. 9.  Fifth Third then moved to dismiss Plaintiffs' state law claims on the grounds of complete ERISA

preemption. Doc. No. 11. Plaintiffs responded by filing an amended complaint (Doc. No. 15) which reinstated their ERISA breach of fiduciary duty claim.

The procedural maneuvering continued with Fifth Third moving to dismiss Plaintiffs revived ERISA claim on the grounds that they failed to exhaust the ESOP's administrative remedies before filing suit. Doc. No. 19. The Court issued a combined order (Doc. No. 24) which granted Fifth Third's motion to dismiss the state law claims on the grounds of complete preemption but denied the motion to dismiss the ERISA claim on the grounds that requiring exhaustion of remedies would have been futile.

Plaintiffs filed a second amended complaint (Doc. No. 27) to incorporate the Court's suggestion that the complaint should contain allegations that exhaustion of administrative remedies would be futile. Fifth Third then filed a motion to dismiss the second amended complaint pursuant to Rule 12(b)(6) (Doc. No. 31) on the grounds that the affiliation agreement did not become a part of the ESOP plan and thus, Plaintiffs had no claim for plan benefits pursuant to the affiliation agreement. Alternatively, Fifth Third argued that even if the affiliation agreement became a part of the ESOP plan, Plaintiffs were not entitled to recovery because the necessary conditions precedent to Fifth Third's obligation to pay Plaintiffs the value of the plan assets did not occur. The Court issued an order (Doc. No.

46) denying the motion to dismiss the second amended complaint on the grounds that the proper interpretation of the affiliation agreement and its effect, if any, on the ESOP could only be determined on motions for summary judgment.  Id. at 14.

The case then proceeded through discovery.  As the deadline for filing dispositive motions drew near, Plaintiffs filed a motion for class certification (Doc. No. 62) and a motion for reconsideration (Doc. No. 64).  Plaintiffs' motion for reconsideration asked the Court to revisit its earlier decision that their state law claims were completely preempted by ERISA.  Plaintiffs' motion was based on the then-recent opinion by the Sixth Circuit Court of Appeals in Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp., 399 F.3d 692 (6th Cir. 2005)("PONI").  In PONI, Plaintiffs argued, the Sixth Circuit recognized that the Supreme Court had recently narrowed the preemptive scope of ERISA.  Plaintiffs contended that because of the narrower scope of ERISA preemption, like the plaintiff in PONI, their state law breach of contract claim was not preempted.  The Court, however, distinguished PONI from the instant case.  The Court noted that in PONI, the non-preempted breach of contract claim was asserted by the plan itself against a non-fiduciary, third-party service provider.  In contrast, in this case, Plaintiffs were attempting to assert a state law breach of contract claim against a fiduciary of the plan.  Moreover, the Court noted, preemption

still obtained in this case because the lawsuit was between plan beneficiaries and the employer, a suit between traditional plan entities in which preemption still applied.  The Court, therefore, denied Plaintiffs' motion for reconsideration.  Doc. No. 90, at 6-7.

     The parties then filed cross-motions for summary judgment on Plaintiffs' ERISA breach of fiduciary duty claim. The Court granted Fifth Third's motion for summary judgment and denied Plaintiffs' motion for summary judgment.  The Court held that Fifth Third did not breach its fiduciary duty when it amended the ESOP to allow Fifth Third employees to participate because employers do not act in a fiduciary capacity when adopting plan amendments.  The Court also found that Fifth Third did not breach its fiduciary duty by engaging in a prohibited transaction with a party-in-interest because payment of benefits pursuant to the plan is not a prohibited transaction.  The Court further held that it could not impose a resulting trust on the distributed ESOP assets, as suggested by Plaintiffs, without first finding a breach of fiduciary duty.  Finally, the Court held that, assuming the affiliation agreement became one of the terms of the ESOP, Fifth Third was not obligated to pay Plaintiffs the value of the distributed shares because there was no reversion to Fifth Third and the participant rollovers to

other plans did not constitute a transfer of assets to another plan.  See generally Doc. No. 91.

After the Court entered judgment in the case, Fifth Third moved for an award of costs and attorney's fees.  Doc. Nos. 93, 94, 109 & 111.  Plaintiffs, however, filed a notice of appeal from the Court's rulings on the preemption issues and the summary judgment motions in favor of Fifth Third.  The Court, therefore, denied the motions for attorney's fees and costs without prejudice pending the outcome of Plaintiffs' appeal.

At the appellate level, Plaintiffs abandoned their appeal on the Court's adverse ruling on their ERISA breach of fiduciary duty claim.  Instead, Plaintiffs' appeal was limited to challenging the Court's ruling that ERISA preempts their state law breach of contract claim.  On November 30, 2006, the Sixth Circuit issued an opinion affirming this Court's judgment on the scope of ERISA preemption in this case.  Hutchison v. Fifth Third Bancorp, 469 F.3d 583 (6th Cir. 2006).  Plaintiffs then filed a petition for a writ of certiorari with the United States Supreme Court.  The Supreme Court denied Plaintiffs' petition on June 25, 2007. Doc. No. 112.

Fifth Third then renewed its motion for attorney's fees and costs and filed amendments to their original claims.  Fifth Third seeks attorney's fees of $304,235.68 and costs of $10,415.18.  Fifth Third argues that awarding attorney's fees is

appropriate because Plaintiffs took meritless positions and because their shifting litigation strategies needlessly increased the costs of litigating this case.  Fifth Third also argues that an award of attorney's fees would deter other plaintiffs from litigating in a like manner in the future.  Plaintiffs, of course, oppose Fifth Third's motion.  Plaintiffs stress the complexity of the preemption issues and the perceived inequity of Fifth Third's conduct in amending the ESOP to their disadvantage.

As indicated above, pursuant to § 1132(g)(1), district courts have discretion to award reasonable attorney's fees and costs in an ERISA action.  In determining whether to award fees, the court should consider the following factors: 1) the degree of the opposing party's culpability or bad faith; 2) the opposing party's ability to satisfy an award of attorney's fees; 3) the deterrent effect of an award on other persons under similar circumstances; 4) whether the party requesting fees sought to confer a benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and 5) the relative merits of the parties' positions. <u>First Trust Corp. v. Bryant</u>, 410 F.3d 842, 851 (6th Cir. 2005).  In this case, the parties focus primarily on the first and fifth factors – the degree of culpability or bad faith and the relative merits of the parties' positions.  Plaintiffs do not contend that they cannot afford to pay Fifth Third's attorney's fees.  The

fourth factor seemingly has little applicability in this case, although, since Fifth Third did not attempt to confer a benefit on all participants or resolve significant legal issues regarding ERISA, the fourth factor arguably cuts against it.

The Court notes further that while technically Fifth Third does not bring its motion for attorney's fees pursuant to 28 U.S.C. § 1927 for vexatiously multiplying the proceedings,[2] it does argue that Plaintiffs' litigation tactics needlessly increased the costs of resolving this case. The Court, therefore, also takes guidance from cases applying § 1927 to award attorney's fees. In this regard, the Court notes that:

> simple inadvertence or negligence that frustrates the trial judge will not support a sanction under section 1927. There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party. While this ideal may be difficult to implement, judges faced with motions under section 1927 should be mindful that their individual perturbations will not alone justify a sanction.

---

[2] Section 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

11

In re Ruben, 825 F.2d 977, 984 (6th Cir. 1987). Moreover, "[t]he grounds for sanctions . . . are designed to improve the litigation process, but improvement cannot come at the expense of vigorous advocacy. District courts must strike a delicate balance between protecting the adversary system and not allowing attorneys to exploit the system for their own purposes." Id. at 991. With these thoughts in mind, the Court turns to the merits of Fifth Third's motions for attorney's fees.

      We start with the proposition, like the Sixth Circuit, that this was a complicated case. Hutchison, 469 F.3d at 584. The preemption issue was the most significant issue in the case. Indeed, Plaintiffs had an uphill battle to prevail in this case both because of ERISA's broad preemptive sweep, Briscoe v. Fine, 444 F.3d 478, 497 (6th Cir. 2006), and because, as was the case here, ERISA not infrequently becomes a sword in the hands of employers rather than a shield to protect employees. Hohenegger v. Northern Ind. Pub. Serv. Co., 967 F. Supp. 350, 353 (N.D.Ind. 1997). Therefore, not surprisingly, Plaintiffs labored long and hard to find a loophole in the preemption jurisprudence. Conversely, because ERISA preemption is so broad, employers generally will always have a strong position on the merits of related state law claims. However, because the parties' relative starting positions were so uneven, this consideration should not weigh too heavily in Fifth Third's favor, if at all. Plaintiffs'

motion for reconsideration, while ultimately unsuccessful, presented at least a colorable argument that after <u>PONI</u> their breach of contract claim was no longer preempted by ERISA.  The Court does not believe that Plaintiffs' claims and preemption arguments were meritless to the point that imposition of what amounts to a sanction is required.

      Although Fifth Third criticizes Plaintiffs for their shifting litigation strategies, in the Court's judgment, this was largely a result of the preemption rulings.  Having failed to get the case remanded to state court, and with their state law claims having been dismissed, Plaintiffs had little choice but to reinstate their ERISA breach of fiduciary duty claim and go forward on it.  The Court notes further that Plaintiffs filed their second amended complaint more or less at the Court's behest, and, therefore, are not at fault to the extent that pleading prolonged resolution of the case.

      Fifth Third is not entirely blameless in the whole matter.  Clearly its removal of the case from state court and its opposition to remanding the case were proper.  However, Fifth Third filed three motions to dismiss (Doc. Nos. 11, 19 & 31), and of these, in hindsight probably the last two were unnecessary and added additional cost and expense to the case.  However, if the Court were to judge every pleading in hindsight to determine whether it was necessary, very few litigants would escape

sanctions.  And so it is with Plaintiffs in this case.  In retrospect, Plaintiffs might have litigated the case differently and perhaps the case would have been concluded more quickly and more efficiently.  The Court does observe that once the procedural skirmishing came to an end, roughly about the beginning of 2004, the case came to a relatively expeditious conclusion.  It may be that Plaintiffs, to paraphrase Othello, litigated not wisely, but too well, but the Court nevertheless does not find that counsel's performance fell "short of the obligations owed by a member of the bar to the court." Ruben, supra.  Moreover, awarding Fifth Third their attorney's fees in this case might tend to chill vigorous advocacy on behalf of plan participants.  Id.

Fifth Third argues further that Plaintiffs litigated in bad faith because of their alleged exorbitant settlement demands, which, it claims, were for far more than the value of the stock at issue.  In all candor, litigants generally posture so much in settlement discussions that expressions of outrage at the plaintiff's chutzpah or the defendant's parsimony generally fall on unsympathetic ears where the Court is concerned.  Again, if the Court were to find bad faith based on settlement demands and offers many, many more lawyers and parties would leave the courthouse with lighter pockets.  The Court will not base an

award of attorney's fees on Plaintiffs' settlement demands in this case.

Finally, Fifth Third argues that an award of attorney's fees is necessary to deter future plaintiffs from litigating in the same manner as Plaintiffs here.  While counsel's handling of the case has not been perfect, neither, as indicated, did it fall to the point where the Court believes they did not fulfill their professional obligations to the Court or the opposing side.  Therefore, deterrence of others is not warranted.  Moreover, a number of courts have suggested that the deterrence factor should only be considered when beneficiaries seek fees against the employer lest the prospect of paying fees discourages participants from pursuing important ERISA claims.  Salovaara v. Eckert, 222 F.3d 19, 31 (2nd Cir. 2002); Gibbs v. Gibbs, 210 F.3d 491, 505 (5th Cir. 2000); Maune v. International Bhd of Elec. Workers, Local No. 1 Health & Welfare Fund, 83 F.3d 959, 964 (8th Cir. 1996).  In any event, the Court does not regard deterrence as presenting a particularly compelling reason to award Fifth Third its attorney's fees.

In summary, under all of the circumstances in this case, the Court finds that Fifth Third should not be awarded its attorney's fees.  Accordingly, Fifth Third's motions for attorney's fees (Doc. Nos. 94 & 109) are not well-taken and are **DENIED.**  Fifth Third's bills of costs (Doc. Nos. 93 & 111) are

referred to the Clerk of Court for resolution. In light of these rulings, Plaintiffs' motion to file a rebuttal memorandum (Doc. No. 115) is **MOOT.**

       **IT IS SO ORDERED**

Date January 8, 2008                  s/Sandra S. Beckwith
                                         Sandra S. Beckwith, Chief Judge
                                           United States District Court